CRAIG B. GARNER (CA SBN 177971)
T. MARK TUBIS (CA SBN 323083)
GARNER HEALTH LAW CORPORATION
13274 Fiji Way, Suite 250
Marina Del Rey, CA 90292
Telephone: (310) 458-1560
Facsimile: (310) 694-9025
Email: craig@garnerhealth.com

SQUIRES, SHERMAN & BIOTEAU, LLP
ROCHELLE J. BIOTEAU (CA SBN 228348)
Rochelle@ssbllp.com
1901 1st Avenue, Suite 415
San Diego, CA 92101
Telephone: (619) 696-8854
Facsimile: (619) 6968190

Attorneys for PLAINTIFF ABC SERVICES GROUP, INC., in its capacity as assignee for the benefit of creditors of MORNINGSIDE RECOVERY, LLC MORNINGSIDE RECOVERY, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| ABC SERVICES GROUP, INC., a Delaware corporation, in its capacity as assignee for the benefit of creditors of MORNINGSIDE RECOVERY, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>HEALTH NET OF CALIFORNIA, INC.; HEALTH NET LIFE INSURANCE COMPANY; HEALTH NET, INC.; CENTENE CORPORATION; and DOES 1 through 20, Inclusive<br><br>Defendants. | Case No. 8:19-cv-00243 DOC (DFMx)<br><br>Hon. David O. Carter<br><br>**FIRST AMENDED COMPLAINT FOR BREACH OF EMPLOYEE WELFARE BENEFIT PLAN (RECOVERY OF PLAN BENEFITS UNDER E.R.I.S.A.) [29 U.S.C. § 1132(a)(1)(b)]** |

ABC SERVICES GROUP, INC., a Delaware corporation ("ABC"), in its capacity as assignee for the benefit of creditors of MORNINGSIDE RECOVERY, LLC, a California limited liability company ("Morningside" and ABC collectively "Plaintiff") complains and alleges in this First Amended Complaint (the "FAC") against Defendants HEALTH NET OF CALIFORNIA, INC. ("HNC"), HEALTH NET LIFE INSURANCE COMPANY ("HNL"), HEALTH NET, INC. ("HNI"), CENTENE CORPORATION ("Centene", collectively with HNC, HNL and HNI referred to hereinafter as "Health Net") and Does 1 through 20 (the "Doe Defendants", collectively with Health Net referred to hereinafter as "Defendants") as follows:

## THE PARTIES

1.     ABC is a corporation organized and existing under the laws of the State of Delaware, with its primary place of business located in Tustin, California.

2.     Morningside, at all relevant times, provided professional medical and mental health services and rehabilitation care for patients suffering from mental health and substance use disorders ("SUDs") from its location in Irvine, California.

3.     Defendant HNC is and at all relevant times was a California corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that HNC is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact the business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

4.     Defendant HNL is and at all relevant times was a California corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that HNL is licensed by the California

Department of Insurance and/or the California Department of Managed Health Care to transact the business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

5. Defendant HNI was at all relevant times was a Delaware corporation licensed to do business in and was doing business in the State of California as a provider of health insurance benefits. Plaintiff is informed and believes, and based thereon alleges, that HNI was authorized by the California Department of Insurance and/or the California Department of Managed Health Care to transact the business of insurance in the State of California, was in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California. On March 26, 2019, HNI surrendered its rights and authority to transact intrastate business in the State of California, but consented to process against it in any action upon any liability or obligation incurred within the State of California prior to the filing of its Certificate of Surrender.

6. Defendant Centene is and at all relevant times was a Delaware corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits. Plaintiff is informed and believes, and based thereon alleges, that Centene is authorized by the California Department of Insurance and/or the California Department of Managed Health Care to transact the business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

7. On or about September 21, 2018, Morningside executed a written Assignment for the Benefit of Creditors (the "Morningside Assignment") pursuant to California Code of Civil Procedure §§ 493.010 through 493.060 and §§ 1800 through 18902. Pursuant to the Morningside Assignment, Morningside conveyed

to ABC all of Morningside's property and every right, claim and interest of Morningside, including the right to prosecute this action for the benefit of Morningside's creditors. ABC brings this action in its capacity as the assignee for the benefit of creditors of Morningside pursuant to the Morningside Assignment and in its capacity as a "creditor" of Morningside as defined in California Civil Code §3439.01(c). A true and correct copy of the Morningside Assignment is attached hereto and incorporated herein by this reference as <u>Exhibit A</u>.

8. The true names and capacities of the Doe Defendants are unknown to Plaintiff at this time, and Plaintiff therefore sues such defendants by such defendants by such fictitious names. Plaintiff is informed and believes, and based thereon alleges, that the Doe Defendants are those individuals, corporations and/or other business entities that are also in some fashion legally responsible for the actions, events and circumstances complained of herein, and may be financially responsible to Plaintiff for the services Plaintiff has provided as alleged in this FAC. This FAC will be amended to allege the Doe Defendants' true names and capacities when they have been ascertained.

9. At all relevant times herein, unless otherwise indicated, Defendants were the agents and/or employees of each of the remaining Defendants and were at all times acting within the purpose and scope of said agency and employment, and each of the Defendants has ratified and approved the acts of the agent. At all relevant times herein, Defendants had actual or ostensible authority to act on each other's behalf in certifying or authorizing the provision of services, processing and administering the claims and appeals, pricing the claims, approving or denying the claims, directing each other as to whether and/or how to pay claims , issuing remittance advices and EOB statements, and making payments to Plaintiff and/or the Patients.

## JURISDICTION AND VENUE

**10.**    Plaintiff brings this action for monetary relief pursuant to Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B). This Court has subject matter jurisdiction over Plaintiff's claims because the action seeks to enforce rights under ERISA pursuant to §§ 502(e) and (f), 29 U.S.C. §§ 1132(e) and (f), and 28 U.S.C. § 1331.

**11.**    This Court is the proper venue for this action pursuant to 8 U.S.C. § 1392(b) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this Judicial District, because one or more of the Defendants conducts a substantial amount of business in this Judicial District, and pursuant to 29 U.S.C. § 1132(e)(2) because it is the Judicial District in which the breach occurred.

## INTRODUCTION

**12.**    In 2014, the 2010 Patient Protection and Affordable Care Act (the "ACA") required health insurance plans, including those sold by Health Net, to provide ten categories of "essential health benefits," including mental health substance abuse treatment.  42 U.S.C. § 18022.  In addition, under the ACA, states such as California established on-line health insurance exchanges (the "Exchanges") where entities such as Health Net marketed new ACA-compliant plans.  Plaintiff is informed and believes, and based thereon alleges, that Health Net marketed new plans that reimbursed out-of-network providers of SUD treatment like Plaintiff as much as 75% of actual billed charges.

**13.**    At all relevant times herein, Plaintiff was a non-contracting (as to Health Net mental and SUD treatment and rehabilitation facility operating in Orange County, California, also referred to as a "non-contracted" or "out-of-network" provider.  At all relevant times herein, Plaintiff offered a therapeutically planned rehabilitation intervention environment for the treatment of individuals with behavioral concerns and SUD.

14.     Plaintiff is informed and believes, and based thereon alleges, that Health Net generally enters into private agreements with health care facilities thereby extending to them "in network" provider status.  Out-of-network claims are distinguished by the fact that when members/patients obtain health care services from an out-of-network provider, like Plaintiff, members/patients are responsible for charges that the plan might not cover, or that exceed Health Net's reimbursement obligation to members/patients under the Plans.

15.     Plaintiff is informed and believes, and based thereon alleges, that this practice is known to Health Net and others in the industry as "steerage", which is a method by which facilities that maintain in-network status may refer patients to each other pursuant to in-network agreements.  Plaintiff is further informed and believes, and based thereon alleges, that Health Net concludes that referrals to and amongst facilities within the in-network community are permitted without fear of reprisal by state regulatory commissions that prohibit patient referrals for a fee, and the in-network status also protects members/patients from incurring excessive facility charges that are often imposed when a patient uses an out-of-network facility.

16.     Plaintiff provided and rendered services, SUD and/or mental health treatment to members, subscribers and insured of Health Net, each of whom was a patient of Plaintiff and hereinafter referred to collectively as the "Patients").  As a result, Plaintiff became entitled to reimbursement, remuneration and/or payment from Health Net for those services and supplies Plaintiff rendered to the Patients.

17.     Plaintiff is informed and believes, and based thereon alleges, that some or all of the Patients had express coverage for mental health and SUD treatment services as a delineated benefit of an ERISA plan, summary plan descriptions, and policies which were underwritten and/or administered by Health Net and/or the Doe Defendants (collectively an "ERISA Plan" or the "ERISA Plans").

**18.** Plaintiff is informed and believes, and based thereon alleges, that all of the Patients were plan participants and/or beneficiaries of an Employee Welfare Plan under ERISA, as those terms are defined by 20 U.S.C. § 1002. Plaintiff is further informed and believes, and based thereon alleges, that some or all of the Patients were entitled to be reimbursed for the cost of mental health and SUD treatment as the benefit of the subject Health Net plans, policies and insurance agreements governing the relationship between each Patient and Health Net (collectively the "Health Net Plans"). Each of the Health Net Plans provided coverage for both in and out-of-network mental health providers, and for admission to treatment centers for SUD treatment by SUD treatment providers and related services received on an outpatient basis, inpatient basis, partial inpatient basis and/or intensive outpatient basis, including but not limited to coverage for facility charges, psychotherapy, psychiatrists, psychologists, charges for supplies and equipment, physician services, blood testing and other incidental services.

**19.** Plaintiff is informed and believes, and based thereon alleges, that the Patients had preferred provider organization ("PPO") plan benefits or point of service ("POS") plan benefits that allowed them to seek medically necessary benefits, whether in-network or not and were entitled to reimbursement for their claims because Plaintiff was an out-of-network provider for Health Net. The Patients' claims should not have been denied or underpaid as Health Net's Plans provide coverage for the very services performed by Morningside, including but not limited to coverage for mental and SUD treatment.

**20.** Plaintiff is informed and believes, and based thereon alleges, that each of the Patients whose claims are at issue in this lawsuit requirement treatment for SUD and/or were suffering from serious medical and mental health concerns, sometimes related to their addictions and sometimes unrelated. Each of the Patients chose PPO insurance rather than health maintenance organization ("HMO") insurance through their employers so that they could receive plan

benefits from the physicians and other medical providers of their choice, regardless of whether the health care practitioners were in-network or out-of-network with Health Net.  Defendants, who administer and/or underwrite the PPO insurance for the Patient's employers, advertise, publicize and represent on their websites, in their literature and in commercials that the benefit of their PPO policies include the freedom to choose any doctor for any and all health care needs.

21.     Plaintiff requested that Health Net authorized the Patients to undergo treatment at Morningside for SUD treatment and for Health Net to authorize Plaintiff to provide the same treatment and care to the Patients.  Plaintiff is informed and believes, and based thereon alleges, that Defendants authorized the Patients to undergo mental health and SUD treatment at Morningside and verified that each of the Patients had coverage which included coverage for the treatment Morningside provided.

22.     Plaintiff is informed and believes, and based thereon alleges, that no provisions in any of the Plans, whether in the Summary Plan Descriptions ("SPDs") and/or Evidence of Coverage ("EOC") documents justified the failure of Health Net to pay the fees for services charged by mental health care provider or by SUD treatment facilities, like Plaintiff, and to pay nothing.  These actions by Defendants were arbitrary, capricious and improper.  Plaintiff is further informed and believes, and based thereon alleges, that during the insurance verification process for the Patients, Health Net represented to Plaintiff that it would pay Plaintiff's fees. Plaintiff sought information during this process about potential limitations on the reimbursement of Plaintiff's fees each time prior to providing services, and specifically inquired as to how Health Net's fee provisions would apply to the Patients.

23.     In the alternative, Plaintiff is informed and believes, and based thereon alleges, that Health Net may have withheld information in response to such

requests, and therefore misled Plaintiff into believing that services rendered by Plaintiff would be paid.

24.     Plaintiff is informed and believes, and based thereon alleges, that no provisions in the Plans justified the failure to issue a final decision or denial on any of the Patient claims, and no provision in the subject Plans justified the failure and refusal of Health Net to issue an Explanation of Benefits ("EOB") statement, delineating and explaining the justification or rationale for refusing to pay, cover and reimburse the Patient claims or to adjust those claims.  These failures and refusals by Health Net were therefore arbitrary, capricious and a breach of Health Net's fiduciary duties to plan participants.  These failures and refusals were also violative of regulations promulgated under ERISA by the Department of Labor, which require that claims be adjudicated by the claims administrator (*e.g.,* Health Net) within 45 days after receipt of the claim and were also violative of the Plans and SPDs issued and adopted by Health Net.

25.     Plaintiff is informed and believes, and based thereon alleges, that for each Plan involved in this lawsuit, the terms of the Plan:  (a) provided coverage for each of the services, supplies and treatments rendered by Plaintiff to each Patient for whom reimbursement, payment and coverage is sought; and (2) dictated that these covered services be paid according to a specific reimbursement rate (such as the reasonable and customary fees for services charged by Plaintiff or according to other formulae or allowable rates expressly and specifically provided in the Plans.

26.     Each of the Patients have assigned all of their legal and equitable rights to payment and to assert ERISA remedies under the Plans to Plaintiff in writing, including but not limited to their rights to recover the benefits owed to them by Health Net to Plaintiff, by and through an irrevocable assignment of all of their rights, title and interest in and to the claims against Health Net.  These assignments conferred upon Plaintiff the right to stand in the shoes of the Patients and to assert all of the rights held by the Patients as to Health Net and/or as to the Plans

administered by Health Net, including but not limited to all rights, powers and equitable remedies of the Patients, the right of Plaintiff to substitute in as a party or plaintiff in any past, present or future litigation regarding the Patient's claims against Health Net, the right to the proceeds of all legal fees and costs, if specifically awarded, and any interest if specifically awarded, and the right to make and effect collections, including the commencement of legal proceedings on behalf of the Patients.  A true and correct copy of a sample assignment signed by the Patients is attached hereto and incorporated herein by this reference as Exhibit B as if set forth in full.

27.     In compliance with the terms of each Plan, Plaintiff and/or the Patients have exhausted any and all claims review, grievance, administrative appeals, and appeals requirements by submitting letters, appeals, grievances, requests for reconsideration and request for payment to Health Net.

28.     Alternatively, all review, appeal, administrative grievances or complaint procedures are excused as a matter of law, are violative of Plaintiff's due process rights, are or would be futile, or are otherwise unlawful, null, void and unenforceable.  Health Net's pattern of behavior and refusal to reimburse Plaintiff rendered all potential administrative remedies futile.  As a result of Health Net's actions and/or omissions, Health Net is estopped from asserting that Plaintiff has failed to exhaust its administrative remedies under ERISA.  Alternatively, by Health Net's failure and refusal to establish, maintain and follow a reasonable claim procedure process, Plaintiff and/or its Patients have exhausted the administrative remedies available under the Plans and are entitled to pursue this action, inasmuch as Defendants have failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim, in violation of 29 C.F.R. § 2560.503-1(l).

## HEALTH NET'S JANUARY 2016 LETTER

**29.**     Prior to 2016, Health Net processed many, if not all, of Plaintiff's claims, albeit at an amount less than required or at no reimbursement whatsoever. Plaintiff is informed and believes, and based thereon alleges, that prior to 2016, Health Net identified what it believed to be exceedingly large-dollar amounts to an out-of-network provider and directed all future incoming claims to its special investigations unit ("SIU") for investigation.

**30.**     In or about January 2016, Health Net's Director of SIU, Matthew Ciganek, sent generic letters to multiple treatment centers in California, including Plaintiff, imposing unlawful and onerous burdens on how claims had to be submitted, including a request for extensive and unusual amounts of documentation in a short time frame.  Attached hereto and incorporated herein by this reference as Exhibit C is a true and correct copy of the letter from Matthew Ciganek to Plaintiff.

**31.**     The letter also stated that Health Net was suspending payment on claims previously submitted and that Health Net was investigating alleged fraudulent practices. However, the suspension of benefits was a sham schedule to be used by Health Net to avoid payment of valid claims, including those claims of Plaintiff.

**32.**     Concurrently, Health Net alleged that claim payment to Plaintiff may not be appropriate if improper payments (such as payment of premiums) or other consideration has been made to patients "to induce procurement of services from your facility."  However, at all relevant times herein neither federal nor California state law prohibited third-party payment or cost sharing assistance to prospective payments.

## PLAINTIFF'S CLAIMS AGAINST HEALTH NET

**33.**     The Patients 15 individual patients who have not been identified by name in this FAC to protect their right of privacy, and instead each has a unique but random two-letter code for purposes of identification.  As set forth below, Plaintiff

is informed and believes, and based thereon alleges, that the amount due and owing from Health Net to Plaintiff resulting from the services Plaintiff provided to the Patients is $743,116.38.

34.     Each of the Patients received mental health and/or SUD treatment at Plaintiff's facility.  Payments are due and owing by Defendants to Plaintiff for the care, treatment and procedures provided to the Patients, all of whom were insured, members, policy holders, certificate holders or otherwise covered for charges by Plaintiff through policies or certificates of insurance issued, underwritten and/or administered by Defendants.

35.     Plaintiff is informed and believes, and based thereon alleges, that each of the Patients for whom claims are at issue was an insured of Health Net either as a subscriber to coverage or a dependent of a subscriber to coverage under a policy or certificate of insurance issued, administered and/or underwritten by Defendants. Plaintiff is further informed and believes, and based therein alleges, that each of the Patients for whom claims are at issue was covered by a valid insurance agreement with Health Net for the specific purpose of ensuring that the Patients would have access to medically necessary treatments, care, procedures and related care by out-of-network providers such as Plaintiff.

36.     In the alternative, Plaintiff is informed and believes, and based thereon alleges, that some of the Patients for whom claims are at issue were covered by self-funded plans which were administered by Health Net.  The identify of those Plans which are self-funded is known to Health Net, but is presently unknown to Plaintiff.  Those self-funded Plans provided coverage to the Patients either as a subscriber to coverage or as a dependent of a subscriber to coverage under the certificate of coverage administered by Defendants.  For these self-funded plans, Plaintiff is informed and believes, and based thereon alleges, that Health Net was a claim fiduciary, plan fiduciary and administrator charged with making claim determinations on behalf of the Plans.

**37.**     Plaintiff is informed and believes, and based thereon alleges, that each of the Patients for whom claims are at issue was covered by a valid benefit plan, providing coverage for medical and mental health expenses, for the specific purpose of ensuring that the Patients would have access to medically necessary treatments, care and procedures by out-of-network providers like Plaintiff and ensuring Health Net would pay for the health care expenses incurred by the Patients for the services rendered by Health Net.

**38.**     At all relevant times, each of the Patients received medical and/or paramedical services, procedures, mental health care, SUD treatment or other health care services from Plaintiff.  Upon rendition of services to each of the Patients, each of the Patients became legally indebted, responsible and liable to Plaintiff for the full cost of and for payment of those services.  Prior to the rendition of care by Plaintiff, Plaintiff sought and obtained a guarantee from the Patients that they would be legally responsible, liable and indebted for the full cost of and for payment of those services to be rendered by Plaintiff.

**39.**     Each of the Patients requested Plaintiff to render and provide medical treatment and professional services, knowing that Plaintiff was an out-of-network provider.  Each of the Patients sought out, requested and requisitioned treatment and professional services from Plaintiff and selected and chose Plaintiff to provide him or her with said services based upon Plaintiff's reputation in the community, experience and availability to render immediate care. Each of the Patients signed written admission agreements in which the Patients agreed to be obligated, legally responsible and liable for the full amount of the charges incurred for services rendered at Plaintiff.

**40.**     Each of the Patients presented his or her insurance card to Plaintiff, which card identified the Patient as an insured, subscriber and/or member of Health Net.  These identification cards, which were issued by Health Net, did not identify whether the coverage was underwritten by Health Net as an insurer or whether

Health Net was acting as a third-party administrator of a self-funded plan.  Prior to the rendition of professional services, treatments and the provision of care, and at such times as required by law, Plaintiff contacted Health Net with regard to certain Patients at the telephone number(s) identified on each card.  During each one of those phone conversations, Plaintiff identified the type of treatment that would be provided to the Patient to Health Net and verified that each of the Patients had coverage for such professional services and treatment, using the names and identification numbers listed on the insurance cards of the Patients.  During each one of those phone conversations, Health Net affirmatively confirmed, represented and verified that each of the Patients whose claims are involved in this action was an insured of or member of Health Net, that each of the Patients whose claims are involved in this action had coverage for mental health and SUD treatment benefits through their policies or plans, that each of the policies, plans and insurance contracts covering each of the Patients provided coverage for mental health and SUD treatment benefits and would pay for the services sought to be rendered by Plaintiff, and that there were no exclusions, conditions or limitations which would result in claims submitted on behalf of each Patient being denied, rejected, refused or unpaid.

**41.**     As a result of Health Net's offer to pay for the services rendered by Plaintiff to each of the Patients, Plaintiff was induced to and did provide and render professional services and treatment to the Patients at great cost to itself, fully expecting that it would be paid for its service after submission of claims to Health Net.  This expectation was further buttressed by the longstanding interactions, and business practices and customs that had been established between Plaintiff and Health Net over several years, which had resulted in Health Net's processing and payments of hundreds of prior claims on behalf of patients who had received care and treatment at Plaintiff.

**42.**     During each of these phone conversations, Health Net advised and represented that it would adjust all claims submitted by Plaintiff and would pay those claims according to its usual and customary fees or as specified in a subject Plan for a Patient.  Health Net never advised Plaintiff, however, whether a Patient's claim was insured or underwritten by Health Net, or whether Health Net was acting in the capacity of an administrator only in adjusting that claim on behalf of a self-funded plan.  To date, Health Net has not identified whether or which of the subject claims are insured, underwritten or only administered by Health Net.  Health Net has never indicated the name of any self-funded Plans or identified those Plans as responsible for payment of the claims for any Patient.  Plaintiff will seek leave to identify any and all self-funded Plans as self-funded and identify the proper name of that entity.

**43.**     At all relevant times herein, representatives and agents of Defendants advised Plaintiff that each of the Patients was insured and covered for and was an eligible member or subscriber entitled to coverage under respective Plans for the services Plaintiff rendered, including mental health and SUD treatment benefits, that Plaintiff was authorized to render services, treatment and care, and that Health Net would pay Plaintiff for performance of the services, care and/or treatment rendered by Plaintiff upon Plaintiff's submission of claim forms and invoices to Health Net.

**44.**     At all relevant times herein, Health Net led Plaintiff to believe that Plaintiff would be paid a portion or percentage of its total billed charges, equivalent to the usual customary and reasonable amount charged by other similar SUD treatment facilities and specialists in the same geographical area or that other methodologies would be used to determine the amount that Health Net would pay Plaintiff.  In reliance upon the representations of Health Net that Health Net would pay for the services to be rendered to each Patient, Plaintiff was induced to, and did provide and render medical treatments and professional services to each of the

Patients.  Had Health Net advised Plaintiff that there was no coverage for the treatments and services to be rendered by Plaintiff under the Patients' Plans or had Health Net not authorized treatment and verified coverage, Plaintiff would never have rendered services to the Plaintiffs or would have required each patient to self-pay for his or her treatments.

45.     Plaintiff is informed and believes, and based thereon alleges, that each and every one of the Patients had express coverage for mental health and SUD treatment benefits under the applicable Plan or policy covering that Patient which was issued or administered by Health Net.  As such, each Plan was required to offer coverage for mental health and SUD treatment in parity with the medical and surgical benefits afforded by the same plan, as required by 26 U.S.C. § 9812(3)(A), which mandates that:

46.     In the case of a group health plan that provides both medical and surgical benefits and mental health or substance use disorder benefits, such plan shall ensure that –

> **a.** the financial requirements applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant financial requirements applied to substantially all medical and surgical benefits covered by the plan, and there are no separate cost sharing requirements that are applicable only with respect to mental health or substance use disorder benefits; and
>
> **b.** the treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan and there are no separate treatment limitations that are applicable

only with respect to mental health or substance use disorder benefits.

**47.** Additionally, 26 U.S.C. § 9812(5) mandates that out-of-network providers such as Plaintiff be treated in parity with medical providers and with in-network providers of mental health and SUD treatment, stating:

> In the case of a plan that provides both medical and surgical benefits and mental health or substance use disorder benefits, if the plan provides coverage for medical or surgical benefits provided by out-of-network providers, the plan shall provide coverage for mental health or substance use disorder benefits provided by out-of-network providers in a manner that is consistent with the requirements of this section

**48.** Federal law also requires that insurers and Plans articulate the reason and rationale for any denial of benefits, stating:

> The criteria for medical necessity determinations made under the plan with respect to mental health or substance use disorder benefits shall be made available by the plan administrator in accordance with regulations to any current or potential participant, beneficiary, or contracting provider upon request. The reason for any denial under the plan of reimbursement or payment for services with respect to mental health or substance use disorder benefits in the case of any participant or beneficiary shall, on request or as otherwise required, be made available by the plan administrator to the participant or beneficiary in accordance with regulations

**49.** The failure and refusal of Health Net to articulate the reasons, rationales and/or criteria it used in denying benefits for coverage for the Patients'

claims constitutes a breach of 26 U.S.C. § 9812(4) and the applicable regulations promulgated thereunder.

**50.**      The failure and refusal of Health Net to pay Plaintiff for the SUD treatments rendered by Plaintiff to the Patients violated 26 U.S.C. § 9812(3) *per se*.  Plaintiff is informed and believes, and based thereon alleges, that Health Net has discriminated against it and other mental health and SUD treatment providers by applying financial requirements and treatment limitations different than those applied to medical health providers.

**51.**      Plaintiff is informed and believes, and based thereon alleges, that Health Net has investigated, adjusted, processed and examined Plaintiff's claims, in a manner different than the manner in which it investigates, adjusts, processes and examines the claims of medical providers, by subjecting Plaintiff's claims to delays, by requesting additional information which is irrelevant to the claim process, by offsetting payments it acknowledged were owed on claims for the Patients by amounts owed on account of other patients who were not related to the Patients but who were insured by Health Net and who had received SUD treatments at Plaintiff at different times when treatment had been rendered to the Patients.  As a result, Health Net has breached the statutory mandates of 26 U.S.C. § 9812, *et. seq.* and owes payment benefits to Plaintiff in an amount no less than $743,116.38.

**52.**      Plaintiff is a beneficiary (as that term is defined by 29 U.S.C. § 1002(8)) of the benefits payable under the subject Plans and insurance policies issued to and covering the Patients and by virtue of the assignment of rights given by each of the Patients to Plaintiff.

**53.**      At all relevant times herein, Plaintiff was authorized by law to act on behalf of the Patient with respect to the filing of claims with Health Net, demanding production of documents from Health Net, filing appeals on behalf of the Patients with Health Net, and otherwise pursuing actions on behalf of the

Patients with respect to the Patients' Plans in accordance with 29 C.F.R. § 2560.503.1(b)(4).

**54.**      Plaintiff is informed and believes, and based thereon alleges, that the plan documents or policies of insurance for the Patients in this lawsuit ("Plan Documents" or "ERISA Plans")  include the following:

**a.**      Health and Welfare Group 2702 (the "Group 2702 Plan"), a true and correct copy of which is attached hereto as <u>Exhibit D</u> and incorporated herein by this reference;

**b.**      Health Net Group 1027 (the "Group 1027 Plan"), a true and correct copy of which is attached hereto as <u>Exhibit E</u> and incorporated herein by this reference;

**c.**      Health Net Group 1898 (the "Group 1898 Plan"), a true and correct copy of which is attached hereto as <u>Exhibit F</u> and incorporated herein by this reference;

**d.**      Gold PPO Plan D5Z (the "Gold D5Z Plan"), a true and correct copy of which is attached hereto as <u>Exhibit G</u> and incorporated herein by this reference;;

**e.**      PPO Plan D40 (the "PPO D40 Plan"), a true and correct copy of which is attached hereto as <u>Exhibit H</u> and incorporated herein by this reference;

**f.**      PPO Platinum Plan 9LY (the "Platinum 9LY Plan"), a true and correct copy of which is attached hereto as <u>Exhibit I</u> and incorporated herein by this reference;

**g.**      Gold PPO Plan D5W (the "Gold D5W Plan"), a true and correct copy of which is attached hereto as <u>Exhibit J</u> and incorporated herein by this reference;

**h.**      Silver PPO Plan BGF (the "Silver BGF Plan"), a true and correct copy of which is attached hereto as <u>Exhibit K</u> and incorporated herein by this reference;

**i.**      Select Plan AB0 455183 (the "Select AB0 Plan"), a true and correct copy of which is attached hereto as <u>Exhibit L</u> and incorporated herein by this reference;

**j.**     Health Net PPO Platinum DED88A (the "Platinum DED88A Plan"), a true and correct copy of which is attached hereto as <u>Exhibit M</u> and incorporated herein by this reference;

**k.**     PPO Group Policy N7014A-D (the "PPO N7014 Plan"), a true and correct copy of which is attached hereto as <u>Exhibit N</u> and incorporated herein by this reference;

**l.**     Health Net Group 2292 (the "Group 2292 Plan"), a true and correct copy of which is attached hereto as <u>Exhibit O</u> and incorporated herein by this reference; and

**m.**     Health Net PPO Plan BDL (the "PPO BDL Plan"), a true and correct copy of which is attached hereto as <u>Exhibit P</u> and incorporated herein by this reference.

**55.**     Plaintiff is informed and believes, and based thereon alleges, that a no time were the definitions set forth in the Plan Documents imparted by Health Net to Plaintiff during the insurance verification or authorization process.

## <u>REPRESENTATIVE LIST OF TREATMENT AND SERVICES</u>

**56.**     As set forth above, Morningside was at all relevant times a non-contracting, mental and SUD treatment and rehabilitation facility, offering a therapeutically planned rehabilitation intervention environment for the treatment of individuals with behavioral concerns and SUDs.

**57.**     A representative list of treatment and services Morningside provided to the Patients includes the following:

> **a.**  Behavioral health, alcohol and/or drug services:  Healthcare Common Procedure Coding System ("HCPCS") Codes H0014, H0018, H0015 and H0010.
>
> **b.**  Drug testing procedures: Current Procedural Terminology ("CPT") Codes 80320, 80305, G0434 and G0477

      **c.** Therapy sessions:  CPT Codes 90876, 90837 (individual) and 90853 (group therapy).

**58.** Plaintiff is informed and believes, and based thereon alleges, that Health Net is aware of the list of treatment and services Morningside provided.

### SUMMARY OF ERISA PLANS AND CLAIMS

**59.** Plaintiff provided treatment and services for 15 patients under the 13 ERISA Plans set forth above, for which there is an amount due and owing from Health Net to Plaintiff in the amount of no less than $743,116.38.

**60.** To date, there is an amount due and owing from Health Net to Plaintiff for the benefit of TD in the amount of $63,023.

**61.** To date, there is an amount due and owing from Health Net to Plaintiff for the benefit of GJ in the amount of $97,869.12.

**62.** To date, there is an amount due and owing from Health Net to Plaintiff for the benefit of RK in the amount of $37,883.00.

**63.** To date, there is an amount due and owing from Health Net to Plaintiff for the benefit of ZT in the amount of $7,465.35.

**64.** To date, there is an amount due and owing from Health Net to Plaintiff for the benefit of EJ in the amount of $56,585.40.

**65.** To date, there is an amount due and owing from Health Net to Plaintiff for the benefit of HC in the amount of $8,810.00.

**66.** To date, there is an amount due and owing from Health Net to Plaintiff for the benefit of WS in the amount of $35,734.00.

**67.** To date, there is an amount due and owing from Health Net to Plaintiff for the benefit of FB in the amount of $15,935.40.

**68.** To date, there is an amount due and owing from Health Net to Plaintiff for the benefit of SA in the amount of $164,632.00.

**69.** To date, there is an amount due and owing from Health Net to Plaintiff for the benefit of FM in the amount of $96,838.16.

**70.**     To date, there is an amount due and owing from Health Net to Plaintiff for the benefit of DA in the amount of $21,192.50.

**71.**     To date, there is an amount due and owing from Health Net to Plaintiff for the benefit of EF in the amount of $27,050.00.

**72.**     To date, there is an amount due and owing from Health Net to Plaintiff for the benefit of HH in the amount of $74,108.75.

**73.**     To date, there is an amount due and owing from Health Net to Plaintiff for the benefit of PS in the amount of $2,868.50.

**74.**     To date, there is an amount due and owing from Health Net to Plaintiff for the benefit of DM in the amount of $33,171.20.

**75.**     Plaintiff is informed and believes, and based thereon alleges, that Health Net has the information for each of the Patients as well as the ERISA Plans relating to each of the Patients.

**76.**     At all relevant times herein, Health Net has improperly or failed to pay and refused to pay Plaintiff for the medically necessary and appropriate services rendered to Health Net's insureds, subscribers and members for those treatments, services and/or supplies rendered by Plaintiff.  For each of the Patient claims at issue in this action, Plaintiff provided medical services to members and insureds of Health Net.

**77.**     Following the rendition of treatment by Plaintiff to the Patients, invoices, bill and claims were submitted to Defendants for adjustment and payment.  Plaintiff also provided medical records to Health Net for the treatment Plaintiff provided to the Patients.

**78.**     For each of the claims at issue, Health Net failed and refused to adjust the claims and to issue EOB statements to Plaintiff in a timely manner as required by federal law.  These failures constituted an effective denial of benefits, although an actual denial of benefits was not communicated by Health Net.  By virtue of its failure and refusal to issue EOB statements and to adjust the claims, Plaintiff was

at times precluded and/or inhibited from appealing the effective denial of payment on the subject claims.

79.    For each of the claims at issue in this case, Health Net failed and refused to complete the claim examination process, delayed issuing EOB and EOP statements to Plaintiff, has requested unnecessary and irrelevant information and documentation from Plaintiff which has no bearing on or relevant to the claim examination process, has failed and refused to provide notification of the reasons for its failure and refusal to pay benefits and has failed to engage in a meaningful appeal process with Plaintiff.  For each of the claims at issue in this case, Health Net has failed and refused to pay the benefits to which Plaintiff is entitled, and the amounts which remain due, owing and unpaid.

80.    To the extent Health Net issued any EOB statements, Health Net did not explain how the claims were adjusted, disallowed or denied, and Health Net provided vague, ambiguous and uncertain explanations for the manner by which Health Net based its claim determination.  To the extent Health Net issued any EOB statements, each was uninformative, false and misleading, thereby depriving Plaintiff and the Patients from an ability to intelligently engage in the appeal process or understand the basis and rationale for Health Net's denial of benefits.

81.    Plaintiff is informed and believes, and based thereon alleges, that Health Net's actions violated 29 U.S.C. § 1133, 29 C.F.R. § 2560.503-1(g) and 26 U.S.C. § 9812(4), all due to Health Net's failure to provide a description of the Plain's review procedures and the time limits or deadlines applicable to such procedures.

82.    In each of the EOB statements issued by Health Net, if any, Health Net failed to advise Plaintiff and/or the Patients of the right of the Patients and/or Plaintiff to appeal the adverse claim determination made by Health Net in any of the EOB statements concerning the right to appeal, file a grievance, seek reconsideration or otherwise engage in an administrative review process, as

required by 29 U.S.C. § 1133, 29 C.F.R. § 2560.503-1(g) and 26 U.S.C. § 9812(4).

## FIRST CLAIM FOR RELIEF

### (Claims for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B) Against All Defendants)

83.     Plaintiff realleges and incorporates by reference each and every paragraph of this FAC as though set forth herein.

84.     Plaintiff is informed and believes, and based thereon alleges, that Defendants are discriminating against the Patients of Plaintiff who are suffering from a severe mental illness or SUDs by restricting benefits that are not imposed on other patients.

85.     This claim is alleged by Plaintiff for relief in connection with claims for treatment rendered to members of an ERISA Plan. This claim seeks to recover benefits, enforce rights and clarify rights to benefits under 29 U.S.C. § 1132(a)(1)(B). Plaintiff has standing to pursue these claims as assignee of the Patients' benefits under the ERISA Plans. As the assignee of benefits under the ERISA Plans, Plaintiff is a "beneficiary" entitled to collect benefits under the terms of the ERISA Plans, and is the "claimant" for purposes of ERISA.

86.     Plaintiff is informed and believes, and based thereon alleges, that Defendants are the insurer, sponsor, and/or financially responsible payer, serves as its designated plan administrator, and/or services as the named plan administrator's designee.  Plaintiff is further informed and believes, and based thereon alleges, that with respect to each of the ERISA Plans at issue in this case that are self-insured plans, but which do not specifically designate a plan administrator, Health Net effectively controls the decision whether to honor or deny the a claim under the Plan, exercises authority over the resolution of benefits claims, and/or has responsibility to pay the claims.  Health Net also plays the role as the *de facto* plan administrator for such Plans.

**87.**      Plaintiff is informed and believes, and based thereon alleges, that for each of these claims and for each of the involved Patients, Defendants have failed and refused to pay, process or adjust these claims in an appropriate fashion by, among other acts and omissions:

    **a.** Delaying the processing, adjustment and/or payment of claims for periods of time greater than 45 days after submission of the claims in violation of 29 C.F.R. § 2560.503-1(f)(2)(iii)(B);

    **b.** Failing and refusing to provide any notice and/or explanation for the denial of benefits, payments or reimbursement of the claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

    **c.** Failing and refusing to provide an adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

    **d.** Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, and by failing and refusing to set forth the specific reasons for such denials, all in violation of 29 U.S.C. § 1133(1);

    **e.** Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, written in a manner calculated to be understood by the participant, in violation of 29 U.S.C. § 1133(1);

    **f.** Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in an appeals process, in violation of 29 U.S.C. § 1133(2);

**g.** Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in meaningful appeal process which was full and fair, in violation of 29 U.S.C. § 1133(2);

**h.** Failing and refusing to provide Plaintiff and/or its Patients with information pertaining to their rights to appeal, including not limited to those deadlines for filing appeals and/or the requirements that an appeal be filed, in violation of 29 U.S.C. § 1133(1);

**i.** Violating the minimum requirements for employee benefit plans pertaining to claims and benefits by participants and beneficiaries, in violation of 29 C.F.R. § 2560.503-1(a), *et seq.*;

**j.** Failing and refusing to establish and maintain reasonable claims procedures in violation of 29 C.F.R. § 2560.503-1(b);

**k.** Establishing, maintaining and enforcing claims procedures which unduly inhibit the initiation and processing of claims for benefits, in violation of 29 C.F.R. § 2560.503.1(b)(3);

**l.** Precluding and prohibiting Plaintiff from acting as an authorized representative of the Patients in pursuing a benefit claim or appeal of an adverse benefit determination, in violation of 29 C.F.R. § 2560.503-1(b)(4);

**m.** Failing and refusing to design, administer and enforce their processes, procedures and claims administration to ensure that their governing plan documents and provisions have been applied consistently with respect to similarly situated participants, beneficiaries and claimants, in violation of 29 C.F.R. § 2560.503-1(b)(5);

**n.** Failing and refusing to pay benefits for services rendered by Plaintiff which Health Net authorized, as well as rescinding the same, in violation of California Health & Safety Code § 1371.8 and California Insurance Code § 796.04;

**o.** Failing to offer coverage for mental health and SUD treatment in parity with the medical and surgical benefits afforded by the same Plan, as required by 26 U.S.C. § 9812(3), as well as other mandates set forth at 26 U.S.C. § 9812, *et seq*.; and

**p.** Failing and refusing to pay Plaintiff for the SUD treatments provided to the Patients in violation of 26 U.S.C. § 9812(3).

88.   The failure and refusal of Defendants to provide coverage, reimbursement, payment and/or benefits for the SUD and/or mental health treatment benefits rendered by Plaintiff to Plaintiff's patients who were covered by Defendants and Defendants' denial of health insurance benefits coverage constitutes a breach of the insurance plans and/or employee benefit Plans between Defendants and Plaintiff's Patients.  Plaintiff seeks reimbursement and compensation for any and all payments which it would have received and to which it will be entitled as a result of Defendants' failure to pay benefits and cover those services rendered by Plaintiff to the Patients, in an amount not less than $743,116.38, according to proof at trial.

89.   Defendants have arbitrarily and capriciously breached the obligations set forth in the Plans issued by Defendants, and Defendants have arbitrarily and capriciously breached their obligations under the ERISA Plans to provide Plaintiff and the Patients with health benefits.

90.   As a direct and proximate result of the actions by Defendants, Plaintiff has been damaged in an amount equal to the amount of benefits Plaintiff should have received and to which the Patients would have been

entitled had Defendants paid the proper amounts, which Plaintiff estimates to be $743,116.38.

**91.**    As a direct and proximate result of the aforesaid conduct of Defendants in failing to provide coverage as required, Plaintiff has suffered, and will continue to suffer in the future, damages, plus interest and other economic and consequential damages, for a total amount Plaintiff estimates to be $743,116.38 or as otherwise determined at the time of trial.

**92.**    Plaintiff is entitled to an award of reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1).  As a result of the actions and failings of the Defendants, Plaintiff has retained the services of legal counsel and has necessarily incurred attorneys' fees and costs in prosecuting this action. Furthermore, Plaintiff anticipates incurring additional attorneys' fees and costs hereafter pursing this action.

//
//
//
//
//

# PRAYER FOR RELIEF

**AS TO THE FIRST CLAIM FOR RELIEF**:

WHEREFORE, Plaintiff prays as follows:

**1.** For an order that Defendant pay to Plaintiff an amount to be determined at trial but no less than $743,116.38 for the Claims under the Plan Documents;

**2.** For economic damages according to proof;

**3.** For attorney's fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g);

**4.** For pre- and post-judgment interest as allowed by law;

**5.** For such other and further relief as the Court deems appropriate.

Respectfully Submitted,

Dated: May 23, 2019                GARNER HEALTH LAW CORPORATION

By: /s/ Craig B. Garner
CRAIG B. GARNER
Attorneys for PLAINTIFF ABC SERVICES GROUP, INC., in its capacity as assignee for the benefit of creditors of MORNINGSIDE RECOVERY, LLC MORNINGSIDE RECOVERY, LLC

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 23, 2019, I caused the

**FIRST AMENDED COMPLAINT FOR BREACH OF EMPLOYEE WELFARE BENEFIT PLAN (RECOVERY OF PLAN BENEFITS UNDER E.R.I.S.A.) [29 U.S.C. § 1132(a)(1)(b)]**

to be served upon counsel in the manner described below:

Participants in the case who are registered CM/ECF users will be served by the Central District CM/ECF system.

<u>**VIA THE CENTRAL DISTRICT CM/ECF SYSTEM**</u>

Gregory N. Pimstone, Esq.
Manatt Phelps and Phillips, LLP
11355 West Olympic Blvd.
Los Angeles, CA 90064-1614
gpimstone@manatt.com

Craig S. Bloomgarden, Esq.
Manatt Phelps and Phillips, LLP
11355 West Olympic Blvd.
Los Angeles, CA 90064-1614
cbloomgarden@manatt.com

Ileana M. Hernandez, Esq.
Manatt Phelps and Phillips, LLP
11355 West Olympic Blvd.
Los Angeles, CA 90064-1614
ihernandez@manatt.com

John M. LeBlanc, Esq.
Manatt Phelps and Phillips, LLP
11355 West Olympic Blvd.
Los Angeles, CA 90064-1614
jleblanc@manatt.com

*Counsel for Defendants*

*/s/ Craig B. Garner*
Craig B. Garner
*Counsel for Plaintiff*