GARNER HEALTH LAW CORPORATION
CRAIG B. GARNER (CA SBN 177971)
craig@garnerhealth.com
13274 Fiji Way, Suite 250
Marina Del Rey, CA 90292
Telephone: (310) 458-1560
Facsimile: (310) 694-9025

SQUIRES, SHERMAN & BIOTEAU, LLP
ROCHELLE J. BIOTEAU (CA SBN 228348)
Rochelle@ssbllp.com
1901 1st Avenue, Suite 415
San Diego, CA 92101
Telephone: (619) 696-8854

Attorneys for PLAINTIFF ABC SERVICES GROUP, INC., in its capacity as assignee for the benefit of creditors of MORNINGSIDE RECOVERY, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA SOUTHERN DIVISION

| | |
|---|---|
| ABC SERVICES GROUP, INC., *et al.*,<br><br>Plaintiff,<br><br>v.<br><br>HEALTH NET OF CALIFORNIA, INC., *et al.*,<br><br>Defendants. | **Case No. 8:19-cv-00243-DOC-DFM (Lead Case)**<br><br>Hon. David O. Carter<br><br>[Previous Case Consolidated With Lead Case:  8:19-cv-02136-DOC]<br><br>FIRST AMENDED COMPLAINT FOR: |
| *Consolidated With*:<br><br>ABC SERVICES GROUP, INC., *et al.*,<br><br>Plaintiff,<br><br>v.<br><br>HMC HEALTHWORKS, INC., a Florida corporation; and DOES 1 through 20, inclusive,<br><br>Defendants. | 1.  BREACH OF EMPLOYEE WELFARE BENEFIT PLAN (RECOVERY OF PLAN BENEFITS UNDER E.R.I.S.A.) 29 U.S.C. § 1132(a)(1)(b)<br>2.  BREACH OF CONTRACT (THIRD PARTY BENEFICIARY)<br>3.  BREACH OF CONTRACT (ASSIGNMENT)<br>4.  OPEN BOOK ACCOUNT<br>5.  PROMISSORY ESTOPPEL<br>6.  QUANTUM MERUIT<br><br>DEMAND FOR JURY TRIAL |
| AND CONSOLIDATED ACTIONS | |

**CONSOLIDATED WITH:**

8:19-cv-01011-DOC-DFM
8:19-cv-00531-DOC-DFM
8:19-cv-00803-DOC-DFM
8:19-cv-00776-DOC-DFM
8:19-cv-00789-DOC-DFM
8:19-cv-00677-DOC-DFM
8:19-cv-00530-DOC-DFM
8:19-cv-00317-DOC-DFM
8:19-cv-00777-DOC-DFM
8:19-cv-00804-DOC-DFM
8:19-cv-01342-DOC-DFM
8:19-cv-02070-DOC-DFM
8:19-cv-02123-DOC-DFM
8:19-cv-02125-DOC-DFM
8:19-cv-02126-DOC-DFM
8:19-cv-01000-DOC-DFM
8:19-cv-02137-DOC-DFM
8:19-cv-02133-DOC-DFM
8:19-cv-02136-DOC-DFM
8:19-cv-02138-DOC-DFM
8:19-cv-02155-DOC-DFM
8:19-cv-02163-DOC-DFM
8:19-cv-02164-DOC-DFM
8:19-cv-02165-DOC-DFM
8:19-cv-02166-DOC-DFM
8:19-cv-02167-DOC-DFM
8:19-cv-02168-DOC-DFM
8:19-cv-02178-DOC-DFM
8:19-cv-02185-DOC-DFM
8:19-cv-02122-DOC-DFM
8:19-cv-02138-DOC-DFM
8:19-cv-02156-DOC-DFM
8:19-cv-02158-DOC-DFM
8:19-cv-02173-DOC-DFM
8:19-cv-02133-DOC-DFM
8:19-cv-02184-DOC-DFM
8:19-cv-02183-DOC-DFM
8:19-cv-02180-DOC-DFM
8:19-cv-02179-DOC-DFM
8:19-cv-02169-DOC-DFM

8:19-cv-02182-DOC-DFM
8:19-cv-02203-DOC-DFM
8:19-cv-02204-DOC-DFM
8:19-cv-02131-DOC-DFM
8:19-cv-02214-DOC-DFM
8:19-cv-02219-DOC-DFM
8:19-cv-02220-DOC-DFM
8:19-cv-02237-DOC-DFM
8:19-cv-02238-DOC-DFM
8:19-cv-02210-DOC-DFM
8:19-cv-02172-DOC-DFM
8:19-cv-02171-DOC-DFM
8:19-cv-02188-DOC-DFM
8:19-cv-02170-DOC-DFM
8:19-cv-02240-DOC-DFM
8:19-cv-02221-DOC-DFM
8:19-cv-02239-DOC-DFM
8:19-cv-02241-DOC-DFM

ABC SERVICES GROUP, INC., a Delaware corporation ("ABC"), in its capacity as assignee for the benefit of creditors of MORNINGSIDE RECOVERY, LLC, a California limited liability company ("Morningside" and ABC collectively "Plaintiff") complains and alleges in this First Amended Complaint (the "FAC") against HMC HEALTHWORKS, INC. ("HMC") and Does 1 through 20 (the "Doe Defendants", collectively with HMC referred to hereinafter as "Defendants") as follows:

<u>**THE PARTIES**</u>

1.      ABC is a corporation organized and existing under the laws of the State of Delaware, with its primary place of business located in Tustin, California.

2.      Morningside, at all relevant times, provided professional medical and mental health services and rehabilitation care for patients suffering from mental health and substance use disorders ("SUDs") from its location in Irvine, California.

3.      Defendant HMC is and at all relevant times was a Florida corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits. Plaintiff is informed and believes, and based thereon alleges, that HMC is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact the business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

4.      On or about September 21, 2018, Morningside executed a written Assignment (the "Morningside Assignment") pursuant to California Code of Civil Procedure §§ 493.010 through 493.060 and §§ 1800 through 18902. Pursuant to the Morningside Assignment, Morningside conveyed to ABC all of Morningside's property and every right, claim and interest of Morningside, including the right to prosecute this action for the benefit of Morningside's creditors. ABC brings this action in its capacity as the assignee for the benefit of creditors of Morningside

pursuant to the Morningside Assignment and in its capacity as a "creditor" of Morningside as defined in California Civil Code § 3439.01(c).  A true and correct copy of the Morningside Assignment is attached hereto and incorporated herein by this reference as Exhibit A.

**5.** The true names and capacities of the Doe Defendants are unknown to Plaintiff at this time, and Plaintiff therefore sues such defendants by such defendants by such fictitious names.  Plaintiff is informed and believes, and based thereon alleges, that the Doe Defendants are those individuals, corporations and/or other business entities that are also in some fashion legally responsible for the actions, events and circumstances complained of herein, and may be financially responsible to Plaintiff for the services Plaintiff has provided as alleged in this FAC.  This FAC will be amended to allege the Doe Defendants' true names and capacities when they have been ascertained.

**6.** At all relevant times herein, unless otherwise indicated, Defendants were the agents and/or employees of each of the remaining Defendants and were at all times acting within the purpose and scope of said agency and employment, and each of the Defendants has ratified and approved the acts of the agent.  At all relevant times herein, Defendants had actual or ostensible authority to act on each other's behalf in certifying or authorizing the provision of services, processing and administering the claims and appeals, pricing the claims, approving or denying the claims, directing each other as to whether and/or how to pay claims , issuing remittance advices and explanation of benefits ("EOB") statements, and making payments to Plaintiff and/or the Patients.

## JURISDICTION AND VENUE

**7.** Plaintiff brings this action for monetary relief pursuant to Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B). This Court has subject matter jurisdiction over

Plaintiff's claims because the action seeks to enforce rights under ERISA pursuant to §§ 502(e) and (f), 29 U.S.C. §§ 1132(e) and (f), and 28 U.S.C. § 1331.

**8.** Plaintiff also asserts state law claims for relief in this FAC over which this Court can assert pendant jurisdiction as such claims arise from a nucleus of facts common to both the state law and ERISA claims. *Nishimoto v. Federman Bachrach & Assoc.*, 903 F.2d 709 (9th Cir. 1990).

**9.** In the alternative, this Court has original jurisdiction for Plaintiff's claims for monetary relief pursuant to 28 U.S.C. § 1332 insofar as this action involves parties of different states, with HMC at all relevant times hereto a Florida corporation, and having its principal place of business located in Jupiter, Florida, and Plaintiff is and at all relevant times hereto a Delaware corporation with its principal place of Business Tustin, California.

**10.** This Court has original jurisdiction because the amount in controversy, $406,572.11, exceeds the jurisdictional minimum.

**11.** This Court is the proper venue for this action pursuant to 8 U.S.C. § 1392(b) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this Judicial District, because one or more of the Defendants conducts a substantial amount of business in this Judicial District, and pursuant to 29 U.S.C. § 1132(e)(2) because it is the Judicial District in which the break occurred.

## **INTRODUCTION**

**12.** In 2014, the 2010 Patient Protection and Affordable Care Act (the "ACA") required health insurance plans, including those sold by HMC, to provide ten categories of "essential health benefits," including mental health substance abuse treatment. 42 U.S.C. § 18022. In addition, under the ACA, states such as California established on-line health insurance exchanges (the "Exchanges") where entities such as HMC had the ability to market new ACA-compliant plans. Plaintiff

is informed and believes, and based thereon alleges, that HMC marketed new plans that reimbursed out-of-network providers of SUD treatment like Plaintiff.

13.     At all relevant times herein, Plaintiff was a non-contracting (as to HMC) mental and SUD treatment and rehabilitation facility operating in Orange County, California, also referred to as a "non-contracted" or "out-of-network" provider.  At all relevant times herein, Plaintiff offered a therapeutically planned rehabilitation intervention environment for the treatment of individuals with behavioral concerns and SUD.

14.     Plaintiff is informed and believes, and based thereon alleges, that HMC generally enters into private agreements with health care facilities thereby extending to them "in network" provider status.  Out-of-network claims are distinguished by the fact that when members/patients obtain health care services from an out-of-network provider, like Plaintiff, members/patients are responsible for charges that the plan might not cover, or that exceed HMC's reimbursement obligation to members/patients under the Plans.

15.     Plaintiff is informed and believes, and based thereon alleges, that this practice is known to HMC and others in the industry as "steerage", which is a method by which facilities that maintain in-network status may refer patients to each other pursuant to in-network agreements.  Plaintiff is further informed and believes, and based thereon alleges, that HMC concludes that referrals to and amongst facilities within the in-network community are permitted without fear of reprisal by state regulatory commissions that prohibit patient referrals for a fee, and the in-network status also protects members/patients from incurring excessive facility charges that are often imposed when a patient uses an out-of-network facility.

16.     Morningside provided and rendered services, SUD and/or mental health treatment to members, subscribers and insured of HMC, each of whom was a patient of Morningside and hereinafter referred to collectively as the "Patients").

As a result, Plaintiff became entitled to reimbursement, remuneration and/or payment from HMC for those services and supplies Morningside rendered to the Patients.

17.     Plaintiff is informed and believes, and based thereon alleges, that some or all of the Patients had express coverage for mental health and SUD treatment services as a delineated benefit of an ERISA plan, summary plan descriptions, and policies which were underwritten and/or administered by HMC and/or the Doe Defendants (collectively an "ERISA Plan" or the "ERISA Plans").

18.     Plaintiff is informed and believes, and based thereon alleges, that some or all of the Patients were plan participants and/or beneficiaries of an Employee Welfare Plan under ERISA, as those terms are defined by 20 U.S.C. § 1002. Plaintiff is further informed and believes, and based thereon alleges, that some or all of the Patients were entitled to be reimbursed for the cost of mental health and SUD treatment as the benefit of the subject HMC plans, policies and insurance agreements governing the relationship between each Patient and HMC (the "HMC Plans", and collectively with the ERISA Plans the "Plans").  Each of the Plans provided coverage for both in and out-of-network mental health providers, and for admission to treatment centers for SUD treatment by SUD treatment providers and related services received on an outpatient basis, inpatient basis, partial inpatient basis and/or intensive outpatient basis, including but not limited to coverage for facility charges, psychotherapy, psychiatrists, psychologists, charges for supplies and equipment, physician services, blood testing and other incidental services.

19.     Plaintiff is informed and believes, and based thereon alleges, that the Patients had preferred provider organization ("PPO") plan benefits or point of service ("POS") plan benefits that allowed them to seek medically necessary benefits, whether in-network or not and were entitled to reimbursement for their claims because Plaintiff was an out-of-network provider for HMC.  The Patients' claims should not have been denied or underpaid as the Plans provide coverage for

the very services performed by Morningside, including but not limited to coverage for mental and SUD treatment.

20.     Plaintiff is informed and believes, and based thereon alleges, that each of the Patients whose claims are at issue in this lawsuit required treatment for SUD and/or were suffering from serious medical and mental health concerns, sometimes related to their addictions and sometimes unrelated.  Each of the Patients chose PPO insurance rather than health maintenance organization ("HMO") insurance through their employers so that they could receive plan benefits from the physicians and other medical providers of their choice, regardless of whether the health care practitioners were in-network or out-of-network with HMC.  Defendants, who administer and/or underwrite the PPO insurance for the Patient's employers, advertise, publicize and represent on their websites, in their literature and in commercials that the benefit of their PPO policies include the freedom to choose any doctor for any and all health care needs.

21.     Plaintiff requested that Defendants authorized the Patients to undergo treatment at Morningside for SUD treatment and for Defendants to authorize Morningside to provide the same treatment and care to the Patients.  Plaintiff is informed and believes, and based thereon alleges, that Defendants authorized the Patients to undergo mental health and SUD treatment at Morningside and verified that each of the Patients had coverage which included coverage for the treatment Morningside provided.

22.     Plaintiff is informed and believes, and based thereon alleges, that no provisions in any of the Plans, whether in the Summary Plan Descriptions ("SPDs") and/or Evidence of Coverage ("EOC") documents justified the failure of HMC to pay the fees for services charged by mental health care providers or by SUD treatment facilities, like Morningside, whether by underpayment or to pay nothing. These actions by Defendants were arbitrary, capricious and improper.  Plaintiff is further informed and believes, and based thereon alleges, that during the insurance

verification process for the Patients, HMC represented to Morningside that it would pay Morningside's fees.  Morningside sought information during this process about potential limitations on the reimbursement of Morningside's fees each time prior to providing services, and specifically inquired as to how HMC's fee provisions would apply to the Patients.

23.     In the alternative, Plaintiff is informed and believes, and based thereon alleges, that HMC may have withheld information in response to such requests, and therefore misled Morningside into believing that services rendered by Morningside would be paid.

24.     Plaintiff is informed and believes, and based thereon alleges, that no provisions in the Plans justified the failure to issue a final decision or denial on any of the Patient claims, and no provision in the subject Plans justified the failure and refusal of HMC to issue an EOB statement, delineating and explaining the justification or rationale for refusing to pay, cover and reimburse the Patient claims or to adjust those claims.  These failures and refusals by HMC were therefore arbitrary, capricious and a breach of HMC's fiduciary duties to plan participants. These failures and refusals were also violative of regulations promulgated under ERISA by the Department of Labor, which require that claims be adjudicated by the claims administrator (*e.g.,* HMC) within 45 days after receipt of the claim and were also violative of the Plans and SPDs issued and adopted by HMC.

25.     Plaintiff is informed and believes, and based thereon alleges, that for each Plan involved in this lawsuit, the terms of the Plan:  (a) provided coverage for each of the services, supplies and treatments rendered by Morningside to each Patient for whom reimbursement, payment and coverage is sought; and (2) dictated that these covered services be paid according to a specific reimbursement rate (such as the reasonable and customary fees for services charged by Morningside or according to other formulae or allowable rates expressly and specifically provided in the Plans.

26.     Each of the Patients have assigned all of their legal and equitable rights to payment and to assert ERISA remedies under the Plans to Plaintiff in writing, including but not limited to their rights to recover the benefits owed to them by HMC to Plaintiff, by and through an irrevocable assignment of all of their rights, title and interest in and to the claims against HMC.  These assignments conferred upon Plaintiff the right to stand in the shoes of the Patients and to assert all of the rights held by the Patients as to HMC and/or as to the Plans administered by HMC, including but not limited to all rights, powers and equitable remedies of the Patients, the right of Plaintiff to substitute in as a party or plaintiff in any past, present or future litigation regarding the Patient's claims against HMC, the right to the proceeds of all legal fees and costs, if specifically awarded, and any interest if specifically awarded, and the right to make and effect collections, including the commencement of legal proceedings on behalf of the Patients.  A true and correct copy of a sample assignment signed by the Patients is attached hereto and incorporated herein by this reference as Exhibit B as if set forth in full.

27.     In compliance with the terms of each Plan, Plaintiff and/or the Patients have exhausted any and all claims review, grievance, administrative appeals, and appeals requirements by submitting letters, appeals, grievances, requests for reconsideration and request for payment to HMC.

28.     Alternatively, all review, appeal, administrative grievances or complaint procedures are excused as a matter of law, are violative of Plaintiff's due process rights, are or would be futile, or are otherwise unlawful, null, void and unenforceable.  HMC's pattern of behavior and refusal to reimburse Plaintiff rendered all potential administrative remedies futile.  As a result of HMC's actions and/or omissions, HMC is estopped from asserting that Plaintiff has failed to exhaust its administrative remedies under ERISA.  Alternatively, by HMC's failure and refusal to establish, maintain and follow a reasonable claim procedure process, Plaintiff and/or its Patients have exhausted the administrative remedies available

under the Plans and are entitled to pursue this action, inasmuch as Defendants have failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim, in violation of 29 C.F.R. § 2560.503-1(l).

## PLAINTIFF'S CLAIMS AGAINST HMC

29.     The Patients have not been identified by name in this  to protect their right of privacy.  Plaintiff will provide an unredacted list of the patient claims at issue in an amended pleading, if required by the Court, or to counsel for Defendants upon appearance.  Plaintiff is informed and believes, and based thereon alleges, that the amount still due and owing from HMC to Plaintiff resulting from the services Plaintiff provided to the Patients is $406,572.11.

30.     Each of the Patients received mental health and/or SUD treatment at Morningside's facility.  Payments are due and owing by Defendants to Plaintiff for the care, treatment and procedures provided to the Patients, all of whom were insured, members, policy holders, certificate holders or otherwise covered for charges by Plaintiff through policies or certificates of insurance issued, underwritten and/or administered by Defendants.

31.     Plaintiff is informed and believes, and based thereon alleges, that each of the Patients for whom claims are at issue was an insured of HMC either as a subscriber to coverage or a dependent of a subscriber to coverage under a policy or certificate of insurance issued, administered and/or underwritten by Defendants. Plaintiff is further informed and believes, and based therein alleges, that each of the Patients for whom claims are at issue was covered by a valid insurance agreement with HMC for the specific purpose of ensuring that the Patients would have access to medically necessary treatments, care, procedures and related care by out-of-network providers such as Plaintiff.

32.     In the alternative, Plaintiff is informed and believes, and based thereon alleges, that some of the Patients for whom claims are at issue were covered by self-funded plans which were administered by HMC.  The identify of those Plans

which are self-funded is known to HMC, but is presently unknown to Plaintiff. Those self-funded Plans provided coverage to the Patients either as a subscriber to coverage or as a dependent of a subscriber to coverage under the certificate of coverage administered by Defendants. For these self-funded plans, Plaintiff is informed and believes, and based thereon alleges, that HMC was a claim fiduciary, plan fiduciary and administrator charged with making claim determinations on behalf of the Plans.

33. Plaintiff is informed and believes, and based thereon alleges, that each of the Patients for whom claims are at issue was covered by a valid benefit plan, providing coverage for medical and mental health expenses, for the specific purpose of ensuring that the Patients would have access to medically necessary treatments, care and procedures by out-of-network providers like Plaintiff and ensuring HMC would pay for the health care expenses incurred by the Patients for the services rendered by HMC.

34. At all relevant times, each of the Patients received medical and/or paramedical services, procedures, mental health care, SUD treatment or other health care services from Morningside. Upon rendition of services to each of the Patients, each of the Patients became legally indebted, responsible and liable to Plaintiff for the full cost of and for payment of those services. Prior to the rendition of care by Plaintiff, Morningside sought and obtained a guarantee from the Patients that they would be legally responsible, liable and indebted for the full cost of and for payment of those services to be rendered by Plaintiff.

35. Each of the Patients requested Morningside to render and provide medical treatment and professional services, knowing that Morningside was an out-of-network provider. Each of the Patients sought out, requested and requisitioned treatment and professional services from Morningside and selected and chose Morningside to provide him or her with said services based upon Morningside's reputation in the community, experience and availability to render immediate care.

Each of the Patients signed written admission agreements in which the Patients agreed to be obligated, legally responsible and liable for the full amount of the charges incurred for services rendered by Morningside.

36.     Each of the Patients presented his or her insurance card to Morningside, which card identified the Patient as an insured, subscriber and/or member of HMC. These identification cards, which were issued by HMC, did not identify whether the coverage was underwritten by HMC as an insurer or whether HMC was acting as a third-party administrator of a self-funded plan.  Prior to the rendition of professional services, treatments and the provision of care, and at such times as required by law, Morningside contacted HMC with regard to certain Patients at the telephone number(s) identified on each card.  During each one of those phone conversations, Morningside identified the type of treatment that would be provided to the Patient to HMC and verified that each of the Patients had coverage for such professional services and treatment, using the names and identification numbers listed on the insurance cards of the Patients.  During each one of those phone conversations, HMC affirmatively confirmed, represented and verified that each of the Patients whose claims are involved in this action was an insured of or member of HMC, that each of the Patients whose claims are involved in this action had coverage for mental health and SUD treatment benefits through their policies or plans, that each of the policies, plans and insurance contracts covering each of the Patients provided coverage for mental health and SUD treatment benefits and would pay for the services sought to be rendered by Plaintiff, and that there were no exclusions, conditions or limitations which would result in claims submitted on behalf of each Patient being denied, rejected, refused or unpaid.

37.     As a result of HMC's offer to pay for the services rendered by Morningside to each of the Patients, Morningside was induced to and did provide and render professional services and treatment to the Patients at great cost to itself, fully expecting that it would be paid for its service after submission of claims to

HMC.  This expectation was further buttressed by the longstanding interactions, and business practices and customs that had been established between Morningside and HMC over several years, which had resulted in HMC's processing and payments of hundreds of prior claims on behalf of patients who had received care and treatment at Morningside.

38.      Plaintiff is informed and believes, and based thereon alleges, that during each of these phone conversations, HMC advised and represented that it would adjust all claims submitted by Morningside and would pay those claims according to its usual and customary fees or as specified in a subject Plan for a Patient.  HMC never advised Morningside, however, whether a Patient's claim was insured or underwritten by HMC, or whether HMC was acting in the capacity of an administrator only in adjusting that claim on behalf of a self-funded plan.  To date, HMC has not identified whether or which of the subject claims are insured, underwritten or only administered by HMC.  With one exception relating to a filing by Defendants in this lawsuit, HMC has never indicated the name of any self-funded Plans or identified those Plans as responsible for payment of the claims for any Patient.  As appropriate, Plaintiff will seek leave to identify any and all self-funded Plans as self-funded and identify the proper name of that entity.

39.      At all relevant times herein, representatives and agents of Defendants advised Plaintiff that each of the Patients was insured and covered for and was an eligible member or subscriber entitled to coverage under respective Plans for the services Morningside rendered, including mental health and SUD treatment benefits, that Morningside was authorized to render services, treatment and care, and that HMC would pay Plaintiff for performance of the services, care and/or treatment rendered by Morningside upon its submission of claim forms and invoices to HMC.

40.      At all relevant times herein, HMC led Morningside to believe that Morningside would be paid a portion or percentage of its total billed charges,

FIRST AMENDED COMPLAINT FOR BENEFITS UNDER ERISA AND RELATED CLAIMS
PAGE 15

1  equivalent to the usual customary and reasonable amount charged by other similar

2  SUD treatment facilities and specialists in the same geographical area or that other

3  methodologies would be used to determine the amount that HMC would pay

4  Morningside.  In reliance upon the representations of HMC that HMC would pay

5  for the services to be rendered to each Patient, Morningside was induced to, and did

6  provide and render medical treatments and professional services to each of the

7  Patients.  Had HMC advised Morningside that there was no coverage for the

8  treatments and services to be rendered by it under the Patients' Plans or had HMC

9  not authorized treatment and verified coverage, Morningside would never have

10  rendered services to the Patients or would have required each patient to self-pay for

11  his or her treatments.

12  **41.**      Plaintiff is informed and believes, and based thereon alleges, that each

13  and every one of the Patients had express coverage for mental health and SUD

14  treatment benefits under the applicable Plan or policy covering that Patient which

15  was issued or administered by HMC.  As such, each Plan was required to offer

16  coverage for mental health and SUD treatment in parity with the medical and

17  surgical benefits afforded by the same plan, as required by 26 U.S.C. § 9812(3)(A),

18  which mandates that:

19      In the case of a group health plan that provides both medical and

20      surgical benefits and mental health or substance use disorder benefits,

21      such plan shall ensure that –

22      **i.**      the financial requirements applicable to such mental health or

23            substance use disorder benefits are no more restrictive than the

24            predominant financial requirements applied to substantially all

25            medical and surgical benefits covered by the plan, and there are

26            no separate cost sharing requirements that are applicable only

27            with respect to mental health or substance use disorder benefits;

28            and

FIRST AMENDED COMPLAINT FOR BENEFITS UNDER ERISA AND RELATED CLAIMS
PAGE 16

**ii.** the treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan and there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits.

**42.** Additionally, 26 U.S.C. § 9812(5) mandates that out-of-network providers such as Plaintiff be treated in parity with medical providers and with in-network providers of mental health and SUD treatment, stating:

> In the case of a plan that provides both medical and surgical benefits and mental health or substance use disorder benefits, if the plan provides coverage for medical or surgical benefits provided by out-of-network providers, the plan shall provide coverage for mental health or substance use disorder benefits provided by out-of-network providers in a manner that is consistent with the requirements of this section.

**43.** Federal law also requires that insurers and Plans articulate the reason and rationale for any denial of benefits, stating:

> The criteria for medical necessity determinations made under the plan with respect to mental health or substance use disorder benefits shall be made available by the plan administrator in accordance with regulations to any current or potential participant, beneficiary, or contracting provider upon request. The reason for any denial under the plan of reimbursement or payment for services with respect to mental health or substance use disorder benefits in the case of any participant or beneficiary shall, on request or as otherwise

required, be made available by the plan administrator to the participant or beneficiary in accordance with regulations.

**44.** The failure and refusal of HMC to articulate the reasons, rationales and/or criteria it used in denying benefits for coverage for the Patients' claims constitutes a breach of 26 U.S.C. § 9812(4) and the applicable regulations promulgated thereunder.

**45.** The failure and refusal of HMC to pay Plaintiff for the SUD treatments rendered by Morningside to the Patients violated 26 U.S.C. § 9812(3) *per se*. Plaintiff is informed and believes, and based thereon alleges, that HMC has discriminated against it and other mental health and SUD treatment providers by applying financial requirements and treatment limitations different than those applied to medical health providers.

**46.** Plaintiff is informed and believes, and based thereon alleges, that HMC has investigated, adjusted, processed and examined Plaintiff's claims, in a manner different than the manner in which it investigates, adjusts, processes and examines the claims of medical providers, by subjecting Plaintiff's claims to delays, by requesting additional information which is irrelevant to the claim process, by offsetting payments it acknowledged were owed on claims for the Patients by amounts owed on account of other patients who were not related to the Patients but who were insured by HMC and who had received SUD treatments at Morningside at different times when treatment had been rendered to the Patients. As a result, HMC has breached the statutory mandates of 26 U.S.C. § 9812, *et. seq.* and owes payment benefits to Plaintiff in an amount no less than $406,572.11.

**47.** Plaintiff is a beneficiary (as that term is defined by 29 U.S.C. § 1002(8)) of the benefits payable under the subject Plans and insurance policies issued to and covering the Patients and by virtue of the assignment of rights given by each of the Patients to Plaintiff.

**48.**     At all relevant times herein, Plaintiff was authorized by law to act on behalf of the Patient with respect to the filing of claims with HMC, demanding production of documents from HMC, filing appeals on behalf of the Patients with HMC, and otherwise pursuing actions on behalf of the Patients with respect to the Patients' Plans in accordance with 29 C.F.R. § 2560.503.1(b)(4).

**49.**     With the one exception referenced in paragraph 38, Plaintiff is not privy to, nor does it possess or have access to any of the EOC documents, SPDs, Plan Documents, policies or Certificates of Insurance which are issued to the Patients.  As such, Plaintiff does not have knowledge of or access to the definition of an "allowable amount" or "allowable benefit" as that term is defined or used by HMC, at any time prior to the date that HMC processes, adjusts and pays each claim.  These definitions were not imparted by HMC to Plaintiff during the insurance verification or authorization process.

**50.**     At all relevant times herein, HMC has improperly or failed to pay and refused to pay Plaintiff for the medically necessary and appropriate services rendered to HMC's insureds, subscribers and members for those treatments, services and/or supplies rendered by Plaintiff.  For each of the Patient claims at issue in this action, Plaintiff provided medical services to members and insureds of HMC.

**51.**     Following the rendition of treatment by Morningside to the Patients, invoices, bill and claims were submitted to Defendants for adjustment and payment.  Morningside also provided medical records to HMC for the treatment it provided to the Patients.

**52.**     For each of the claims at issue, HMC failed and refused to adjust the claims and to issue EOB statements to Plaintiff in a timely manner as required by federal law.  These failures constituted an effective denial of benefits, although an actual denial of benefits was not communicated by HMC.  By virtue of its failure and refusal to issue EOB statements and to adjust the claims, Plaintiff was

precluded and inhibited from appealing the effective denial of payment on the subject claims.

53.     For each of the claims at issue in this case, HMC failed and refused to complete the claim examination process, delayed issuing EOB and/or explanation of payment ("EOP") statements to Plaintiff, has requested unnecessary and irrelevant information and documentation from Plaintiff which has no bearing on or relevance to the claim examination process, has failed and refused to provide notification of the reasons for its failure and refusal to pay benefits and has failed to engage in a meaningful appeal process with Plaintiff.  For each of the claims at issue in this case, HMC has failed and refused to pay benefits in any amount whatsoever, leaving the entire charges unpaid and owed.

54.     To the extent HMC issued any EOB statements, HMC did not explain how the claims were adjusted, disallowed or denied, and HMC provided vague, ambiguous and uncertain explanations for the manner by which HMC based its claim determination.  To the extent HMC issued any EOB statements, each was uninformative, false and misleading, thereby depriving Plaintiff and the Patients from an ability to intelligently engage in the appeal process or understand the basis and rationale for HMC's denial of benefits.

55.     Plaintiff is informed and believes, and based thereon alleges, that HMC's actions violated 29 U.S.C. § 1133, 29 C.F.R. § 2560.503-1(g) and 26 U.S.C. § 9812(4), all due to HMC's failure to provide a description of the Plain's review procedures and the time limits or deadlines applicable to such procedures.

56.     In each of the EOB statements issued by HMC, if any, HMC failed to advise Plaintiff and/or the Patients of the right of the Patients and/or Plaintiff to appeal the adverse claim determination made by HMC in any of the EOB statements concerning the right to appeal, file a grievance, seek reconsideration or otherwise engage in an administrative review process, as required by 29 U.S.C. § 1133, 29 C.F.R. § 2560.503-1(g) and 26 U.S.C. § 9812(4).

# FIRST CLAIM FOR RELIEF

## (Claims for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B)

## Against All Defendants)

**57.**     Plaintiff realleges and incorporates by reference each and every paragraph of this  as though set forth herein.

**58.**     Plaintiff is informed and believes, and based thereon alleges, that Defendants are discriminating against the Patients of Plaintiff who are suffering from a severe mental illness or SUDs by restricting benefits that are not imposed on other patients.

**59.**     This claim is alleged by Plaintiff for relief in connection with claims for treatment rendered to members of an ERISA Plan. This claim seeks to recover benefits, enforce rights and clarify rights to benefits under 29 U.S.C. § 1132(a)(1)(B). Plaintiff has standing to pursue these claims as assignee of the Patients' benefits under the ERISA Plans. As the assignee of benefits under the ERISA Plans, Plaintiff is a "beneficiary" entitled to collect benefits under the terms of the ERISA Plans, and is the "claimant" for purposes of ERISA.

**60.**     Plaintiff is informed and believes, and based thereon alleges, that Defendants are the insurer, sponsor, and/or financially responsible payer, serves as its designated plan administrator, and/or services as the named plan administrator's designee.  Plaintiff is further informed and believes, and based thereon alleges, that with respect to each of the ERISA Plans at issue in this case that are self-insured plans, but which do not specifically designate a plan administrator, HMC effectively controls the decision whether to honor or deny the a claim under the Plan, exercises authority over the resolution of benefits claims, and/or has responsibility to pay the claims.  HMC also plays the role as the *de facto* plan administrator for such Plans.

**61.**     Plaintiff is informed and believes, and based thereon alleges, that for each of these claims and for each of the involved Patients, Defendants have failed

and refused to pay, process or adjust these claims in an appropriate fashion by, among other acts and omissions:

        **a.** Delaying the processing, adjustment and/or payment of claims for periods of time greater than 45 days after submission of the claims in violation of 29 C.F.R. § 2560.503-1(f)(2)(iii)(B);

        **b.** Failing and refusing to provide any notice and/or explanation for the denial of benefits, payments or reimbursement of the claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

        **c.** Failing and refusing to provide an adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

        **d.** Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, and by failing and refusing to set forth the specific reasons for such denials, all in violation of 29 U.S.C. § 1133(1);

        **e.** Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, written in a manner calculated to be understood by the participant, in violation of 29 U.S.C. § 1133(1);

        **f.** Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in an appeals process, in violation of 29 U.S.C. § 1133(2);

**g.** Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in meaningful appeal process which was full and fair, in violation of 29 U.S.C. § 1133(2);

**h.** Failing and refusing to provide Plaintiff and/or its Patients with information pertaining to their rights to appeal, including not limited to those deadlines for filing appeals and/or the requirements that an appeal be filed, in violation of 29 U.S.C. § 1133(1);

**i.** Violating the minimum requirements for employee benefit plans pertaining to claims and benefits by participants and beneficiaries, in violation of 29 C.F.R. § 2560.503-1(a), *et seq.*;

**j.** Failing and refusing to establish and maintain reasonable claims procedures in violation of 29 C.F.R. § 2560.503-1(b);

**k.** Establishing, maintaining and enforcing claims procedures which unduly inhibit the initiation and processing of claims for benefits, in violation of 29 C.F.R. § 2560.503.1(b)(3);

**l.** Precluding and prohibiting Plaintiff from acting as an authorized representative of the Patients in pursuing a benefit claim or appeal of an adverse benefit determination, in violation of 29 C.F.R. § 2560.503-1(b)(4);

**m.** Failing and refusing to design, administer and enforce their processes, procedures and claims administration to ensure that their governing plan documents and provisions have been applied consistently with respect to similarly situated participants, beneficiaries and claimants, in violation of 29 C.F.R. § 2560.503-1(b)(5);

**n.** Failing and refusing to pay benefits for services rendered by Plaintiff which HMC authorized, as well as rescinding the same, in violation of California Health & Safety Code § 1371.8 and California Insurance Code § 796.04;

**o.** Failing to offer coverage for mental health and SUD treatment in parity with the medical and surgical benefits afforded by the same Plan, as required by 26 U.S.C. § 9812(3), as well as other mandates set forth at 26 U.S.C. § 9812, *et seq*.; and

**p.** Failing and refusing to pay Plaintiff for the SUD treatments provided to the Patients in violation of 26 U.S.C. § 9812(3).

**62.** The failure and refusal of Defendants to provide coverage, reimbursement, payment and/or benefits for the SUD and/or mental health treatment benefits rendered by Plaintiff to Plaintiff's patients who were covered by Defendants and Defendants' denial of health insurance benefits coverage constitutes a breach of the insurance plans and/or employee benefit Plans between Defendants and Plaintiff's Patients.  Plaintiff seeks reimbursement and compensation for any and all payments which it would have received and to which it will be entitled as a result of Defendants' failure to pay benefits and cover those services rendered by Plaintiff to the Patients, in an amount not less than $406,572.11, according to proof at trial.

**63.** Defendants have arbitrarily and capriciously breached the obligations set forth in the Plans issued by Defendants, and Defendants have arbitrarily and capriciously breached their obligations under the ERISA Plans to provide Plaintiff and the Patients with health benefits.

**64.** As a direct and proximate result of the actions by Defendants, Plaintiff has been damaged in an amount equal to the amount of benefits Plaintiff should

have received and to which the Patients would have been entitled had Defendants paid the proper amounts, which Plaintiff estimates to be $406,572.11.

65.     As a direct and proximate result of the aforesaid conduct of Defendants in failing to provide coverage as required, Plaintiff has suffered, and will continue to suffer in the future, damages, plus interest and other economic and consequential damages, for a total amount Plaintiff estimates to be $406,572.11 or as otherwise determined at the time of trial.

66.     Plaintiff is entitled to an award of reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1).  As a result of the actions and failings of the Defendants, Plaintiff has retained the services of legal counsel and has necessarily incurred attorneys' fees and costs in prosecuting this action.  Furthermore, Plaintiff anticipates incurring additional attorneys' fees and costs hereafter pursing this action.

## SECOND CLAIM FOR RELIEF

### (Breach of Contract (Third Party Beneficiary) Against All Defendants)

67.     Plaintiff realleges and incorporates by reference each and every paragraph of this  as though set forth herein.

68.     Plaintiff is informed, and based thereon alleges, that the Plans were executed by the Patients and the Defendants, in substantial part, for the direct benefit of health care providers, including providers of mental health and SUD treatment.  Morningside, at all relevant times as a member of the SUD treatment community and provider of similar mental health care, was an intended third party beneficiary for payment of services provided to the Patients under their respective Plans.

69.     Plaintiff further informs and believes, and based thereon alleges, that Plaintiff is an assignee and intended beneficiary of its Patients' Plans issued by Defendants and the rights conferred thereunder.

70.    Plaintiff is entitled to be paid for the services rendered based on the existence and terms of the insurance policies covering each Patient.

71.    Plaintiff confirmed that each Patient referenced herein was covered by a policy issued by Defendants through a required prior authorization process before rendering services.  At great expense, Plaintiff thereafter provided medically necessary substance abuse and/or mental health treatment and toxicology testing to the Patients.

72.    After providing those services, Plaintiff submitted appropriate claim forms to Defendants, or their agents, requesting compensation for the care and treatment provided to the Patients.

73.    Plaintiff either did not receive full, reasonable, and often no compensation for the services provided.

74.    Plaintiff is informed and believes, and based thereon alleges, there is no legally operative term in the Plans that permit Defendants to deny Plaintiff full and/or reasonable compensation for the services Plaintiff provided to the Patients in good faith.  Plaintiff duly performed under the insurance contract and must be paid by Defendants.

75.    Plaintiff is informed and believes, and based thereon alleges, that the Patients, and each of them, have performed all of the obligations required of them under their respective Plans with Defendants, except as otherwise may have been excused or prevented by Defendants.

76.    There is now due, owing and unpaid by Defendants to Plaintiff a sum not less than $406,572.11, plus pre-judgment interest, according to proof.//

## THIRD CLAIM FOR RELIEF

### (Breach of Contract (Assignment) Against All Defendants)

77.    Plaintiff realleges and incorporates by reference each and every paragraph of this  as though set forth herein.

78.     The Plans obligated Defendants to reimburse and/or pay for the Patient's medical care pursuant to the Plans, as applicable.  When the Patients obtained the treatment from Plaintiff, they assigned to Plaintiff in writing (in the form attached to this  hereto as <u>Exhibit B</u>) their rights to any reimbursement and/or payment from Defendants for treatment.

79.     Pursuant to these assignments, Plaintiff was entitled to payment from Defendants for services rendered based on the existence and terms of the insurance policies covering each Plaintiff, at the rates set forth in the Plans. Despite written demand from Plaintiff, Defendants have failed and refused to pay such amounts.

80.     Morningside confirmed that each Patient referenced herein was covered by a policy issued by Defendants through its prior authorization process before rendering services.  At great expense, Morningside thereafter provided medically necessary substance abuse and/or mental health treatment and toxicology testing to the Patients.

81.     After providing those services, Plaintiff submitted appropriate claim forms to Defendants, or their agents, requesting compensation for the care and treatment provided to the Patients.

82.     Plaintiff either did not receive full, reasonable, and often no compensation for the services provided.

83.     Plaintiff is informed and believes, and based thereon alleges, there is no legally operative term in the Plans that permit Defendants to deny Plaintiff full and/or reasonable compensation for the services Plaintiff provided to the Patients in good faith.  Plaintiff duly performed under the insurance contract and must be paid by Defendants.

84.     Plaintiff is informed and believes, and based thereon alleges, that the Patients, and each of them, have performed all of the obligations required of them

under their respective Plans with Defendants, except as otherwise may have been excused or prevented by Defendants.

85.     There is now due, owing and unpaid by Defendants to Plaintiff a sum not less than $406,572.11, plus pre-judgment interest according to proof.

## FOURTH CLAIM FOR RELIEF

### (Open Book Account Against All Defendants)

86.     Plaintiff realleges and incorporates by reference each and every paragraph of this  as though set forth herein.

87.     Within the last four years Defendants became indebted to Plaintiff on an open book account in a sum not less than $406,572.11, plus daily interest through the entry of judgment.

88.     Plaintiff demanded payment from Defendants and Defendants have refused and continue to refuse to pay.  There is now due, owing and unpaid an open book account in the sum not less than $406,572.11, plus daily pre-judgment interest until the entry of judgment.

## FIFTH CLAIM FOR RELIEF

### (Promissory Estoppel Against All Defendants)

89.     Plaintiff realleges and incorporates by reference each and every paragraph of this  as though set forth herein.

90.     As part of verifying benefits and authorizing treatment when necessary, and in multiple communications following admissions and the submission of claims, Defendants expressed a clear promise to pay Plaintiff at its usual and customary rates.

91.     The persons answering calls and corresponding on behalf of Defendants, and each of them, were upon information and belief the agents and employees of Defendants, and each of them, and in doing the things herein alleged were acting within the course and scope of such agency and employment and with the permission and consent of Defendants, and each of them.

92.     Plaintiff relied on Defendants' promises in providing treatment to Defendants' insureds, and defendants, and each of them, should reasonably have expected to induce Plaintiff's action in providing treatment.

93.     Plaintiff has suffered substantial detriment in reliance upon Defendants' promises in providing treatment to Defendants' insureds, including without limitation the benefits owed in the amount of at least $406,572.11, the interruption in Plaintiff's business, lost business opportunities, lost profits and other consequences, all according to proof.

94.     As a direct and proximate result of Defendants' breach of their promise, Plaintiff has sustained general and incidental damages, and statutory and prejudgment interest, in excess of the jurisdictional minimum of this court in an amount to be determined at trial. Under this Cause of Action, and aside from the consequential damages set forth above, Plaintiff seeks to recover its fully-billed charges.

## SIXTH CLAIM FOR RELIEF

### (*Quantum Meruit* Against All Defendants)

95.     Plaintiff realleges and incorporates by reference each and every paragraph of this  as though set forth herein.

96.     Plaintiff, as an out-of-network provider, provided mental health and SUD treatment services the Patients who were insured under HMC Plans, preceded by authorization and verification of benefits by Defendants.

97.     Consistent with the trade custom and usage associated with prior authorization and verification of benefits, Plaintiff provided the subject treatment with the expectation, which was fully and clearly understood by Defendants and each of them, that Plaintiff would be compensated for such services.

98.     Plaintiff, as an out-of-network provider, must often decide on short notice whether and to what extent it can treat a patient. Requiring such providers to, in effect, make an on-the-spot legal analysis whether the statements made by

health care plans to authorize treatment and verify benefits constitute binding contract "acceptances" versus supposedly non-binding "authorizations" would jeopardize the safety of patient and impose an unfair risk on health care providers that they would not get paid for providing treatments that are medically necessary. For this reason, the California Legislature enacted Health & Safety Code § 1371.8, which states in relevant part:

> A health care service plan that authorizes a specific type of treatment by a provider **shall not rescind or modify this authorization after the provider renders the health care service** in good faith and pursuant to the authorization for any reason, including, but not limited to, the plan's subsequent rescission, cancellation, or modification of the enrollee's or subscriber's contract or the plan's subsequent determination that it did not make an accurate determination of the enrollee's or subscriber's eligibility….

(Emphasis added.)

99.    In addition to reliance upon the trade custom and usage associated with prior authorization and verification of benefits, Plaintiff provided the subject treatment with the expectation that Plaintiff would be compensated for such services based upon the prior course of conduct between Plaintiff and defendants.

100.    Defendants and each of them were fully aware of the dollar amounts charged by Plaintiff for the subject treatment and had previously authorized and verified benefits for such treatment.  Defendants and each of them were also aware that Plaintiff did not provide the subject treatment for free, and that Plaintiff would submit its total billed charges for said services and expect to be compensated.

101.    Defendants and each of them also knew Plaintiff was not an in-network provider who had agreed to accept any pre-negotiated contract rates. Having such knowledge, Defendants, and each of them, issued payments for the subject treatment to out-of-network providers, including Plaintiff.

**102.**   Whereas payment by defendants and each of them was either sporadic, inadequate, or nothing, and at some point in time Defendants ceased reimbursing out-of-network providers, including Plaintiff, for any treatment rendered.

**103.**   Defendants and each of them were at all times obligated under California law to provide or arrange for the provision of access for their insureds to health care services in a timely manner, and sought to satisfy this duty by providing a network of in-network providers for their insureds to choose from so they may receive the necessary treatment at the lowest expense to the insurer and the insured.

**104.**   Defendants are also liable to pay Plaintiff for treating The Patients and claims at issue due to a contract implied in law based on the network gap concept as discussed hereinabove. California law requires that where health insurance carriers such as Defendants cannot provide their insureds access to the needed healthcare providers on an "in-network" basis, the carriers shall pay any "out-of-network" provider such as Plaintiff the amounts necessary to limit the out-of-pocket cost to the patient as if an in-networker provider had provided the same treatment and services. In effect, this makes an out-of-network provider eligible to receive up to 100 percent of its fully-billed charges (since the patients would be responsible for only their relatively nominal co-payments), or in any case substantially more than the contracted rates agreed to by an in-network provider.

**105.**   Plaintiff is informed, and based therein alleges, that, there was a network gap with respect to the Patients' payments for whom they are at issue in this action, since Defendants failed to arrange for any in-network providers in the patients' localities who were willing and able to provide the mental health and SUD treatment required by those patients. Indeed, if defendants objected to their insureds obtaining treatment from an out-of-network provider such as Plaintiff, why did they refuse or otherwise fail to refer those patients to an in-network provider. The only reasonable inference is that there were no such in-network

providers who were in the position to treat the patients at issue. As a result, those patients had no choice but to seek the services and treatments rendered by Plaintiff, who did so in good faith and in reliance on Defendants' expected compliance with the applicable California healthcare as it pertains to a "network gap."

106.   Defendants and each of them, by words and conduct, requested that Plaintiff provide medically necessary treatment to their insureds, which benefitted Defendants in terms of meeting their legal and contractual obligations to provide or arrange for the provision of access to health care services in a timely manner.

107.   As part of verifying benefits and authorizing treatment when necessary, and in multiple communications following admissions, and the submission of claims, Defendants, and each of them, knew that Plaintiff was providing services to Defendants' insureds, and promised to pay Plaintiff for the treatment.

108.   Defendants sold each Patients' Plan and accepted the premium payments, and permitted their insureds to seek medically necessary behavioral health and/or SUD treatment, confirmed to Plaintiff that the subject Patients were indeed covered by Defendants, and then, on unspecified, specious and/or unlawful grounds, have since refused to fully compensate Plaintiff for the services rendered to, and benefitted by, the Patients.  Defendants were, and are, enriched by keeping the insurance premiums for such Plans without having to pay for the medical care they promised to cover in their Plans.

109.   The persons answering calls and corresponding on behalf of Defendants, and each of them, were upon information and belief the agents and employees of Defendants, and each of them, and in doing the things herein alleged were acting within the course and scope of such agency and employment and with the permission and consent of Defendants, and each of them.

110.   Plaintiff is entitled to be paid its usual and customary fees for the services provided, without regard to the payment provisions in Defendants'

policies and/or the payments owing to Plaintiff under California law based on the existence of a "network gap" as to some or all of the Patients at issue.

111.   The fair and reasonable value of the non-reimbursed services that Plaintiff provided to Defendants' insureds is at least $406,572.11.

112.   Defendants and each of them, however, have failed and refused, and continue to refuse, to reimburse Plaintiff for the reasonable and customary value of Plaintiff's services as required by law.

113.   As a direct and proximate result of Defendants' failure to pay for services rendered, Plaintiff has suffered general and incidental damages according to proof, and is entitled to statutory and pre-judgment interest.

114.   As a direct and proximate result of Defendants' failure to pay for services rendered, Plaintiff has incurred and continues to incur economic loss, including the benefits owed in the amount of at least $406,572.11, the interruption in Plaintiff's business, lost business opportunities, lost profits and other consequences, all according to proof.

115.   As a direct and proximate result of Defendants' failure to pay for services rendered, Plaintiff has sustained damages, and statutory and prejudgment interest, in excess of the jurisdictional minimum of this court in an amount to be determined at trial.

//
//
//
//
//

# PRAYER FOR RELIEF

**AS TO THE FIRST CLAIM FOR RELIEF**:

WHEREFORE, Plaintiff prays as follows:

**1.**   For an order that Defendants pay to Plaintiff an amount to be determined at trial for the Claims under the ERISA Plans;

**2.** For economic damages according to proof;

**3.**   For attorney's fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g);

**4.** For pre- and post-judgment interest as allowed by law; and

**5.** For such other and further relief as the Court deems appropriate.

**AS TO THE SECOND, THIRD, FOURTH, FIFTH AND SIXTH CLAIMS FOR RELIEF:**

WHEREFORE, Plaintiff prays as follows:

**1.**     For an order that Defendants pay to Plaintiff an amount to be proven at trial;

**2.**     For economic damages according to proof;

**3.**     For pre- and post-judgment interest as allowed by law;

**4.**     For attorney's fees and costs of suit incurred herein; and

**5.**     For such other and further relief as the Court deems appropriate.

Respectfully Submitted,

Dated: November 26, 2019            GARNER HEALTH LAW CORPORATION

By: */s/ Craig B. Garner*
　　CRAIG B. GARNER
Attorneys for PLAINTIFF ABC SERVICES GROUP, INC., in its capacity as assignee for the benefit of creditors of MORNINGSIDE RECOVERY, LLC

1

## **DEMAND FOR JURY TRIAL**

2

Pursuant to the Seventh Amendment to the United States Constitution, and

3

any other applicable law, Plaintiff hereby requests a trial by jury for all claims

4

triable by jury.

5

6

Respectfully Submitted,

7

Dated: November 26, 2019          GARNER HEALTH LAW CORPORATION

8

9

By: */s/ Craig B. Garner*

10

CRAIG B. GARNER

11

Attorneys for PLAINTIFF ABC SERVICES
GROUP, INC., in its capacity as assignee for

12

the benefit of creditors of MORNINGSIDE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

***ABC Services Group, Inc. v. Health Net of California, Inc., et al.***
**8:19-cv-00243-DOC-DFM**
**and all consolidated cases**

I hereby certify that on November 26, 2019, I caused the

## FIRST AMENDED COMPLAINT

to be served upon counsel in the manner described below:

Participants in the case who are registered CM/ECF users will be served by the Central District CM/ECF system.

## VIA THE CENTRAL DISTRICT CM/ECF SYSTEM

***Special Master***
Stephen G Larson
Larson O'Brien LLP
555 South Flower Street Suite 4400
Los Angeles, CA 90071
213-436-4864
slarson@larsonobrienlaw.com

***Defendants Aetna Health and Life Insurance Company and Coventry Health Care, Inc.***
Benjamin H. McCoy
Fox Rothchild LLP
10 Sentry Parkway, Suite 200
Blue Bell, PA 19422
610-397-7972
bmccoy@foxrothschild.com

John Shaeffer
Fox Rothschild LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, CA 90067
310-598-4150
310-556-9828 (fax)
jshaeffer@foxrothschild.com

1  ***Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem,
2  Inc. and The Anthem Companies of California, Inc.***

3  Steven D Allison
   Troutman Sanders LLP 5 Park Plaza Suite 1400
4  Irvine, CA 92614
   949-622-2700
5  949-622-2739 (fax)
6  steve.allison@troutman.com

7  Virginia Bell Flynn
8  Troutman Sanders LLP
   4320 Fairfax Drive
9  Dallas, TX 75205
10 804-697-1480
   804-698-5109          x)
11 virginia.flynn@troutman.com

12
   Chad R Fuller
13 Troutman Sanders LLP
14 11682 El Camino Real Suite 400
   San Diego, CA 92130
15 858-509-6000
16 858-509-6040 (fax)
   chad.fuller@troutman.com
17

18 Samrah R Mahmoud
19 Troutman Sanders LLP
   5 Park Plaza Suite 1400
20 Irvine, CA 92614
   949-622-2700
21 samrah.mahmoud@troutman.com

22
   ***Blue Cross and Blue Shield of Alabama***
23 Neil J Barker
24 Neil J Barker APC
   225 South Lake Avenue Suite 300
25 Pasadena, CA 91101
26 626-440-5980
   neiljbarker@sbcglobal.net
27

28
                                   2
                      **CERTIFICATE OF SERVICE**

***Blue Cross and Blue Shield of Kansas City and Health Care Service Corporation***
Jonathan Daniel Gershon
Reed Smith LLP
335 South Grand Avenue Suite 2900
Los Angeles, CA 90071-1514
213-457-8000
jgershon@reedsmith.com

Dan J Hofmeister, Jr
Reed Smith LLP
10 South Wacker Drive Suite 4000
Chicago, IL 60606
312-207-6545
312-207-6400 (fax)
dhofmeister@reedsmith.com

Amir Shlesinger
Reed Smith LLP
355 South Grand Avenue Suite 2900
Los Angeles, CA 90071-1514
213-457-8000
213-457-8080        x)
ashlesinger@reedsmith.com

Farah Tabibkhoei
Reed Smith LLP
355 South Grand Avenue Suite 2900
Los Angeles, CA 90071-1514
213-457-8000
213-457-8080 (fax)
ftabibkhoei@reedsmith.com

***Blue Cross and Blue Shield of Kansas Inc, Blue Cross and Blue Shield of
Mississippi and USable Mutual Insurance Company***
Kimberly Ann Klinsport
Foley and Lardner LLP
555 South Flower Street Suite 3300
Los Angeles, CA 90071-2411
213-972-4500
213-486-65  x)
kklinsport@foley.com

3
**CERTIFICATE OF SERVICE**

Michael A Naranjo
Foley and Lardner LLP
555 California Street Suite 1700
San Francisco, CA 94104
415-434-4484
415-434-4507          x)
mnaranjo@foley.com

Jason Yon-Wai Wu
Foley and Lardner LLP
555 California Street Suite 1700
San Francisco, CA 94104-1520
 415-434-4484
415-434-4507          x)
jwu@foley.com

***Blue Shield of California Life and Health Insurance Company,  California Physician's Service, Centene Corporation, HealthNet of California, Inc. and Centene Company***
Ileana M Hernandez
Manatt Phelps and Phillips LLP
11355 West Olympic Boulevard
Los Angeles, CA 90064
310-312-4228
Ihernandez@manatt.com

John M LeBlanc
Manatt Phelps and Phillips LLP
11355 West Olympic Boulevard
Los Angeles, CA 90064
310-312-4000
jleblanc@manatt.com

Gregory N Pimstone
Manatt Phelps and Phillips LLP
11355 West Olympic Boulevard
Los Angeles, CA 90064-1614
310-312-4000
gpimstone@manatt.com

4
**CERTIFICATE OF SERVICE**

1  Samuel Alonso Canales
2  Manatt Phelps and Phillips LLP
   11355 West Olympic Boulevard
3  Los Angeles, CA 90064
4  310-312-4000
   scanales@manatt.com
5
6  Craig S. Bloomgarden
   Manatt, Phelps & Phillips, LLP
7  11355 West Olympic Blvd.
8  Los Angeles, CA 90064-1614
   310-312-4000
9  cbloomgarden@manatt.com
10
   ***Bluecross Blueshield of Tennessee Inc.***
11 Jason Jonathan Kim
12 Hunton Andrews Kurth LLP
   550 South Hope Street Suite 2000
13 Los Angeles, CA 90071
14 213-532-2000
   kimj@huntonak.com
15
16 Ann Marie Mortimer
   Hunton Andrews Kurth LLP
17 550 South Hope Street Suite 2000
18 Los Angeles, CA 90071-2627
   213-532-2000
19 amortimer@huntonAK.com
20
   John B Shely
21 Hunton Andrews Kurth LLP
22 600 Travis Street Suite 4200
   Houston, TX 77002
23 713-220-4200
24 713-220-4285 (fax)
   jshely@huntonak.com
25
26
27
28
                                    5

Bridget B Vick
Hunton Andrews Kurth LLP
600 Travis Street Suite 4200
Houston, TX 77002
713-220-4200
bvick@huntonak.com

***Humana Employers Health Plan of Georgia Inc., Humana Health Benefit Plan of Louisiana Inc, Humana Health Plan of California Inc., Humana Health Plan of Texas Inc., Humana Inc. and Humana Insurance Company***

Ronald K Alberts
Gordon Reese Scully Mansukhani LLP
633 West Fifth Street 52nd Floor Los Angeles, CA 90071
213-576-5000
ralberts@grsm.com

Sylvia Joo
Gordon Rees Scully Mansukhani LLP
633 West Fifth Street 52nd Floor
Los Angeles, CA 900710
213-576-5030
sjoo@grsm.com

***Defendants United Behavioral Health and United Healthcare Services Inc***

Dylan Scott Burstein
Crowell and Moring LLP
515 South Flower Street 40th Floor
Los Angeles, CA 90071
213-622-4750
213-622-2690 (fax)
dburstein@crowell.com

Daniel M Glassman
Crowell and Moring LLP
3 Park Plaza 20th Floor
Irvine, CA 92614-8505
949-263-8400
949-263-8414 (fax)
dglassman@crowell.com

6
**CERTIFICATE OF SERVICE**

Stephanie V Phan
Crowell and Moring LLP
3 Park Plaza 20th Floor
Irvine, CA 92614-8505
949-263-8400
sphan@crowell.com

**_Defendants Scott and White Health Plan, Scott and White Healthcare and Scott and White Care Plans_**

Derek Davis
Alan Law
Cooper & Scully, P.C.
505 Sansome Street
Suite 1550
San Francisco, California 94111
415-956-9700
derek.davis@cooperscully.com
alan.law@cooperscully.com

**_Defendant ComPsych Corporation_**
Elise D. Klein
Lewis Brisbois Bisgaard and Smith
633 West 5th Street, Suite 4000
Los Angeles, CA 90071
Elise.klein@lewisbrisbois.com

**_Defendant HMC Healthworks, Inc._**

Rodney James Jacob
Calvo Fisher and Jacob LLP
259 Martyr St.
Suite 100
Hagatna, GU 96910-5200
rjacob@calvofisher.com

_/s/ Craig B. Garner_
Craig B. Garner
_Counsel for Plaintiff_

7

**CERTIFICATE OF SERVICE**