GARNER HEALTH LAW CORPORATION
CRAIG B. GARNER (CA SBN 177971)
craig@garnerhealth.com
13274 Fiji Way, Suite 250
Marina Del Rey, CA 90292
Telephone: (310) 458-1560
Facsimile: (310) 694-9025

SQUIRES, SHERMAN & BIOTEAU, LLP
ROCHELLE J. BIOTEAU (CA SBN 228348)
Rochelle@ssbllp.com
1901 1st Avenue, Suite 415
San Diego, CA 92101
Telephone: (619) 696-8854

Attorneys for PLAINTIFF ABC SERVICES GROUP, INC., in its capacity as assignee for the benefit of creditors of MORNINGSIDE RECOVERY, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA SOUTHERN DIVISION

| | |
|---|---|
| ABC SERVICES GROUP, INC., *et al.,*<br><br>Plaintiff,<br><br>v.<br><br>HEALTH NET OF CALIFORNIA, INC., *et al.,*<br><br>Defendants. | **Case No. 8:19-cv-00243-DOC-DFM (Lead Case)**<br><br>Hon. David O. Carter<br><br>[Previous Case Consolidated With Lead Case:  8:19-cv-02136-DOC]<br><br>**EXHIBITS TO FIRST AMENDED COMPLAINT** |
| *Consolidated With*:<br><br>ABC SERVICES GROUP, INC., *et al.,*<br><br>Plaintiff,<br><br>v.<br><br>HMC HEALTHWORKS, INC., a Florida corporation; and DOES 1 through 20, inclusive,<br><br>Defendants. | |
| AND CONSOLIDATED ACTIONS | |

# EXHIBIT A

# GENERAL ASSIGNMENT FOR THE BENEFIT OF CREDITORS

This General Assignment for the Benefit of Creditors ("General Assignment") is made and entered into as of the 21st day of September, 2018 (the "Effective Date"), by and between Morningside Recovery, LLC a California Limited Liability Company, Federal Taxpayer Identification Number 75-3033468,  located at 1400 Reynolds Avenue, Ste 200, Irvine, CA 92614, (hereinafter "Assignor") and ABC Services Group, Inc., a Delaware Corporation (hereinafter "ABC Services" or "Assignee") with respect to the following facts:

## RECITALS

WHEREAS, California law including, but not limited to, California Code of Civil Procedures Sections 493.010 through 493.060 and Sections 1800 through 1802 provide that debtors may make an General Assignment for the benefit of creditors, pursuant to which the Assignee will liquidate the debtor's assets and in accordance with the requirements of applicable law distribute the proceeds; and

WHEREAS, Assignor has carefully considered the various options available to Assignor to deal with Assignor's creditors, and has decided that it would be in Assignor's best interest and the best interests of Assignor's creditors to make an General Assignment for the benefit of creditors pursuant to California law; and

WHEREAS, ABC SERVICES is in the business, amongst other matters, of managing and conducting General Assignments for the benefit of creditors in accordance with California law, and effectuating the sale of the debtor's assets and distribution of the proceeds in accordance with applicable law; and

WHEREAS, Assignor desires to, pursuant to the terms set forth hereinbelow, retain ABC SERVICES for the purposes of making a General Assignment for the benefit of creditors pursuant to which ABC SERVICES will act as Assignee, liquidate the assets of Assignor, and distribute the proceeds in accordance with applicable law, and ABC SERVICES desires to be so retained pursuant to the terms forth hereinbelow.

Now, therefore, in consideration of the General Assignment, covenants, conditions, representations and agreements described hereinbelow, Assignor and Assignee agree as follows:

## AGREEMENT

1.0     Assignment of Assets for the Benefit of Creditors.  Assignor hereby makes this General Assignment for the benefit of Assignor's creditors to ABC SERVICES.  Assignor does hereby grant, bargain, sell, assign, convey and transfer unto said Assignee, its successors and assigns, in trust, for the benefit of Assignor's creditors, all of the property of the Assignor of every kind and nature and where so ever situated, both real property (but not real property lease arrangements) and personal property, and any interest or equity, including, but not limited to, all that certain stock of merchandise, furniture, fixtures, equipment, book accounts, books, bills receivable, cash on hand, cash in banks, deposits, patents, copyrights, trademarks and trade names and all associated good will, source codes, URL's, or related website rights, social media platforms, software and related documents, insurance policies, tax refunds, rebates, insurance refunds and claims, choses in action that are legally assignable, together with

1

the proceeds of any existing non-assignable choses in action that may hereafter be recovered or received by the Assignor, to Assignee. Assignor agrees to execute such additional documents as shall be necessary to accomplish the purposes of this General Assignment.

Without limiting the foregoing this General Assignment specifically includes and covers all claims for refund or abatement of all excess taxes heretofore or hereafter assessed against or collected from the Assignor by the U.S. Treasury Department, and any State or local taxing agency, and the Assignor agrees to sign and execute a Power of Attorney attached hereto as "Schedule C" or all other documents as required to enable said Assignee to file and prosecute, compromise and/or settle, all such claims before the Internal Revenue Service and any State or local taxing agency, and agrees to endorse any tax refund checks relating to the prior operations of said Assignor's business and to deliver such checks to the Assignee.

This General Assignment constitutes a Grant Deed to all real property owned by Assignor (except for real property leases and leasehold interests), whether or not the Assignor's real property is specifically described in this General Assignment.

Assignee is to receive said property, conduct said business, should it deem it proper, and is hereby authorized at any time after the signing hereof by Assignor to sell and dispose of said property upon such time and terms as it may see fit, and is to pay to creditors of Assignor pro rata, the net proceeds arising from the conducting of said business and sale and disposal of said property, after deducting all moneys which Assignee may at its option pay for the discharge of any lien on any of said property and any indebtedness which under the law is entitled to priority of payment, and all expenses, including a reasonable fee to Assignee and its attorneys.

Notwithstanding the foregoing, leases and leasehold interests in real estate are not included in this General Assignment. However, if the Assignee shall determine that the same may be assigned and also that the same has a realizable value for creditors, then the Assignor agrees that upon written demand of the Assignee, it will assign and transfer said lease or leasehold interest to said Assignee, or nominee, for administration under the terms of this General Assignment.

All property assigned to Assignee is hereinafter referred to as "Assigned Property".

Notwithstanding the foregoing, contracts and/or agreements between Assignor and any Labor Union, or Trade Associations and properties exempt from executions, are excluded from this General Assignment and are not hereby assigned.

2.0    Certain Acknowledgments Regarding Transfer. Assignor acknowledges that certain of the assets being assigned under this General Assignment may be subject to restrictions on the use or transfer of such assets, the unauthorized use or transfer of which may result in further damages or claims. Such assets may include, without limitation, intellectual property rights of the Assignor (e.g., trade names, service names, registered and unregistered trademarks and service marks and logos; internet domain names; patents, patent rights and applications therefore, copyrights and registrations and applications therefor; software and source code (and software licenses with respect thereto); customer lists and customer information; know-how, trade secrets, inventions, discoveries, concepts, ideas, methods, processes, designs, formulae, technical data, drawings, specifications, data bases and other proprietary assets (collectively, "Intellectual Property")).

2

Assignor represents and warrants that its officers, directors, shareholders, employees, agents, customers and other third parties have been advised not to use, remove or cause a transfer (other than pursuant to this General Assignment) of any of the assets of Assignor, including without limitation the Intellectual Property, either prior or subsequent to this General Assignment, except as expressly authorized in writing in advance, which written authorization is not inconsistent with or otherwise may constitute a breach of any other written agreement. Except as authorized in writing, which has been disclosed in writing to Assignee, Assignor further represents and warrants that no asset (including, without limitation, the Intellectual Property) has been transferred, used, or removed; in whole or in part, in a manner that interferes with the rights and interests of a third party(ies) in such asset or otherwise may constitute a breach of any contract with such third party(ies).

3.0    Duties of Assignor.

3.1    Mail.  Assignor hereby agrees that all postal correspondence is hereby routed to Assignee through Assignee's method of delivery designed in writing by Assignee.

3.2    Creditor List.  Assignor shall concurrently herewith furnish to ABC SERVICES a true and complete listing of all Assignor's creditors and shareholders including but not limited to name, address, contact information, amount of the claim and a brief description of the claims, together with an affidavit verify same in the form attached hereto as Schedule A.

4.0    Duties of Assignee.

4.1    Care for Assigned Property.  Assignee shall provide commercial reasonable care for the Assigned Property, to the extent that the Assigned Property includes funds and materials necessary to do so.

4.2    Operation of the Business.  Assignee may at Assignee's discretion continue to operate the business of Assignee, pending the sale or other liquidation of the Assigned Property.  Such operation may include the use of independent contractors retained through an outside service and such other consultants, counsel and advisors as Assignee deems appropriate.

4.3    Conduct of the General Assignment for the Benefit of Creditor.  Assignee shall be responsible to conduct this General Assignment for the Benefit of Creditors in accordance with applicable law, including but not necessarily limited to the following:

(a) Within 30 days of the date hereof provide notice to all creditors of the bar date for claims to be filed of not less than 150 and not more than 180 days of the notice;

(b) Conduct the orderly disposition of the Assigned Assets; and

(c) Distribute the proceeds of the disposition of Assigned Assets, less Assignee's fees and expenses in accordance with applicable legal requirements.

3

    (d) Said Assignee is to receive the said property, conduct the said business, should it deem it proper, and is hereby irrevocably authorized at any time after the execution hereof to sell, lease, or otherwise dispose of said property upon such time and terms as it may see fit.

    (e) Said Assignee shall use and apply the net proceeds arising from the conducting of said business and from the sale, or lease or other disposition of said property as follows:

    (1) To deduct therefrom (or to reimburse itself with respect to) all sums which said Assignee may at its option pay for the discharge of any lien on any of said property and any indebtedness which under the law is entitled to priority of payment, and all expenses, including a reasonable fee to the Assignee (as hereinafter defined) and to its attorney, and to the attorney for the Assignor; and, in those instances where a creditors' committee has been selected at any meeting of the creditors of the Assignor (without regard to the actual amount or number of creditors present at such creditors' meeting) then a reasonable fee shall be paid to the attorney appointed by said Creditors' Committee in an amount fixed by the said creditors' committee and said Assignee.

    (2) The balance of the proceeds then remaining shall be paid to the creditors of the Assignor, pro rata, according to the indebtedness due each of them, individually, from the Assignor.

5.0    <u>Compensation to Assignee and Reimbursement of Expenses</u>.  With respect to the fees of the Assignee referred to in paragraph 4.3(e)(1) hereinabove, Assignor hereby expressly and irrevocably agrees as follows:  That the term "a reasonable fee to Assignee", as used herein, is defined as, and includes the following: (a) A minimum fee payable of $50,000.00 shall be paid as a non-refundable deposit concurrently with execution of this assignment, <u>plus</u> and (b) ABC Services hourly rate for services payable on a monthly basis plus actual out-of-pocket expenses,  including but not limited,  to attorneys, accountants, appraisers, liquidators, real estate brokers, and outside vendors or service provider(s). Reasonable compensation does not replace or subsume the reimbursement of all the Assignee's expenses incurred as a result of the administration of the assignment estate from the proceeds generated therefrom.  ABC Services agrees to cap its fee at $50,000 until such time as SunWest Bank's secured claim or any claim subrogated to Sunwest Bank's secured claim is paid in full.. To the extent that all or any portion of the $50,000.00 has been paid to the Assignee by the Assignor same shall be deemed as earned upon receipt as a nonrefundable deposit.

Once the secured claims as stated above are satisfied in full, ABC Services is entitled to a fee of 10% of the total monies collected in connection with this General Assignment and for the collection and liquidation of the assets assigned, but in no event shall ABC Services receive less than $25,000 for the post secured claim satisfaction services, and (c) a fee of 5% shall be charged on distributions to general unsecured creditors. If any undeliverable dividends to unsecured creditors or any reserve of other funds remain unclaimed for a period of one hundred and twenty (120) days after issuance of <u>last</u> distribution checks by the Assignee, ("Unclaimed Funds"), then the same shall become the property of Assignee and used to supplement its fees for services rendered during the administering this General Assignment, and pay for any services rendered post-closing of the assignment estate.

    In an addition to all of the foregoing, when applicable, in the opinion of the Board of Directors of Assignee, an additional and reasonable fee may be taken for special, unusual, or extraordinary services actually performed by Assignee in connection with the operation, management, preservation, or administration of the property of the General Assignment; and, in this connection the Board of Directors

Exhibit A, Page 000004

of the Assignee corporation, or the President of the Assignee corporation, is hereby given the right and
discretion to determine the nature and extent of such special, unusual or extraordinary services, and the
amount of additional fees in connection therewith.

The total of all of said fees shall be paid from the property assigned, and from all of the proceeds
thereof and from any interest, income and increments and any additions thereto.  All of the
aforementioned amounts shall be determined at Assignee's sole discretion and judgment.

6.0   Warranties of Assignee.  While having performed preliminary due diligence, Assignee hereby
relies upon many representations made by Assignor.  Assignee makes no warranties other than the
following:

(a)   A list of creditors and equity holders has been delivered to Assignee along with an
affidavit by Assignor's agents verifying same.

(b)   Assignor has completed Assignee's pro forma due diligence (or tendered an equivalent
version thereof) and has certified that all information provided is true and correct to the best of
its knowledge.

(c)   Assignor also warrants that Assignee did not aid in the completion of said documents.

Apart from the receipt of said documents, Assignee makes no warranties or representations regarding
Assignor's operations.

7.0   Warranties of Assignor.  Assignor represents and warrants to Assignee, acknowledging the
Assignee will be relying upon the warranty of Assignor as follows:

(a)   Assignor has delivered to Assignee a true correct and complete list of creditors and
equity holders, amounts due to each creditor, and contact information for each creditor, amount
of equity held by each equity holder and contact information for each equity holder, along with
an affidavit verifying same;

(b)   Assignor has correctly and completely completed Assignee's pro forma due diligence
(or tendered an equivalent version thereof acceptable in the sole discretion of Assignee) and
has certified that all info provided is true and correct to the best of its knowledge;

(c)   Assignor also warrants that Assignee did not aid in the completion of the documents
referenced in (a) and (b) above;

(d)   That this General Assignment for the Benefit of Creditors has been properly authorized
by all appropriate actions true and correct copies of which are attached hereto as Schedule B
and the each of individual(s) executing this General Assignment on behalf of Assignor are
property authorized to do so;

5

(e)     That all information provided by the Assignor to Assignee with respect to the Assigned Property and/or Assignor's business is true and correct in all material respects and does not fail or omit to state any facts with respect thereto which would be material;

(f)     Assignor has all requisite power and authority to execute, deliver and perform its obligations under this General Assignment, including, without limitation, to transfer the property transferred to the Assignee hereby;

(g)     The execution, delivery and performance by the Assignor of this General Assignment has been duly authorized by all necessary corporate and other action and does not and will not require any registration with, consent or approval of, or notice to or action by, any person (including any governmental authority) in order to be effective and enforceable;

(h)     This General Assignment constitutes the legal, valid and binding obligations of the Assignor, enforceable against Assignor in accordance with their respective terms; and

8.0     <u>Limitations on Liability of Assignee</u>.  Assignor acknowledges that Assignee is acting solely as Assignee in connection with this General Assignment and not in its personal capacity. As a result, Assignor expressly agrees that Assignee, its members, officers and agents shall not be subject to any personal liability whatsoever to any person in connection with the affairs of this General Assignment, except for its own gross negligence and misconduct knowingly and intentionally committed in bad faith. No provision of this Agreement shall be construed to relieve the Assignee from liability for its own gross negligence and misconduct knowingly and intentionally committed in bad faith, except that:

(a)     The Assignee shall not be required to perform any duties or obligations except for the performance of such duties and obligations, as are specifically set forth in this General Assignment, and no implied covenants or obligations shall be read into this General Assignment against the Assignee;

(b)     In the absence of bad faith on the part of the Assignee, the Assignee may conclusively rely, as to the truth, accuracy and completeness thereof, on the statements and certificates or opinions furnished to the Assignee by the Assignor and conforming to the requirements of this General Assignment;

(c)     The Assignee shall not be liable for any error of judgment made in good faith;

(d)     The Assignee's maximum liability under all circumstances shall be limited to the total amount of fees received.

In connection with the foregoing, the General Assignment estate shall defend, indemnify and hold the Assignee and its past and present officers, members, managers, directors, employees, counsel, agents, attorneys, parent, subsidiaries, affiliates, successors and assigns, (collectively, the "Indemnified Persons") harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, charges, expenses and disbursements (including reasonable attorneys' fees and costs) of any kind or nature whatsoever which may at any time be imposed on, incurred by, or asserted against any such Indemnified Person in any way relating to or

6

arising out of this General Assignment, any other document contemplated by or referred to herein or therein, the transactions contemplated hereby or thereby, or any action taken or omitted by any Indemnified Person under or in connection with any of the foregoing, including, without limitation, with respect to any investigation, litigation or proceeding related to or arising out of any of the foregoing, whether or not any Indemnified Person is a party thereto, and including, without limitation, any other Indemnified Claims (defined below) provided, that the General Assignment estate shall have no obligation hereunder to any Indemnified Person with respect to indemnified claims to the extent resulting from the willful misconduct or gross negligence of any Indemnified Person. The foregoing indemnification shall survive any termination of this General Assignment or the transactions contemplated hereby. For purposes hereof, "Indemnified Claims" means any and all claims, demands, actions, causes of action, judgments, obligations, liabilities, losses, damages and consequential damages, penalties, fines, costs, fees, expenses and disbursements (including without limitation, fees and expenses of attorneys and other professional consultants and experts in connection with investigation or defense) of every kind, known or unknown, existing or hereafter arising, foreseeable or unforeseeable, which may be imposed upon, threatened or asserted against, or incurred or paid by, any Indemnified Person at any time and from time to time, because of, resulting from, in connection with, or arising out of any transaction, act, omission, event or circumstance in any way connected with this General Assignment, any other document contemplated by or referred to herein or therein, the transactions contemplated hereby or thereby, or any action taken or omitted by any Indemnified Person under or in connection with any of the foregoing, including but not limited to economic loss, property damage, personal injury or death in connection with, or occurring on or in the vicinity of, any assets of the General Assignment estate through any cause whatsoever, any act performed or omitted to be performed under this General Assignment, any other document contemplated by or referred to herein, the transactions contemplated hereby, or any action taken or omitted by any Indemnified Person under or in connection with any of the foregoing, any breach by Assignor of any representation, warranty, covenant, agreement or condition contained herein or in any other agreement between Assignor and Assignee.

9.0     Reliance.

    (a)     The Assignee may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties.

    (b)     The Assignee may consult with legal counsel to be selected by it, and the Assignee shall not be liable for any action taken or suffered by it in accordance with the advice of such counsel.

    (c)     Persons dealing with the Assignee shall look only to the General Assignment estate to satisfy any liability incurred by the Assignee in good faith to any such person in carrying out the terms of this General Assignment, and the Assignee shall have no personal or individual obligation to satisfy any such liability.

10.0    Resignation and Replacement of Assignee.  The Assignee may resign and be discharged from its duties hereunder at any time; provided that such resignation shall not become effective until

7

a successor Assignee has been appointed by the resigning Assignee and such successor has accepted its appointment in writing delivered to the resigning Assignee. Any successor Assignee appointed hereunder shall execute an instrument accepting such appointment hereunder and shall deliver one counterpart thereof to the resigning Assignee. Thereupon such successor Assignee shall, without any further act, become vested with all the estate, properties, rights, powers, trusts, and duties of his predecessor in connection with the General Assignment with like effect as if originally named therein, but the resigning Assignee shall nevertheless, when requested in writing by the successor Assignee, execute and deliver an instrument or instruments conveying and transferring to such successor Assignee all of the estates, properties, rights, powers and trusts of such resigning Assignor in connection with the General Assignment, and shall duly assign, transfer, and deliver to such successor Assignee all property and money held by it hereunder.

11.0   Miscellaneous Provisions

(a)   Governing Law, Jurisdiction and Venue. This General Assignment shall be construed under and in accordance with the laws of the State of California, including but not limited to Statute of Limitations laws. The state courts of California shall exercise jurisdiction with respect to any dispute hereunder, and the parties agree that the proper venue for any such dispute shall be in Orange County, State of California.

(b)   Construction. This General Assignment is to be viewed as having been drafted jointly by the parties and is not to be construed for or against any of the parties.

(c)   Duplicate Counterparts. This General Assignment may be executed in duplicate counterparts, each of which shall be deemed to be an original; provided, however, such counterparts shall together constitute only one instrument.

(d)   Severability. If any provision of this General Assignment or any portion of any provision of this General Assignment shall be deemed to be invalid, illegal or unenforceable, such invalidity, illegality or unenforceability shall not alter the remaining portion of such provision, or any other provision hereof, as each provision of this General Assignment shall be deemed severable from all other provisions hereof.

(e)   No Third-Party Beneficiary. No term or provision of this General Assignment or the schedules hereto is intended to be, nor shall any such term or provision be construed to be, for the benefit of any person, firm, corporation or any other entity not a party hereto (including, without limitation, real estate brokers and finders), and no such other person, firm, corporation or entity shall have any right or cause of action hereunder.

(f)   Time of Essence. Time is expressly made of the essence as to the performance of each and every obligation and condition of this General Assignment.

(g)   Notices. Any notice or other communication provided for herein or given hereunder to a party hereto must be in writing addressed to the respective party's address listed below, and shall be deemed received upon: (i) actual receipt, or (ii) 24 hours after sent by facsimile (with "answerback" confirmation of facsimile transmission) of receipt by receiving party, or (iii) by overnight delivery by major recognized carrier with written verification of receipt by receiving party or, (iv) five (5) days

Exhibit A, Page 000008

after sent by Certified Mail, Return Receipt Requested.  Each such notice, request or consent shall be deemed effective upon same being 'received' in the fashion as defined above.

Exhibit A, Page 000009

| | |
|---|---|
| If To Assignee | ABC Services Group, Inc.<br>13681 Newport Avenue, Suite 8-609,<br>Tustin, CA 92781<br>Attention: Charles Klaus, President<br>Tel. No.: (949) 922-1211<br>Fax No.: (714) 844-9090<br>Email: chuck@abcservices.group |
| With a copy to<br>Counsel for Assignee: | Jeffrey Broker<br>Broker & Associates, PC<br>18191 Von Karman Ave<br>Irvine, CA 92612<br>Tel. No.:  949-555-2000<br>Email:  JBroker @brokerlaw.biz |
| If To Assignor: | Raymond G Yates |
| With a copy to<br>Counsel for Assignor: | Leonard Shulman<br>8105 Irvine Center Dr, Ste 600<br>Irvine, CA 92618<br>Tel. No.:  949-340-3400<br>Email: LShulman@shbllp.com |

Either party may change its address for notice purposes by giving notice in the manner set forth in this Section.

(h)     Headings.  The headings of this General Assignment are for the purpose of reference only and shall not limit or define the meaning hereof.

(i)     Attorney Fees.  If there is any dispute between the Parties with respect to the Property, this General Assignment, the Deposits, the performance of the obligations hereunder or the effect of a termination under this General Assignment, the prevailing party shall be paid all costs and expenses incurred by the other party in connection with such proceedings, including reasonable attorneys' fees (including fees for the service of salaried attorneys regularly employed by a party) and costs. The parties agree that each of them shall bear its own legal costs and expenses in connection with the negotiation, drafting, execution of this General Assignment

(j)     No Waiver.  A waiver by either party of a breach of any of the covenants, conditions or obligations under this General Assignment to be performed by the other party shall not be construed as

10

Exhibit A, Page 000010

a waiver of any succeeding breach of the same or other covenants, conditions or obligations of this General Assignment.

(k)     Entire Agreement.  This General Assignment constitutes the entire agreement between the Parties.  This General Assignment may not be amended or modified except by an amendment in writing signed by the handwritten signature of each party.  Without limiting the foregoing no exchange of emails shall serve to amend this General Assignment.

(l)     Time is of the Essence.  Time is of the essence in the performance of and conditions set forth in this General Assignment.

(m)     No Adequate Remedy at Law.  Each party hereto acknowledges and agrees that damages will not adequately compensate the other party for a breach of the terms of this General General Assignment and that, as such, each party shall be entitled to specific performance of this General General Assignment.

12.     Arbitration.  All disputes, claims and controversies, including and not limited to all other matters including breach of fiduciary duty, breach of contract, negligence or other tort claims (intentional or unintentional) and/or declaratory or other equitable relief arising under or concerning the performance of this General Assignment shall be submitted to binding arbitration pursuant to the provisions of California Code of Civil Procedure 1282 through 1284.2, inclusive, before one (1) retired California judge or justice selected by agreement of the parties, or from the Business Civil Litigation Panel of Attorneys published by the Administrator for Orange County Arbitration.  If the parties cannot agree upon an arbitrator within ten days after any party demands arbitration, then JUDICATE WEST shall provide the names of three available retired judges on its staff and each party shall be entitled to strike one name.  The remaining judge shall be the selected arbitrator.  If either side refuses to strike an arbitrator within ten days form the service of the names of the arbitrators, then JUDICATE WEST shall decide which of the remaining two shall be selected.  The findings, order or award of the arbitrator may thereafter be entered as a judgment upon petition to the Orange County Superior Court.  It shall be a condition precedent to the subject matter jurisdiction of any court of the State of California that any such disputes, controversies and actions arising out of this agreement or of any services performed as a result of this agreement, including, without limitation, the scope and extent of the issues to be arbitrated, shall first have been determined by arbitration.  You understand and agree that by consenting to arbitrate all disputes and controversies you agree to waive trial by jury.

Assignor initials approving
arbitration provision

[Signatures on next page]

In witness whereof, the parties have executed this General Assignment sufficient to bind themselves as of the date first above written.

11

Exhibit A, Page 000011

Morningside Recovery, LLC                          ABC Services Group, Inc.

By: _____                        By:  Charles Klaus
                                                   Its:  President
Its: __RAYMOND G. YATES__
     __MANAGING MEMBER__

By: _____

Its: _____

12

# SCHEDULE A

## CREDITOR LIST AFFIDAVIT

13

# Affidavit

Attached hereto is a complete list of the creditors and shareholders of Morning Side Recovery, LLC, which list includes names, addresses, cities, states, zip codes, together with the anticipated claim for each creditor of the General Assignment estate.

I declare under penalty of perjury under the laws of the State of California that the information contained in the attached list is true and correct to the best of my knowledge.

Dated:  September 21, 2018

Morningside Recovery, LLC

By: _RAYMOND G. YRES_

Its: _MANAGING MEMBER_

14

Exhibit A, Page 000014

# SCHEDULE B

## CONSENT OF MEMBERSHIP AND MANAGERS TO THE GENERAL ASSIGNMENT FOR THE BENEFIT OF CREDITORS

15

# WRITTEN CONSENT OF THE MEMBERSHIP AND MANAGERS OF MORNINGSIDE RECOVERY, LLC
## (a California Limited Liability Company)
## TO GENERAL ASSIGNMENT FOR THE BENEFIT OF CREDITORSS

On September 21, 2018 as evidenced by their signatures below, and pursuant to the provisions of 17104(I)(1) of the Beverly-Killea Limited Liability Act ("Act"), the authority granted to it by §17150 of the Act, and the provisions of that certain Operating Agreement dated as of March 18, 2002, ("Operating Agreement"), the undersigned being all the members of Morningside Recovery  LLC, ("Company") as authorized at §17001(t) and defined at §17001(x) of the Act, and the undersigned individuals as managers of Company, without a meeting, consented to the following actions:

BE IT RESOLVED:

That any two managers constituting a special majority of this company be, and are, hereby authorized and directed by the managers of this company, in meeting assembled, to make an General Assignment of all assets of the company to ABC Services Group, Inc., a Delaware corporation ("Assignee"), for the pro rata benefit of all creditors of this company, and that any two managers shall be, and they are hereby authorized and directed to execute said General Assignment containing such provisions as may be agreed upon between them and said Assignee, and they are also authorized and directed to execute and deliver to said Assignee, such other deeds, General Assignments, and agreements as may be necessary to carry this resolution into effect.


BE IT FURTHER RESOLVED:

That said assignee for the benefit of creditors be, and it hereby is, authorized to execute and file and prosecute on behalf of this corporation all claims for refund or abatement of all excess taxes heretofore or hereafter assessed against or collected from this corporation and any one officer of this corporation be, and it is, hereby authorized and directed to make, execute and deliver in favor of such person as may be designated by the assignee for the benefit of creditors, a power of attorney on the regular printed form thereof used by the United States Treasury Department so as to authorize said attorney-in-fact to process any tax claims for it on behalf of this company.

The undersigned, being all the Members of this Company, hereby consent to the foregoing action as of the date set forth above.

Raymond G Yates                          99.0%          Series A Voting

By:_____

Raymond J Yates                          1.0%           Series A Voting

By:_____

16

# Schedule C

## POWER OF ATTORNEY

17

# POWER OF ATTORNEY

Morningside Recovery, LLC, (the "Company"), is the Assignor under that certain General Assignment for the Benefit of Creditors, dated as of September 21, 2018. (the "General Assignment"), by and between the Company and ABC Services Group, Inc., a Delaware corporation, as Assignee ("ABC SERVICES").

WHEREAS, pursuant to the General Assignment, the Company is assigning substantially all of its assets to ABC SERVICES to be administered, liquidated and distributed by ABC SERVICES as described therein;

NOW, THEREFORE, in order for ABC SERVICES to fully effectuate the General Assignment and each of the other transactions contemplated thereby, the Company hereby appoints ABC SERVICES its attorney-in-fact and hereby grants to such attorney-in-fact full power and authority to do and perform any and every act and thing whatsoever requisite, necessary, or proper to be done in the exercise of any of the rights and powers herein granted, hereby ratifying and confirming all that such attorney-in-fact shall lawfully do or cause to be done by virtue of this Power of Attorney and the rights and powers herein granted.  ABC SERVICES, acting through any one of its duly appointed officers, and with full power of attorney in the name of, and for and on behalf of the Company, may execute, acknowledge, deliver, and record and document or process required to effectuate the General Assignment, including but not limited to:

(1)	such transfer powers, deeds, bills of sale, General Assignments of leases, General Assignments of liens, General Assignment of notes, General Assignments of any other assets whatsoever, memoranda of General Assignments, and such other instruments of transfer and General Assignment and releases as ABC SERVICES shall determine to be necessary or appropriate to consummate or to provide notice of the transfer of any or all of the Company's assets to ABC SERVICES pursuant to the General Assignment, in form and substance satisfactory to ABC SERVICES, with the execution, acknowledgment, delivery and/or recordation thereof by ABC SERVICES to constitute evidence of such determination and ABC SERVICES's satisfaction thereof;

(2)	such other documents, certificates, receipts, notices, instructions, statements and other writing as ABC SERVICES shall determine to be necessary or appropriate in connection with or to carry out the administration or transfer of the Company' assets as contemplated by the General Assignment, in form and substance satisfactory to ABC SERVICES, with the execution, acknowledgment, delivery and/or recordation thereof by ABC SERVICES to constitute evidence of such determination and ABC SERVICES's satisfaction thereof;

(3)	any amendments to the documents of transfer delivered in connection with the transfer or administration of the Company's assets as contemplated by the General Assignment, as ABC SERVICES shall determine to be necessary or appropriate to vest full right, title and interest of the Company in and to the Company's assets in ABC SERVICES pursuant to the terms of the General Assignment, in form and substance satisfactory to ABC SERVICES, with the execution, acknowledgment, delivery and/or recordation thereof by ABC SERVICES to constitute evidence of such determination and ABC SERVICES's satisfaction thereof; and

18

Exhibit A, Page 000018

(4)     such other documents, certificates, receipts, notices, instructions, statements and other writing as ABC SERVICES shall determine to be necessary or appropriate in connection with or to obtain any refund or abatement of excess taxes heretofore or hereafter assessed against or collected from the Company by the U.S. Treasury Department, and any State or local taxing agency; and

(5)     such other documents, certificates, receipts, notices, instructions, statements and other writing as ABC SERVICES shall determine to be necessary or appropriate in connection with the administration of employee benefit and retirement programs.

ABC SERVICES is hereby empowered to determine in its sole discretion the time or times when, the purpose for and the manner in which any power herein conferred upon it shall be exercised, and the conditions, provisions or covenants of any instrument or document which may be executed by it pursuant hereto.  ABC SERVICES is further empowered take any other action of any type whatsoever in connection with the foregoing which, in the opinion of ABC SERVICES, may be of benefit to, in the best interest of, or legally required to be performed by, the Company.  ABC SERVICES may file and prosecute, compromise and/or settle, all claims before the Internal Revenue Service and any State or local taxing agency as contemplated by the General Assignment.

The foregoing is made for the benefit of, and may be relied upon by, ABC SERVICES, its successor, assigns, agents and representatives.

This Power of Attorney shall be governed by the laws of the State of California, without regard to choose of law principles.

IN WITNESS WHEREOF, the undersigned has executed this Power of Attorney this 21st day of September, 2018, to be effective as of such date.


Morningside Recovery, LLC

By: _____

        Raymond G Yates

Its: _____


By: _____

        [name]

Its: _____


19

# EXHIBIT B



Client Name: ▮▮▮▮▮▮▮

**9. ASSIGNMENT OF BENEFITS** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Client and/or Guarantor, as applicable, hereby appoints as his or her authorized representative, and assigns to, Morningside, all of his or her right, title, and interest in and to, and relating in and to the recovery of, any and all health care benefits otherwise payable to Client or Guarantor or to which Client or Guarantor is entitled for treatment rendered to Client by Morningside.

Client and/or Guarantor also specifically authorizes Morningside to:

- File and prosecute any required appeal or grievance with Client's insurer for payment of medical claims submitted by or on behalf of Morningside.
- File any required complaint, appeal or grievance with the Department of Managed Health Care, Department of Insurance, Department of Labor, or any other regulatory agency for payment of claims submitted by or on behalf of Morningside.
- File any required litigation or arbitration against any health plan and/or health insurer for payment of medical claims submitted by or on behalf of Morningside, and to exert or receive any other rights or benefits under any health plan with respect to the treatment rendered by Morningside. Client and/or Guarantor specifically authorize Morningside to name Client and/or Guarantor, as plaintiff or plaintiffs in such litigation or arbitration against any health plan and/or health insurer or otherwise pursue claims on behalf of Client and/or Guarantor. Client and/or Guarantor hereby also assign to Morningside any right to recover its full billed charges and any expenses and fees incurred for pursuing the claim, as well as all rights, statutory or contractual, to any additional recovery related to health benefits such as treble damages, punitive damages, and/or penalties.
- Discuss Client's personal health information with any applicable health plan or health insurer.
- Client and/or Guarantor specifically authorize any law firm appointed by Morningside to file litigation or arbitration on Client and/or Guarantor's behalf with respect to all of the items listed above.

EXHIBIT B

# CERTIFICATE OF SERVICE

***ABC Services Group, Inc. v. Health Net of California, Inc., et al.***
**8:19-cv-00243-DOC-DFM**
**and all consolidated cases**

I hereby certify that on November 26, 2019, I caused the

## EXHIBITS TO FIRST AMENDED COMPLAINT

to be served upon counsel in the manner described below:

Participants in the case who are registered CM/ECF users will be served by the Central District CM/ECF system.

## VIA THE CENTRAL DISTRICT CM/ECF SYSTEM

***Special Master***
Stephen G Larson
Larson O'Brien LLP
555 South Flower Street Suite 4400
Los Angeles, CA 90071
213-436-4864
slarson@larsonobrienlaw.com

***Defendants Aetna Health and Life Insurance Company and Coventry Health Care, Inc.***
Benjamin H. McCoy
Fox Rothchild LLP
10 Sentry Parkway, Suite 200
Blue Bell, PA 19422
610-397-7972
bmccoy@foxrothschild.com

John Shaeffer
Fox Rothschild LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, CA 90067
310-598-4150
310-556-9828 (fax)
jshaeffer@foxrothschild.com

1

***Defendants Anthem Blue Cross Life and Health Insurance Company, Anthem,
Inc. and The Anthem Companies of California, Inc.***

Steven D Allison
Troutman Sanders LLP 5 Park Plaza Suite 1400
Irvine, CA 92614
949-622-2700
949-622-2739 (fax)
steve.allison@troutman.com

Virginia Bell Flynn
Troutman Sanders LLP
4320 Fairfax Drive
Dallas, TX 75205
804-697-1480
804-698-5109          x)
virginia.flynn@troutman.com

Chad R Fuller
Troutman Sanders LLP
11682 El Camino Real Suite 400
San Diego, CA 92130
858-509-6000
858-509-6040 (fax)
chad.fuller@troutman.com

Samrah R Mahmoud
Troutman Sanders LLP
5 Park Plaza Suite 1400
Irvine, CA 92614
949-622-2700
samrah.mahmoud@troutman.com

***Blue Cross and Blue Shield of Alabama***
Neil J Barker
Neil J Barker APC
225 South Lake Avenue Suite 300
Pasadena, CA 91101
626-440-5980
neiljbarker@sbcglobal.net

2
**CERTIFICATE OF SERVICE**

***Blue Cross and Blue Shield of Kansas City and Health Care Service Corporation***

Jonathan Daniel Gershon
Reed Smith LLP
335 South Grand Avenue Suite 2900
Los Angeles, CA 90071-1514
213-457-8000
jgershon@reedsmith.com

Dan J Hofmeister, Jr
Reed Smith LLP
10 South Wacker Drive Suite 4000
Chicago, IL 60606
312-207-6545
312-207-6400 (fax)
dhofmeister@reedsmith.com

Amir Shlesinger
Reed Smith LLP
355 South Grand Avenue Suite 2900
Los Angeles, CA 90071-1514
213-457-8000
213-457-8080          x)
ashlesinger@reedsmith.com

Farah Tabibkhoei
Reed Smith LLP
355 South Grand Avenue Suite 2900
Los Angeles, CA 90071-1514
213-457-8000
213-457-8080 (fax)
ftabibkhoei@reedsmith.com

***Blue Cross and Blue Shield of Kansas Inc, Blue Cross and Blue Shield of Mississippi and USable Mutual Insurance Company***

Kimberly Ann Klinsport
Foley and Lardner LLP
555 South Flower Street Suite 3300
Los Angeles, CA 90071-2411
213-972-4500
213-486-65  x)
kklinsport@foley.com

Michael A Naranjo
Foley and Lardner LLP
555 California Street Suite 1700
San Francisco, CA 94104
415-434-4484
415-434-4507        x)
mnaranjo@foley.com

Jason Yon-Wai Wu
Foley and Lardner LLP
555 California Street Suite 1700
San Francisco, CA 94104-1520
 415-434-4484
415-434-4507        x)
jwu@foley.com

***Blue Shield of California Life and Health Insurance Company,  California Physician's Service, Centene Corporation, HealthNet of California, Inc. and Centene Company***
Ileana M Hernandez
Manatt Phelps and Phillips LLP
11355 West Olympic Boulevard
Los Angeles, CA 90064
310-312-4228
Ihernandez@manatt.com

John M LeBlanc
Manatt Phelps and Phillips LLP
11355 West Olympic Boulevard
Los Angeles, CA 90064
310-312-4000
jleblanc@manatt.com

Gregory N Pimstone
Manatt Phelps and Phillips LLP
11355 West Olympic Boulevard
Los Angeles, CA 90064-1614
310-312-4000
gpimstone@manatt.com

4
**CERTIFICATE OF SERVICE**

Samuel Alonso Canales
Manatt Phelps and Phillips LLP
11355 West Olympic Boulevard
Los Angeles, CA 90064
310-312-4000
scanales@manatt.com

Craig S. Bloomgarden
Manatt, Phelps & Phillips, LLP
11355 West Olympic Blvd.
Los Angeles, CA 90064-1614
310-312-4000
cbloomgarden@manatt.com

***Bluecross Blueshield of Tennessee Inc.***
Jason Jonathan Kim
Hunton Andrews Kurth LLP
550 South Hope Street Suite 2000
Los Angeles, CA 90071
213-532-2000
kimj@huntonak.com

Ann Marie Mortimer
Hunton Andrews Kurth LLP
550 South Hope Street Suite 2000
Los Angeles, CA 90071-2627
213-532-2000
amortimer@huntonAK.com

John B Shely
Hunton Andrews Kurth LLP
600 Travis Street Suite 4200
Houston, TX 77002
713-220-4200
713-220-4285 (fax)
jshely@huntonak.com

5
**CERTIFICATE OF SERVICE**

1   Bridget B Vick
2   Hunton Andrews Kurth LLP
    600 Travis Street Suite 4200
3   Houston, TX 77002
4   713-220-4200
    bvick@huntonak.com
5

6   ***Humana Employers Health Plan of Georgia Inc., Humana Health Benefit Plan***
    ***of Louisiana Inc, Humana Health Plan of California Inc., Humana Health Plan***
7   ***of Texas Inc., Humana Inc. and Humana Insurance Company***

8
    Ronald K Alberts
9   Gordon Reese Scully Mansukhani LLP
10  633 West Fifth Street 52nd Floor Los Angeles, CA 90071
    213-576-5000
11  ralberts@grsm.com

12
    Sylvia Joo
13  Gordon Rees Scully Mansukhani LLP
14  633 West Fifth Street 52nd Floor
    Los Angeles, CA 900710
15  213-576-5030
16  sjoo@grsm.com

17  ***Defendants United Behavioral Health and United Healthcare Services Inc***

18
    Dylan Scott Burstein
19  Crowell and Moring LLP
20  515 South Flower Street 40th Floor
    Los Angeles, CA 90071
21  213-622-4750
22  213-622-2690 (fax)
    dburstein@crowell.com
23

24  Daniel M Glassman
    Crowell and Moring LLP
25  3 Park Plaza 20th Floor
26  Irvine, CA 92614-8505
    949-263-8400
27  949-263-8414 (fax)
28  dglassman@crowell.com

6
**CERTIFICATE OF SERVICE**

Stephanie V Phan
Crowell and Moring LLP
3 Park Plaza 20th Floor
Irvine, CA 92614-8505
949-263-8400
sphan@crowell.com

***Defendants Scott and White Health Plan, Scott and White Healthcare and Scott and White Care Plans***

Derek Davis
Alan Law
Cooper & Scully, P.C.
505 Sansome Street
Suite 1550
San Francisco, California 94111
415-956-9700
derek.davis@cooperscully.com
alan.law@cooperscully.com

***Defendant ComPsych Corporation***
Elise D. Klein
Lewis Brisbois Bisgaard and Smith
633 West 5th Street, Suite 4000
Los Angeles, CA 90071
Elise.klein@lewisbrisbois.com

***Defendant HMC Healthworks, Inc.***

Rodney James Jacob
Calvo Fisher and Jacob LLP
259 Martyr St.
Suite 100
Hagatna, GU 96910-5200
rjacob@calvofisher.com

*/s/ Craig B. Garner*
Craig B. Garner
*Counsel for Plaintiff*

7
**CERTIFICATE OF SERVICE**