**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 19-00243-DOC-DFM
AND CONSOLIDATED CASES

Date: May 4, 2020

Title: ABC SERVICES GROUP, INC. v. HEALTH NET OF CALIFORNIA, INC. ET AL.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| | |
|---|---|
| Kelly Davis | Not Present |
| Courtroom Clerk | Court Reporter |
| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS): ORDER GRANTING DEFENDANTS' CONSOLIDATED MOTION TO DISMISS [223]**

This action consists of sixty-two consolidated cases, brought by Plaintiff ABC Services Group, Inc. ("Plaintiff") against numerous health insurance companies (collectively, the "Consolidated Defendants"). The "Moving Defendants"—a large subset of the Consolidated Defendants—now bring before the Court their Consolidated Motion to Dismiss ("Motion") (Dkt. 223), accompanied by a supporting Memorandum (Dkt. 223-1). The Court finds this matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78; C.D. Cal. R. 7-15. Having reviewed the moving papers submitted by the parties, the Court now GRANTS the Moving Defendants' Motion.

## I. Background

### A. Facts

The following facts are drawn from the First Amended Complaint ("FAC") (Dkt. 26) in the lead case. Morningside Recovery, LLC ("Morningside") was a treatment

facility offering medical and mental health services for patients suffering from mental health and substance use disorders ("SUDs") at its facility in Irvine, California. FAC ¶ 2. Consolidated Defendants are insurance companies licensed to do business in California as providers of health insurance benefits. *Id.* ¶¶ 3-6. Beginning no later than 2014, Consolidated Defendants offered health insurance plans that included coverage for mental health and SUDs. *See id.* ¶ 12. This coverage included partial reimbursement of costs for mental health and SUD treatment from out-of-network providers, including Morningside. *Id.* ¶¶ 12-14.

Morningside provided necessary medical health and SUD treatment to patients with insurance plans provided by the Consolidated Defendants (collectively, the "Patients"). *Id.* ¶ 16, 19-20. Before undertaking any service or treatment, Morningside sought and received authorization from the Consolidated Defendants to treat the Patients; the Consolidated Defendants also verified that each of the Patients had coverage for the treatment sought. *Id.* ¶¶ 21. Nevertheless, the Consolidated Defendants improperly denied the Patients' claims for reimbursement. *See id.* ¶¶ 19-20, 22, 24.

Each of the Patients assigned to Morningside all of their legal and equitable rights, including the right to recover benefits owed under their insurance plans. *See id.* ¶ 26. In turn, on or about September 21, 2018, Morningside assigned to Plaintiff "all of Morningside's property and every right, claim and interest of Morningside, including the right to prosecute this action for the benefit of Morningside's creditors." *Id.* ¶ 7.

### B. Procedural History

After a series of orders consolidating Plaintiff's cases, on November 27, 2019, the Court ordered Plaintiff to file a summary of Plaintiff's causes of action and the individual Defendants against which they were asserted (Dkt. 125). Plaintiff filed its Response (Dkt. 150) on December 9, 2019. Across the sixty-two consolidated cases, Plaintiff raises various subsets of the following nine claims:

(1) breach of employee welfare benefit plan (recovery of benefits under ERISA);
(2) breach of contract (including third-party beneficiary and assignment theories);
(3) breach of implied contract;
(4) breach of implied covenant of good faith and fair dealing;
(5) promissory estoppel;
(6) *quantum meruit*;
(7) unfair competition;
(8) open book account; and

(9) violation of California Health and Safety Code.

*See generally* Resp.

The Moving Defendants filed the instant Motion (Dkt. 223) on January 21, 2020. On February 5, 2020, Plaintiff filed its Opposition brief (Dkt. 309), and the Moving Defendants submitted a Reply (Dkt. 317) on February 12, 2020.

## II. Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." To meet that standard, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conversely, a complaint must be dismissed under Rule 12(b)(6) when a plaintiff's allegations fail to set forth a set of facts that, if true, would entitle the complainant to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Twombly*, 550 U.S. at 555 (holding that a claim must be facially plausible in order to survive a motion to dismiss). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Making such a determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. On a motion to dismiss, a court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). A court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with the complaint. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555, n.19 (9th Cir. 1990). Under the incorporation by reference doctrine, the court may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir. 2002). The court may treat such a document as "part of the complaint, and

thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).” *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

When a motion to dismiss is granted, the court must decide whether to grant leave to amend. The Ninth Circuit has a liberal policy favoring amendments, and thus leave to amend should be freely granted. *See, e.g.*, *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a court need not grant leave to amend when permitting a plaintiff to amend would be an exercise in futility. *See, e.g.*, *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (“Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.”).

## III. Discussion

### A. The Claims Plaintiff Has Abandoned Are Dismissed

In its Opposition, Plaintiff confirms that it does not oppose the Motion with respect to its claims for breach of implied covenant of good faith and fair dealing, breach of implied contract, unfair competition, and violation of California Health and Safety Code. Opp’n at 6-7. Therefore, these claims are DISMISSED WITH PREJUDICE from any of Plaintiff’s Complaints that raises them.

### B. Plaintiff Does Not Have Standing to Raise Its ERISA Claims

As an assignee pursuing this action on behalf of Morningside’s creditors, Plaintiff lacks standing to bring ERISA claims against the Consolidated Defendants.

Section 502(a)(1)(B) of ERISA, codified as 29 U.S.C. § 1132(a)(1)(B), authorizes health benefit plan participants and beneficiaries to bring civil enforcement actions in federal court to recover plan benefits. *Simon v. Value Behavior Health, Inc.*, 208 F.3d 1073, 1081 (9th Cir. 2000), *overruled on other grounds by Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007). A “participant” is defined as “any employee or former employee . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers [such] employees,” while the term “beneficiary” is defined as “a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder.” 29 U.S.C. § 1002(7)-(8). Healthcare providers are not considered beneficiaries in ERISA’s enforcement provisions, as patients—rather than providers—are the true recipients of ERISA health benefits. *DB Healthcare v. Blue Cross Blue Shield*, 852 F.3d 868, 874-75 (9th Cir. 2017).

While healthcare providers lack direct standing to sue under ERISA, the Ninth Circuit has ruled that providers may bring an ERISA action "derivatively, relying on its patients' assignments of their benefits claims." *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1289 (9th Cir. 2014). ERISA generally allows assignment of rights from a beneficiary to a provider, but benefits may not be assigned when the plan includes an express anti-assignment clause. *DB Healthcare*, 852 F.3d at 876 (citations omitted). When such an assignment exists, healthcare providers may "assert the claims of an ERISA participant or beneficiary." *Id.* For an assignee to have standing, the asserted claims must be within the scope of the assignment. *Id.*

In sum, then, an action to recover benefits under ERISA may be brought by (1) a participant or beneficiary of a plan, or (2) a healthcare provider with a valid assignment. The Ninth Circuit has expressly declined to further extend standing to the assignees of healthcare providers. *Simon*, 208 F.3d at 1081 ("Simon asks us to extend [this rule] to cover not only health care providers but also the assignee of health care providers. We decline."). The *Simon* Court reasoned that allowing providers to sue on behalf of patients "was consistent with Congressional intent in enacting ERISA" by simplifying billing and enhancing coverage. *Id.* By contrast, further expansion of derivative standing "would be tantamount to transforming health benefit claims into a freely tradable commodity," which could potentially "lead to endless reassignment of claims, and . . . allow third parties with no relationship to the beneficiary to acquire claims solely for the purpose of litigating them. We do not see how such a result would further ERISA's purpose." *Id.*

This double-assignment structure is precisely the relationship between Plaintiff and the Patients. As discussed above, the Patients assigned their claims for benefits to Morningside, and Morningside later assigned all its rights—including the right to recover insurance benefits—to Plaintiff. As Plaintiff is neither a beneficiary nor a provider, it does not have standing to pursue an ERISA claim.[1] Plaintiff, moreover, cannot transform itself into a beneficiary or provider by amending its Complaints, rendering amendment futile as to the ERISA claims. The Court therefore DISMISSES WITH PREJUDICE Plaintiff's ERISA claims in each action in which they are raised.

---

[1] Plaintiff contends that a denial of standing would result in a windfall to the Consolidated Defendants and incentivize similarly situated health insurance companies to systematically deny claims and drive a provider out of business—leaving no one with standing to sue for benefits. *See* Opp'n at 32. This argument is not without force. But it is an argument better raised on appeal, as this Court is presently bound by Ninth Circuit precedent to the contrary.

### C. Plaintiff's State Law Claims Are Preempted to the Extent They Relate to a Health Insurance Plan Governed by ERISA

As the Ninth Circuit has explained, ERISA is doubly preemptive of related state law claims. "First, ERISA section 514(a) expressly preempts all state laws 'insofar as they may now or hereafter relate to any employee benefit plan,'" with an exception for insurance, banking, and securities laws. *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005) (citing 29 U.S.C. § 1144(a)-(b)). "Second, ERISA section 502(a) contains a comprehensive scheme of civil remedies to enforce ERISA's provisions. A state cause of action that would fall within the scope of this scheme of remedies is preempted as conflicting with the intended exclusivity of the ERISA remedial scheme." *Id.* (citing 29 U.S.C. § 1132(a); *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 n.4 (2004)).

For purposes of express preemption, state law claims "relate to" an ERISA plan if they have a "reference to" or an "impermissible 'connection with'" an ERISA plan. *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 665 (9th Cir. 2019) (citations omitted). A state law claim has a reference to an ERISA if it is "premised on the existence of an ERISA plan" or if "the existence of the plan is essential to the claim's survival." *Id.* (quoting *Or. Teamster Emp'rs Tr. v. Hillsboro Garbage Disposal, Inc.*, 800 F.3d 1151, 1155-56 (9th Cir. 2015)).

Here, whenever Plaintiff has alleged the breach of an ERISA health insurance plan, its state law claims are premised on that same conduct, i.e., Defendants' allegedly wrongful denial of benefits. Thus, in any of the consolidated cases involving a claim pursuant to an insurance plan governed by ERISA, the associated state law claims are preempted under ERISA's express preemption provision. (Similarly—though the Court need not find a second basis for preemption—they are also preempted for being duplicative of ERISA's exclusive remedial scheme.)

Therefore, all of Plaintiff's state law claims that depend on the existence of an ERISA plan are preempted, and because amendment cannot rescue these claims, they are hereby DISMISSED WITH PREJUDICE.

### D. Plaintiff Fails to State a Claim for Breach of Contract Under Any Legal Theory

As an initial matter, the Court notes that each of Plaintiff's claims for breach of contract is predicated on (1) its status as Morningside's assignee, and (2) its status as an

intended third-party beneficiary of the contracts between the relevant Consolidated Defendants and the Patients.[2]

The Moving Defendants argue that Plaintiff has inadequately pleaded a breach of contract claim, its status as an assignee, and its status as a third-party beneficiary. Mem. at 19-24. Plaintiff responds that its assignments are valid and that it is allowed to bring suit as a third party. Opp'n at 36-37.

Most fundamental is the Moving Defendants' argument that Plaintiff has deficiently pleaded its breach of contract claims. According to the Moving Defendants, "Plaintiff fails to specifically allege the contract terms Moving Defendants allegedly breached, let alone the specific conduct that violated the policies and plans." Mem. at 23. In support of this position, the Moving Defendants cite case law to the effect that dismissal of a breach of contract claim is proper when a plaintiff fails to allege any provision of the contract to support the claim. *Id.* (citing *Miron v. Herbalife Int'l, Inc.*, 11 F. App'x 927, 929 (9th Cir. 2001), and *Manlin v. Ocwen Loan Servicing, LLC*, No. 16-06625-AB (KSx), 2018 WL 3326656, at *4 (C.D. Cal. June 5, 2018)).

Plaintiff, for its part, makes only a brief and oblique response to this argument, claiming that "Plaintiff is not required to specifically plead the contents of an agreement in the exclusive possession of the Consolidated Defendants because it is not necessary to particularize matters presumptively within the knowledge of a defendant." Opp'n at 36. Plaintiff cites only California cases in support of this proposition. *Id.* As a federal court, however, this Court must apply the pleading standards elaborated in the Federal Rules of Civil Procedure and the relevant case law.[3] And Plaintiff does not otherwise respond to the Moving Defendants' argument that its breach of contract claims are deficiently pleaded.

---

[2] Plaintiff's Response (Dkt. 150) lists "Breach of Contract," "Breach of Contract (Third Party Beneficiary)," and "Breach of Contract (Assignment)" as separate claims brought in various actions. *See generally* Resp. Four cases are listed as including a "Breach of Contract" claim, Resp. at 11, but three of these Complaints predicate the contract claim on Plaintiff's status as an assignee and third-party beneficiary, *see* Case No. 8:19-cv-00776-DOC-DFM, Compl. (Dkt. 1) ¶¶ 72-73; Case No. 8:19-cv-00789-DOC-DFM, Compl. (Dkt. 1) ¶¶ 72-73; Case No. 8:19-cv-00803-DOC-DFM, Compl. (Dkt. 1) ¶¶ 77-78. The fourth does not contain a breach of contract claim at all and appears to have been listen in error. *See generally* Case No. 8:19-cv-00677-DOC-DFM, Compl. (Dkt. 1). Finally, Plaintiff's Response lists the same set of case numbers under "Breach of Contract (Third Party Beneficiary)" and "Breach of Contract (Assignment)." Resp. at 19-25.

[3] "Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *In re County of Orange*, 784 F.3d 520, 524-24 (9th Cir. 2105). This rule also applies, as here, to state law claims over which a federal court has supplemental jurisdiction. *See Nathan v. Boeing Co.*, 116 F.3d 422, 423 (9th Cir. 1997).

Courts in this district, and many others, have found that a failure to address an argument in opposition briefing constitutes a concession of that argument. *See, e.g.*, *Johnson v. Macy*, 145 F. Supp. 3d 907, 918 (C.D. Cal. 2015) (citing *Tatum v. Schwartz*, No. S-06-01440 DFL EFB, 2007 WL 419463, at *3 (E.D. Cal. Feb. 5, 2007), for the proposition that the plaintiff "tacitly concedes this claim by failing to address defendants' argument in her opposition"); *Day v. D.C. Dep't of Consumer & Regulatory Affairs*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002) ("If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded.").

In this instance, the Court finds that, by failing to meaningfully respond to the Moving Defendants' argument, Plaintiff has effectively conceded the issue as to whether its breach of contract claims are adequately pleaded. However, because Plaintiff does not yet have access to all of the plan documents, Opp'n at 34, and because Plaintiff appears to be mistakenly relying on a state law pleading standard, *see id.* at 36, the Court finds that amendment would not necessarily be futile.

Therefore, as discussed above, any breach of contract claims (whether on an assignment or third-party beneficiary theory) that relate to an ERISA plan are preempted and dismissed with prejudice. Plaintiff's remaining (i.e., non-ERISA) breach of contract claims are hereby DISMISSED WITHOUT PREJUDICE.

### E. Plaintiff Fails to State a Claim for Promissory Estoppel

The Moving Defendants argue that Plaintiff's promissory estoppel claims fail to allege a clear and unambiguous promise, do not involve promises made to Plaintiff, and are based on bargained-for exchanges. Mem. at 32-34. Plaintiff responds that it was not the one who bargained with the Moving Defendants and that it has adequately pleaded all the elements of a promissory estoppel claim. Opp'n at 39-40.

Under California law, a claim for promissory estoppel requires (1) the existence of a promise with clear and unambiguous terms; (2) reliance on the promise by the promisee; (3) that the reliance was reasonable and foreseeable; and (4) that the promisee was injured by relying on the promise. *Orcilla v. Big Sur, Inc.*, 244 Cal. App. 4th 982, 1007 (2016) (citing *Jones v. Wachovia Bank*, 230 Cal. App. 4th 935, 945 (2014)).

Plaintiff's promissory estoppel claims are predicated on the authorization and verification of benefits that Plaintiff sought from the Moving Defendants before treating any of the Patients. *See* Opp'n at 40 (referring to "the authorization and/or verification process"); *see also* member case No. 8:19-cv-00777-DOC-DFM, 1st Am. Compl.

(Dkt. 34) ¶¶ 247-251 (alleging, inter alia, that “[a]s part of verifying benefits and authorizing treatment when necessary, and in multiple communications following admissions and the submission of claims, Defendants expressed a clear promise to pay Plaintiff at its usual and customary rates”). The Moving Defendants contend that, as a matter of California law, the authorization and verification process cannot support a claim for promissory estoppel.

Indeed, other courts in the Central District of California have held that “within the medical insurance industry, an insurer’s verification is not the same as a promise to pay.” *TML Recovery, LLC v. Humana Inc.*, No. SA CV 18-00462-AG (JDEx), 2019 WL 3208807, at *4 (C.D. Cal. Mar. 4, 2019) (quoting *Cedars Sinai Med. Ctr. V. Mid-West Nat’l Life Ins. Co.*, 118 F. Supp. 2d 1002, 1008 (C.D. Cal. 2000). California state courts have reached a similar conclusion. For example, in *Pacific Bay Recovery, Inc. v. California Physicians’ Services, Inc.*, 12 Cal. App. 5th 200 (2017), the plaintiff alleged that it was led to believe it would be paid in accordance “with usual, reasonable and customary charges.” *Pac. Bay Recovery*, 12 Cal. App. 5th at 215. Similarly, Plaintiff here alleges that Defendants “promise[d] to pay Plaintiff at its usual and customary rates.” The California Court of Appeal in *Pacific Bay Recovery* held that, without “more detailed allegations that [the defendant] authorized a certain amount of treatment or agreed to pay a specific rate,” the plaintiff had failed to allege “a promise clear and unambiguous in its terms.” *Id.* at 215 & n.6.

This body of case law, as illustrated by the foregoing citations, suggests that Plaintiff’s allegations about the authorization and verification process are inadequate to support a promissory estoppel claim. Following *Pacific Bay Recovery*, Plaintiff would at least need to allege more specific promises than those found in its Complaints. And, furthermore, Plaintiff’s Opposition does not respond to, or even mention, the Moving Defendants’ argument about the sufficiency of authorization and verification as a basis for a promissory estoppel claim. As a result, the Court finds that Plaintiff’s claims for promissory estoppel should be dismissed and that amendment would be futile. The promissory estoppel claims are accordingly DISMISSED WITH PREJUDICE.

### F. Plaintiff Fails to State a Claim for *Quantum Meruit*

According to the Moving Defendants, Plaintiff’s claim for *quantum meruit* fails because Plaintiff does not allege that the Moving Defendants requested Morningside’s services, and because Morningside did not benefit or intend to benefit the Moving Defendants. *E.g.*, Reply at 24-25. Plaintiff responds that it need only allege that it performed services for the Patients at the request of the Moving Defendants, along with a

reasonable representation that the Moving Defendants would pay for said services. *See* Opp'n at 41.

*Quantum meruit* exists as a cause of action because "the law implies a promise to pay for services performed under circumstances disclosing that they were not gratuitously rendered." *Huskinson & Brown v. Wolf*, 32 Cal. 4th 453, 458 (2004) (quoting *Long v. Rumsey*, 12 Cal. 2d 334, 342 (1938)). However its elements are enumerated, California courts have held that, as an irreducible minimum, "a plaintiff must establish both that he or she was acting pursuant to either an express or implied request for services from the defendant and that the services rendered were intended to and did benefit the defendant." *Ochs v. PacifiCare of Cal.*, 115 Cal. App. 782, 794 (2004) (citing *Day v. Alta Bates Med. Ctr.*, 98 Cal. App. 4th 243, 248 (2002)). When a benefit is conferred on a third party, "courts have required that there be a specific request therefor from the defendant." *Gateway Rehab and Wellness Ctr., Inc. v. Aetna Health of Cal., Inc.*, No. SA CV 13-0087-DOC (MLGx), 2013 WL 1518240, at * (C.D. Cal. Apr. 10, 2013) (citations omitted).

In similar insurance cases, federal and state courts have found that authorization of treatment and verification of benefits—the basis for Plaintiff's *quantum meruit* claim—are insufficient to state a claim for *quantum meruit*. *See, e.g.*, *Namdy Consulting, Inc. v. UnitedHealthcare Ins. Co.*, No. 18-cv-01283-RSWL-KS, 2018 WL 6430119, at *3 (C.D. Cal. July 11, 2018) ("Where, as here, the patient initiates the request for treatment and the hospital contacts the insurer for authorization, the insurer makes no express or implied request."); *Pac. Bay Recovery*, 12 Cal. App. 5th at 215 (holding insufficient, absent greater detail, an allegation that the insurer would pay the provider in line "with usual, reasonable and customary charges"). Plaintiff, moreover, alleges that Morningside "provided mental health and SUD treatment services to the [insured] Patients . . . preceded by authorization and verification of benefits by Defendant." *E.g.*, member case No. 8:19-cv-00776-DOC-DFM, Compl. (Dkt. 1) ¶ 121. But Plaintiff does not allege that any Moving Defendant *requested* that Plaintiff treat any of the Patients (as opposed to *authorizing* treatment and verifying benefits).

The Court therefore finds that Plaintiff's claims for *quantum meruit* should be dismissed. Because Plaintiff's Opposition does not respond to the Moving Defendants' challenges regarding the legal elements of a "request for services" and a "benefit [to] the defendant," the Court further finds that amendment would be futile; the *quantum meruit* claims are therefore DISMISSED WITH PREJUDICE.

### G. Plaintiff Fails to State a Claim for Open Book Account

The Moving Defendants argue that Plaintiff has not and cannot state a claim for open book account because no Defendant agreed to be bound by a book account and because the transactions between Plaintiff and the Moving Defendants cannot legally be characterized as a book account. Mem. at 37-39. Plaintiff responds that its Complaints allege sufficient facts to plead this cause of action. Opp'n at 37-38.

Under California law, in relevant part, a "book account" is defined as follows:

> The term "book account" means a detailed statement which constitutes the principal record of one or more transactions between a debtor and a creditor arising out of a contract or some fiduciary relation, and shows the debits and credits in connection therewith, and against whom and in favor of whom entries are made, is entered in the regular course of business as conducted by such creditor or fiduciary, and is kept in a reasonably permanent form and manner.

Cal. Civ. Proc. Code § 337a (West 2020).

Alongside this statutory definition, California courts have expounded additional elements of a claim for open book account. Most important, for the purposes of the instant Motion, is that "[a] book account is created by the agreement or conduct of the parties in a commercial transaction." *H. Russell Taylor's Fire Prevention Serv., Inc. v. Coca Cola Bottling Corp.*, 99 Cal. App. 3d 711, 728 (1979). Put differently, if there is "no evidence of an agreement" between the parties to form a book account, and if the parties' conduct does not "show that they intended or expected such an account would be created," then "there is insufficient evidence to support the finding of an open book account." *See Maggio, Inc. v. Neal*, 196 Cal. App. 3d 745, 752 (1987). To find such an agreement or expectation, a court must find that

> the parties intend that the individual items of the account shall not be considered independently, but as a connected series of transactions, and that the account shall be kept open and subject to a shifting balance as additional related entries of debits and credits are made, until it shall suit the convenience of either party to settle and close the account, and where, pursuant to the original express or implied

> intention, there is but one single and indivisible liability arising from such series of related and reciprocal debits and credits.

*R.N.C., Inc. v. Tsegeletos*, 231 Cal. App. 3d 967, 972 (1991).

Simply put, Plaintiff has failed to plead any of the above elements for open book account under California law. In its Opposition, to demonstrate the sufficiency of its allegations, Plaintiff directs the Court to its First Amended Complaint in one of the member cases, No. 8:19-cv-00777-DOC-DFM ("19-00777 FAC") (Dkt. 34). Opp'n at 38. In relevant part, Plaintiff alleges that "Defendants became indebted to Plaintiff on an open book account in a sum not less than $1,054,233.14," and that there is "owing and unpaid an open book account in the sum not less than $1,054,233.14." 19-00777 FAC ¶¶ 243-244.[4] Unfortunately for Plaintiff, this citation does not help its argument in the slightest.

At the outset, these are merely conclusory allegations that present nothing more than "labels and conclusions." *See Twombly*, 550 U.S. at 555. While "a formulaic recitation of the elements of a cause of action will not do," *id.*, Plaintiff here has recited only the *name* of the cause of action and the amount supposedly owed. As such—California law aside—the Federal Rules of Civil Procedure require dismissal of Plaintiff's claims for open book account. And although the Moving Defendants raised the requirements of California law in their Memorandum, Plaintiff's Opposition fails to address that line of argument. The Court therefore finds that Plaintiff has effectively conceded the Moving Defendants' argument regarding California law. *See, e.g.*, *Johnson*, 145 F. Supp. 3d at 918.

Because Plaintiff's claims for open book account are insufficient to survive a motion to dismiss, and because Plaintiff's Opposition does not respond to the Moving Defendants' challenges under state law, the Court finds that dismissal is proper, and that amendment would be futile. The claims for open book account are therefore DISMISSED WITH PREJUDICE.

---

[4] As an additional example, in member case No. 8:19-cv-01011-DOC-DFM, Plaintiff's Second Amended Complaint (Dkt. 30) presents substantially identical allegations in support of the claim for open book account. *Id.* ¶¶ 119-120.

### H. The Court Has Personal Jurisdiction over the Moving Defendants

Finally, the Moving Defendants argue that the Court lacks personal jurisdiction over the out-of-state Defendants. Mem., Ex. B, at 2-3. Plaintiff responds that the Moving Defendants' conduct establishes minimum contacts justifying the exercise of personal jurisdiction. Opp'n at 41-49.

For a federal court to exercise personal jurisdiction over a nonresident defendant, the defendant must have "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice."[5] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The plaintiff bears the burden of showing that the court has personal jurisdiction over the defendants. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). Where, as here, the motion is based on pleadings and affidavits, and not an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 127–28 (9th Cir. 1995). Therefore, all uncontroverted allegations are accepted as true, and any factual disputes in the affidavits are resolved in the plaintiff's favor. However, "[t]he plaintiff cannot simply rest on the bare allegations of its complaint, but uncontroverted allegations in the complaint must be taken as true." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (quotations omitted).

A court has specific personal jurisdiction if the defendants have certain minimum contacts with the forum state, the controversy arises out of those contacts, and the exercise of jurisdiction is reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–74 (1985). There are three requirements for a court to exercise specific jurisdiction over a non-resident defendant:

(1) The defendant must "purposefully direct his activities" toward the forum.
(2) The claim must be one which arises out of or relates to the defendant's forum-related activities.
(3) The exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

---

[5] A federal court must also consider the long-arm jurisdictional statute of the forum state. Here, though, the California long-arm statute provides that "[a] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ. Proc. Code § 410.10. Thus, the Court's jurisdictional analysis under California law and federal due process is the same. *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 919 (9th Cir. 2011).

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017). In the Ninth Circuit, to gauge purposeful direction towards the forum state in the context of a contract dispute, courts "inquire whether a defendant 'purposefully avails itself of the privilege of conducting activities' or 'consummate[s] [a] transaction' in the forum, focusing on activities such as delivering goods or executing a contract." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (alterations in original) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).

Here, the Court has no difficulty finding that the Moving Defendants are subject to personal jurisdiction in California. The Moving Defendants contracted to sell insurance policies to California patients, who then sought treatment and reimbursement at a California facility, and (according to Plaintiff's allegations) the Moving Defendants authorized that California facility to provide treatment. Through this course of conduct, the out-of-state Defendants "reach[ed] out beyond one state and create[d] continuing relationships and obligations with citizens of another state," rendering them "subject to regulation and sanctions" in California. *See Burger King*, 471 U.S. at 473 (citations omitted). The instant lawsuits also arise out of these minimum contacts, and an insurance company can "reasonably anticipate being haled into [a California] court" when it is accused of failing to reimburse the cost of treatment at a California facility under contracts formed with California residents. *See id.* at 474.

The Court therefore finds it has personal jurisdiction over the Moving Defendants.

## IV. Disposition

For the reasons set forth above, the Court GRANTS Defendants' Motion to Dismiss. In particular, the Court:

—DISMISSES WITH PREJUDICE Plaintiff's claims under ERISA;

—DISMISSES WITH PREJUDICE Plaintiff's state law claims relating to the administration of an ERISA plan;

—DISMISSES WITHOUT PREJUDICE Plaintiff's breach of contract claims relating to non-ERISA plans;

—DISMISSES WITH PREJUDICE Plaintiff's claims for promissory estoppel;

—DISMISSES WITH PREJUDICE Plaintiff's claims for *quantum meruit*;

—DISMISSES WITH PREJUDICE Plaintiff's claims for open book account; and

—DISMISSES WITH PREJUDICE Plaintiff's abandoned claims for breach of the implied covenant of good faith and fair dealing, breach of implied contract, unfair competition, and violation of California Health and Safety Code.

The Court also finds that it has personal jurisdiction over all of the Moving Defendants.

Plaintiff may file a consolidated amended complaint, if so desired, on or before May 18, 2020. If a consolidated amended complaint is filed, it shall clearly list, for each claim, the defendants (and corresponding case numbers) against which that claim is brought.

The Clerk shall serve this minute order on the parties.