CRAIG B. GARNER (CA SBN 177971)
GARNER HEALTH LAW CORPORATION
13274 Fiji Way, Suite 250
Marina Del Rey, CA 90292
Telephone: (310) 458-1560
Facsimile: (310) 694-9025
Email: craig@garnerhealth.com

ROCHELLE J. BIOTEAU (CA SBN 228348)
SQUIRES, SHERMAN & BIOTEAU, LLP
1901 1ST Ave., Suite 415
San Diego, CA 92101
Telephone: (619) 696-8854
Email: rochelle@ssbllp.com

DARON L. TOOCH (CA SBN 137269)
KING & SPALDING LLP
533 West  Fifth St., Suite 1600
Los Angeles, CA 90071
Telephone:  (213) 443-4355
Email:  dtooch@kslaw.com

Attorneys for PLAINTIFF ABC SERVICES GROUP, INC., in its capacity as
assignee for the benefit of creditors of MORNINGSIDE RECOVERY, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| ABC SERVICES GROUP, INC., a Delaware corporation, in its capacity as assignee for the benefit of creditors of MORNINGSIDE RECOVERY, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>UNITED HEALTHCARE SERVICES, INC.; UNITED BEHAVIORAL HEALTH; OPTUM SERVICES, INC; | Lead Case No. 8:19−cv−00243-DOC-DFM<br><br>Hon. David O. Carter<br><br>**CONSOLIDATED AMENDED COMPLAINT FOR:**<br><br>1.  BREACH OF CONTRACT (THIRD PARTY BENEFICIARY)<br>2.  BREACH OF CONTRACT (ASSIGNMENT) |

USABLE MUTUAL INSURANCE COMPANY, doing business as ARKANSAS BLUE CROSS AND BLUE SHIELD and BLUE CROSS AND BLUE SHIELD OF ARKANSAS BLUE ADVANTAGE; BLUE CROSS AND BLUE SHIELD OF KANSAS, INC.; BLUE CROSS AND BLUE SHIELD OF KANSAS CITY; HEALTH CARE SERVICE CORPORATION, doing business as BLUE CROSS AND BLUE SHIELD OF OKLAHOMA; BLUE CROSS AND BLUE SHIELD OF ALABAMA; ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY; ANTHEM, INC., dba ANTHEM HEALTH, INC.; BLUE CROSS OF CALIFORNIA, INC.; HUMANA HEALTH PLAN OF CALIFORNIA, INC.; HUMANA BEHAVIORAL HEALTH, INC.; HUMANA, INC.; HUMANA INSURANCE COMPANY; AETNA HEALTH AND LIFE INSURANCE COMPANY; BLUECROSS BLUESHIELD OF TENNESSEE, INC.; SCOTT AND WHITE HEALTH PLAN; SCOTT AND WHITE HEALTHCARE; SCOTT AND WHITE CARE PLANS; CIGNA HEALTHCARE OF CALIFORNIA, INC.; CIGNA BEHAVIORAL HEALTH OF CALIFORNIA, INC.; CIGNA HEALTH AND LIFE INSURANCE COMPANY; HMC HEALTHWORKS, INC.; UNITED MEDICAL RESOURCES, INC.; CONNECTICARE, INC.; MEDICA HEALTH PLANS, doing business as MEDICA; PACIFICSOURCE HEALTH PLANS; SIERRA HEALTH AND LIFE INSURANCE COMPANY, INC.; MEDICAL MUTUAL OF OHIO; MEDICAL MUTUAL SERVICES, LLC; GROUP HEALTH PLAN, INC., doing business as HEALTHPARTNERS; GOLDEN

DEMAND FOR JURY TRIAL

RULE INSURANCE COMPANY; AMERIHEALTH INSURANCE COMPANY OF NEW JERSEY, doing business as AMERIHEALTH NEW JERSEY; MERITAIN HEALTH, INC.; BEACON HEALTH OPTIONS, INC.; BEACON HEALTH STRATEGIES, LLC; VALUEOPTIONS OF CALIFORNIA, INC.; COVENTRY HEALTH CARE, INC.; MHNET SPECIALTY SERVICES, LLC; COMMON GROUND HEALTHCARE COOPERATIVE; PROVIDENCE HEALTH PLAN; PROVIDENCE HEALTH ASSURANCE; PROVIDENCE HEALTH & SERVICES; FIRST HEALTH INSURANCE CORPORATION; HEALTHLINK, INC.; MOLINA HEALTHCARE, INC.; and MOLINA HEALTHCARE OF CALIFORNIA, INC.,

Defendants.

**CONSOLIDATED WITH:**

1. 8:19-cv-00531-DOC-DFM (*ABC Services Group, Inc. v. United Healthcare Services, Inc., et al.*)

2. 8:19-cv-00803-DOC-DFM (*ABC Services Group, Inc. v. USAble Mutual Insurance Company, et al.*)

3. 8:19-cv-00776-DOC-DFM (*ABC Services Group, Inc. v. Health Care Service Corporation, et al.*)

4. 8:19-cv-00789-DOC-DFM (*ABC Services Group, Inc. v. Blue Cross and Blue Shield of Alabama, et al.*)

5. 8:19-cv-00677-DOC-DFM (*ABC Services Group, Inc. v. Anthem Blue Cross Life and Health Insurance Company, et al.*)

6. 8:20-cv-00175-DOC-DFM (*ABC Services Group, Inc. v. Humana Behavioral Health, Inc., et al.*)

7. 8:19-cv-00777-DOC-DFM (*ABC Services Group, Inc. v. Defendants Health and Life Insurance Company, et al.*)

8. 8:19-cv-00804-DOC-DFM (*ABC Services Group, Inc. v. Bluecross Blueshield of Tennessee, Inc., et al.*)

9. 8:19-cv-02070-DOC-DFM (*ABC Services Group, Inc. v. Scott and White Health Plan., et al.*)

10. 8:19-cv-02125-DOC-DFM (*ABC Services Group, Inc. v. Cigna Healthcare of California, Inc., et al.*)

11. 8:19-cv-02136-DOC-DFM (*ABC Services Group, Inc. v. HMC Healthworks, Inc., et al.*)

12. 8:19-cv-02138-DOC-DFM (*ABC Services Group, Inc. v United Medical Resources, Inc., et al.*)

13. 8:19-cv-02163-DOC-DFM (*ABC Services Group, Inc. v. Connecticare, Inc., et al.*)

14. 8:19-cv-02164-DOC-DFM and 8:19-cv-02236-DOC-DFM (*ABC Services Group, Inc. v. Medica Health Plans, et al.*)

**15.**   8:19-cv-02165-DOC-DFM (*ABC Services Group, Inc. v. PacificSource Health Plans, et al.*)

**16.**   8:19-cv-02168-DOC-DFM (*ABC Services Group, Inc. v. Sierra Health and Life Insurance Company, Inc., et al.*)

**17.**   8:19-cv-02122-DOC-DFM (*ABC Services Group, Inc. v. Medical Mutual of Ohio, et al.*)

**18.**   8:19-cv-02242-DOC-DFM (*ABC Services Group, Inc. v. Group Health Plan, Inc., et al.*)

**19.**   8:19-cv092184-DOC-DFM(*ABC Services Group, Inc. v. Golden Rule Insurance Company, et al.*)

**20.**   8:19-cv-02180-DOC-DFM (*ABC Services Group, Inc. v. Amerihealth Insurance Company of New Jersey, et al.*)

**21.**   8:19-cv-02182-DOC-DFM (*ABC Services Group, Inc. v. Meritain Health, Inc., et al.*)

**22.**   8:19-cv-02204-DOC-DFM (*ABC Services Group, Inc. v. Beacon Health Options, Inc., et al.*)

**23.**   8:19-cv-02131-DOC-DFM (*ABC Services Group, Inc. v. Coventry Health Care, Inc., et al.* [previously 8:19-cv-09432-DOC-DFM])

**24.**   8:19-cv-02219-DOC-DFM (*ABC Services Group, Inc. v. MHNet Specialty Services, LLC., et al.*)

**25.**   8:19-cv-02210-DOC-DFM (*ABC Services Group, Inc. v. Common Ground Healthcare Cooperative, et al.*)

**26.**   8:19-cv-02172-DOC-DFM (*ABC Services Group, Inc. v. Providence Health Plan, et al.*)

**27.**   8:19-cv-02171-DOC-DFM (*ABC Services Group, Inc. v. First Health Group Corporation, et al.*)

**28.**   8:19-cv-02188-DOC-DFM (*ABC Services Group, Inc. v. HealthLink, Inc., et al.*)

1    **29.**    8:19-cv-02118-DOC-DFM (*ABC Services Group, Inc. v. Molina Healthcare,*
2           *Inc., et al.*)

3    **30.**    8:19-cv-02129-DOC-DFM (*ABC Services Group, Inc. v GHI, Inc., et al.*)[1]

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[1]    The Clerk of the Court entered the default against defendant GHI, Inc., the only named defendant in Case No. 8:19-cv-02129 (ECF No. 343).

CONSOLIDATED AMENDED COMPLAINT -- PAGE 6

Pursuant to the May 4, 2020 Order of this Court (ECF No. 383), ABC SERVICES GROUP, INC., a Delaware corporation ("ABC" or "Plaintiff"), in its capacity as assignee for the benefit of creditors of MORNINGSIDE RECOVERY, LLC, a California limited liability company ("Morningside") complains and alleges in this Consolidated Amended Complaint ("Complaint") against Defendants UNITED HEALTHCARE SERVICES, INC.; UNITED BEHAVIORAL HEALTH; OPTUM SERVICES, INC; USABLE MUTUAL INSURANCE COMPANY, doing business as ARKANSAS BLUE CROSS AND BLUE SHIELD and BLUE CROSS AND BLUE SHIELD OF ARKANSAS BLUE ADVANTAGE; BLUE CROSS AND BLUE SHIELD OF KANSAS, INC.; BLUE CROSS AND BLUE SHIELD OF KANSAS CITY; HEALTH CARE SERVICE CORPORATION, doing business as BLUE CROSS AND BLUE SHIELD OF OKLAHOMA; BLUE CROSS AND BLUE SHIELD OF ALABAMA; ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY; ANTHEM, INC., dba ANTHEM HEALTH, INC.; BLUE CROSS OF CALIFORNIA, INC.; HUMANA HEALTH PLAN OF CALIFORNIA, INC.; HUMANA BEHAVIORAL HEALTH, INC.; HUMANA, INC.; HUMANA INSURANCE COMPANY; AETNA HEALTH AND LIFE INSURANCE COMPANY; BLUECROSS BLUESHIELD OF TENNESSEE, INC.; SCOTT AND WHITE HEALTH PLAN; SCOTT AND WHITE HEALTHCARE; SCOTT AND WHITE CARE PLANS; COMPSYCH CORPORATION; CIGNA HEALTHCARE OF CALIFORNIA, INC.; CIGNA BEHAVIORAL HEALTH OF CALIFORNIA, INC.; CIGNA HEALTH AND LIFE INSURANCE COMPANY; HMC HEALTHWORKS, INC.; UNITED MEDICAL RESOURCES, INC.; CONNECTICARE, INC.; MEDICA HEALTH PLANS, doing business as MEDICA; PACIFICSOURCE HEALTH PLANS; SIERRA HEALTH AND LIFE INSURANCE COMPANY, INC.; MEDICAL MUTUAL OF OHIO; MEDICAL MUTUAL SERVICES, LLC; GROUP HEALTH PLAN, INC., doing business as HEALTHPARTNERS; GOLDEN RULE INSURANCE COMPANY;

AMERIHEALTH INSURANCE COMPANY OF NEW JERSEY, doing business as AMERIHEALTH NEW JERSEY; MERITAIN HEALTH, INC.; BEACON HEALTH OPTIONS, INC.; BEACON HEALTH STRATEGIES, LLC; VALUEOPTIONS OF CALIFORNIA, INC.; COVENTRY HEALTH CARE, INC.; MHNET SPECIALTY SERVICES, LLC; COMMON GROUND HEALTHCARE COOPERATIVE; PROVIDENCE HEALTH PLAN; PROVIDENCE HEALTH ASSURANCE; PROVIDENCE HEALTH & SERVICES; FIRST HEALTH INSURANCE CORPORATION; HEALTHLINK, INC.; MOLINA HEALTHCARE, INC.; and MOLINA HEALTHCARE OF CALIFORNIA, INC. (collectively "Consolidated Defendants" or "Defendants") as follows:

## **THE PARTIES**

1.      ABC is a corporation organized and existing under the laws of the State of Delaware, with its primary place of business located in Santa Ana, California.

2.      Morningside, at all relevant times, provided professional medical and mental health services and rehabilitation care for patients suffering from mental health and substance use disorders ("SUDs") from its location in Irvine, California.

3.      Defendant UNITED HEALTHCARE SERVICES, INC. is, and at all relevant times was a Minnesota corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that UNITED HEALTHCARE SERVICES, INC. is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

4.       Defendant UNITED BEHAVIORAL HEALTH is, and at all relevant times was a California corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.

Plaintiff is informed and believes, and based thereon alleges, that UNITED BEHAVIORAL HEALTH is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California

5. Defendant OPTUM SERVICES, INC. is, and at all relevant times was a Delaware corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits. Plaintiff is informed and believes, and based thereon alleges, that OPTUM SERVICES, INC. is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California

6. Defendant USABLE MUTUAL INSURANCE COMPANY, doing business as ARKANSAS BLUE CROSS AND BLUE SHIELD as well as BLUE CROSS AND BLUE SHIELD OF ARKANSAS TRUE ADVANTAGE is, and at all relevant times was an Arkansas corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits. Plaintiff is informed and believes, and based thereon alleges, that USABLE MUTUAL INSURANCE COMPANY is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

7. Defendant BLUE CROSS AND BLUE SHIELD OF KANSAS, INC. is, and at all relevant times was a Kansas corporation licensed to do business in and

is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that BLUE CROSS AND BLUE SHIELD OF KANSAS, INC. is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California

8.      This paragraph is intentionally left blank.

9.      Defendant BLUE CROSS AND BLUE SHIELD OF KANSAS CITY is, and at all relevant times was a Missouri corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, BLUE CROSS AND BLUE SHIELD OF KANSAS CITY is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

10.     Defendant HEALTH CARE SERVICE CORPORATION, doing business as BLUE CROSS AND BLUE SHIELD OF OKLAHOMA is, and at all relevant times was an Oklahoma corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that HEALTH CARE SERVICE CORPORATION is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

**11.** Defendant BLUE CROSS AND BLUE SHIELD OF ALABAMA is, and at all relevant times was an Alabama corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that BLUE CROSS AND BLUE SHIELD OF ALABAMA is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California

**12.** Defendant ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY is, and at all relevant times was a California corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

**13.** Defendant ANTHEM, INC., dba ANTHEM HEALTH, INC. is, and at all relevant times was an Indiana corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that ANTHEM INC. is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

14.     Defendant BLUE CROSS OF CALIFORNIA, INC. is, and at all relevant times was a California corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that BLUE CROSS OF CALIFORNIA, INC. is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

15.     Defendant HUMANA HEALTH PLAN OF CALIFORNIA, INC. is, and at all relevant times was a California corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that HUMANA HEALTH PLAN OF CALIFORNIA, INC. is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

16.     Defendant HUMANA BEHAVIORAL HEALTH, INC. is, and at all relevant times was a Texas corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits. Plaintiff is informed and believes, and based thereon alleges, that HUMANA BEHAVIORAL HEALTH, INC. is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

**17.**     Defendant HUMANA, INC. is, and at all relevant times was a Delaware corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that HUMANA, INC. is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California

**18.**     Defendant HUMANA INSURANCE COMPANY is, and at all relevant times was a Wisconsin corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits. Plaintiff is informed and believes, and based thereon alleges, that HUMANA INSURANCE COMPANY is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

**19.**     Defendant AETNA HEALTH AND LIFE INSURANCE COMPANY is, and at all relevant times was a Connecticut corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that AETNA HEALTH AND LIFE INSURANCE COMPANY is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

**20.**     Defendant BLUECROSS BLUESHIELD OF TENNESSEE, INC. is, and at all relevant times was an Tennessee corporation licensed to do business in

and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that BLUECROSS BLUESHIELD OF TENNESSEE, INC. is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

21.     Defendant SCOTT AND WHITE HEALTH PLAN is, and at all relevant times was a Texas corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits. Plaintiff is informed and believes, and based thereon alleges, that SCOTT AND WHITE HEALTH PLAN is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

22.     Defendant SCOTT AND WHITE HEALTHCARE is, and at all relevant times was a Texas corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits. Plaintiff is informed and believes, and based thereon alleges, that SCOTT AND WHITE HEALTHCARE is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

23.     Defendant SCOTT AND WHITE CARE PLANS is, and at all relevant times was a Texas corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.

Plaintiff is informed and believes, and based thereon alleges, that SCOTT AND
WHITE CARE PLANS is licensed by the California Department of Insurance
and/or the California Department of Managed Health Care to transact business of
insurance in the State of California, is in fact transacting the business of insurance
in the State of California and is thereby subject to the laws and regulations of the
State of California.

24.     Defendant CIGNA HEALTHCARE OF CALIFORNIA, INC. is, and at
all relevant times was a California corporation licensed to do business in and is and
was doing business in the State of California as a provider of health insurance
benefits.  Plaintiff is informed and believes, and based thereon alleges, that CIGNA
HEALTHCARE OF CALIFORNIA, INC. is licensed by the California Department
of Insurance and/or the California Department of Managed Health Care to transact
business of insurance in the State of California, is in fact transacting the business of
insurance in the State of California and is thereby subject to the laws and
regulations of the State of California.

25.     Defendant CIGNA BEHAVIORAL HEALTH OF CALIFORNIA,
INC. is, and at all relevant times was a California corporation licensed to do
business in and is and was doing business in the State of California as a provider of
health insurance benefits.  Plaintiff is informed and believes, and based thereon
alleges, that CIGNA BEHAVIORAL HEALTH OF CALIFORNIA, INC. is
licensed by the California Department of Insurance and/or the California
Department of Managed Health Care to transact business of insurance in the State
of California, is in fact transacting the business of insurance in the State of
California and is thereby subject to the laws and regulations of the State of
California

26.     Defendant CIGNA HEALTH AND LIFE INSURANCE COMPANY
is, and at all relevant times was a Connecticut corporation licensed to do business
in and is and was doing business in the State of California as a provider of health

insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that CIGNA HEALTH AND LIFE INSURANCE COMPANY is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

27.    Defendant HMC HEALTHWORKS, INC. is, and at all relevant times was a Florida corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that HMC Healthworks, Inc. is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

28.    Defendant UNITED MEDICAL RESOURCES, INC. is, and at all relevant times was a California corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that UNITED MEDICAL RESOURCES, INC. is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

29.    Defendant CONNECTICARE, INC. is, and at all relevant times was a Connecticut corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that CONNECTICARE is

licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

30.     Defendant MEDICA HEALTH PLANS, doing business as MEDICA is, and at all relevant times was a Minnesota corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that MEDICA HEALTH PLANS is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

31.     Defendant PACIFICSOURCE HEALTH PLANS is, and at all relevant times was an Oregon corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits. Plaintiff is informed and believes, and based thereon alleges, that PACIFICSOURCE HEALTH PLANS is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

32.     Defendant SIERRA HEALTH AND LIFE INSURANCE COMPANY, INC. is, and at all relevant times was a Nevada corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that SIERRA HEALTH AND LIFE INSURANCE COMPANY is licensed by the

California Department of Insurance and/or the California Department of Managed
Health Care to transact business of insurance in the State of California, is in fact
transacting the business of insurance in the State of California and is thereby
subject to the laws and regulations of the State of California.

33.     Defendant MEDICAL MUTUAL OF OHIO is, and at all relevant times
was an Ohio corporation licensed to do business in and is and was doing business
in the State of California as a provider of health insurance benefits.  Plaintiff is
informed and believes, and based thereon alleges, that MEDICAL MUTUAL OF
OHIO is licensed by the California Department of Insurance and/or the California
Department of Managed Health Care to transact business of insurance in the State
of California, is in fact transacting the business of insurance in the State of
California and is thereby subject to the laws and regulations of the State of
California.

34.     Defendant MEDICAL MUTUAL SERVICES, LLC is, and at all
relevant times was an OHIO limited liability company licensed to do business in
and is and was doing business in the State of California as a provider of health
insurance benefits.  Plaintiff is informed and believes, and based thereon alleges,
that MEDICAL MUTUAL SERVICES, LLC is licensed by the California
Department of Insurance and/or the California Department of Managed Health Care
to transact business of insurance in the State of California, is in fact transacting the
business of insurance in the State of California and is thereby subject to the laws
and regulations of the State of California.

35.     Defendant GROUP HEALTH PLAN, INC., doing business as
HEALTHPARTNERS is, and at all relevant times was a Minnesota corporation
licensed to do business in and is and was doing business in the State of California
as a provider of health insurance benefits.  Plaintiff is informed and believes, and
based thereon alleges, that GROUP HEALTH PLAN, INC. is licensed by the
California Department of Insurance and/or the California Department of Managed

Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

36.     Defendant GOLDEN RULE INSURANCE COMPANY is, and at all relevant times was an Indiana corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits. Plaintiff is informed and believes, and based thereon alleges, that GOLDEN RULE INSURANCE COMPANY is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

37.     Defendant AMERIHEALTH INSURANCE COMPANY OF NEW JERSEY, doing business as AMERIHEALTH NEW JERSEY is, and at all relevant times was a New Jersey corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits. Plaintiff is informed and believes, and based thereon alleges, that AMERIHEALTH INSURANCE COMPANY OF NEW JERSEY is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

38.     Defendant MERITAIN HEALTH, INC. is, and at all relevant times was a New York corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that MERITAIN HEALTH, INC. is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State

of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

39.     Defendant BEACON HEALTH OPTIONS, INC. is, and at all relevant times was a Virginia corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits. Plaintiff is informed and believes, and based thereon alleges, that BEACON HEALTH OPTIONS, INC. is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

40.     Defendant BEACON HEALTH STRATEGIES, LLC is, and at all relevant times was a Massachusetts limited liability company licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that BEACON HEALTH STRATEGIES, LLC is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

41.     Defendant VALUEOPTIONS OF CALIFORNIA, INC. is, and at all relevant times was a California corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that VALUE OPTIONS OF CALIFORNIA, INC. is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the

business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

42.     Defendant COVENTRY HEALTH CARE, INC. is, and at all relevant times was a Pennsylvania and Connecticut corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that COVENTRY HEALTH CARE, INC. is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

43.     Defendant MHNET SPECIALTY SERVICES, LLC is, and at all relevant times was a Maryland limited liability company, licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that MHNET SPECIALTY SERVICES, LLC is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

44.     Defendant COMMON GROUND HEALTHCARE COOPERATIVE is, and at all relevant times was a corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that COMMON GROUND HEALTH CARE is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of

insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

45.     Defendant PROVIDENCE HEALTH PLAN is, and at all relevant times was an Oregon public benefit corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that PROVIDENCE HEALTH PLAN is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

46.     Defendant PROVIDENCE HEALTH ASSURANCE is, and at all relevant times was an Oregon public benefit corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that PROVIDENCE HEALTH ASSURANCE is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

47.     Defendant PROVIDENCE HEALTH & SERVICES is, and at all relevant times was a Washington corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that PROVIDENCE HEALTH & SERVICES is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of

insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

48.     Defendant FIRST HEALTH INSURANCE CORPORATION is, and at all relevant times was a Delaware corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that FIRST HEALTH INSURANCE COMPANY is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

49.     Defendant HEALTHLINK, INC. is, and at all relevant times was an Illinois corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that HEALTHLINK, INC. is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

50.     Defendant MOLINA HEALTHCARE, INC. is, and at all relevant times was a California corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits. Plaintiff is informed and believes, and based thereon alleges, that MOLINA HEALTHCARE, INC. is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

**51.**     Defendant MOLINA HEALTHCARE OF CALIFORNIA, INC. is, and at all relevant times was a California corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that MOLINA OF HEATHCARE OF CALIFORNIA, INC. is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

## STANDING

**52.**     California law is clear that the assignment of claims "is a good rule – which is why the courts have crafted it over the years even though it appears to contradict the clear text of many insurance policies and the courts' expressed fidelity to contract language." *Fluor Corp. v. Superior Ct.*, 61 Cal. 4th 1175, 1218-19 (2015).  California Insurance Code Section 520 states "[a]n agreement not to transfer the claim of the insured against the insurer after a loss has happened, is void if made before the loss except as otherwise provided."  *See also Yazdi v. Aetna Life & Casualty (Bermuda) Ltd.*, 2019 WL 6720989 at * 4 (C.D. Cal., Jan. 2, 2019) ("California Insurance Code § 520 protects an insured's ability to assign rights under an insurance policy after the loss has occurred.").

**53.**     The flexibility in assignments under California law applies not just from patient to provider, but also to an assignee such as ABC.  A general assignment for the benefit of creditors is a conveyance, without consideration, by a debtor of substantially all of the debtor's property to an assignee in trust for the purpose of applying the property or its proceeds to the payment of the debtor's debts and returning any surplus to the debtor.  It is a voluntary transfer by a debtor of the debtor's property to an assignee in trust for the purpose of applying the property thereof to the payment of the debtor's debts.  An assignment for the

benefit of creditors is an alternative to a Chapter 7 bankruptcy liquidation, whereby the debtor assigns substantially all of its assets to the assignee instead of a bankruptcy trustee for the benefit of the debtor's creditors.

**54.** On or about September 21, 2018, Morningside executed a written Assignment (the "Morningside Assignment") pursuant to California Code of Civil Procedure §§ 493.010 through 493.060 and §§ 1800 through 18902.  Pursuant to the Morningside Assignment, Morningside conveyed to ABC all of Morningside's property and every right, claim and interest of Morningside, including the right to prosecute this action for the benefit of Morningside's creditors.  ABC brings this action in its capacity as the assignee for the benefit of creditors of Morningside pursuant to the Morningside Assignment.  A true and correct copy of the Morningside Assignment is attached hereto and incorporated herein by this reference as <u>Exhibit 1</u>.

**55.** At all relevant times herein, unless otherwise indicated, the Defendants set forth in paragraphs 3, 4, and 5 were the agents and/or employees of each of the remaining Defendants in those paragraphs and were at all times acting within the purpose and scope of said agency and employment, and each of these Defendants has ratified and approved the acts of the agent.  At all relevant times herein, each of the Defendants set forth in paragraphs 3, 4, and 5 had actual or ostensible authority to act on each other's behalf in certifying or authorizing the provision of services, processing and administering the claims and appeals, pricing the claims, approving or denying the claims, directing each other as to whether and/or how to pay claims, issuing remittance advices and EOB statements, and making payments to Plaintiff and/or the Patients.

**56.** At all relevant times herein, unless otherwise indicated, the Defendants set forth in paragraphs 6, 7, 8 and 9 were the agents and/or employees of each of the remaining Defendants in those paragraphs and were at all times acting within the purpose and scope of said agency and employment, and each of these

Defendants has ratified and approved the acts of the agent.  At all relevant times herein, each of the Defendants set forth in paragraphs 6, 7,8 and 9 had actual or ostensible authority to act on each other's behalf in certifying or authorizing the provision of services, processing and administering the claims and appeals, pricing the claims, approving or denying the claims, directing each other as to whether and/or how to pay claims, issuing remittance advices and EOB statements, and making payments to Plaintiff and/or the Patients.

57.     At all relevant times herein, unless otherwise indicated, the Defendants set forth in paragraphs 12, 13, and 14 were the agents and/or employees of each of the remaining Defendants in those paragraphs and were at all times acting within the purpose and scope of said agency and employment, and each of these Defendants has ratified and approved the acts of the agent.  At all relevant times herein, each of the Defendants set forth in paragraphs 12, 13, and 14 had actual or ostensible authority to act on each other's behalf in certifying or authorizing the provision of services, processing and administering the claims and appeals, pricing the claims, approving or denying the claims, directing each other as to whether and/or how to pay claims, issuing remittance advices and EOB statements, and making payments to Plaintiff and/or the Patients.

58.     At all relevant times herein, unless otherwise indicated, the Defendants set forth in paragraphs 15, 16, 17, and 18 were the agents and/or employees of each of the remaining Defendants in those paragraphs and were at all times acting within the purpose and scope of said agency and employment, and each of these Defendants has ratified and approved the acts of the agent.  At all relevant times herein, each of the Defendants set forth in paragraphs 15, 16, 17, and 18 had actual or ostensible authority to act on each other's behalf in certifying or authorizing the provision of services, processing and administering the claims and appeals, pricing the claims, approving or denying the claims, directing each other as to whether

and/or how to pay claims, issuing remittance advices and EOB statements, and making payments to Plaintiff and/or the Patients.

59.     At all relevant times herein, unless otherwise indicated, the Defendants set forth in paragraphs 21, 22, and 23 were the agents and/or employees of each of the remaining Defendants in those paragraphs and were at all times acting within the purpose and scope of said agency and employment, and each of these Defendants has ratified and approved the acts of the agent.  At all relevant times herein, each of the Defendants set forth in paragraphs 21, 22, and 23 had actual or ostensible authority to act on each other's behalf in certifying or authorizing the provision of services, processing and administering the claims and appeals, pricing the claims, approving or denying the claims, directing each other as to whether and/or how to pay claims, issuing remittance advices and EOB statements, and making payments to Plaintiff and/or the Patients.

60.     At all relevant times herein, unless otherwise indicated, the Defendants set forth in paragraphs 24, 25, and 26 were the agents and/or employees of each of the remaining Defendants in those paragraphs and were at all times acting within the purpose and scope of said agency and employment, and each of these Defendants has ratified and approved the acts of the agent.  At all relevant times herein, each of the Defendants set forth in paragraphs 24, 25, and 26 had actual or ostensible authority to act on each other's behalf in certifying or authorizing the provision of services, processing and administering the claims and appeals, pricing the claims, approving or denying the claims, directing each other as to whether and/or how to pay claims, issuing remittance advices and EOB statements, and making payments to Plaintiff and/or the Patients.

61.     At all relevant times herein, unless otherwise indicated, the Defendants set forth in paragraphs 33 and 34 were the agents and/or employees of each of the remaining Defendants in those paragraphs  and were at all times acting within the purpose and scope of said agency and employment, and each of these Defendants

has ratified and approved the acts of the agent.  At all relevant times herein, each of the Defendants set forth in paragraphs 33 and 34 had actual or ostensible authority to act on each other's behalf in certifying or authorizing the provision of services, processing and administering the claims and appeals, pricing the claims, approving or denying the claims, directing each other as to whether and/or how to pay claims, issuing remittance advices and EOB statements, and making payments to Plaintiff and/or the Patients.

**62.** At all relevant times herein, unless otherwise indicated, the Defendants set forth in paragraphs 39, 40, and 41 were the agents and/or employees of each of the remaining Defendants in those paragraphs and were at all times acting within the purpose and scope of said agency and employment, and each of these Defendants has ratified and approved the acts of the agent.  At all relevant times herein, each of the Defendants set forth in paragraphs 39, 40, and 41 had actual or ostensible authority to act on each other's behalf in certifying or authorizing the provision of services, processing and administering the claims and appeals, pricing the claims, approving or denying the claims, directing each other as to whether and/or how to pay claims, issuing remittance advices and EOB statements, and making payments to Plaintiff and/or the Patients.

**63.** At all relevant times herein, unless otherwise indicated, the Defendants set forth in paragraphs 45, 46, 47 were the agents and/or employees of each of the remaining Defendants in those paragraphs and were at all times acting within the purpose and scope of said agency and employment, and each of these Defendants has ratified and approved the acts of the agent.  At all relevant times herein, each of the Defendants set forth in paragraphs 45, 46, 47 had actual or ostensible authority to act on each other's behalf in certifying or authorizing the provision of services, processing and administering the claims and appeals, pricing the claims, approving or denying the claims, directing each other  as to whether and/or how to pay claims,

issuing remittance advices and EOB statements, and making payments to Plaintiff and/or the Patients.

64.     At all relevant times herein, unless otherwise indicated, the Defendants set forth in paragraphs 50 and 51 were the agents and/or employees of each of the remaining Defendants in those paragraphs and were at all times acting within the purpose and scope of said agency and employment, and each of these Defendants has ratified and approved the acts of the agent.  At all relevant times herein, each of the Defendants set forth in paragraphs 50 and 51 had actual or ostensible authority to act on each other's behalf in certifying or authorizing the provision of services, processing and administering the claims and appeals, pricing the claims, approving or denying the claims, directing each other as to whether and/or how to pay claims, issuing remittance advices and EOB statements, and making payments to Plaintiff and/or the Patients.

## JURISDICTION AND VENUE

65.     This Court has diversity jurisdiction under 28 U.S.C. § 1332 and § 1442(a)(1) because these civil actions involve citizens of different states in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest.

66.     This Court also has pendant jurisdiction over the non-ERISA, state law claims as such claims arose from a common nucleus of facts.  *Nishimoto v. Federman Bachrach & Assoc.*, 903 F.2d 709 (9th Cir. 1990).  Likewise, this Court has the authority to maintain pendent jurisdiction even after the federal claims upon which jurisdiction is based have been dismissed or rendered moot. *Herklotz v. Parkinson*, 848 F.3d 894, 897 (9th Cir. 2017);  *Baker v. Farmers Elec. Co-op, Inc.*, 34 F.3d 274, 283 (5th Cir. 1994); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 ("[W]hen a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction . . . over pendent state-law claims.").  With a July 1, 2020 discovery cut-off date (extended

from June 1 due to the pandemic novel coronavirus (COVID-19)) and all of the Consolidated Defendants' responses due by order of this Court on May 8, 2020, the decision to retain the supplemental jurisdiction claims, in additional to the majority of claims before this Court pursuant to diversity jurisdiction, the final decision rests with this District Court Judge.  *Retail Property Trust v. United Broth. of Carpenters and Joiners of Am.*, 768 F.3d 938 (9th Cir. 2014).

**67.**    This Court is the proper venue for this action pursuant to 8 U.S.C. § 1392(b) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this Judicial District, because one or more of the Defendants conducts a substantial amount of business in this Judicial District, and pursuant to 29 U.S.C. § 1132(e)(2) because it is the Judicial District in which the breach occurred.

## **INTRODUCTION**

**68.**    Plaintiff is informed and believes, and based thereon alleges, that none of the claims set forth in this Complaint are governed by ERISA.  On May 4, 2020, this Court dismissed Plaintiff's ERISA claim for relief with prejudice [ECF No. 383, pp. 4-5]. [2]  While Plaintiff is not yet in possession of all of the plan documents in this action, *see* May 4, 2020 Order [ECF No. 393, p. 8], in the event a claim governed by ERISA is mistakenly included in this Complaint, once known to Plaintiff the claim shall be withdrawn.

**69.**    As of 2014, the 2010 Patient Protection and Affordable Care Act (the "ACA") required health insurance plans, including those sold by Defendants, to

---

[2]    Once Plaintiff has complied with its meet and confer obligations under the Local Rules for the Central District of California, Plaintiff will seek an order from this court under Federal Rules of Civil Procedure, Rule 54(b), to enter partial judgment on Plaintiff's claim for relief under ERISA.  Due to the distinctive nature of the ERISA claims, Plaintiff will *not* seek a stay of this action.

CONSOLIDATED AMENDED COMPLAINT -- PAGE 30

provide ten categories of "essential health benefits," including mental health and substance abuse treatment.  42 U.S.C. § 18022.

70.     At all relevant times herein, Morningside was a non-contracting (as to Defendants) mental and SUD treatment and rehabilitation facility operating in Orange County, California, also referred to as a "non-contracted" or "out-of-network" provider.  At all relevant times herein, Morningside offered a therapeutically planned rehabilitation intervention environment for the treatment of individuals with behavioral concerns and SUD.

71.     At all relevant times herein, Morningside provided a finite number of services to its patients, all of which are identified by either the Healthcare Common Procedure Coding System ("HCPCS") Codes or the Current Procedural Terminology ("CPT") Codes, including but not limited the following:

    a.    H0010:  alcohol and/or drug services, sub-acute detoxification (residential addiction program inpatient);

    b.    H0018:  alcohol and drug abuse treatment services, short-term residential treatment (non-hospital);

    c.    H0035: partial hospitalization treatment;

    d.    H0015: intensive outpatient program;

    e.    90792: psychiatric diagnostic evaluation;

    f.    H0048, 80320, 80305, G0434, and G0477: drug testing procedures;

    g.    90876, 90837 and 90853: individual and group therapy sessions.

72.     Plaintiff is informed and believes, and based thereon alleges, that Defendants generally enter into private agreements with health care facilities thereby extending to them "in network" provider status.  Out-of-network claims are distinguished by the fact that when members/patients obtain health care services from an out-of-network provider, like Morningside, members/patients are

responsible for charges that the plan might not cover, or that exceed Defendants' reimbursement obligation to members/patients under the Plans.

**73.** Plaintiff is informed and believes, and based thereon alleges, that this practice is known to Defendants and others in the industry as "steerage", which is a method by which facilities that maintain in-network status may refer patients to each other pursuant to in-network agreements. Plaintiff is further informed and believes, and based thereon alleges, that Defendants concludes that referrals to and amongst facilities within the in-network community are permitted without fear of reprisal by state regulatory commissions that prohibit patient referrals for a fee, and the in-network status also protects members/patients from incurring excessive facility charges that are often imposed when a patient uses an out-of-network facility.

**74.** Morningside provided and rendered services, SUD and/or mental health treatment to members, subscribers and insured of Defendants, each of whom was a patient of Morningside and hereinafter referred to collectively as the "Patients". As a result, Morningside, and now ABC, has became entitled to reimbursement, remuneration and/or payment from Defendants for those services and supplies Morningside rendered to the Patients.

**75.** Plaintiff is informed and believes, and based thereon alleges, that some or all of the Patients had express coverage for mental health and SUD treatment services as a delineated benefit of *non*-ERISA plans which were underwritten and/or administered by Defendants (individually a "Plan" or collectively the "Plans").

**76.** Plaintiff is informed and believes, and based thereon alleges, that some or all of the Patients were plan participants and/or beneficiaries of the Plans. Plaintiff is further informed and believes, and based thereon alleges, that some or all of the Patients were entitled to be reimbursed for the cost of mental health and SUD treatment as the benefit from Defendants' Plans, policies and insurance

agreements governing the relationship between each Patient and Defendants (collectively the "Defendants' Plans").  Plaintiff is informed and believes, and based thereon alleges, that each of the Defendants' Plans provided coverage for both in and out-of-network mental health providers, and for admission to treatment centers for SUD treatment by SUD treatment providers and related services received on an outpatient basis, inpatient basis, partial inpatient basis and/or intensive outpatient basis, including but not limited to coverage for the Services provided by Morningside.

**77.** Plaintiff is informed and believes, and based thereon alleges, that certain Patients had preferred provider organization ("PPO") plan benefits or point of service ("POS") plan benefits that allowed them to seek medically necessary benefits, whether in-network or not and were entitled to reimbursement for their claims because Morningside was an out-of-network provider for Defendants.  The Patients' claims should not have been denied or underpaid as Defendants' Plans provide coverage for the very services performed by Morningside, including but not limited to coverage for mental health and SUD treatment.

**78.** Plaintiff is informed and believes, and based thereon alleges, that each of the Patients whose claims are at issue in this lawsuit requirement treatment for SUD and/or were suffering from serious medical and mental health concerns, sometimes related to their addictions and sometimes unrelated.  Each of the Patients who did choose PPO insurance rather than health maintenance organization ("HMO") insurance through their employers make this decision so that they could receive plan benefits from the physicians and other medical providers of their choice, regardless of whether the health care practitioners were in-network or out-of-network with Defendants.  Defendants, who administer and/or underwrite the PPO insurance for the Patient's employers, advertise, publicize and represent on their websites, in their literature and in commercials that the benefit of

their PPO policies include the freedom to choose any doctor for any and all health care needs.

**79.** Morningside requested that Defendants authorize the Patients to undergo treatment at Morningside for SUD treatment and for Defendants to authorize Morningside to provide the same treatment and care to the Patients. Plaintiff is informed and believes, and based thereon alleges, that Defendants authorized the Patients to undergo mental health and SUD treatment at Morningside and verified that each of the Patients had coverage which included coverage for the treatment Morningside provided.  A true and correct copy of a sample, express authorization from one of the Defendants is attached hereto and incorporated by this reference as Exhibit 2.

**80.** Plaintiff is informed and believes, and based thereon alleges, that no provisions in the Plans justified the failure to issue a final decision or denial on any of the Patient claims, and no provision in the subject Plans justified the failure and refusal of Defendants to issue an Explanation of Benefits ("EOB") statement, delineating and explaining the justification or rationale for refusing to pay, cover and reimburse the Patient claims or to adjust those claims.  These failures and refusals by Defendants were therefore arbitrary, capricious and a breach of Defendants fiduciary duties to plan participants.  Plaintiff is informed and believes, and based thereon alleges, that these failures and refusals were also violative of California state law.

**81.** Plaintiff is informed and believes, and based thereon alleges, that for each Plan involved in this lawsuit, the terms of the Plan: (1) provided coverage for each of the services, supplies and treatments rendered by Morningside to each Patient for whom reimbursement, payment and coverage is sought; and (2) dictated that these covered services be paid according to a specific reimbursement rate (such as the reasonable and customary fees for services charged by Morningside or according to other formulae or allowable rates expressly and specifically provided

in the Plans. Plans from the Consolidated Defendants are set forth, *infra*, at paragraphs 117, 122, 127, 132, 137, 142, 147, 152, 157, 162, 167, 172, 177, 182, 187, 192, 197, 202 207, 212, 217, 222, 227, 232, 237, 242, 247, 252, 257, 262, and 267.

**82.**     Each of the Patients have assigned to Morningside all of their legal and equitable rights to payment under California law with respect to the Plans in writing, including but not limited to their rights to recover the benefits owed to them by Defendants to Morningside, by and through an irrevocable assignment of all of their rights, title and interest in and  to the claims against Defendants.  These assignments conferred up on Morningside and/or Plaintiff the right to stand in the shoes of the Patients and to assert all of the rights held by the Patients as to Defendants and/or as to the Plans administered by Defendants, including but not limited to all rights, powers and equitable remedies of the Patients, the right of Plaintiff to substitute in as a party or plaintiff in any past, present or future litigation regarding the Patient's claims against Defendants, the right to the proceeds of all legal fees and costs, if specifically awarded, and any interest if specifically awarded, and the right to make and effect collections, including the commencement of legal proceedings on behalf of the Patients.  A true and correct copy of a sample assignment signed by the Patients is attached hereto and incorporated herein by this reference as <u>Exhibit 3</u> as if set forth in full. Additional assignments signed by the Patients are included hereinbelow, *infra* paragraphs 114, 119, 124, 129, 134, 139, 144, 149, 154, 159, 164, 169, 174, 179, 184, 189, 194, 199, 204, 209, 214, 219, 224, 229, 234, 239, 244, 249, 254, 259 and 264.

**83.**     California law favors assignments to such an extent that even a provision in a contract or a rule of law against assignment does not preclude the assignment of money due or to become due under the contract or of money damages for the breach of the contract.  *See, e.g., Gottlied v. Alphabet Inc.*, 2018

WL 2010976, at *4 (N.D. Cal., Apr. 30, 2018); *Trubowitch v. Riverbank Canning Co.*, 30 Cal. 3d 335, 339 (1947).

84.    To the extent required under California state law, in compliance with the terms of each Plan, Plaintiff, Morningside and/or the Patients have exhausted any and all claims review, grievance, administrative appeals, and appeals requirements by submitting letters, appeals, grievances, requests for reconsideration and request for payment to Defendants.

85.    Alternatively, and to the extent required under California law, all review, appeal, administrative grievances or complaint procedures are excused as a matter of law, are violative of Plaintiff's due process rights, are or would be futile, or are otherwise unlawful, null, void and unenforceable.  Defendants' pattern of behavior and refusal to reimburse Plaintiff rendered all potential administrative remedies futile.  As a result of Defendants' actions and/or omissions, Defendants are estopped from asserting that Plaintiff or Morningside has failed to exhaust its administrative remedies under the Plans.  Alternatively, by Defendants' failure and refusal to establish, maintain and follow a reasonable claim procedure process, Plaintiff and/or its Patients have exhausted the administrative remedies available under the Plans and are entitled to pursue this action, inasmuch as Defendants have failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim, in violation of California state law.  Under California law, "an insurer is precluded from refusing to honor an insured's assignment of the right to invoke defense or indemnification coverage regarding that loss. This result obtains even without consent by the insurer. – and even though the dollar amount of the loss remains unknown or undetermined until established later by a judgment or approval settlement."  *Fluor Corp., supra*, 61 Cal. 4th at 1224.

//

//

//

## **PLAINTIFF'S CLAIMS AGAINST DEFENDANTS**

**86.**     Plaintiff alleges below two separate claims for relief against each named Defendant, all of which were originally filed as part of separate lawsuits. These lawsuits include:

> **a.**     8:19-cv-00531-DOC-DFM (*ABC Services Group, Inc. v. United Healthcare Services, Inc., United Behavioral Health, Optum Services, Inc.*);
>
> **b.**     8:19-cv-00803-DOC-DFM (*ABC Services Group, Inc. v. USAble Mutual Insurance Company, et al.*).  This case included multiple parties now part of the Consolidated Defendants, including:
>
> > **i.**     USAble Mutual Insurance Company, doing business as Arkansas Blue Cross and Blue Shield as well as Blue Cross and Blue Shield of Arkansas Blue Advantage;
> >
> > **ii.**     Blue Cross and Blue Shield of Kansas, Inc.;
> >
> > **iii.**     Blue Cross and Blue Shield of Mississippi; and
> >
> > **iv.**     Blue Cross and Blue Shield of Kansas City.
>
> **c.**     8:19-cv-00776-DOC-DFM (*ABC Services Group, Inc. v. Health Care Service Corporation, doing business as Blue Cross Blue Shield of Oklahoma*);
>
> **d.**     8:19-cv-00789-DOC-DFM (*ABC Services Group, Inc. v. Blue Cross and Blue Shield of Alabama*);
>
> **e.**     8:19-cv-00677-DOC-DFM (*ABC Services Group, Inc. v. Anthem Blue Cross Life and Health Insurance Company, Anthem, Inc., dba Anthem Health, Inc.*);
>
> **f.**     8:20-cv-00175-DOC-DFM (*ABC Services Group, Inc. v. Humana Behavioral Health, Inc., Humana, Inc., Humana Insurance Company*);

g.  8:19-cv-00777-DOC-DFM (*ABC Services Group, Inc. v. Defendants Aetna Health and Life Insurance Company*);

h.  8:19-cv-00804-DOC-DFM (*ABC Services Group, Inc. v. Bluecross Blueshield of Tennessee, Inc.*);

i.  8:19-cv-02070-DOC-DFM (*ABC Services Group, Inc. v. Scott and White Health Plan., Scott and White Care Plans*);

j.  8:19-cv-02125-DOC-DFM (*ABC Services Group, Inc. v. Cigna Healthcare of California, Inc., Cigna Behavioral Health of California, Inc., Cigna Health and Life Insurance Company*);

k.  8:19-cv-02136-DOC-DFM (*ABC Services Group, Inc. v. HMC Healthworks, Inc.*);

l.  8:19-cv-02138-DOC-DFM (*ABC Services Group, Inc. v United Medical Resources, Inc.*);

m.  8:19-cv-02163-DOC-DFM (*ABC Services Group, Inc. v. Connecticare, Inc.*);

n.  8:19-cv-02164-DOC-DFM and 8:19-cv-02236-DOC-DFM (*ABC Services Group, Inc. v. Medica Health Plans, doing business as Medica*);

o.  8:19-cv-02165-DOC-DFM (*ABC Services Group, Inc. v. PacificSource Health Plans*);

p.  8:19-cv-02168-DOC-DFM (*ABC Services Group, Inc. v. Sierra Health and Life Insurance Company, Inc.*);

q.  8:19-cv-02122-DOC-DFM (*ABC Services Group, Inc. v. Medical Mutual of Ohio, Medical Mutual Services, LLC*);

r.  8:19-cv-02242-DOC-DFM (*ABC Services Group, Inc. v. Group Health Plan, Inc., doing business as HealthPartners*);

s.  8:19-cv-02184-DOC-DFM (*ABC Services Group, Inc. v. Golden Rule Insurance Company*);

**t.**     8:19-cv-02180-DOC-DFM (*ABC Services Group, Inc. v. Amerihealth Insurance Company of New Jersey, doing business as Amerihealth New Jersey*);

**u.**     8:19-cv-02182-DOC-DFM (*ABC Services Group, Inc. v. Meritain Health, Inc.*);

**v.**     8:19-cv-02204-DOC-DFM (*ABC Services Group, Inc. v. Beacon Health Options, Inc., Beacon Health Strategies, LLC, ValueOptions of California, Inc.*);

**w.**     8:19-cv-02131-DOC-DFM (*ABC Services Group, Inc. v. Coventry Health Care, Inc.* [previously 8:19-cv-09432-DOC-DFM]);

**x.**     8:19-cv-02219-DOC-DFM (*ABC Services Group, Inc. v. MHNet Specialty Services, LLC*);

**y.**     8:19-cv-02210-DOC-DFM (*ABC Services Group, Inc. v. Common Ground Healthcare Cooperative*);

**z.**     8:19-cv-02172-DOC-DFM (*ABC Services Group, Inc. v. Providence Health Plan, Providence Health Assurance and Providence Health & Services* );

**aa.**    8:19-cv-02171-DOC-DFM (*ABC Services Group, Inc. v. First Health Group Corporation*);

**bb.**    8:19-cv-02188-DOC-DFM (*ABC Services Group, Inc. v. HealthLink, Inc.*); and

**cc.**    8:19-cv-02118-DOC-DFM (*ABC Services Group, Inc. v. Molina Healthcare, Inc., Molina Healthcare of California, Inc.*)

## <u>SUMMARY OF PATIENTS' CLAIMS BY DEFENDANT</u>

87.     The Patients have not been identified by name in this Complaint to protect their right of privacy.  Plaintiff provided information to Defendants regarding treatment and services for Patients in each of the 29 lawsuits at issue in

this action, and as further set forth below, all pursuant to the Plans.  Plaintiff is informed and believes, and based thereon alleges, that for each Defendant, counsel for Plaintiff has produced detailed information for each of the Patients.  In some instances, as Plaintiff has not received all applicable plan documents, Plaintiff is unable at this time to allege with any greater specificity the amount at issue as to each of the named Defendants.  Upon receipt of all of the Plans from Defendants, the requests for which Plaintiff has already made and the information should be forthcoming as soon as May 8, 2020, Plaintiff will update the information if requested.

88.     Each of the Patients received mental health and/or SUD treatment at Morningside's facility.  Payments are due and owing by Defendants to Plaintiff for the care, treatment and procedures provided to the Patients, all of whom were insured, members, policy holders, certificate holders or otherwise covered for charges by Morningside through policies or certificates of insurance issued, underwritten and/or administered by Defendants.

89.     Plaintiff is informed and believes, and based thereon alleges, that each of the Patients for whom claims are at issue was an insured of Defendants either as a subscriber to coverage or a dependent of a subscriber to coverage under a policy or certificate of insurance issued, administered and/or underwritten by Defendants. Plaintiff is further informed and believes, and based therein alleges, that each of the Patients for whom claims are at issue was covered by a valid insurance agreement with Defendants for the specific purpose of ensuring that the Patients would have access to medically necessary treatments, care, procedures and related care by out-of-network providers such as Morningside.

90.     In the alternative, Plaintiff is informed and believes, and based thereon alleges, that some of the Patients for whom claims are at issue were covered by self-funded plans which were administered by Defendants.  The identify of those Plans which are self-funded is known to Defendants, but only known in part to

Plaintiff.  Those self-funded Plans provided coverage to the Patients either as a subscriber to coverage or as a dependent of a subscriber to coverage under the certificate of coverage administered by Defendants.  For these self-funded plans, to the extent this is applicable under California state law, Plaintiff is informed and believes, and based thereon alleges, that Defendants were a claim fiduciary, plan fiduciary and administrator charged with making claim determinations on behalf of the Plans.

91.     Plaintiff is informed and believes, and based thereon alleges, that each of the Patients for whom claims are at issue was covered by a valid benefit plan, providing coverage for medical and mental health expenses, for the specific purpose of ensuring that the Patients would have access to medically necessary treatments, care and procedures by out-of-network providers like Morningside and ensuring Defendants would pay for the health care expenses incurred by the Patients for the services rendered by Morningside.

92.     At all relevant times, each of the Patients received medical and/or paramedical services, procedures, mental health care, SUD treatment or other health care services from Morningside.  Upon rendition of services to each of the Patients, each of the Patients became legally indebted, responsible and liable to Plaintiff for the full cost of and for payment of those services.  Prior to the rendition of care by Morningside, Morningside sought and obtained a guarantee from the Patients that they would be legally responsible, liable and indebted for the full cost of and for payment of those services to be rendered by Morningside.

93.     Each of the Patients requested Morningside to render and provide medical treatment and professional services, knowing that Morningside was an out-of-network provider.  Each of the Patients sought out, requested and requisitioned treatment and professional services from Morningside and selected and chose Morningside to provide him or her with said services based upon Morningside's reputation in the community, experience and availability to render immediate care.

Each of the Patients signed written admission agreements in which the Patients agreed to be obligated, legally responsible and liable for the full amount of the charges incurred for services rendered at Morningside.

**94.**     Each of the Patients presented his or her insurance card to Morningside, which card identified the Patient as an insured, subscriber and/or member of Defendants.  These identification cards, which were issued by Defendants, did not identify whether the coverage was underwritten by Defendants as an insurer or whether Defendants was acting as a third-party administrator of a self-funded plan.

**95.**     Plaintiff is informed and believes, and based thereon alleges, that each and every one of the Patients had express coverage for mental health and SUD treatment benefits under the applicable Plan or policy covering that Patient which was issued or administered by Defendants.  As such, each Plan was required to offer coverage for mental health and SUD treatment in parity with the medical and surgical benefits afforded by the same plan, as required by 26 U.S.C. § 9812(3)(A), which mandates that:

In the case of a group health plan that provides both medical and surgical benefits and mental health or substance use disorder benefits, such plan shall ensure that –

**i.**     the financial requirements applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant financial requirements applied to substantially all medical and surgical benefits covered by the plan, and there are no separate cost sharing requirements that are applicable only with respect to mental health or substance use disorder benefits; and

**ii.**     the treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all

> medical and surgical benefits covered by the plan and there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits.

96. Additionally, 26 U.S.C. § 9812(5) mandates that out-of-network providers such as Morningside be treated in parity with medical providers and with in-network providers of mental health and SUD treatment, stating:

> In the case of a plan that provides both medical and surgical benefits and mental health or substance use disorder benefits, if the plan provides coverage for medical or surgical benefits provided by out-of-network providers, the plan shall provide coverage for mental health or substance use disorder benefits provided by out-of-network providers in a manner that is consistent with the requirements of this section.

97. Federal law also requires that insurers and Plans articulate the reason and rationale for any denial of benefits, stating:

> The criteria for medical necessity determinations made under the plan with respect to mental health or substance use disorder benefits shall be made available by the plan administrator in accordance with regulations to any current or potential participant, beneficiary, or contracting provider upon request. The reason for any denial under the plan of reimbursement or payment for services with respect to mental health or substance use disorder benefits in the case of any participant or beneficiary shall, on request or as otherwise required, be made available by the plan administrator to the participant or beneficiary in accordance with regulations

98. The failure and refusal of Defendants to articulate the reasons, rationales and/or criteria it used in denying benefits for coverage for the Patients'

claims constitutes a breach of 26 U.S.C. § 9812(4) and the applicable regulations promulgated thereunder.

99.    The failure and refusal of Defendants to pay Plaintiff for the SUD treatments rendered by Morningside to the Patients violated 26 U.S.C. § 9812(3) per se.  Plaintiff is informed and believes, and based thereon alleges, that Defendants has discriminated against it and other mental health and SUD treatment providers by applying financial requirements and treatment limitations different than those applied to medical health providers.

100.    Plaintiff is informed and believes, and based thereon alleges, that Defendants has investigated, adjusted, processed and examined Plaintiff's claims, in a manner different than the manner in which it investigates, adjusts, processes and examines the claims of medical providers, by subjecting Plaintiff's claims to delays, by requesting additional information which is irrelevant to the claim process, by offsetting payments it acknowledged were owed on claims for the Patients by amounts owed on account of other patients who were not related to the Patients but who were insured by Defendants and who had received SUD treatments at Plaintiff at different times when treatment had been rendered to the Patients.  As a result, Defendants has breached the statutory mandates of 26 U.S.C. § 9812, et. seq. and/or California state law, and  Defendants owe payment benefits to Plaintiff in an amount to be proven at trial, but no less than $50,000,000.00.

101.    Under California law, Plaintiff is entitled to the benefits payable under the subject Plans and insurance policies issued to and covering the Patients and by virtue of the assignment of rights given by each of the Patients to Morningside and from Morningside to ABC.

102.    At all relevant times herein, Morningside and Plaintiff were authorized by law to act on behalf of the Patient with respect to the filing of claims with Defendants, demanding production of documents from Defendants, filing appeals on behalf of the Patients with Defendants, and otherwise pursuing actions

on behalf of the Patients with respect to the Patients' Plans in accordance with California state law.

103.   Other than those documents provided by Defendants, Plaintiff is not privy to, nor does it possess or have access to, any other EOC documents, Plan Documents, policies or Certificates of Insurance which may be issued to the Patients.  As such, in many instances Plaintiff does not have knowledge of or access to the definition of an "allowable amount" or "allowable benefit" as that term is defined or used by Defendants, at any time prior to the date that Defendants processes, adjusts and pays each claim.  These definitions were not imparted by Defendants to Morningside during the insurance verification or authorization process.

104.   At all relevant times herein, Defendants have improperly payed, or failed/refused to pay anything to Morningside for the medically necessary and appropriate services rendered to Defendants' insureds, subscribers and members for those treatments, services and/or supplies rendered by Morningside.  For each of the Patient claims at issue in this action, Morningside provided medical services to members and insureds of Defendants.

105.   Following the rendition of treatment by Morningside to the Patients, invoices, bill and claims were submitted to Defendants for adjustment and payment.  Morningside also provided medical records to Defendants for the treatment Morningside provided to the Patients.

106.   For each of the claims at issue, Defendants failed and refused to adjust the claims and to issue EOB statements to Morningside in a timely manner, if so required by state law.  These failures constituted an effective denial of benefits, although an actual denial of benefits was not communicated by Defendants.  By virtue of its failure and refusal to issue EOB statements and to adjust the claims, Plaintiff was precluded and inhibited from appealing the effective denial of

payment on the subject claims, to the extent such actions were required by Morningside under California law.

107.   For each of the claims at issue in this case, Defendants failed and refused to complete the claim examination process, delayed issuing EOB and EOP statements to Morningside, has requested unnecessary and irrelevant information and documentation from Morningside which has no bearing on or relevant to the claim examination process, has failed and refused to provide notification of the reasons for its failure and refusal to pay benefits and has failed to engage in a meaningful appeal process with Morningside.  For each of the claims at issue in this case, Defendants has failed and refused to pay benefits in any amount whatsoever, leaving the entire charges unpaid and owed.

108.   To the extent Defendants issued any EOB statements, Defendants did not explain how the claims were adjusted, disallowed or denied, and Defendants provided vague, ambiguous and uncertain explanations for the manner by which Defendants based its claim determination.  To the extent Defendants issued any EOB statements, each was uninformative, false and misleading, thereby depriving Plaintiff and the Patients from an ability to intelligently engage in the appeal process or understand the basis and rationale for Defendants' denial of benefits.

109.   Plaintiff is informed and believes, and based thereon alleges, that Defendants' actions violated California state law, all due to Defendants' failure to provide a description of each Plan's review procedures and the time limits or deadlines applicable to such procedures.

110.   In each of the EOB statements issued by Defendants, if any, Defendants failed to advise Plaintiff and/or the Patients of the right of the Patients and/or Plaintiff to appeal the adverse claim determination made by Defendants in any of the EOB statements concerning the right to appeal, file a grievance, seek reconsideration or otherwise engage in an administrative review process, as required by Defendants under California state law.

# FIRST CLAIM FOR RELIEF

## (Breach of Contract (Assignment) Against All Defendants)

**111.**   Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

**112.**   Plaintiff's First Claim for Relief against Defendants includes only state law plans, none of which are governed by ERISA.  Although Plaintiff does not have all plan documentation at this time, Plaintiff sets forth examples from each lawsuit of the contract on which it now brings this claim.

**113.**   Within the period of time permitted by the applicable statute of limitations, Morningside entered into written agreements with certain Patients who had benefits payable under the subject Plans and insurance policies issued to and covering the Patients by those defendants named in the following action: 8:19-cv-00531-DOC-DFM (*ABC Services Group, Inc. v. United Healthcare Services, Inc., United Behavioral Health, Optum Services, Inc.*) (the "United Action").  A true and correct copy of an agreement from one of these Patients is attached hereto and incorporated herein by this reference as Exhibit 4.

**114.**   Each of the patients at issue in the United Action also entered into a written assignment with Morningside, a true and correct copy of one such example is attached hereto and incorporated herein by this reference as Exhibit 4.  When the Patients obtained the treatment from Morningside, they assigned to Morningside in writing their rights to any reimbursement and/or payment for treatment from Defendants in the United Action.

**115.**   Morningside provided services consistent with those services set forth in Paragraph 71 of the Complaint to the Patients at issue in the United Action.

**116.**   After providing those services, Plaintiff submitted appropriate claim forms to Defendants in the United Action, or their agents, requesting compensation for the care and treatment provided to the Patients.

117.   At all relevant times herein, each of the Plans at issue in the United Action obligated the Defendants in the United Action to reimburse and/or pay for the Patient's medical care pursuant to the Plan, as applicable.  A true and correct copy of part of a Plan at issue in the United Action, if any has been produced, is attached hereto and incorporated herein by this reference as Exhibit 11.

118.   Within the period of time permitted by the applicable statute of limitations, Morningside entered into written agreements with certain Patients who had benefits payable under the subject Plans and insurance policies issued to and covering the Patients by those defendants named in the following action: 8:19-cv-00803-DOC-DFM (*ABC Services Group,* Inc. v. USAble Mutual Insurance Company, doing business as Arkansas Blue Cross and Blue Shield as well as Blue Cross and Blue Shield of Arkansas Blue Advantage) (the "USAble Action").  A true and correct copy of an agreement from one of these Patients is attached hereto and incorporated herein by this reference as Exhibit 5.

119.   Each of the patients at issue in the USAble Action also entered into a written assignment with Morningside, a true and correct copy of one such example is attached hereto and incorporated herein by this reference as Exhibit 5.   When the Patients obtained the treatment from Morningside, they assigned to Morningside in writing their rights to any reimbursement and/or payment for treatment from Defendants in the USAble Action.

120.   Morningside provided services consistent with those services set forth in Paragraph 71 of the Complaint to the Patients at issue in the USAble Action.

121.   After providing those services, Plaintiff submitted appropriate claim forms to Defendants in the USAble Action, or their agents, requesting compensation for the care and treatment provided to the Patients.

122.   At all relevant times herein, each of the Plans at issue in the USAble Action obligated the Defendants in the USAble Action to reimburse and/or pay for the Patient's medical care pursuant to the Plan, as applicable..  A true and correct

copy of part of a Plan at issue in the USAble Action, if any has been produced, is attached hereto and incorporated herein by this reference as <u>Exhibit 12</u>.

123.   Within the period of time permitted by the applicable statute of limitations, Morningside entered into written agreements with certain Patients who had benefits payable under the subject Plans and insurance policies issued to and covering the Patients by those defendants named in the following action: 8:19-cv-00803-DOC-DFM (*ABC Services Group, Inc. v. Blue Cross and Blue Shield of Kansas, Inc.*) (the "Kansas Action").  A true and correct copy of an agreement from one of these Patients is attached hereto and incorporated herein by this reference as <u>Exhibit 6</u>.

124.   Each of the patients at issue in the Kansas Action also entered into a written assignment with Morningside, a true and correct copy of one such example is attached hereto and incorporated herein by this reference as <u>Exhibit 6</u>.   When the Patients obtained the treatment from Morningside, they assigned to Morningside in writing their rights to any reimbursement and/or payment for treatment from Defendants in the Kansas Action.

125.   Morningside provided services consistent with those services set forth in Paragraph 71 of the Complaint to the Patients at issue in the Kansas Action.

126.   After providing those services, Plaintiff submitted appropriate claim forms to Defendants in the Kansas Action, or their agents, requesting compensation for the care and treatment provided to the Patients.

127.   At all relevant times herein, each of the Plans at issue in the Kansas Action obligated the Defendants in the Kansas Action to reimburse and/or pay for the Patient's medical care pursuant to the Plan, as applicable..  A true and correct copy of part of a Plan at issue in the Kansas Action, if any has been produced, is attached hereto and incorporated herein by this reference as <u>Exhibit 13</u>.

128.   Within the period of time permitted by the applicable statute of limitations, Morningside entered into written agreements with certain Patients who

had benefits payable under the subject Plans and insurance policies issued to and covering the Patients by those defendants named in the following action: 8:19-cv-00803-DOC-DFM (*ABC Services Group, Inc. v. Blue Cross and Blue Shield of Kansas City*) (the "KC. Action").  True and correct copies of sample agreements are attached hereto and incorporated herein by this reference as <u>Exhibits 4, 5, 6, 7, 8 and 9</u>.

129.    Each of the patients at issue in the KC Action also entered into a written assignment with Morningside. True and correct copies of sample assignments are attached hereto and incorporated herein by this reference as <u>Exhibits 4, 5, 6, 7, 8, 9 and 10</u>.   When the Patients obtained the treatment from Morningside, they assigned to Morningside in writing their rights to any reimbursement and/or payment for treatment from Defendants in the KC Action.

130.    Morningside provided services consistent with those services set forth in Paragraph 71 of the Complaint to the Patients at issue in the KC Action.

131.    After providing those services, Plaintiff submitted appropriate claim forms to Defendants in the KC Action, or their agents, requesting compensation for the care and treatment provided to the Patients.

132.    At all relevant times herein, each of the Plans at issue in the KC Action obligated the Defendants in the KC Action to reimburse and/or pay for the Patient's medical care pursuant to the Plan, as applicable..  A true and correct copy of part of a Plan at issue in the KC Action, if any has been produced, is attached hereto and incorporated herein by this reference as <u>Exhibit 14</u>.

133.    Within the period of time permitted by the applicable statute of limitations, Morningside entered into written agreements with certain Patients who had benefits payable under the subject Plans and insurance policies issued to and covering the Patients by those defendants named in the following action: 8:19-cv-00776-DOC-DFM (*ABC Services Group, Inc. v. Health Care Service Corporation, doing business as Blue Cross Blue Shield of Oklahoma*) (the "BCBS OK Action").

A true and correct copy of an agreement from one of these Patients is attached hereto and incorporated herein by this reference as Exhibit 7.

134.  Each of the patients at issue in the BCBS OK Action also entered into a written assignment with Morningside, a true and correct copy of one such example is attached hereto and incorporated herein by this reference as Exhibit 7. When the Patients obtained the treatment from Morningside, they assigned to Morningside in writing their rights to any reimbursement and/or payment for treatment from Defendants in the BCBS OK Action.

135.  Morningside provided services consistent with those services set forth in Paragraph 71 of the Complaint to the Patients at issue in the BCBS OK Action.

136.  After providing those services, Plaintiff submitted appropriate claim forms to Defendants in the BCBS OK Action, or their agents, requesting compensation for the care and treatment provided to the Patients.

137.  At all relevant times herein, each of the Plans at issue in the BCBS OK Action obligated the Defendants in the BCBS OK Action to reimburse and/or pay for the Patient's medical care pursuant to the Plan, as applicable.  A true and correct copy of part of a Plan at issue in the BCBS OK Action, if any has been produced, is attached hereto and incorporated herein by this reference as Exhibit 15.

138.  Within the period of time permitted by the applicable statute of limitations, Morningside entered into written agreements with certain Patients who had benefits payable under the subject Plans and insurance policies issued to and covering the Patients by those defendants named in the following action: 8:19-cv-00789-DOC-DFM (*ABC Services Group, Inc. v. Blue Cross and Blue Shield of Alabama*) (the "BCBS AL Action").  True and correct copies of sample agreements are attached hereto and incorporated herein by this reference as Exhibits 4, 5, 6, 7, 8 and 9.

139.   Each of the patients at issue in the BCBS AL Action also entered into a written assignment with Morningside. True and correct copies of sample assignments are attached hereto and incorporated herein by this reference as Exhibits 4, 5, 6, 7, 8, 9 and 10.   When the Patients obtained the treatment from Morningside, they assigned to Morningside in writing their rights to any reimbursement and/or payment for treatment from Defendants in the BCBS AL Action.

140.   Morningside provided services consistent with those services set forth in Paragraph 71 of the Complaint to the Patients at issue in the BCBS AL Action.

141.   After providing those services, Plaintiff submitted appropriate claim forms to Defendants in the BCBS AL Action, or their agents, requesting compensation for the care and treatment provided to the Patients.

142.   At all relevant times herein, each of the Plans at issue in the BCBS AL Action obligated the Defendants in the BCBS AL Action to reimburse and/or pay for the Patient's medical care pursuant to the Plan, as applicable.  A true and correct copy of part of a Plan at issue in the BCBS AL Action, if any has been produced, is attached hereto and incorporated herein by this reference as Exhibit 16.

143.   Within the period of time permitted by the applicable statute of limitations, Morningside entered into written agreements with certain Patients who had benefits payable under the subject Plans and insurance policies issued to and covering the Patients by those defendants named in the following action: 8:19-cv-00677-DOC-DFM (*ABC Services Group, Inc. v. Anthem Blue Cross Life and Health Insurance Company, Anthem, Inc., dba Anthem Health, Inc.*) (the "Anthem Action").  A true and correct copy of an agreement from one of these Patients is attached hereto and incorporated herein by this reference as Exhibit 8.

144.   Each of the patients at issue in the Anthem Action also entered into a written assignment with Morningside, a true and correct copy of one such example

is attached hereto and incorporated herein by this reference as <u>Exhibit 8</u>.   When the Patients obtained the treatment from Morningside, they assigned to Morningside in writing their rights to any reimbursement and/or payment for treatment from Defendants in the Anthem Action.

145.   Morningside provided services consistent with those services set forth in Paragraph 71 of the Complaint to the Patients at issue in the Anthem Action.

146.   After providing those services, Plaintiff submitted appropriate claim forms to Defendants in the Anthem Action, or their agents, requesting compensation for the care and treatment provided to the Patients.

147.   At all relevant times herein, each of the Plans at issue in the Anthem Action obligated the Defendants in the Anthem Action to reimburse and/or pay for the Patient's medical care pursuant to the Plan, as applicable.   A true and correct copy of part of a Plan at issue in the Anthem Action, if any has been produced, is attached hereto and incorporated herein by this reference as <u>Exhibit 17</u>.

148.   Within the period of time permitted by the applicable statute of limitations, Morningside entered into written agreements with certain Patients who had benefits payable under the subject Plans and insurance policies issued to and covering the Patients by those defendants named in the following action: 8:20-cv-00175-DOC-DFM (*ABC Services Group, Inc. v. Humana Behavioral Health, Inc., Humana, Inc., Humana Insurance Company*) (the "Humana Action"). A true and correct copy of an agreement from one of these Patients is attached hereto and incorporated herein by this reference as <u>Exhibit 9</u>.

149.   Each of the patients at issue in the Humana Action also entered into a written assignment with Morningside, a true and correct copy of one such example is attached hereto and incorporated herein by this reference as <u>Exhibit 9.</u>   When the Patients obtained the treatment from Morningside, they assigned to Morningside in writing their rights to any reimbursement and/or payment for treatment from Defendants in the Humana Action.

1    **150.**   Morningside provided services consistent with those services set forth

2    in Paragraph 71 of the Complaint to the Patients at issue in the Humana Action.

3    **151.**   After providing those services, Plaintiff submitted appropriate claim

4    forms to Defendants in the Humana Action, or their agents, requesting

5    compensation for the care and treatment provided to the Patients.

6    **152.**   At all relevant times herein, each of the Plans at issue in the Humana

7    Action obligated the Defendants in the Humana Action to reimburse and/or pay for

8    the Patient's medical care pursuant to the Plan, as applicable.  A true and correct

9    copy of part of a Plan at issue in the Humana Action, if any has been produced, is

10   attached hereto and incorporated herein by this reference as <u>Exhibit 18</u>.

11   **153.**   Within the period of time permitted by the applicable statute of

12   limitations, Morningside entered into written agreements with certain Patients who

13   had benefits payable under the subject Plans and insurance policies issued to and

14   covering the Patients by those defendants named in the following action:

15   8:19-cv-00777-DOC-DFM (*ABC Services Group, Inc. v. Defendants Aetna Health*

16   *and Life Insurance Company*) (the "Aetna Action").  True and correct copies of

17   sample agreements are attached hereto and incorporated herein by this reference as

18   <u>Exhibits 4, 5, 6, 7, 8 and 9</u>.

19   **154.**   Each of the patients at issue in the Aetna Action also entered into a

20   written assignment with Morningside, a true and correct copy of one such example

21   is attached hereto and incorporated herein by this reference as <u>Exhibit 10</u>.   When

22   the Patients obtained the treatment from Morningside, they assigned to

23   Morningside in writing their rights to any reimbursement and/or payment for

24   treatment from Defendants in the Aetna Action.

25   **155.**   Morningside provided services consistent with those services set forth

26   in Paragraph 71 of the Complaint to the Patients at issue in the Aetna Action.

27

28

156.    After providing those services, Plaintiff submitted appropriate claim forms to Defendants in the Aetna Action, or their agents, requesting compensation for the care and treatment provided to the Patients.

157.    At all relevant times herein, each of the Plans at issue in the Aetna Action obligated the Defendants in the Aetna Action to reimburse and/or pay for the Patient's medical care pursuant to the Plan, as applicable.   A true and correct copy of part of a Plan at issue in the Aetna Action, if such a plan has been produced, is attached hereto and incorporated herein by this reference as Exhibit 19.

158.    Within the period of time permitted by the applicable statute of limitations, Morningside entered into written agreements with certain Patients who had benefits payable under the subject Plans and insurance policies issued to and covering the Patients by those defendants named in the following action: 8:19-cv-00804-DOC-DFM (*ABC Services Group, Inc. v. Bluecross Blueshield of Tennessee, Inc.*) (the "TN Action"). True and correct copies of sample agreements are attached hereto and incorporated herein by this reference as Exhibits 4, 5, 6, 7, 8 and 9.

159.    Each of the patients at issue in the TN Action also entered into a written assignment with Morningside.  True and correct copies of sample agreements are attached hereto and incorporated herein by this reference as Exhibits 4, 5, 6, 7, 8, 9 and 10.  When the Patients obtained the treatment from Morningside, they assigned to Morningside in writing their rights to any reimbursement and/or payment for treatment from Defendants in the TN Action.

160.    Morningside provided services consistent with those services set forth in Paragraph 71 of the Complaint to the Patients at issue in the TN Action.

161.    After providing those services, Plaintiff submitted appropriate claim forms to Defendants in the TN Action, or their agents, requesting compensation for the care and treatment provided to the Patients.

162.   At all relevant times herein, each of the Plans at issue in the TN
Action obligated the Defendants in the TN Action to reimburse and/or pay for the
Patient's medical care pursuant to the Plan, as applicable.  A true and correct copy
of part of a Plan at issue in the TN Action, if such a plan has been produced, is
attached hereto and incorporated herein by this reference as Exhibit 20.

163.   Within the period of time permitted by the applicable statute of
limitations, Morningside entered into written agreements with certain Patients who
had benefits payable under the subject Plans and insurance policies issued to and
covering the Patients by those defendants named in the following action:
8:19-cv-02070-DOC-DFM (*ABC Services Group, Inc. v. Scott and White Health
Plan., Scott and White Care Plans*) (the "Scott and White Action").  True and
correct copies of sample agreements are attached hereto and incorporated herein by
this reference as Exhibits 4, 5, 6, 7, 8 and 9.

164.   Each of the patients at issue in the Scott and White Action also
entered into a written assignment with Morningside.  True and correct copies of
sample assignments are attached hereto and incorporated herein by this reference
as Exhibits 4, 5, 6, 7, 8, 9 and 10.   When the Patients obtained the treatment from
Morningside, they assigned to Morningside in writing their rights to any
reimbursement and/or payment for treatment from Defendants in the Scott and
White Action.

165.   Morningside provided services consistent with those services set forth
in Paragraph 71 of the Complaint to the Patients at issue in the Scott and White
Action.

166.   After providing those services, Plaintiff submitted appropriate claim
forms to Defendants in the Scott and White Action, or their agents, requesting
compensation for the care and treatment provided to the Patients.

167.   At all relevant times herein, each of the Plans at issue in the Scott and
White Action obligated the Defendants in the Scott and White Action to reimburse

and/or pay for the Patient's medical care pursuant to the Plan, as applicable.  The Defendants in the Scott and White Action have not produced any plan documents at this time.

**168.**   Within the period of time permitted by the applicable statute of limitations, Morningside entered into written agreements with certain Patients who had benefits payable under the subject Plans and insurance policies issued to and covering the Patients by those defendants named in the following action: 8:19-cv-02125-DOC-DFM (*ABC Services Group, Inc. v. Cigna Healthcare of California, Inc., Cigna Behavioral Health of California, Inc., Cigna Health and Life Insurance Company*) (the "Cigna Action").  True and correct copies of sample agreements are attached hereto and incorporated herein by this reference as Exhibits 4, 5, 6, 7, 8 and 9.

**169.**   Each of the patients at issue in the Cigna Action also entered into a written assignment with Morningside.  True and correct copies of sample assignments are attached hereto and incorporated herein by this reference as Exhibits 4, 5, 6, 7, 8, 9 and 10.   When the Patients obtained the treatment from Morningside, they assigned to Morningside in writing their rights to any reimbursement and/or payment for treatment from Defendants in the Cigna Action.

**170.**   Morningside provided services consistent with those services set forth in Paragraph 71 of the Complaint to the Patients at issue in the Cigna Action.

**171.**   After providing those services, Plaintiff submitted appropriate claim forms to Defendants in the Cigna Action, or their agents, requesting compensation for the care and treatment provided to the Patients.

**172.**   At all relevant times herein, each of the Plans at issue in the Cigna Action obligated the Defendants in the Cigna Action to reimburse and/or pay for the Patient's medical care pursuant to the Plan, as applicable.  A true and correct copy of part of a Plan at issue in the Cigna Action, if any has been produced, is attached hereto and incorporated herein by this reference as Exhibit 21.

173.    Within the period of time permitted by the applicable statute of limitations, Morningside entered into written agreements with certain Patients who had benefits payable under the subject Plans and insurance policies issued to and covering the Patients by those defendants named in the following action: 8:19-cv-02136-DOC-DFM (*ABC Services Group, Inc. v. HMC Healthworks, Inc.*) (the "Healthworks Action").  True and correct copies of sample agreements are attached hereto and incorporated herein by this reference as Exhibits 4, 5, 6, 7, 8 and 9.

174.    Each of the patients at issue in the Healthworks Action also entered into a written assignment with Morningside. True and correct copies of sample assignments are attached hereto and incorporated herein by this reference as Exhibits 4, 5, 6, 7, 8, 9 and 10.  When the Patients obtained the treatment from Morningside, they assigned to Morningside in writing their rights to any reimbursement and/or payment for treatment from Defendants in the Healthworks Action.

175.    Morningside provided services consistent with those services set forth in Paragraph 71 of the Complaint to the Patients at issue in the Healthworks Action.

176.    After providing those services, Plaintiff submitted appropriate claim forms to Defendants in the Healthworks Action, or their agents, requesting compensation for the care and treatment provided to the Patients.

177.    At all relevant times herein, each of the Plans at issue in the Healthworks Action obligated the Defendants in the Healthworks Action to reimburse and/or pay for the Patient's medical care pursuant to the Plan, as applicable.  A true and correct copy of part of a Plan at issue in the Healthworks Action, if any such plans were produced, is attached hereto and incorporated herein by this reference as Exhibit 22.

1    **178.**   Within the period of time permitted by the applicable statute of

2    limitations, Morningside entered into written agreements with certain Patients who

3    had benefits payable under the subject Plans and insurance policies issued to and

4    covering the Patients by those defendants named in the following action: 8:19-cv-

5    02138-DOC-DFM (*ABC Services Group, Inc. v United Medical Resources, Inc.*)

6    (the "UMR Action").  True and correct copies of sample agreements are attached

7    hereto and incorporated herein by this reference as Exhibits 4, 5, 6, 7, 8 and 9.

8    **179.**   Each of the patients at issue in the UMR Action also entered into a

9    written assignment with Morningside.  True and correct copies of sample

10   assignments are attached hereto and incorporated herein by this reference as

11   Exhibits 4, 5, 6, 7, 8, 9 and 10.  When the Patients obtained the treatment from

12   Morningside, they assigned to Morningside in writing their rights to any

13   reimbursement and/or payment for treatment from Defendants in the UMR Action.

14   **180.**   Morningside provided services consistent with those services set forth

15   in Paragraph 71 of the Complaint to the Patients at issue in the UMR Action.

16   **181.**   After providing those services, Plaintiff submitted appropriate claim

17   forms to Defendants in the UMR Action, or their agents, requesting compensation

18   for the care and treatment provided to the Patients.

19   **182.**   At all relevant times herein, each of the Plans at issue in the UMR

20   Action obligated the Defendants in the UMR Action to reimburse and/or pay for

21   the Patient's medical care pursuant to the Plan, as applicable.  A true and correct

22   copy of part of a Plan at issue in the UMR Action, if any such plan was produced,

23   is attached hereto and incorporated herein by this reference as Exhibit 23.

24   **183.**   Within the period of time permitted by the applicable statute of

25   limitations, Morningside entered into written agreements with certain Patients who

26   had benefits payable under the subject Plans and insurance policies issued to and

27   covering the Patients by those defendants named in the following action: 8:19-cv-

28   02163-DOC-DFM (*ABC Services Group, Inc. v. Connecticare, Inc.*) (the "CT

Action").  True and correct copies of sample agreements are attached hereto and incorporated herein by this reference as Exhibits 4, 5, 6, 7, 8 and 9.

**184.**  Each of the patients at issue in the CT Action also entered into a written assignment with Morningside. True and correct copies of sample assignments are attached hereto and incorporated herein by this reference as Exhibits 4, 5, 6, 7, 8, 9 and 10.   When the Patients obtained the treatment from Morningside, they assigned to Morningside in writing their rights to any reimbursement and/or payment for treatment from Defendants in the CT Action.

**185.**  Morningside provided services consistent with those services set forth in Paragraph 71 of the Complaint to the Patients at issue in the CT Action.

**186.**  After providing those services, Plaintiff submitted appropriate claim forms to Defendants in the CT Action, or their agents, requesting compensation for the care and treatment provided to the Patients.

**187.**  At all relevant times herein, each of the Plans at issue in the CT Action obligated the Defendants in the CT Action to reimburse and/or pay for the Patient's medical care pursuant to the Plan, as applicable.  A true and correct copy of part of a Plan at issue in the CT Action, if any such plan was produced, is attached hereto and incorporated herein by this reference as Exhibit 24.

**188.**  Within the period of time permitted by the applicable statute of limitations, Morningside entered into written agreements with certain Patients who had benefits payable under the subject Plans and insurance policies issued to and covering the Patients by those defendants named in the following action: 8:19-cv-02164-DOC-DFM and 8:19-cv-02236-DOC-DFM (*ABC Services Group, Inc. v. Medica Health Plans, doing business as Medica*) (the "Medica Action").  True and correct copies of sample agreements are attached hereto and incorporated herein by this reference as Exhibits 4, 5, 6, 7, 8 and 9.

**189.**  Each of the patients at issue in the Medica Action also entered into a written assignment with Morningside.  True and correct copies of sample

assignments are attached hereto and incorporated herein by this reference as Exhibits 4, 5, 6, 7, 8, 9 and 10.   When the Patients obtained the treatment from Morningside, they assigned to Morningside in writing their rights to any reimbursement and/or payment for treatment from Defendants in the Medica Action.

190.   Morningside provided services consistent with those services set forth in Paragraph 71 of the Complaint to the Patients at issue in the Medica Action.

191.   After providing those services, Plaintiff submitted appropriate claim forms to Defendants in the Medica Action, or their agents, requesting compensation for the care and treatment provided to the Patients.

192.   At all relevant times herein, each of the Plans at issue in the Medica Action obligated the Defendants in the Medica Action to reimburse and/or pay for the Patient's medical care pursuant to the Plan, as applicable.  A true and correct copy of part of a Plan at issue in the Medica Action is attached hereto and incorporated herein by this reference as Exhibit 25.

193.   Within the period of time permitted by the applicable statute of limitations, Morningside entered into written agreements with certain Patients who had benefits payable under the subject Plans and insurance policies issued to and covering the Patients by those defendants named in the following action: 8:19-cv-02165-DOC-DFM (*ABC Services Group, Inc. v. PacificSource Health Plans*) (the "Pacific Action").  True and correct copies of sample agreements are attached hereto and incorporated herein by this reference as Exhibits 4, 5, 6, 7, 8 and 9.

194.   Each of the patients at issue in the Pacific Action also entered into a written assignment with Morningside. True and correct copies of sample assignments are attached hereto and incorporated herein by this reference as Exhibits 4, 5, 6, 7, 8, 9 and 10.   When the Patients obtained the treatment from Morningside, they assigned to Morningside in writing their rights to any

1  reimbursement and/or payment for treatment from Defendants in the Pacific

2  Action.

3        **195.** Morningside provided services consistent with those services set forth

4  in Paragraph 71 of the Complaint to the Patients at issue in the Pacific Action.

5        **196.** After providing those services, Plaintiff submitted appropriate claim

6  forms to Defendants in the Pacific Action, or their agents, requesting compensation

7  for the care and treatment provided to the Patients.

8        **197.** At all relevant times herein, each of the Plans at issue in the Pacific

9  Action obligated the Defendants in the Pacific Action to reimburse and/or pay for

10  the Patient's medical care pursuant to the Plan, as applicable.  A true and correct

11  copy of part of a Plan at issue in the Pacific Action, if such documents were

12  produced, is attached hereto and incorporated herein by this reference as Exhibit

13  26.

14        **198.** Within the period of time permitted by the applicable statute of

15  limitations, Morningside entered into written agreements with certain Patients who

16  had benefits payable under the subject Plans and insurance policies issued to and

17  covering the Patients by those defendants named in the following action: 8:19-cv-

18  02168-DOC-DFM (*ABC Services Group, Inc. v. Sierra Health and Life Insurance*

19  *Company, Inc.*) (the "Sierra Action"). True and correct copies of sample

20  agreements are attached hereto and incorporated herein by this reference as

21  Exhibits 4, 5, 6, 7, 8 and 9.

22        **199.** Each of the patients at issue in the Sierra Action also entered into a

23  written assignment with Morningside.  True and correct copies of sample

24  assignments are attached hereto and incorporated herein by this reference as

25  Exhibits 4, 5, 6, 7, 8,  9 and 10.   When the Patients obtained the treatment from

26  Morningside, they assigned to Morningside in writing their rights to any

27  reimbursement and/or payment for treatment from Defendants in the Sierra Action.

28

**200.**   Morningside provided services consistent with those services set forth in Paragraph 71 of the Complaint to the Patients at issue in the Sierra Action.

**201.**   After providing those services, Plaintiff submitted appropriate claim forms to Defendants in the Sierra Action, or their agents, requesting compensation for the care and treatment provided to the Patients.

**202.**   At all relevant times herein, each of the Plans at issue in the Sierra Action obligated the Defendants in the Sierra Action to reimburse and/or pay for the Patient's medical care pursuant to the Plan, as applicable.  A true and correct copy of part of a Plan at issue in the Sierra Action, if any such plan was produced, is attached hereto and incorporated herein by this reference as Exhibit 27.

**203.**   Within the period of time permitted by the applicable statute of limitations, Morningside entered into written agreements with certain Patients who had benefits payable under the subject Plans and insurance policies issued to and covering the Patients by those defendants named in the following action: 8:19-cv-02122-DOC-DFM (*ABC Services Group, Inc. v. Medical Mutual of Ohio, Medical Mutual Services, LLC*) (the "Ohio Action").  True and correct copies of sample agreements are attached hereto and incorporated herein by this reference as Exhibits 4, 5, 6, 7, 8 and 9.

**204.**   Each of the patients at issue in the Ohio Action also entered into a written assignment with Morningside. True and correct copies of sample assignments are attached hereto and incorporated herein by this reference as Exhibits 4, 5, 6, 7, 8, 9 and 10.   When the Patients obtained the treatment from Morningside, they assigned to Morningside in writing their rights to any reimbursement and/or payment for treatment from Defendants in the Ohio Action.

**205.**   Morningside provided services consistent with those services set forth in Paragraph 71 of the Complaint to the Patients at issue in the Ohio Action.

206.    After providing those services, Plaintiff submitted appropriate claim forms to Defendants in the Ohio Action, or their agents, requesting compensation for the care and treatment provided to the Patients.

207.    At all relevant times herein, each of the Plans at issue in the Ohio Action obligated the Defendants in the Ohio Action to reimburse and/or pay for the Patient's medical care pursuant to the Plan, as applicable.  A true and correct copy of part of a Plan at issue in the Ohio Action, if any such plans were produced, is attached hereto and incorporated herein by this reference as <u>Exhibit 28</u>.

208.    Within the period of time permitted by the applicable statute of limitations, Morningside entered into written agreements with certain Patients who had benefits payable under the subject Plans and insurance policies issued to and covering the Patients by those defendants named in the following action:19-cv-02242-DOC-DFM (*ABC Services Group, Inc. v. Group Health Plan, Inc., doing business as Health Partners*) (the "Health Partners Action").  True and correct copies of sample agreements are attached hereto and incorporated herein by this reference as <u>Exhibits 4, 5, 6, 7, 8 and 9</u>.

209.    Each of the patients at issue in the Health Partners also entered into a written assignment with Morningside.  True and correct copies of sample assignments are attached hereto and incorporated herein by this reference as <u>Exhibits 4, 5, 6, 7, 8, 9 and 10</u>.   When the Patients obtained the treatment from Morningside, they assigned to Morningside in writing their rights to any reimbursement and/or payment for treatment from Defendants in the Health Partners Action.

210.    Morningside provided services consistent with those services set forth in Paragraph 71 of the Complaint to the Patients at issue in the Health Partners Action.

**211.** After providing those services, Plaintiff submitted appropriate claim forms to Defendants in the Health Partners Action, or their agents, requesting compensation for the care and treatment provided to the Patients.

**212.** At all relevant times herein, each of the Plans at issue in the Health Partners Action obligated the Defendants in the Health Partners Action to reimburse and/or pay for the Patient's medical care pursuant to the Plan, as applicable. A true and correct copy of part of a Plan at issue in the Health Partners Action, if any such plans were produced, is attached hereto and incorporated herein by this reference as Exhibit 30.

**213.** Within the period of time permitted by the applicable statute of limitations, Morningside entered into written agreements with certain Patients who had benefits payable under the subject Plans and insurance policies issued to and covering the Patients by those defendants named in the following action: 8:19-cv092184-DOC-DFM (*ABC Services Group, Inc. v. Golden Rule Insurance Company*) (the "Golden Rule Action"). True and correct copies of sample agreements are attached hereto and incorporated herein by this reference as Exhibits 4, 5, 6, 7, 8 and 9.

**214.** Each of the patients at issue in the Golden Rule Action also entered into a written assignment with Morningside. True and correct copies of sample assignments are attached hereto and incorporated herein by this reference as Exhibits 4, 5, 6, 7, 8, 9 and 10. When the Patients obtained the treatment from Morningside, they assigned to Morningside in writing their rights to any reimbursement and/or payment for treatment from Defendants in the Golden Rule Action.

**215.** Morningside provided services consistent with those services set forth in Paragraph 71 of the Complaint to the Patients at issue in the Golden Rule Action.

**216.**   After providing those services, Plaintiff submitted appropriate claim forms to Defendants in the Golden Rule Action, or their agents, requesting compensation for the care and treatment provided to the Patients.

**217.**   At all relevant times herein, each of the Plans at issue in the Health Partners Action obligated the Defendants in the Golden Rule Action to reimburse and/or pay for the Patient's medical care pursuant to the Plan, as applicable.  A true and correct copy of part of a Plan at issue in the Golden Rule Action, if any such plan was produced, is attached hereto and incorporated herein by this reference as Exhibit 31.

**218.**   Within the period of time permitted by the applicable statute of limitations, Morningside entered into written agreements with certain Patients who had benefits payable under the subject Plans and insurance policies issued to and covering the Patients by those defendants named in the following action: 8:19-cv-02180-DOC-DFM (*ABC Services Group, Inc. v. Amerihealth Insurance Company of New Jersey, doing business as Amerihealth New Jersey*) (the "Amerihealth Action").  True and correct copies of sample agreements are attached hereto and incorporated herein by this reference as Exhibits 4, 5, 6, 7, 8 and 9.

**219.**   Each of the patients at issue in the Amerihealth Action also entered into a written assignment with Morningside.  True and correct copies of sample assignments are attached hereto and incorporated herein by this reference as Exhibits 4, 5, 6, 7, 8, 9 and 10.   When the Patients obtained the treatment from Morningside, they assigned to Morningside in writing their rights to any reimbursement and/or payment for treatment from Defendants in the Amerihealth Action.

**220.**   Morningside provided services consistent with those services set forth in Paragraph 71 of the Complaint to the Patients at issue in the Amerihealth Action.

221.   After providing those services, Plaintiff submitted appropriate claim forms to Defendants in the Amerihealth Action, or their agents, requesting compensation for the care and treatment provided to the Patients.

222.   At all relevant times herein, each of the Plans at issue in the Amerihealth Action obligated the Defendants in the Amerihealth Action to reimburse and/or pay for the Patient's medical care pursuant to the Plan, as applicable.  A true and correct copy of part of a Plan at issue in the Amerihealth Action, if any such plan was produced, is attached hereto and incorporated herein by this reference as Exhibit 32.

223.   Within the period of time permitted by the applicable statute of limitations, Morningside entered into written agreements with certain Patients who had benefits payable under the subject Plans and insurance policies issued to and covering the Patients by those defendants named in the following action: 88:19-cv-02182-DOC-DFM (*ABC Services Group, Inc. v. Meritain Health, Inc*) (the "Meritain Action").  True and correct copies of sample agreements are attached hereto and incorporated herein by this reference as Exhibits 4, 5, 6, 7, 8 and 9.

224.   Each of the patients at issue in the Meritain Action also entered into a written assignment with Morningside.  True and correct copies of sample assignments are attached hereto and incorporated herein by this reference as Exhibits 4, 5, 6, 7, 8 , 9 and 10.  When the Patients obtained the treatment from Morningside, they assigned to Morningside in writing their rights to any reimbursement and/or payment for treatment from Defendants in the Meritain Action.

225.   Morningside provided services consistent with those services set forth in Paragraph 71 of the Complaint to the Patients at issue in the Meritain Action.

226.   After providing those services, Plaintiff submitted appropriate claim forms to Defendants in the Meritain Action, or their agents, requesting compensation for the care and treatment provided to the Patients.

CONSOLIDATED AMENDED COMPLAINT -- PAGE 67

227.   At all relevant times herein, each of the Plans at issue in the Meritain Action obligated the Defendants in the Meritain Action to reimburse and/or pay for the Patient's medical care pursuant to the Plan, as applicable.   A true and correct copy of part of a Plan at issue in the Meritain Action, if any such plan was produced, is attached hereto and incorporated herein by this reference as Exhibit 33.

228.   Within the period of time permitted by the applicable statute of limitations, Morningside entered into written agreements with certain Patients who had benefits payable under the subject Plans and insurance policies issued to and covering the Patients by those defendants named in the following action: 8:19-cv-02204-DOC-DFM (*ABC Services Group, Inc. v. Beacon Health Options, Inc., Beacon Health Strategies, LLC, ValueOptions of California, Inc.*) (the "Beacon Action").   True and correct copies of sample agreements are attached hereto and incorporated herein by this reference as Exhibits 4, 5, 6, 7, 8 and 9.

229.   Each of the patients at issue in the Beacon Action also entered into a written assignment with Morningside. True and correct copies of sample assignments are attached hereto and incorporated herein by this reference as Exhibits 4, 5, 6, 7, 8, 9 and 10.   When the Patients obtained the treatment from Morningside, they assigned to Morningside in writing their rights to any reimbursement and/or payment for treatment from Defendants in the Beacon Action.

230.   Morningside provided services consistent with those services set forth in Paragraph 71 of the Complaint to the Patients at issue in the Beacon Action.

231.   After providing those services, Plaintiff submitted appropriate claim forms to Defendants in the Beacon Action, or their agents, requesting compensation for the care and treatment provided to the Patients.

232.   At all relevant times herein, each of the Plans at issue in the Beacon Action obligated the Defendants in the Beacon Action to reimburse and/or pay for

the Patient's medical care pursuant to the Plan, as applicable.  A true and correct copy of part of a Plan at issue in the Beacon Action, if any such plan was produced, is attached hereto and incorporated herein by this reference as Exhibit 34.

233.    Within the period of time permitted by the applicable statute of limitations, Morningside entered into written agreements with certain Patients who had benefits payable under the subject Plans and insurance policies issued to and covering the Patients by those defendants named in the following action: 8:19-cv-02131-DOC-DFM (*ABC Services Group, Inc. v. Coventry Health Care, Inc.* [previously 8:19-cv-09432-DOC-DFM]) (the "Coventry Action").  True and correct copies of sample agreements are attached hereto and incorporated herein by this reference as Exhibits 4, 5, 6, 7, 8 and 9.

234.    Each of the patients at issue in the Coventry Action also entered into a written assignment with Morningside.  True and correct copies of sample assignments are attached hereto and incorporated herein by this reference as Exhibits 4, 5, 6, 7, 8, 9 and 10.   When the Patients obtained the treatment from Morningside, they assigned to Morningside in writing their rights to any reimbursement and/or payment for treatment from Defendants in the Coventry Action.

235.    Morningside provided services consistent with those services set forth in Paragraph 71 of the Complaint to the Patients at issue in the Coventry Action.

236.    After providing those services, Plaintiff submitted appropriate claim forms to Defendants in the Coventry Action, or their agents, requesting compensation for the care and treatment provided to the Patients.

237.    At all relevant times herein, each of the Plans at issue in the Coventry Action obligated the Defendants in the Coventry Action to reimburse and/or pay for the Patient's medical care pursuant to the Plan, as applicable.  A true and correct copy of part of a Plan at issue in the Coventry Action, if any such plan was

produced, is attached hereto and incorporated herein by this reference as <u>Exhibit 35</u>.

**238.** Within the period of time permitted by the applicable statute of limitations, Morningside entered into written agreements with certain Patients who had benefits payable under the subject Plans and insurance policies issued to and covering the Patients by those defendants named in the following action: <u>8:19-cv-02219-DOC-DFM (</u>*ABC Services Group, Inc. v. MHNet Specialty Services, LLC*) (the "MHNet Action"). True and correct copies of sample agreements are attached hereto and incorporated herein by this reference as <u>Exhibits 4, 5, 6, 7, 8 and 9</u>.

**239.** Each of the patients at issue in the MHNet Action also entered into a written assignment with Morningside. True and correct copies of sample assignments are attached hereto and incorporated herein by this reference as <u>Exhibits 4, 5, 6, 7, 8, 9 and 10</u>. When the Patients obtained the treatment from Morningside, they assigned to Morningside in writing their rights to any reimbursement and/or payment for treatment from Defendants in the MHNet Action.

**240.** Morningside provided services consistent with those services set forth in Paragraph 71 of the Complaint to the Patients at issue in the MHNet Action.

**241.** After providing those services, Plaintiff submitted appropriate claim forms to Defendants in the MHNet Action, or their agents, requesting compensation for the care and treatment provided to the Patients.

**242.** At all relevant times herein, each of the Plans at issue in the MHNet Action obligated the Defendants in the MHNet Action to reimburse and/or pay for the Patient's medical care pursuant to the Plan, as applicable. A true and correct copy of part of a Plan at issue in the MHNet Action, if any such documents were produced, is attached hereto and incorporated herein by this reference as <u>Exhibit 36</u>.

243.   Within the period of time permitted by the applicable statute of limitations, Morningside entered into written agreements with certain Patients who had benefits payable under the subject Plans and insurance policies issued to and covering the Patients by those defendants named in the following action: 8:19-cv-02210-DOC-DFM (*ABC Services Group, Inc. v. Common Ground Healthcare Cooperative*) (the "Common Ground Action"). True and correct copies of sample agreements are attached hereto and incorporated herein by this reference as Exhibits 4, 5, 6, 7, 8 and 9.

244.   Each of the patients at issue in the Common Ground Action also entered into a written assignment with Morningside.  True and correct copies of sample assignments are attached hereto and incorporated herein by this reference as Exhibits 4, 5, 6, 7, 8, 9 and 10..   When the Patients obtained the treatment from Morningside, they assigned to Morningside in writing their rights to any reimbursement and/or payment for treatment from Defendants in the Common Ground Action.

245.   Morningside provided services consistent with those services set forth in Paragraph 71 of the Complaint to the Patients at issue in the Common Ground Action.

246.   After providing those services, Plaintiff submitted appropriate claim forms to Defendants in the Common Ground Action, or their agents, requesting compensation for the care and treatment provided to the Patients.

247.   At all relevant times herein, each of the Plans at issue in the Common Ground Action obligated the Defendants in the Common Ground Action to reimburse and/or pay for the Patient's medical care pursuant to the Plan, as applicable.  A true and correct copy of part of a Plan at issue in the Common Ground Action, if any such plan was produced, is attached hereto and incorporated herein by this reference as Exhibit 37.

248.   Within the period of time permitted by the applicable statute of limitations, Morningside entered into written agreements with certain Patients who had benefits payable under the subject Plans and insurance policies issued to and covering the Patients by those defendants named in the following action: 8:19-cv-02172-DOC-DFM (*ABC Services Group, Inc. v. Providence Health Plan*) (the "Providence Action").  True and correct copies of sample agreements are attached hereto and incorporated herein by this reference as Exhibits 4, 5, 6, 7, 8 and 9.

249.   Each of the patients at issue in the Providence Action also entered into a written assignment with Morningside.  True and correct copies of sample assignments are attached hereto and incorporated herein by this reference as Exhibits 4, 5, 6, 7, 8, 9 and 10.   When the Patients obtained the treatment from Morningside, they assigned to Morningside in writing their rights to any reimbursement and/or payment for treatment from Defendants in the Providence Action.

250.   Morningside provided services consistent with those services set forth in Paragraph 71 of the Complaint to the Patients at issue in the Providence Action.

251.   After providing those services, Plaintiff submitted appropriate claim forms to Defendants in the Providence Action, or their agents, requesting compensation for the care and treatment provided to the Patients.

252.   At all relevant times herein, each of the Plans at issue in the Providence Action obligated the Defendants in the Providence Action to reimburse and/or pay for the Patient's medical care pursuant to the Plan, as applicable.  A true and correct copy of part of a Plan at issue in the Providence Action, if any such plans were produced, is attached hereto and incorporated herein by this reference as Exhibit 38.

253.   Within the period of time permitted by the applicable statute of limitations, Morningside entered into written agreements with certain Patients who had benefits payable under the subject Plans and insurance policies issued to and

covering the Patients by those defendants named in the following action: <u>8:19-cv-02171-DOC-DFM</u> (*ABC Services Group, Inc. v. First Health Group Corporation*) (the "First Health Action").  True and correct copies of sample agreements are attached hereto and incorporated herein by this reference as <u>Exhibits 4, 5, 6, 7, 8 and 9</u>.

254.   Each of the patients at issue in the First Health Action also entered into a written assignment with Morningside.  True and correct copies of sample assignments are attached hereto and incorporated herein by this reference as <u>Exhibits 4, 5, 6, 7, 8, 9 and 10</u>.   When the Patients obtained the treatment from Morningside, they assigned to Morningside in writing their rights to any reimbursement and/or payment for treatment from Defendants in the First Health Action.

255.   Morningside provided services consistent with those services set forth in Paragraph 71 of the Complaint to the Patients at issue in the First Health Action.

256.   After providing those services, Plaintiff submitted appropriate claim forms to Defendants in the First Health Action, or their agents, requesting compensation for the care and treatment provided to the Patients.

257.   At all relevant times herein, each of the Plans at issue in the First Health Action obligated the Defendants in the First Health Action to reimburse and/or pay for the Patient's medical care pursuant to the Plan, as applicable.  A true and correct copy of part of a Plan at issue in the First Health Action, if any such plans were produced, is attached hereto and incorporated herein by this reference as <u>Exhibit 39</u>.

258.   Within the period of time permitted by the applicable statute of limitations, Morningside entered into written agreements with certain Patients who had benefits payable under the subject Plans and insurance policies issued to and covering the Patients by those defendants named in the following action: 8:19-cv-02188-DOC-DFM (*ABC Services Group, Inc. v. HealthLink, Inc.*) (the

"HealthLink Action").  True and correct copies of sample agreements are attached hereto and incorporated herein by this reference as <u>Exhibits 4, 5, 6, 7, 8 and 9</u>.

259.  Each of the patients at issue in the HealthLink Action also entered into a written assignment with Morningside.  True and correct copies of sample assignments are attached hereto and incorporated herein by this reference as <u>Exhibits 4, 5, 6, 7, 8, 9 and 10</u>.   When the Patients obtained the treatment from Morningside, they assigned to Morningside in writing their rights to any reimbursement and/or payment for treatment from Defendants in the HealthLink Action.

260.  Morningside provided services consistent with those services set forth in Paragraph 71 of the Complaint to the Patients at issue in the HealthLink Action.

261.  After providing those services, Plaintiff submitted appropriate claim forms to Defendants in the HealthLink Action, or their agents, requesting compensation for the care and treatment provided to the Patients.

262.  At all relevant times herein, each of the Plans at issue in the HealthLink Action obligated the Defendants in the HealthLink Action to reimburse and/or pay for the Patient's medical care pursuant to the Plan, as applicable.  A true and correct copy of part of a Plan at issue in the HealthLink Action, if any such plans were produced, is attached hereto and incorporated herein by this reference as <u>Exhibit 40</u>.

263.  Within the period of time permitted by the applicable statute of limitations, Morningside entered into written agreements with certain Patients who had benefits payable under the subject Plans and insurance policies issued to and covering the Patients by those defendants named in the following action: 8:19-cv-02118-DOC-DFM (*ABC Services Group, Inc. v. Molina Healthcare, Inc., Molina Healthcare of California, Inc.*) (the "Molina Action"). True and correct copies of sample agreements are attached hereto and incorporated herein by this reference as <u>Exhibits 4, 5, 6, 7, 8 and 9</u>.

264.    Each of the patients at issue in the Molina Action also entered into a written assignment with Morningside.  True and correct copies of sample assignments are attached hereto and incorporated herein by this reference as Exhibits 4, 5, 6, 7, 8, 9 and 10.   When the Patients obtained the treatment from Morningside, they assigned to Morningside in writing their rights to any reimbursement and/or payment for treatment from Defendants in the Molina Action.

265.    Morningside provided services consistent with those services set forth in Paragraph 71 of the Complaint to the Patients at issue in the Molina Action.

266.    After providing those services, Plaintiff submitted appropriate claim forms to Defendants in the Molina Action, or their agents, requesting compensation for the care and treatment provided to the Patients.

267.    At all relevant times herein, each of the Plans at issue in the Molina Action obligated the Defendants in the Molina Action to reimburse and/or pay for the Patient's medical care pursuant to the Plan, as applicable.  A true and correct copy of part of a Plan at issue in the Molina Action, if any such plans were produced, is attached hereto and incorporated herein by this reference as Exhibit 41.

268.    To maintain the confidentiality of Defendants' plan documents, Plaintiff shall seek leave from this Court for an order to file all plan documents, Exhibits 11 through 41, under seal.

269.    Plaintiff either did not receive full, reasonable, and often no compensation from Defendants for the services provided.

270.    Despite written demand from Morningside, Defendants have failed and refused to pay such amounts.

271.    Plaintiff is informed and believes, and based thereon alleges, there is no legally operative term in the Plans that permit Defendants to deny Plaintiff full and/or reasonable compensation for the services Plaintiff provided to the Patients

in good faith.  Plaintiff duly performed under the insurance contract and must be
paid by Defendants.

272.   Plaintiff is informed and believes, and based thereon alleges, that the
Patients, and each of them, have performed all of the obligations required of them
under their respective plans with Defendants, except as otherwise may have been
excused or prevented by Defendants.

273.   There is now due, owing and unpaid by Defendants to Plaintiff a sum
not less than $50,000,000.00, plus pre-judgment interest according to proof.

## SECOND CLAIM FOR RELIEF

### (Breach of Contract (Third Party Beneficiary) Against All Defendants)

274.   Plaintiff realleges and incorporates by reference each and every
paragraph of this Complaint as though set forth herein.

275.   Defendants, and each of them, entered into written agreements with
their insureds pursuant to which the insureds would pay premiums to Defendants,
and Defendants would provide insurance coverage to cover mental health and SUD
Treatment.  Copies of examples of the Plans between the Patients and certain
Defendants are attached hereto and incorporated herein by this reference as
Exhibits 11 through 41.

276.   Plaintiff is informed and believes, and based thereon alleges, that as to
the non-ERISA Plans, these were executed by the Patients and the Defendants, in
substantial part, for the direct benefit of health care providers, including providers
of mental health and SUD treatment.  Morningside, at all relevant times as a
member of the mental health and SUD treatment community and provider of
similar mental health care, was an intended third party beneficiary for payment of
such services provided to the Patients under their respective plans.

277.   Each Plan was required to offer coverage for mental health and SUD
treatment in parity with the medical and surgical benefits afforded by the same
plan, as required by 26 U.S.C. § 9812(3)(A).

278.   Plaintiff is further informed and believes, and based thereon alleges, that Morningside is an intended beneficiary of the Patients' Plans issued by Defendants and the rights conferred thereunder.  By the Assignment between Morningside and Plaintiff as set forth in Exhibit 1, Plaintiff is entitled to all rights conferred thereunder.

279.   Plaintiff is entitled to be paid for the services Morningside provided based on the existence and terms of the Plans covering each Patient.

280.   Plaintiff is informed and believes, and based thereon alleges, that Morningside confirmed that the Patients with Plans from Defendants were covered by a policy issued by Defendants through a required prior authorization process before rendering services.  At great expense, Morningside thereafter provided medically necessary mental health and SUD treatment to the Patients.

281.   After providing those services, Morningside submitted appropriate claim forms to Defendants, or their agents, requesting compensation for the services Morningside provided to the Patients.

282.   Morningside either did not receive full, reasonable, or often no compensation for the services Morningside provided.

283.   Plaintiff is informed and believes, and based thereon alleges, there is no legally operative term in the Plans that permit Defendants to deny Morningside full and/or reasonable compensation for the services Morningside provided to the Patients in good faith.  Morningside duly performed and payment is due by Defendants.

284.   Plaintiff is informed and believes, and based thereon alleges, that the Patients, and each of them, have performed all of the obligations required of them under their respective Plans with Defendants, except as otherwise may have been excused or prevented by Defendants.

285.   There is now due, owing and unpaid by Defendants to Plaintiff a sum not less than $50,000,000.00, plus pre-judgment interest, according to proof at trial.

## PRAYER FOR RELIEF

**AS TO THE FIRST AND SECOND CLAIM FOR RELIEF**:

**WHEREFORE**, Plaintiff prays as follows:

**1.**   For an order that Defendants pay to Plaintiff an amount to be proven at Trial, but no less than $50,000,000.00;

**2.**   For economic damages according to proof;

**3.**   For pre- and post-judgment interest as allowed by law;

**4.**   For attorney's fees and costs of suit incurred herein; and

**5.**   For such other and further relief as the Court deems appropriate.

Respectfully Submitted,

Dated: May 7, 2020                GARNER HEALTH LAW CORPORATION

By:   *Craig B. Garner*
      CRAIG B. GARNER
Attorneys for PLAINTIFF ABC SERVICES GROUP, INC., in its capacity as assignee for the benefit of creditors of MORNINGSIDE RECOVERY, LLC

1

## **DEMAND FOR JURY TRIAL**

2

3
        Pursuant to the Seventh Amendment to the United States Constitution, and

4
any other applicable law, Plaintiff hereby requests a trial by jury for all claims

5
triable by jury.

6

7                                          Respectfully Submitted,

8    Dated: May 7, 2020                    GARNER HEALTH LAW CORPORATION

9

10                                         By:    */s/ Craig B. Garner*
                                                  CRAIG B. GARNER
11                                         Attorneys for PLAINTIFF ABC SERVICES
                                           GROUP, INC., in its capacity as assignee for
12                                         the benefit of creditors of MORNINGSIDE
                                           RECOVERY, LLC
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 7, 2020, I caused the

### CONSOLIDATED AMENDED COMPLAINT

to be served upon counsel in the manner described below:

Participants in the case who are registered CM/ECF users will be served by the Central District CM/ECF system.

## <u>VIA THE CENTRAL DISTRICT CM/ECF SYSTEM</u>

### *Special Master*

Stephen G Larson
Larson O'Brien LLP
555 South Flower Street Suite 4400
Los Angeles, CA 90071
213-436-4864
slarson@larsonobrienlaw.com

### *Aetna Health and Life Insurance Company*

Benjamin H. McCoy
Fox Rothchild LLP
10 Sentry Parkway, Suite 200
Blue Bell, PA 19422
610-397-7972
bmccoy@foxrothschild.com

John Shaeffer
Fox Rothschild LLP
10250 Constellation Boulevard
Suite 900
Los Angeles, CA 90067
310-598-4150
jshaeffer@foxrothschild.com

1
2
3

***Anthem Blue Cross Life and Health Insurance Company***
***Anthem, Inc.***
***Blue Cross of California, Inc.***
***The Anthem Companies of California, Inc.***

4
5
6
7
8
9

Steven D Allison
Samrah R Mahmoud
Troutman Sanders LLP
5 Park Plaza Suite 1400
Irvine, CA 92614
949-622-2700
steve.allison@troutman.com
samrah.mahmoud@troutman.com

10
11
12
13
14

Virginia Bell Flynn
Troutman Sanders LLP
4320 Fairfax Drive
Dallas, TX 75205
804-697-1480
virginia.flynn@troutman.com

15
16
17
18
19

Chad R Fuller
Troutman Sanders LLP
11682 El Camino Real Suite 400
San Diego, CA 92130
858-509-6000
chad.fuller@troutman.com

20

***Blue Cross and Blue Shield of Alabama***

21
22
23
24
25

Neil J Barker
Neil J Barker APC
225 South Lake Avenue Suite 300
Pasadena, CA 91101
626-440-5980
neiljbarker@sbcglobal.net

26
27
28

*Health Care Service Corporation*

Jonathan Daniel Gershon
Amir Shlesinger
Farah Tabibkhoei
Reed Smith LLP
335 South Grand Avenue Suite 2900
Los Angeles, CA 90071-1514
213-457-8000
jgershon@reedsmith.com
ashlesinger@reedsmith.com
ftabibkhoei@reedsmith.com

Dan J Hofmeister, Jr
Reed Smith LLP
10 South Wacker Drive Suite 4000
Chicago, IL 60606
312-207-6545
dhofmeister@reedsmith.com

*Blue Cross and Blue Shield of Kansas City*

Jonathan Daniel Gershon
Amir Shlesinger
Farah Tabibkhoei
Reed Smith LLP
335 South Grand Avenue Suite 2900
Los Angeles, CA 90071-1514
213-457-8000
jgershon@reedsmith.com
ashlesinger@reedsmith.com
ftabibkhoei@reedsmith.com

Dan J Hofmeister, Jr
Reed Smith LLP
10 South Wacker Drive Suite 4000
Chicago, IL 60606
312-207-6545
dhofmeister@reedsmith.com

***Blue Cross and Blue Shield of Kansas Inc***

Kimberly Ann Klinsport
Foley and Lardner LLP
555 South Flower Street Suite 3300
Los Angeles, CA 90071-2411
213-972-4500
kklinsport@foley.com

Michael A Naranjo
Jason Yon-Wai Wu
Foley and Lardner LLP
555 California Street Suite 1700
San Francisco, CA 94104
415-434-4484
mnaranjo@foley.com
jwu@foley.com

***USable Mutual Insurance Company***

Kimberly Ann Klinsport
Foley and Lardner LLP
555 South Flower Street Suite 3300
Los Angeles, CA 90071-2411
213-972-4500
kklinsport@foley.com

Michael A Naranjo
Jason Yon-Wai Wu
Foley and Lardner LLP
555 California Street Suite 1700
San Francisco, CA 94104
415-434-4484
mnaranjo@foley.com
jwu@foley.com

1

***Bluecross Blueshield of Tennessee Inc.***

2

3   Jason Jonathan Kim
    Ann Marie Mortimer
4   Hunton Andrews Kurth LLP
    550 South Hope Street Suite 2000
5   Los Angeles, CA 90071
6   213-532-2000
    kimj@huntonak.com
7   amortimer@huntonAK.com

8
    John B Shely
9   Bridget B Vick
10  Hunton Andrews Kurth LLP
    600 Travis Street Suite 4200
11  Houston, TX 77002
12  713-220-4200
    jshely@huntonak.com
13  bvick@huntonak.com

14

15  ***Humana Behavioral Health, Inc.***
    ***Humana Health Plan of California Inc.***
16  ***Humana Inc.***
17  ***Humana Insurance Company***

18
    Ronald K Alberts
19  Norvik Azarian
20  Gordon Reese Scully Mansukhani LLP
    633 West Fifth Street 52nd Floor Los Angeles, CA 90071
21  213-576-5000
22  ralberts@grsm.com
    nazarian@grsm.com
23

24

25

26

27

28

1  **United Behavioral Health**
2  **United Healthcare Services Inc.**
   **Optum Services, Inc.**
3

4  Dylan Scott Burstein
   Crowell and Moring LLP
5  515 South Flower Street 40th Floor
   Los Angeles, CA 90071
6  213-622-4750
7  dburstein@crowell.com

8
   Daniel M Glassman
9  Stephanie V Phan
   Jennifer S. Romano
10 Crowell and Moring LLP
11 3 Park Plaza 20th Floor
   Irvine, CA 92614-8505
12 949-263-8400
13 dglassman@crowell.com
14 sphan@crowell.com
   jromano@crowell.com
15

16 **Scott and White Health Plan**
   **Scott and White Healthcare**
17 **Scott and White Care Plans**
18
   Derek Davis
19 Alan Law
20 Cooper & Scully, P.C.
   505 Sansome Street
21 Suite 1550
22 San Francisco, California 94111
   415-956-9700
23 derek.davis@cooperscully.com
24 alan.law@cooperscully.com

25

26

27

28

***Cigna HealthCare of California, Inc.***
***Cigna Behavioral Health of California, Inc.***
***Cigna Health and Life Insurance Company***

Jeanne Louise Detch
Mazda K. Antia
Cooley LLP
4401 Eastgate Mall
San Diego, CA 92121
858-550-6000
jdetch@cooley.com
mantia@cooley.com

Matthew D. Caplan
Cooley LLP
1333 2nd St. Suite 400
Santa Monica, CA 90401
415-693-2000
mcaplan@cooley.com

***HMC Healthworks, Inc.***

Kathleen V. Fisher
Rodney James Jacob
Calvo Fisher and Jacob LLP
535 Pacific Avenue
Suite 201
San Francisco, CA 94133
415-374-8370
kfisher@calvofisher.com
rjacob@calvofisher.com

1

***Providence Health Plan***

2

***Providence Health Assurance***
***Providence Health and Services***

3

4

Jose Dino Vasquez
Karr Tuttle Campbell

5

701 5th Avenue

6

Suite 3300
Seattle, WA 98104

7

206-223-1313

8

dvasquez@karrtuttle.com

9

Arden J. Olson

10

Harrang Long Gary Rudnick PC
Oakway Financial Center

11

497 Oakway Road

12

Suite 380
Eugene, OR 97401

13

541-485-0220

14

Arden.j.olson@harrang.com

15

***United Medical Resources, Inc.***

16

17

Dylan Scott Burstein
Crowell and Moring LLP

18

515 South Flower Street 40th Floor
Los Angeles, CA 90071

19

213-622-4750

20

dburstein@crowell.com

21

Daniel M Glassman

22

Stephanie V Phan
Jennifer S. Romano

23

Crowell and Moring LLP

24

3 Park Plaza 20th Floor
Irvine, CA 92614-8505

25

949-263-8400

26

dglassman@crowell.com
sphan@crowell.com

27

jromano@crowell.com

28

***MHNet Specialty Services LLC***

Benjamin H. McCoy
Fox Rothchild LLP
10 Sentry Parkway, Suite 200
Blue Bell, PA 19422
610-397-7972
bmccoy@foxrothschild.com

John Shaeffer
Fox Rothschild LLP
10250 Constellation Boulevard
Suite 900
Los Angeles, CA 90067
310-598-4150
jshaeffer@foxrothschild.com

***Meritain Health, Inc.***

Benjamin H. McCoy
Fox Rothchild LLP
10 Sentry Parkway, Suite 200
Blue Bell, PA 19422
610-397-7972
bmccoy@foxrothschild.com

John Shaeffer
Fox Rothschild LLP
10250 Constellation Boulevard
Suite 900
Los Angeles, CA 90067
310-598-4150
jshaeffer@foxrothschild.com

1  ***First Health Group Corporation***

2

3  Benjamin H. McCoy
   Fox Rothchild LLP

4  10 Sentry Parkway, Suite 200
   Blue Bell, PA 19422

5  610-397-7972
   bmccoy@foxrothschild.com

6

7  John Shaeffer

8  Fox Rothschild LLP
   10250 Constellation Boulevard

9  Suite 900
   Los Angeles, CA 90067

10 310-598-4150

11 jshaeffer@foxrothschild.com

12 ***Connecticare, Inc.***

13

14 Carol Burney Lewis
   William Von Behren

15 Von Behren & Hunter LLP
   2041 Rosecrans Ave.

16 Suite 367

17 El Segundo, CA 90245

18 310-607-9111
   Clewis@vbhlaw.com

19 bvonbehren@vbhlaw.com

20

21 ***Golden Rule Insurance Company***

22 Dylan Scott Burstein
   Crowell and Moring LLP

23 515 South Flower Street 40th Floor
   Los Angeles, CA 90071

24 213-622-4750

25 dburstein@crowell.com

26

27

28

1   Daniel M Glassman
2   Stephanie V Phan
    Jennifer S. Romano
3   Crowell and Moring LLP
4   3 Park Plaza 20th Floor
    Irvine, CA 92614-8505
5   949-263-8400
6   dglassman@crowell.com
    sphan@crowell.com
7   jromano@crowell.com

8   **_Sierra Health and Life Company_**
9
10  Dylan Scott Burstein
    Crowell and Moring LLP
11  515 South Flower Street 40th Floor
    Los Angeles, CA 90071
12  213-622-4750
13  dburstein@crowell.com

14  Daniel M Glassman
15  Stephanie V Phan
    Jennifer S. Romano
16  Crowell and Moring LLP
17  3 Park Plaza 20th Floor
    Irvine, CA 92614-8505
18  949-263-8400
19  dglassman@crowell.com
20  sphan@crowell.com
    jromano@crowell.com
21

22  **_Coventry Health Care, Inc._**

23  Benjamin H. McCoy
24  Fox Rothchild LLP
    10 Sentry Parkway, Suite 200
25  Blue Bell, PA 19422
26  610-397-7972
    bmccoy@foxrothschild.com
27

28

John Shaeffer
Fox Rothschild LLP
10250 Constellation Boulevard
Suite 900
Los Angeles, CA 90067
310-598-4150
jshaeffer@foxrothschild.com

***Medica Health Plans***

Elise D. Klein
Lewis Brisbois Bisgaard and Smith LLP
633 West 5th Street
Suite 4000
Los Angeles, CA 90071
213-250-1800
Elise.klein@lewisbrisbois.com

***Molina Healthcare, Inc.***
***Molina Healthcare of California, Inc.***

Jonathan Daniel Gershon
Amir Shlesinger
Farah Tabibkhoei
Reed Smith LLP
335 South Grand Avenue Suite 2900
Los Angeles, CA 90071-1514
213-457-8000
jgershon@reedsmith.com
ashlesinger@reedsmith.com
ftabibkhoei@reedsmith.com

***AmeriHealth Insurance Company of New Jersey***

Francis X. Manning
Stradley Ronon Stevens & Young LLP
457 Haddonfield Road, Suite 100
Cherry Hill, NJ 08002-2223
856-321-2403
fmanning@stradley.com

Mary Tesh-Glarum
Doll Amir and Eley LLP
725 S. Figueroa St.
Suite 3275
Los Angeles, CA 90017
213-542-3380
mglarum@dollamir.com

***Medical Mutual of Ohio***

S. Christopher Yoo
Alvaradosmith
1 MacArthur Pl., Suite 200
Santa Ana, CA 92707
714-852-6800
cyoo@alvaradosmith.com

***Pacificsource Health Plans***

Joseph C. Campo
Lewis Brisbois
633 W. 5th St.
Suite 4000
Los Angeles, CA 90071
213-680-5072
Joe.campo@lewisbrisbois.com

***Beacon Health Options, Inc.***
***Beacon Health Strategies, LLC***
***ValueOptions Federal Services, Inc.,***
***ValueOptions of California, n/k/a Beacon Health Options of California, Inc.***

Henry I. Willett, III
Christian & Barton LLP
909 East Main Street, Suite 1200
Richmond, VA 23219
804-697-4130
hwillett@cblaw.com

***Common Ground Healthcare Cooperative***

William D. Naeve
Murchison & Cumming
18201 Von Karman Ave.
Suite 1100
Irvine, CA 92612
714-953-2233
wnaeve@murchisonlaw.com

***Providence Health Plan***
***Providence Health Assurance***
***Providence Health and Services***

Arden J. Olson
Harrang Long Gary Rudnick PC
Oakway Financial Center
497 Oakway Road
Suite 380
Eugene, OR 97401
541-485-0220
Arden.j.olson@harrang.com

_/s/ Craig B. Garner_
Craig B. Garner
*Counsel for Plaintiff*