CRAIG B. GARNER (CA SBN 177971)
GARNER HEALTH LAW CORPORATION
13274 Fiji Way, Suite 250
Marina Del Rey, CA 90292
Telephone: (310) 458-1560
Facsimile: (310) 694-9025
Email: craig@garnerhealth.com

ROCHELLE J. BIOTEAU (CA SBN 228348)
SQUIRES, SHERMAN & BIOTEAU, LLP
1901 1ST Ave., Suite 415
San Diego, CA 92101
Telephone: (619) 696-8854
Email: rochelle@ssbllp.com

Attorneys for PLAINTIFF ABC SERVICES GROUP, INC., in its capacity as assignee for the benefit of creditors of MORNINGSIDE RECOVERY, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| ABC SERVICES GROUP, INC., a Delaware corporation, in its capacity as assignee for the benefit of creditors of MORNINGSIDE RECOVERY, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>UNITED HEALTHCARE SERVICES, INC.; UNITED BEHAVIORAL HEALTH; OPTUM SERVICES, INC; USABLE MUTUAL INSURANCE COMPANY, doing business as | Lead Case No. 8:19−cv−00243-DOC-DFM<br><br>Hon. David O. Carter<br><br>**CONSOLIDATED AMENDED COMPLAINT FOR BREACH OF EMPLOYEE WELFARE BENEFIT PLAN (RECOVERY OF PLAN BENEFITS UNDER E.R.I.S.A.) 29 U.S.C. § 1132(a)(1)(b)** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ARKANSAS BLUE CROSS AND
BLUE SHIELD and BLUE CROSS
AND BLUE SHIELD OF ARKANSAS
BLUE ADVANTAGE; BLUE CROSS
AND BLUE SHIELD OF KANSAS,
INC.; BLUE CROSS AND BLUE
SHIELD OF KANSAS CITY;
HEALTH CARE SERVICE
CORPORATION, doing business as
BLUE CROSS AND BLUE SHIELD
OF OKLAHOMA; BLUE CROSS
AND BLUE SHIELD OF ALABAMA;
ANTHEM BLUE CROSS LIFE AND
HEALTH INSURANCE COMPANY;
ANTHEM, INC., dba ANTHEM
HEALTH, INC.; BLUE CROSS OF
CALIFORNIA, INC.; HUMANA
HEALTH PLAN OF CALIFORNIA,
INC.; HUMANA BEHAVIORAL
HEALTH, INC.; HUMANA
INSURANCE COMPANY; HUMANA
EMPLOYERS HEALTH PLAN OF
GEORGIA, INC.; HUMANA, INC.;
HUMANA HEALTH PLAN OF
LOUISIANA, INC.; HUMANA
HEALTH PLAN OF TEXAS, INC.;
HUMANA MEDICAL PLAN; AETNA
HEALTH AND LIFE INSURANCE
COMPANY; BLUECROSS
BLUESHIELD OF TENNESSEE,
INC.; CIGNA HEALTHCARE OF
CALIFORNIA, INC.; CIGNA
BEHAVIORAL HEALTH OF
CALIFORNIA, INC.; CIGNA
HEALTH AND LIFE INSURANCE
COMPANY; HMC HEALTHWORKS,
LLC, fka HMC HEALTHWORKS,
INC.; UNITED MEDICAL
RESOURCES, INC.; SIERRA
HEALTH AND LIFE INSURANCE
COMPANY, INC.; MEDICAL
MUTUAL OF OHIO; MEDICAL
MUTUAL SERVICES, LLC; GROUP
HEALTH PLAN, INC., doing business
as HEALTHPARTNERS; MERITAIN
HEALTH, INC.; BEACON HEALTH
OPTIONS, INC.; BEACON HEALTH
STRATEGIES, LLC;

VALUEOPTIONS OF CALIFORNIA, INC.; COVENTRY HEALTH CARE, INC.; MHNET SPECIALTY SERVICES, LLC; PROVIDENCE HEALTH PLAN; FIRST HEALTH INSURANCE CORPORATION; GHI, INC.,

                    Defendants.

**CONSOLIDATED WITH:**

1. 8:19-cv-00531-DOC-DFM (*ABC Services Group, Inc. v. United Healthcare Services, Inc., et al.*)

2. 8:19-cv-00803-DOC-DFM (*ABC Services Group, Inc. v. USAble Mutual Insurance Company, et al.*)

3. 8:19-cv-00776-DOC-DFM (*ABC Services Group, Inc. v. Health Care Service Corporation, et al.*)

4. 8:19-cv-00789-DOC-DFM (*ABC Services Group, Inc. v. Blue Cross and Blue Shield of Alabama, et al.*)

5. 8:19-cv-00677-DOC-DFM (*ABC Services Group, Inc. v. Anthem Blue Cross Life and Health Insurance Company, et al.*)

6. 8:20-cv-00175-DOC-DFM (*ABC Services Group, Inc. v. Humana Behavioral Health, Inc., et al.*)

7. 8:19-cv-00777-DOC-DFM (*ABC Services Group, Inc. v. Aetna Health and Life Insurance Company, et al.*)

8. 8:19-cv-00804-DOC-DFM (*ABC Services Group, Inc. v. Bluecross Blueshield of Tennessee, Inc., et al.*)

9. 8:19-cv-02125-DOC-DFM (*ABC Services Group, Inc. v. Cigna Healthcare of California, Inc., et al.*)

10. 8:19-cv-02136-DOC-DFM (*ABC Services Group, Inc. v. HMC Healthworks, Inc., et al.*)

11. 8:19-cv-02138-DOC-DFM (*ABC Services Group, Inc. v United Medical Resources, Inc., et al.*)

12. 8:19-cv-02168-DOC-DFM (*ABC Services Group, Inc. v. Sierra Health and Life Insurance Company, Inc., et al.*)

13. 8:19-cv-02122-DOC-DFM (*ABC Services Group, Inc. v. Medical Mutual of Ohio, et al.*)

**14.** 8:19-cv-02242-DOC-DFM (*ABC Services Group, Inc. v. Group Health Plan, Inc., et al.*)

**15.** 8:19-cv-02182-DOC-DFM (*ABC Services Group, Inc. v. Meritain Health, Inc., et al.*)

**16.** 8:19-cv-02204-DOC-DFM (*ABC Services Group, Inc. v. Beacon Health Options, Inc., et al.*)

**17.** 8:19-cv-02131-DOC-DFM (*ABC Services Group, Inc. v. Coventry Health Care, Inc., et al.* [previously 8:19-cv-09432-DOC-DFM])

**18.** 8:19-cv-02219-DOC-DFM (*ABC Services Group, Inc. v. MHNet Specialty Services, LLC., et al.*)

**19.** 8:19-cv-02172-DOC-DFM (*ABC Services Group, Inc. v. Providence Health Plan, et al.*)

**20.** 8:19-cv-02171-DOC-DFM (*ABC Services Group, Inc. v. First Health Group Corporation, et al.*)

**21.** 8:19-cv-02129-DOC-DFM (*ABC Services Group, Inc. v GHI, Inc., et al.*)[1]

---

[1]     The Clerk of the Court entered the default against defendant GHI, Inc., the only named defendant in Case No. 8:19-cv-02129 (ECF No. 343).

Pursuant to the February 14, 2022, Order of this Court (ECF No. 586), ABC SERVICES GROUP, INC., a Delaware corporation ("**ABC**" or "**Plaintiff**"), in its capacity as assignee for the benefit of creditors of MORNINGSIDE RECOVERY, LLC, a California limited liability company ("**Morningside**") complains and alleges in this Consolidated Amended Complaint ("**Complaint**") against Defendants United Healthcare Services, Inc, United Behavioral Health and Optum Services, Inc. [original filing 8:19-cv-00531-DOC-DFM], USAble Mutual Insurance Company, dba Arkansas Blue Cross and Blue Shield and as Blue Advantage Administrators of Arkansas, Blue Cross and Blue Shield of Kansas City, Blue Cross and Blue Shield of Kansas, Inc. and Blue Cross & Blue Shield of Mississippi, A Mutual Insurance Company [original filing 8:19-cv-00803-DOC-DFM], Health Care Service Corporation, a Mutual Legal Reserve Company, dba Blue Cross and Blue Shield of Oklahoma [original filing 8:19-cv-00776-DOC-DFM], Blue Cross and Blue Shield of Alabama [original filing 8:19-cv-00789-DOC-DFM], Anthem Blue Cross Life and Health Insurance Company, Anthem, Inc., Anthem, Inc. dba Anthem Health, Inc., The Anthem Companies of California, Inc. and The Anthem Companies, Inc. (together, "Anthem") [original filing 8:19-cv-00677-DOC-DFM], Humana Insurance Company, Humana Employers Health Plan of Georgia, Inc., Humana Behavioral Health, Inc., Humana Health Plan of California, Inc., Humana Inc., Humana Health Benefit Plan of Louisiana, Inc., Humana Health Plan of Texas, Inc., Humana Health Plan, Inc., and Humana Medical Plan (erroneously sued as Humana Insurance Company and Humana Medical Plan) [original filing 8:19-cv-00317-DOC-DFM], Aetna Health and Life Insurance Company [original filing 8:19-cv-00777-DOC-DFM], Bluecross Blueshield of Tennessee, Inc. [original filing 8:19-cv-00804-DOC-DFM], ComPsych Corporation [original filing 8:19-cv-02123-DOC-DFM], Cigna HealthCare of California, Inc., Cigna Behavioral Health of California, Inc., and Cigna Health and Life Insurance Company [original filing 8:19-cv-02125-DOC-DFM], HMC Healthworks, Inc., now known as HMC Healthworks,

LLC [original filing 8:19-cv-02136-DOC-DFM], United Medical Resources, Inc. [original filing 8:19-cv-02138-DOC-DFM], Sierra Health and Life Insurance Company, Inc. [original filing 8:19-cv-02168-DOC-DFM], Medical Mutual of Ohio and Medical Mutual Services, LLC [original filing 8:19-cv-02122-DOC-DFM], Group Health Plan, Inc., dba Healthpartners [original filing 8:19-cv-02242-DOC-DFM], Meritain Health, Inc. [original filing 8:19-cv-02182-DOC-DFM), Beacon Health Options, Inc., Beacon Health Strategies, LLC, Valueoptions Federal Services, Inc. and Valueoptions of California, Inc. (together, "Beacon") [original filing 8:19-cv-02204-DOC-DFM], Coventry Health Care, Inc. [original filing 8:19-cv-02131-DOC-DFM (previously 8:19-cv-09432-DOC-DFM)], MHNet Specialty Services, LLC [original filing 8:19-cv-02219-DOC-DFM], Providence Health Plan [original filing 8:19-cv-02172-DOC-DFM], First Health Group Corporation [original filing 8:19-cv-02171-DOC-DFM] and GHI, Inc. [original filing 8:19-cv-02129-DOC-DFM] [2] (collectively the "**Consolidated Defendants**" or "**Defendants**") as follows:

## THE PARTIES

1.      ABC is a corporation organized and existing under the laws of the State of Delaware, with its primary place of business located in Santa Ana, California.

2.      Morningside, at all relevant times, provided professional medical and mental health services and rehabilitation care for patients suffering from mental health and substance use disorders ("**SUDs**") from its location in Irvine, California.

3.      Defendant UNITED HEALTHCARE SERVICES, INC. is, and at all relevant times was a Minnesota corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that

---

[2]      The Clerk of the Court entered the default against defendant GHI, Inc., the only named defendant in Case No. 8:19-cv-02129 (ECF No. 343), and counsel for Plaintiff is unaware of any representation on behalf of GHI, Inc. at this time.

UNITED HEALTHCARE SERVICES, INC. is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

4.      Defendant UNITED BEHAVIORAL HEALTH is, and at all relevant times was a California corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits. Plaintiff is informed and believes, and based thereon alleges, that UNITED BEHAVIORAL HEALTH is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California

5.      Defendant OPTUM SERVICES, INC. is, and at all relevant times was a Delaware corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that OPTUM SERVICES, INC. is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California

6.      Defendant USABLE MUTUAL INSURANCE COMPANY, doing business as ARKANSAS BLUE CROSS AND BLUE SHIELD as well as BLUE CROSS AND BLUE SHIELD OF ARKANSAS TRUE ADVANTAGE is, and at all relevant times was an Arkansas corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance

benefits.  Plaintiff is informed and believes, and based thereon alleges, that USABLE MUTUAL INSURANCE COMPANY is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

7.      Defendant BLUE CROSS AND BLUE SHIELD OF KANSAS, INC. is, and at all relevant times was a Kansas corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that BLUE CROSS AND BLUE SHIELD OF KANSAS, INC. is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

8.      Defendant BLUE CROSS AND BLUE SHIELD OF KANSAS CITY is, and at all relevant times was a Missouri corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, BLUE CROSS AND BLUE SHIELD OF KANSAS CITY is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

9.      Defendant HEALTH CARE SERVICE CORPORATION, doing business as BLUE CROSS AND BLUE SHIELD OF OKLAHOMA is, and at all relevant times was an Oklahoma corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance

benefits.  Plaintiff is informed and believes, and based thereon alleges, that HEALTH CARE SERVICE CORPORATION is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

**10.**     Defendant BLUE CROSS AND BLUE SHIELD OF ALABAMA is, and at all relevant times was an Alabama corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that BLUE CROSS AND BLUE SHIELD OF ALABAMA is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California

**11.**     Defendant ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY is, and at all relevant times was a California corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

**12.**     Defendant ANTHEM, INC., dba ANTHEM HEALTH, INC. is, and at all relevant times was an Indiana corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance

benefits.  Plaintiff is informed and believes, and based thereon alleges, that ANTHEM INC. is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

13.     Defendant BLUE CROSS OF CALIFORNIA, INC. is, and at all relevant times was a California corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that BLUE CROSS OF CALIFORNIA, INC. is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

14.     Defendant HUMANA HEALTH PLAN OF CALIFORNIA, INC. is, and at all relevant times was a California corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that HUMANA HEALTH PLAN OF CALIFORNIA, INC. is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

15.     Defendant HUMANA BEHAVIORAL HEALTH, INC. is, and at all relevant times was a Texas corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits. Plaintiff is informed and believes, and based thereon alleges, that HUMANA

BEHAVIORAL HEALTH, INC. is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

16.     Defendant HUMANA, INC. is, and at all relevant times was a Delaware corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that HUMANA, INC. is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California

17.     Defendant HUMANA INSURANCE COMPANY is, and at all relevant times was a Wisconsin corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits. Plaintiff is informed and believes, and based thereon alleges, that HUMANA INSURANCE COMPANY is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

18.     Defendant HUMANA HEALTH BENEFIT PLAN OF LOUISIANA is, and at all relevant times was a Louisiana corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that HUMANA HEALTH BENEFIT PLAN OF LOUISIANA is licensed by the California Department of Insurance and/or the California Department of Managed

Health Care to transact business of insurance in the State of California, is in fact
transacting the business of insurance in the State of California and is thereby
subject to the laws and regulations of the State of California.

19.    Defendant HUMANA HEALTH PLAN OF TEXAS, INC., is, and at
all relevant times was a Texas corporation licensed to do business in and is and was
doing business in the State of California as a provider of health insurance benefits.
Plaintiff is informed and believes, and based thereon alleges, that HUMANA
HEALTH PLAN OF TEXAS, INC. is licensed by the California Department of
Insurance and/or the California Department of Managed Health Care to transact
business of insurance in the State of California, is in fact transacting the business of
insurance in the State of California and is thereby subject to the laws and
regulations of the State of California

20.    Defendant AETNA HEALTH AND LIFE INSURANCE COMPANY
is, and at all relevant times was a Connecticut corporation licensed to do business
in and is and was doing business in the State of California as a provider of health
insurance benefits.  Plaintiff is informed and believes, and based thereon alleges,
that AETNA HEALTH AND LIFE INSURANCE COMPANY is licensed by the
California Department of Insurance and/or the California Department of Managed
Health Care to transact business of insurance in the State of California, is in fact
transacting the business of insurance in the State of California and is thereby
subject to the laws and regulations of the State of California.

21.    Defendant BLUECROSS BLUESHIELD OF TENNESSEE, INC. is,
and at all relevant times was an Tennessee corporation licensed to do business in
and is and was doing business in the State of California as a provider of health
insurance benefits.  Plaintiff is informed and believes, and based thereon alleges,
that BLUECROSS BLUESHIELD OF TENNESSEE, INC. is licensed by the
California Department of Insurance and/or the California Department of Managed
Health Care to transact business of insurance in the State of California, is in fact

transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

22.     Defendant CIGNA HEALTHCARE OF CALIFORNIA, INC. is, and at all relevant times was a California corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that CIGNA HEALTHCARE OF CALIFORNIA, INC. is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

23.     Defendant CIGNA BEHAVIORAL HEALTH OF CALIFORNIA, INC. is, and at all relevant times was a California corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that CIGNA BEHAVIORAL HEALTH OF CALIFORNIA, INC. is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California

24.     Defendant CIGNA HEALTH AND LIFE INSURANCE COMPANY is, and at all relevant times was a Connecticut corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that CIGNA HEALTH AND LIFE INSURANCE COMPANY is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact

transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

25.     Defendant HMC HEALTHWORKS, LLC (fka HMC Healthworks, Inc.). is, and at all relevant times was a Florida limited liability company licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that HMC Healthworks, LLC. is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

26.     Defendant UNITED MEDICAL RESOURCES, INC. is, and at all relevant times was a California corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that UNITED MEDICAL RESOURCES, INC. is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

27.     Defendant SIERRA HEALTH AND LIFE INSURANCE COMPANY, INC. is, and at all relevant times was a Nevada corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that SIERRA HEALTH AND LIFE INSURANCE COMPANY is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact

1  transacting the business of insurance in the State of California and is thereby

2  subject to the laws and regulations of the State of California.

3       **28.**     Defendant MEDICAL MUTUAL OF OHIO is, and at all relevant times

4  was an Ohio corporation licensed to do business in and is and was doing business

5  in the State of California as a provider of health insurance benefits.  Plaintiff is

6  informed and believes, and based thereon alleges, that MEDICAL MUTUAL OF

7  OHIO is licensed by the California Department of Insurance and/or the California

8  Department of Managed Health Care to transact business of insurance in the State

9  of California, is in fact transacting the business of insurance in the State of

10  California and is thereby subject to the laws and regulations of the State of

11  California.

12       **29.**     Defendant MEDICAL MUTUAL SERVICES, LLC is, and at all

13  relevant times was an OHIO limited liability company licensed to do business in

14  and is and was doing business in the State of California as a provider of health

15  insurance benefits.  Plaintiff is informed and believes, and based thereon alleges,

16  that MEDICAL MUTUAL SERVICES, LLC is licensed by the California

17  Department of Insurance and/or the California Department of Managed Health Care

18  to transact business of insurance in the State of California, is in fact transacting the

19  business of insurance in the State of California and is thereby subject to the laws

20  and regulations of the State of California.

21       **30.**     Defendant GROUP HEALTH PLAN, INC., doing business as

22  HEALTHPARTNERS is, and at all relevant times was a Minnesota corporation

23  licensed to do business in and is and was doing business in the State of California

24  as a provider of health insurance benefits.  Plaintiff is informed and believes, and

25  based thereon alleges, that GROUP HEALTH PLAN, INC. is licensed by the

26  California Department of Insurance and/or the California Department of Managed

27  Health Care to transact business of insurance in the State of California, is in fact

28

transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

31.     Defendant MERITAIN HEALTH, INC. is, and at all relevant times was a New York corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that MERITAIN HEALTH, INC. is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

32.     Defendant BEACON HEALTH OPTIONS, INC. is, and at all relevant times was a Virginia corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits. Plaintiff is informed and believes, and based thereon alleges, that BEACON HEALTH OPTIONS, INC. is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

33.     Defendant BEACON HEALTH STRATEGIES, LLC is, and at all relevant times was a Massachusetts limited liability company licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that BEACON HEALTH STRATEGIES, LLC is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the

business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

34. Defendant VALUEOPTIONS OF CALIFORNIA, INC. is, and at all relevant times was a California corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that VALUE OPTIONS OF CALIFORNIA, INC. is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

35. Defendant COVENTRY HEALTH CARE, INC. is, and at all relevant times was a Pennsylvania and Connecticut corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that COVENTRY HEALTH CARE, INC. is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

36. Defendant MHNET SPECIALTY SERVICES, LLC is, and at all relevant times was a Maryland limited liability company, licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that MHNET SPECIALTY SERVICES, LLC is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the

business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

37.     Defendant PROVIDENCE HEALTH PLAN is, and at all relevant times was an Oregon public benefit corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that PROVIDENCE HEALTH PLAN is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

38.     Defendant FIRST HEALTH INSURANCE CORPORATION is, and at all relevant times was a Delaware corporation licensed to do business in and is and was doing business in the State of California as a provider of health insurance benefits.  Plaintiff is informed and believes, and based thereon alleges, that FIRST HEALTH INSURANCE COMPANY is licensed by the California Department of Insurance and/or the California Department of Managed Health Care to transact business of insurance in the State of California, is in fact transacting the business of insurance in the State of California and is thereby subject to the laws and regulations of the State of California.

## STANDING

39.     The text of the Employee Retirement Income Security Act of 1974 ("**ERISA**") authorizes a "participant or beneficiary" of an ERISA plan to bring a civil action.  The law of the Ninth Circuit holds that health care providers are not "beneficiaries" within the meaning of ERISA.  *See DB Healthcare, LLC,* 852 F.3d at 874.  Therefore, "a non-participant health care provider . . . cannot bring claims for benefits on its own behalf.  It must do so derivatively, relying on its patients'

assignments of their benefits claims."  *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1289 (9th Cir. 2014).

**40.**     It is well-established in the Ninth Circuit that assignees are generally allowed to bring suit on behalf of the assignor.  *See Spring Commc'ns Co., L.P. v. APCC Servs.*, 554 U.S. 269, 275 (2008) ("[H]istory and precedent are clear on the question before us: Assignees of a claim, including assignees for collection, have long been permitted to bring suit,"  This general principle extends into the ERISA context. *See Misic v. Bldg. Serv. Emps. Health & Welfare Tr.*, 789 F.2d 1374, 1378 (9th Cir. 1986); *Spinedex,* 770 F.3d at 1288.

**41.**     The Ninth Circuit historically set certain limits to derivative standing, and specifically refused to extend derivative standing in *Simon v. Value Behav. Health, Inc.*, 208 F.3d 1073, 1080 (9th Cir. 2000), *amended by* 234 F.3d 428 (9th Cir. 2000), and *overruled on other grounds by Odom v. Microsoft Corp.,* 486 F.3d 541 (9th Cir. 2007) (expressing concern that expanding derivative standing to someone like Simon would "be tantamount to transforming health benefit claims into a freely tradable commodity").

**42.**     Most recently, however, the Ninth Circuit clarified the limitations to derivative standing set forth in *Simon*, and in *Bristol SL Holdings, Inc. v. Cigna Health and Life Ins. Co.*, No. 20-56122 ___ F.4th___ (9th Cir. Jan. 14, 2022), the Ninth Circuit held that as a bankruptcy successor-in-interest to the provider, the plaintiff in *Bristol* fit "comfortably within our circuit's existing case law. . . . Refusing to allow derivative standing in this unique circumstance would create serious perverse incentives that would undermine the goal of ERISA.  Without the type of derivative standing claimed by Bristol . . . Cigna could force healthcare providers . . . into bankruptcy, thereby ensuring that it would likely *never* have to pay for the services it authorized."

**43.**     The logic in *Bristol* also applies in assignments under California law, not just from patient to provider, but also to an assignee such as ABC.  On January

20, 2022, the Ninth Circuit reversed and remanded the District Court's dismissal of ABC's ERISA claims for relief, holding that after the District Court issued its ruling, the Ninth Circuit's opinion in *Bristol* clarified the ability of an assignee to bring an ERISA cause of action.  [ECF No. 541.]

44.     A general assignment for the benefit of creditors is a conveyance, without consideration, by a debtor of substantially all of the debtor's property to an assignee in trust for the purpose of applying the property or its proceeds to the payment of the debtor's debts and returning any surplus to the debtor.  It is a voluntary transfer by a debtor of the debtor's property to an assignee in trust for the purpose of applying the property thereof to the payment of the debtor's debts.  An assignment for the benefit of creditors is an alternative to a Chapter 7 bankruptcy liquidation, whereby the debtor assigns substantially all of its assets to the assignee instead of a bankruptcy trustee for the benefit of the debtor's creditors.

45.     On or about September 21, 2018, Morningside executed a written Assignment (the "**Morningside Assignment**") pursuant to California Code of Civil Procedure §§ 493.010 through 493.060 and §§ 1800 through 18902.  Pursuant to the Morningside Assignment, Morningside conveyed to ABC all of Morningside's property and every right, claim and interest of Morningside, including the right to prosecute this action for the benefit of Morningside's creditors.  ABC brings this action in its capacity as the assignee for the benefit of creditors of Morningside pursuant to the Morningside Assignment.  A true and correct copy of the Morningside Assignment is attached hereto and incorporated herein by this reference as Exhibit A.

46.     At all relevant times herein, unless otherwise indicated, the Consolidated Defendants set forth in paragraphs 3, 4, and 5 were the agents and/or employees of each of the remaining Consolidated Defendants in those paragraphs and were at all times acting within the purpose and scope of said agency and employment, and each of these Defendants has ratified and approved the acts of the

agent.  At all relevant times herein, each of these Consolidated Defendants set forth in paragraphs 3, 4, and 5 had actual or ostensible authority to act on each other's behalf in certifying or authorizing the provision of services, processing and administering the claims and appeals, pricing the claims, approving or denying the claims, directing each other as to whether and/or how to pay claims, issuing remittance advices and EOB statements, and making payments to Plaintiff and/or the Patients.

47.    At all relevant times herein, unless otherwise indicated, the Defendants set forth in paragraphs 11, 12 and 13 were the agents and/or employees of each of the remaining Defendants in those paragraphs and were at all times acting within the purpose and scope of said agency and employment, and each of these Defendants has ratified and approved the acts of the agent.  At all relevant times herein, each of the Defendants set forth in paragraphs 11, 12 and 13 had actual or ostensible authority to act on each other's behalf in certifying or authorizing the provision of services, processing and administering the claims and appeals, pricing the claims, approving or denying the claims, directing each other as to whether and/or how to pay claims, issuing remittance advices and EOB statements, and making payments to Plaintiff and/or the Patients.

48.    At all relevant times herein, unless otherwise indicated, the Defendants set forth in paragraphs 14, 15, 16, 17, 18, were the agents and/or employees of each of the remaining Defendants in those paragraphs and were at all times acting within the purpose and scope of said agency and employment, and each of these Defendants has ratified and approved the acts of the agent.  At all relevant times herein, each of the Defendants set forth in paragraphs 14, 15, 16, 17, 18 had actual or ostensible authority to act on each other's behalf in certifying or authorizing the provision of services, processing and administering the claims and appeals, pricing the claims, approving or denying the claims, directing each other as to whether

and/or how to pay claims, issuing remittance advices and EOB statements, and making payments to Plaintiff and/or the Patients.

49. At all relevant times herein, unless otherwise indicated, the Defendants set forth in paragraphs 15, 16, 17, and 18 were the agents and/or employees of each of the remaining Defendants in those paragraphs and were at all times acting within the purpose and scope of said agency and employment, and each of these Defendants has ratified and approved the acts of the agent. At all relevant times herein, each of the Defendants set forth in paragraphs 22, 23, 24 had actual or ostensible authority to act on each other's behalf in certifying or authorizing the provision of services, processing and administering the claims and appeals, pricing the claims, approving or denying the claims, directing each other as to whether and/or how to pay claims, issuing remittance advices and EOB statements, and making payments to Plaintiff and/or the Patients.

50. At all relevant times herein, unless otherwise indicated, the Defendants set forth in paragraphs 21, 22, and 23 were the agents and/or employees of each of the remaining Defendants in those paragraphs and were at all times acting within the purpose and scope of said agency and employment, and each of these Defendants has ratified and approved the acts of the agent. At all relevant times herein, each of the Defendants set forth in paragraphs 21, 22, and 23 had actual or ostensible authority to act on each other's behalf in certifying or authorizing the provision of services, processing and administering the claims and appeals, pricing the claims, approving or denying the claims, directing each other as to whether and/or how to pay claims, issuing remittance advices and EOB statements, and making payments to Plaintiff and/or the Patients.

51. At all relevant times herein, unless otherwise indicated, the Defendants set forth in paragraphs 24, 25, and 26 were the agents and/or employees of each of the remaining Defendants in those paragraphs and were at all times acting within the purpose and scope of said agency and employment, and each of these

Defendants has ratified and approved the acts of the agent.  At all relevant times herein, each of the Defendants set forth in paragraphs 24, 25, and 26 had actual or ostensible authority to act on each other's behalf in certifying or authorizing the provision of services, processing and administering the claims and appeals, pricing the claims, approving or denying the claims, directing each other as to whether and/or how to pay claims, issuing remittance advices and EOB statements, and making payments to Plaintiff and/or the Patients.

52.     At all relevant times herein, unless otherwise indicated, the Defendants set forth in paragraphs 34 and 35 were the agents and/or employees of each of the remaining Defendants in those paragraphs and were at all times acting within the purpose and scope of said agency and employment, and each of these Defendants has ratified and approved the acts of the agent.  At all relevant times herein, each of the Defendants set forth in paragraphs 24, 25, and 26 had actual or ostensible authority to act on each other's behalf in certifying or authorizing the provision of services, processing and administering the claims and appeals, pricing the claims, approving or denying the claims, directing each other as to whether and/or how to pay claims, issuing remittance advices and EOB statements, and making payments to Plaintiff and/or the Patients.

53.     At all relevant times herein, unless otherwise indicated, the Defendants set forth in paragraphs 39, 40, and 41 were the agents and/or employees of each of the remaining Defendants in those paragraphs and were at all times acting within the purpose and scope of said agency and employment, and each of these Defendants has ratified and approved the acts of the agent.  At all relevant times herein, each of the Defendants set forth in paragraphs 39, 40, and 41 had actual or ostensible authority to act on each other's behalf in certifying or authorizing the provision of services, processing and administering the claims and appeals, pricing the claims, approving or denying the claims, directing each other as to whether

and/or how to pay claims, issuing remittance advices and EOB statements, and making payments to Plaintiff and/or the Patients.

## JURISDICTION AND VENUE

**54.**    Plaintiff brings this action for monetary relief pursuant to Section 502(a)(1)(B) of ERISA, 29 U.S.C. §§ 1132(a)(1)(B). This Court has subject matter jurisdiction over Plaintiff's claims because the action seeks to enforce rights under ERISA pursuant to §§ 502(e) and (f), 29 U.S.C. §§ 1132(e) and (f), and 28 U.S.C. § 1331.

**55.**    This Court is the proper venue for this action pursuant to 8 U.S.C. § 1392(b) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this Judicial District, because one or more of the Defendants conducts a substantial amount of business in this Judicial District, and pursuant to 29 U.S.C. § 1132(e)(2) because it is the Judicial District in which the break occurred.

## INTRODUCTION

**56.**    The 2010 Patient Protection and Affordable Care Act (the "**ACA**" or "**Affordable Care Act**") required each health insurance issuer to accept every employer and individual in the state that applies for coverage, permitting annual and special open enrollment periods for those with qualifying lifetime events.  42 U.S.C. § 300gg-1.  The ACA further prohibited any group health plan or insurer offering group or individual coverage from imposing any preexisting condition exclusion or discriminating against those who have been sick in the past. 42 U.S.C. § 300gg-3.  The ACA also prohibits any group health plan or insurer offering group or individual coverage from setting eligibility rules based on health status, medical condition, claims experience, receipt of health care, medical history, genetic information, and evidence of insurability, including acts of domestic violence or disability.  42 U.S.C. § 300gg-4.  These requirements under the ACA also apply to ERISA plans.  29 U.S.C. § 1182.

57.     In 2014, the ACA required health insurance plans, including those sold by Consolidated Defendants, to provide ten categories of "essential health benefits," including mental health substance abuse treatment.  42 U.S.C. § 18022. Plaintiff is informed and believes, and based thereon alleges, that each of the Consolidated Defendants marketed new plans that reimbursed out-of-network providers of SUD treatment like Morningside.

**THE MORNINGSIDE SERVICES**

58.     At all relevant times herein, Morningside provided a finite number of services to its patients, all of which are identified by either the Healthcare Common Procedure Coding System ("**HCPCS**") Codes or the Current Procedural Terminology ("**CPT**") Codes (collectively the "**Morningside Services**"), including but not limited to the following:

        a.     H0010:  alcohol and/or drug services, sub-acute detoxification (residential addiction program inpatient);

        b.     H0018:  alcohol and drug abuse treatment services, short-term residential treatment (non-hospital);

        c.     H0035: partial hospitalization treatment;

        d.     H0015: intensive outpatient program;

        e.     90792: psychiatric diagnostic evaluation;

        f.     H0048, 80320, 80305, G0434, and G0477: drug testing procedures;

        g.     90876, 90837 and 90853: individual and group therapy sessions.

59.     Each of the HCPCS and CPT codes falls into the category of mental health and substance use disorder services.  Mental health and substance use disorder services, including behavioral health treatment, are "essential health benefit[s]" under the Affordable Care Act.  42 U.S.C. § 18022(b)(1)(E).  To be a "qualified health plan" under the Affordable Care Act, a health plan, in part, must

provide the essential health benefits set forth in Section 18022.  42 U.S.C. § 18021(a)(1)(B).

**60.**     At all relevant times herein, Morningside was a non-contracting (as to Consolidated Defendants) mental and SUD treatment and rehabilitation facility operating in Orange County, California, also referred to as a "non-contracted" or "out-of-network" provider.  At all relevant times herein, Morningside offered a therapeutically planned rehabilitation intervention environment for the treatment of individuals with behavioral concerns and SUD.

**61.**     Plaintiff is informed and believes, and based thereon alleges, that Consolidated Defendants generally enter into private agreements with health care facilities thereby extending to them "in network" provider status.  Out-of-network claims are distinguished by the fact that when members/patients obtain health care services from an out-of-network provider, like Morningside, members/patients are responsible for charges that the plan might not cover, or that exceed Consolidated Defendants' reimbursement obligation to members/patients under the Plans.

**62.**     Plaintiff is informed and believes, and based thereon alleges, that this practice is known to Consolidated Defendants and others in the industry as "steerage", which is a method by which facilities that maintain in-network status may refer patients to each other pursuant to in-network agreements.  Plaintiff is further informed and believes, and based thereon alleges, that Consolidated Defendants conclude that referrals to and amongst facilities within the in-network community are permitted without fear of reprisal by state regulatory commissions that prohibit patient referrals for a fee, and the in-network status also protects members/patients from incurring excessive facility charges that are often imposed when a patient uses an out-of-network facility.

**63.**     Morningside provided and rendered services, SUD and/or mental health treatment to members, subscribers and insured of Consolidated Defendants, each of whom was a patient of Morningside and hereinafter referred to collectively as the

"**Patients**" or the "**Morningside Patients**".  As a result, Plaintiff became entitled to reimbursement, remuneration and/or payment from Consolidated Defendants for those services and supplies Morningside rendered to the Patients.

**64.**     Plaintiff is informed and believes, and based thereon alleges, that some or all of the Patients had express coverage for mental health and SUD treatment services as a delineated benefit of an ERISA plan, summary plan descriptions, and policies which were underwritten and/or administered by Consolidated Defendants (individually an "**ERISA Plan**" or collectively the "**ERISA Plans**").

**65.**     Plaintiff is informed and believes, and based thereon alleges, that some or all of the Patients were plan participants and/or beneficiaries of an Employee Welfare Plan under ERISA, as those terms are defined by 20 U.S.C. § 1002. Plaintiff is further informed and believes, and based thereon alleges, that some or all of the Patients were entitled to be reimbursed for the cost of mental health and SUD treatment as the benefit of the subject Consolidated Defendants' plans, policies and insurance agreements governing the relationship between each Patient and a Consolidated Defendant (collectively the "**ERISA PLANS**".  Each of the Plans provided coverage for both in and out-of-network mental health providers, and for admission to treatment centers for SUD treatment by SUD treatment providers and related services received on an outpatient basis, inpatient basis, partial inpatient basis and/or intensive outpatient basis, including but not limited to coverage for facility charges, psychotherapy, psychiatrists, psychologists, charges for supplies and equipment, physician services, blood testing and other incidental services.

**66.**     Plaintiff is informed and believes, and based thereon alleges, that the Patients had preferred provider organization ("PPO") plan benefits or point of service ("POS") plan benefits that allowed them to seek medically necessary benefits, whether in-network or not and were entitled to reimbursement for their claims because Plaintiff was an out-of-network provider for Consolidated

Defendants. The Patients' claims should not have been denied or underpaid as the Plans provide coverage for the very services performed by Morningside, including but not limited to coverage for mental and SUD treatment.

67.     Plaintiff is informed and believes, and based thereon alleges, that each of the Patients whose claims are at issue in this lawsuit required treatment for SUD and/or were suffering from serious medical and mental health concerns, sometimes related to their addictions and sometimes unrelated. Each of the Patients chose PPO insurance rather than health maintenance organization ("HMO") insurance through their employers so that they could receive plan benefits from the physicians and other medical providers of their choice, regardless of whether the health care practitioners were in-network or out-of-network with Consolidated Defendants. Consolidated Defendants, who administer and/or underwrite the PPO insurance for the Patient's employers, advertise, publicize and represent on their websites, in their literature and in commercials that the benefit of their PPO policies include the freedom to choose any doctor for any and all health care needs.

68.     Morningside requested that Consolidated Defendants authorized the Patients to undergo treatment at Morningside for SUD treatment and for Consolidated Defendants to authorize Morningside to provide the same treatment and care to the Patients. Plaintiff is informed and believes, and based thereon alleges, that Consolidated Defendants authorized the Patients to undergo mental health and SUD treatment at Morningside and verified that each of the Patients had coverage which included coverage for the treatment Morningside provided.

69.     Plaintiff is informed and believes, and based thereon alleges, that no provisions in any of the ERISA Plans, whether in the Summary Plan Descriptions ("SPDs") and/or Evidence of Coverage ("EOC") documents justified the failure of Consolidated Defendants to pay the fees for services charged by mental health care providers or by SUD treatment facilities, like Morningside, whether by underpayment or to pay nothing. These actions by Consolidated Defendants were

arbitrary, capricious and improper.  Plaintiff is further informed and believes, and based thereon alleges, that during the insurance verification process for the Patients, Consolidated Defendants represented to Morningside that they would pay Morningside's fees.  Morningside sought information during this process about potential limitations on the reimbursement of Morningside's fees each time prior to providing services, and specifically inquired as to how Consolidated Defendants' fee provisions would apply to the Patients.

70. In the alternative, Plaintiff is informed and believes, and based thereon alleges, that Consolidated Defendants may have withheld information in response to such requests, and therefore misled Morningside into believing that services rendered by Morningside would be paid.

71. Plaintiff is informed and believes, and based thereon alleges, that no provisions in the ERISA Plans justified the failure to issue a final decision or denial on any of the Patient claims, and no provision in the subject Plans justified the failure and refusal of Consolidated Defendants to issue an EOB statement, delineating and explaining the justification or rationale for refusing to pay, cover and reimburse the Patient claims or to adjust those claims.  These failures and refusals by Consolidated Defendants were therefore arbitrary, capricious and a breach of Consolidated Defendants' fiduciary duties to ERISA Plan participants. These failures and refusals were also violative of regulations promulgated under ERISA by the Department of Labor, which require that claims be adjudicated by the claims administrator (*e.g.,* Consolidated Defendants) within 45 days after receipt of the claim and were also violative of the Plans and SPDs issued and adopted by Consolidated Defendants.

72. Plaintiff is informed and believes, and based thereon alleges, that for each ERISA Plan involved in this lawsuit, the terms of the ERISA Plan:  (a) provided coverage for each of the services, supplies and treatments rendered by Morningside to each Patient for whom reimbursement, payment and coverage is

sought; and (2) dictated that these covered services be paid according to a specific reimbursement rate (such as the reasonable and customary fees for services charged by Morningside or according to other formulae or allowable rates expressly and specifically provided in the ERISA Plans) (the "**UCR Rate**"). according  these covered services be paid according to a specific reimbursement rate (such as the reasonable and customary fees for services charged by Morningside or according to other formulae or allowable rates expressly and specifically provided in the ERISA Plans.

73.     Each of the Patients have assigned all of their legal and equitable rights to payment and to assert ERISA remedies under the ERISA Plans to Morningside in writing, including but not limited to their rights to recover the benefits owed to them by Consolidated Defendants to Plaintiff, by and through an irrevocable assignment of all of their rights, title and interest in and to the claims against Consolidated Defendants.  These assignments conferred upon Morningside the right to stand in the shoes of the Patients and to assert all of the rights held by the Patients as to Consolidated Defendants and/or as to the ERISA Plans administered by Consolidated Defendants, including but not limited to all rights, powers and equitable remedies of the Patients, the right of Plaintiff to substitute in as a party or plaintiff in any past, present or future litigation regarding the Patient's claims against Consolidated Defendants, the right to the proceeds of all legal fees and costs, if specifically awarded, and any interest if specifically awarded, and the right to make and effect collections, including the commencement of legal proceedings on behalf of the Patients.  A true and correct copy of sample assignments signed by the Patients is attached hereto and incorporated herein by this reference as Exhibit B as if set forth in full.

74.     In compliance with the terms of each ERISA Plan, Plaintiff and/or the Patients have exhausted any and all claims review, grievance, administrative appeals, and appeals requirements by submitting letters, appeals, grievances,

requests for reconsideration and request for payment from Consolidated Defendants.

**75.** Alternatively, all review, appeal, administrative grievances or complaint procedures are excused as a matter of law, are violative of Plaintiff's due process rights, are or would be futile, or are otherwise unlawful, null, void and unenforceable. Consolidated Defendants' pattern of behavior and refusal to reimburse Plaintiff rendered all potential administrative remedies futile. As a result of Consolidated Defendants' actions and/or omissions, Consolidated Defendants are estopped from asserting that Morningside or Plaintiff has failed to exhaust its administrative remedies under ERISA. Alternatively, by Consolidated Defendants' failure and refusal to establish, maintain and follow a reasonable claim procedure process, Plaintiff and/or the Morningside Patients have exhausted the administrative remedies available under the ERISA Plans and are entitled to pursue this action, inasmuch as Consolidated Defendants have failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim, in violation of 29 C.F.R. § 2560.503-1(l).

## **PROCEDRAL HISTORY**

**76.** On May 4, 2020, this Court dismissed Plaintiff's ERISA Claims for relief against the Consolidated Defendants with prejudice [ECF No. 383, pp. 4-5].

**77.** On August 5, 2020, Plaintiff filed its Notice of Appeal to the Ninth Circuit Court of Appeals. [ECF No. 451.]

**78.** On January 20, 2022, the Ninth Circuit Court of Appeals issued a Memorandum affirming in part and reversing in part this Court's previous dismissal. [ECF No. 541.]

**79.** On February 11, 2022, the Ninth Circuit Court of Appeals issued a formal mandate pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure.

## ERISA PLAN LANGUAGE COMMON TO ALL
## MORNINGSIDE PATIENTS

**80.**     Plaintiff is informed and believes, and based thereon alleges, that each of the ERISA Plans at issue for the Consolidated Defendants contains and "out-of-pocket" maximum amount applicable to each patient.

**81.**     Plaintiff is informed and believes, and based thereon alleges, that Defendants generally enter into private agreements with health care facilities thereby extending to them "in network" provider status.  Out-of-network claims are distinguished by the fact that when members/patients obtain health care services from an out-of-network provider, like Morningside, members/patients are responsible for charges that the plan might not cover, or that exceed Defendants' reimbursement obligation to members/patients under the Plans.

**82.**     Each of the Patients have assigned to Morningside all of their legal and equitable rights to payment under California law with respect to the Plans in writing, including but not limited to their rights to recover the benefits owed to them by Defendants to Morningside, by and through an irrevocable assignment of all of their rights, title and interest in and  to the claims against Defendants.  These assignments conferred up on Morningside and/or Plaintiff the right to stand in the shoes of the Patients and to assert all of the rights held by the Patients as to Defendants and/or as to the Plans administered by Defendants, including but not limited to all rights, powers and equitable remedies of the Patients, the right of Plaintiff to substitute in as a party or plaintiff in any past, present or future litigation regarding the Patient's claims against Defendants, the right to the proceeds of all legal fees and costs, if specifically awarded, and any interest if specifically awarded, and the right to make and effect collections, including the commencement of legal proceedings on behalf of the Patients.  *See* Exhibit B.

1  **PLAINTIFF'S CLAIMS AGAINST CONSOLIDATED DEFENDANTS**

2  **83.**  Plaintiff alleges below claims for relief against each of the

3  Consolidated Defendants that includes:

4      **a.**  United Healthcare Services, Inc. ("**UHS**"), United Behavioral

5          Health ("**UBH**") and Optum Services, Inc. ("**Optum**", together

6          with UHS and UBH collectively the "**United Healthcare**

7          **Defednants**"), original filing 8:19-cv-00531-DOC-DFM;

8      **b.**  USAble Mutual Insurance Company, dba Arkansas Blue Cross

9          and Blue Shield and as Blue Advantage Administrators of

10          Arkansas (collectively **BCBS Arkansas**"), original filing 8:19-

11          cv-00803-DOC-DFM;

12      **c.**  Blue Cross and Blue Shield of Kansas City ("**BCBS KC**"),

13          original filing 8:19-cv-00803-DOC-DFM;

14      **d.**  Blue Cross and Blue Shield of Kansas, Inc. ("**BCBS KI**"),

15          original filing 8:19-cv-00803-DOC-DFM;

16      **e.**  Blue Cross & Blue Shield of Mississippi, A Mutual Insurance

17          Company ("**BCBS Miss**"), original filing 8:19-cv-00803-DOC-

18          DFM;

19      **f.**  Health Care Service Corporation, a Mutual Legal Reserve

20          Company, dba Blue Cross and Blue Shield of Oklahoma

21          ("**BCBS Ok**"), original filing 8:19-cv-00776-DOC-DFM;

22      **g.**  Blue Cross and Blue Shield of Alabama **("BCBS Ala**"), original

23          filing 8:19-cv-00789-DOC-DFM,

24      **h.**  Anthem Blue Cross Life and Health Insurance Company,

25          Anthem, Inc., Anthem, Inc. dba Anthem Health, Inc., The

26          Anthem Companies of California, Inc. and The Anthem

27          Companies, Inc. (collectively, the "**Anthem Defendants**"),

28          original filing 8:19-cv-00677-DOC-DFM;

1      **i.**    Humana Insurance Company, Humana Employers Health Plan of
2              Georgia, Inc., Humana Behavioral Health, Inc., Humana Health
3              Plan of California, Inc., Humana Inc., Humana Health Benefit
4              Plan of Louisiana, Inc., Humana Health Plan of Texas, Inc.,
5              Humana Health Plan, Inc., and Humana Medical Plan
6              (erroneously sued as Humana Insurance Company and Humana
7              Medical Plan) (collectively the "**Humana Defendants**"),
8              original filing 8:19-cv-00317-DOC-DFM;

9      **j.**    Aetna Health and Life Insurance Company ("**Aetna**"), original
10             filing 8:19-cv-00777-DOC-DFM;

11      **k.**    Bluecross Blueshield of Tennessee, Inc. ("**BCBS Tenn**"),
12             original filing 8:19-cv-00804-DOC-DFM;

13      **l.**    ComPsych Corporation ("**ComPsych**"), original filing 8:19-cv-
14             02123-DOC-DFM;

15      **m.**    Cigna HealthCare of California, Inc., Cigna Behavioral Health of
16             California, Inc., and Cigna Health and Life Insurance Company
17             (collectively the "**Cigna Defendants**"), original filing 8:19-cv-
18             02125-DOC-DFM;

19      **n.**    HMC Healthworks, Inc., now known as HMC Healthworks, LLC
20             ("**HMC**"), original filing 8:19-cv-02136-DOC-DFM;

21      **o.**    United Medical Resources, Inc. ("**UMR**"), original filing 8:19-
22             cv-02138-DOC-DFM;

23      **p.**    Sierra Health and Life Insurance Company, Inc. ("**Sierra**"),
24             original filing 8:19-cv-02168-DOC-DFM;

25      **q.**    Medical Mutual of Ohio and Medical Mutual Services, LLC
26             (collectively the "**Medical Mutual Defendants**"), original filing
27             8:19-cv-02122-DOC-DFM;

28

**r.** Group Health Plan, Inc., dba Healthpartners ("**GHP**"), original filing 8:19-cv-02242-DOC-DFM;

**s.** Meritain Health, Inc. ("**Meritain**"), original filing 8:19-cv-02182-DOC-DFM);

**t.** Beacon Health Options, Inc., Beacon Health Strategies, LLC, Valueoptions Federal Services, Inc. and Valueoptions of California, Inc. (collectively the "**Beacon Defendants**"), original filing 8:19-cv-02204-DOC-DFM;

**u.** Coventry Health Care, Inc. ("**Coventry**"), original filing 8:19-cv-02131-DOC-DFM (previously 8:19-cv-09432-DOC-DFM);

**v.** MHNet Specialty Services, LLC ("**MHNet**"), original filing 8:19-cv-02219-DOC-DFM;

**w.** Providence Health Plan ("**Providence**"), original filing 8:19-cv-02172-DOC-DFM;

**x.** First Health Group Corporation ("**First Health**"), original filing 8:19-cv-02171-DOC-DFM; and

**y.** GHI Inc. ("**GHI**"), original filing 8:19-cv-02129-DOC-DFM.

84. The Patients have not been identified by name in this Complaint to protect their right of privacy. Plaintiff provided detailed information to Consolidated  Defendants regarding treatment and services for Patients in each of the lawsuits at issue in this action, and as further set forth below. Plaintiff is informed and believes, and based thereon alleges, that for each Consolidated Defendant, counsel for Plaintiff has produced detailed information for each of the Patients.

85. Each of the Patients received the Morningside Services. Payments are due and owing by Consolidated Defendants to Plaintiff for the care, treatment and procedures provided to the Patients, all of whom were insured, members, policy holders, certificate holders or otherwise covered for charges by Morningside

through policies or certificates of insurance issued, underwritten and/or administered by Consolidated Defendants.

**86.** Plaintiff is informed and believes, and based thereon alleges, that each of the Patients for whom claims are at issue was an insured of Consolidated Defendants either as a subscriber to coverage or a dependent of a subscriber to coverage under a policy or certificate of insurance issued, administered and/or underwritten by Consolidated Defendants. Plaintiff is further informed and believes, and based therein alleges, that each of the Patients for whom claims are at issue was covered by a valid insurance agreement with Defendants for the specific purpose of ensuring that the Patients would have access to medically necessary treatments, care, procedures and related care by out-of-network providers such as Morningside.

**87.** In the alternative, Plaintiff is informed and believes, and based thereon alleges, that some of the Patients for whom claims are at issue were covered by self-funded plans which were administered by Defendants. The identify of those Plans which are self-funded is known to Defendants, but only known in part to Plaintiff. Those self-funded Plans provided coverage to the Patients either as a subscriber to coverage or as a dependent of a subscriber to coverage under the certificate of coverage administered by Consolidated Defendants.

**88.** Plaintiff is informed and believes, and based thereon alleges, that each of the Patients for whom claims are at issue was covered by a valid benefit plan, providing coverage for medical and mental health expenses, for the specific purpose of ensuring that the Patients would have access to medically necessary treatments, care and procedures by out-of-network providers like Morningside and ensuring Consolidated Defendants would pay for the health care expenses incurred by the Patients for the services rendered by Morningside.

**89.** At all relevant times, each of the Patients received medical and/or paramedical services, procedures, mental health care, SUD treatment or other

health care services from Morningside.  Upon rendition of services to each of the Patients, each of the Patients became legally indebted, responsible and liable to Plaintiff for the full cost of and for payment of those services.  Prior to the rendition of care by Morningside, Morningside sought and obtained a guarantee from the Patients that they would be legally responsible, liable and indebted for the full cost of and for payment of those services to be rendered by Morningside.

**90.**     Each of the Patients requested Morningside to render and provide medical treatment and professional services, knowing that Morningside was an out-of-network provider.  Each of the Patients sought out, requested and requisitioned treatment and professional services from Morningside and selected and chose Morningside to provide him or her with said services based upon Morningside's reputation in the community, experience and availability to render immediate care. Each of the Patients signed written admission agreements in which the Patients agreed to be obligated, legally responsible and liable for the full amount of the charges incurred for services rendered at Morningside.

**91.**     Each of the Patients presented his or her insurance card to Morningside, which card identified the Patient as an insured, subscriber and/or member of Defendants.  These identification cards, which were issued by Defendants, did not identify whether the coverage was underwritten by Defendants as an insurer or whether Defendants was acting as a third-party administrator of a self-funded plan.

**92.**     Plaintiff is informed and believes, and based thereon alleges, that each and every one of the Patients had express coverage for mental health and SUD treatment benefits under the applicable Plan or policy covering that Patient which was issued or administered by Defendants.  As such, each Plan was required to offer coverage for mental health and SUD treatment in parity with the medical and surgical benefits afforded by the same plan, as required by 26 U.S.C. § 9812(3)(A), which mandates that:

In the case of a group health plan that provides both medical and surgical benefits and mental health or substance use disorder benefits, such plan shall ensure that –

    **i.**    the financial requirements applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant financial requirements applied to substantially all medical and surgical benefits covered by the plan, and there are no separate cost sharing requirements that are applicable only with respect to mental health or substance use disorder benefits; and

    **ii.**    the treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan and there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits.

93.    Additionally, 26 U.S.C. § 9812(5) mandates that out-of-network providers such as Morningside be treated in parity with medical providers and with in-network providers of mental health and SUD treatment, stating:

In the case of a plan that provides both medical and surgical benefits and mental health or substance use disorder benefits, if the plan provides coverage for medical or surgical benefits provided by out-of-network providers, the plan shall provide coverage for mental health or substance use disorder benefits provided by out-of-network providers in a manner that is consistent with the requirements of this section.

94.    Federal law also requires that insurers and Plans articulate the reason and rationale for any denial of benefits, stating:

> The criteria for medical necessity determinations made under the plan with respect to mental health or substance use disorder benefits shall be made available by the plan administrator in accordance with regulations to any current or potential participant, beneficiary, or contracting provider upon request. The reason for any denial under the plan of reimbursement or payment for services with respect to mental health or substance use disorder benefits in the case of any participant or beneficiary shall, on request or as otherwise required, be made available by the plan administrator to the participant or beneficiary in accordance with regulations

95.     The failure and refusal of Consolidated Defendants to articulate the reasons, rationales and/or criteria it used in denying benefits for coverage for the Patients' claims constitutes a breach of 26 U.S.C. § 9812(4) and the applicable regulations promulgated thereunder.

96.     The failure and refusal of Defendants to pay Plaintiff for the SUD treatments rendered by Morningside to the Patients violated 26 U.S.C. § 9812(3) per se.  Plaintiff is informed and believes, and based thereon alleges, that Defendants has discriminated against it and other mental health and SUD treatment providers by applying financial requirements and treatment limitations different than those applied to medical health providers.

97.     Plaintiff is informed and believes, and based thereon alleges, that Consolidated Defendants has investigated, adjusted, processed and examined Plaintiff's claims, in a manner different than the manner in which it investigates, adjusts, processes and examines the claims of medical providers, by subjecting Plaintiff's claims to delays, by requesting additional information which is irrelevant to the claim process, by offsetting payments it acknowledged were owed on claims for the Patients by amounts owed on account of other patients who were

not related to the Patients but who were insured by Defendants and who had received SUD treatments at Plaintiff at different times when treatment had been rendered to the Patients.  As a result, Defendants has breached the statutory mandates of 26 U.S.C. § 9812, *et. seq*., and  Defendants owe payment benefits to Plaintiff in an amount to be proven at trial, but no less than $75,000,000.00.

**98.**    At all relevant times herein, Morningside and Plaintiff were authorized by law to act on behalf of the Patient with respect to the filing of claims with Consolidated Defendants, demanding production of documents from Consolidated Defendants, and filing further requests as necessary.

**99.**    Other than those documents provided by Consolidated Defendants, Plaintiff is not privy to, nor does it possess or have access to, any other EOC documents, Plan Documents, policies or Certificates of Insurance which may be issued to the Patients.  As such, in many instances Plaintiff does not have knowledge of or access to the definition of an "allowable amount" or "allowable benefit" as that term is defined or used by Consolidated Defendants, at any time prior to the date that Consolidated Defendants processes, adjusts and pays each claim.  These definitions were not imparted by Consolidated Defendants to Morningside during the insurance verification or authorization process.

**100.**   At all relevant times herein, Consolidated Defendants have improperly payed, or failed/refused to pay anything to Morningside for the medically necessary and appropriate services rendered to Defendants' insureds, subscribers and members for those treatments, services and/or supplies rendered by Morningside.  For each of the Patient claims at issue in this action, Morningside provided medical services to members and insureds of Defendants.

**101.**   Following the rendition of treatment by Morningside to the Patients, invoices, bill and claims were submitted to Defendants for adjustment and payment.  Morningside also provided medical records to Defendants for the treatment Morningside provided to the Patients.

102.   For each of the claims at issue, Consolidated Defendants failed and refused to adjust the claims and to issue EOB statements to Morningside in a timely manner, if so required by state law.  These failures constituted an effective denial of benefits, although an actual denial of benefits was not communicated by Defendants.  By virtue of its failure and refusal to issue EOB statements and to adjust the claims, Plaintiff was precluded and inhibited from appealing the effective denial of payment on the subject claims, to the extent such actions were required by Morningside, as applicable.

103.   For each of the claims at issue in this case, Consolidated Defendants failed and refused to complete the claim examination process, delayed issuing EOB and EOP statements to Morningside, has requested unnecessary and irrelevant information and documentation from Morningside which has no bearing on or relevant to the claim examination process, has failed and refused to provide notification of the reasons for its failure and refusal to pay benefits and has failed to engage in a meaningful appeal process with Morningside.  For each of the claims at issue in this case, Defendants has failed and refused to pay benefits in any amount whatsoever, leaving the entire charges unpaid and owed.

104.   To the extent Defendants issued any EOB statements, Defendants did not explain how the claims were adjusted, disallowed or denied, and Defendants provided vague, ambiguous and uncertain explanations for the manner by which Defendants based its claim determination.  To the extent Defendants issued any EOB statements, each was uninformative, false and misleading, thereby depriving Plaintiff and the Patients from an ability to intelligently engage in the appeal process or understand the basis and rationale for Defendants' denial of benefits.

105.   In each of the EOB statements issued by Consolidated Defendants, if any, Consolidated Defendants failed to advise Plaintiff and/or the Patients of the right of the Patients and/or Plaintiff to appeal the adverse claim determination made by Defendants in any of the EOB statements concerning the right to appeal,

file a grievance, seek reconsideration or otherwise engage in an administrative review process, as required by Consolidated Defendants under California state law.

## FIRST CLAIM FOR RELIEF

### (Claims for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B)
### Against the United Healthcare Defendants)

**106.** Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

**107.** This Claim for Relief applies only to defendants United Healthcare Services, Inc, United Behavioral Health and Optum Services, Inc. (collectively the "**United Healthcare Defendants**"), originally named as defendants by Plaintiff in case number 8:19-cv-00531-DOC-DFM.

**108.** Plaintiff is informed and believes, and based thereon alleges, that Morningside provided treatment for  patients insured for SUD and/or mental health treatment by the United Healthcare Defendants under an ERISA Plan issued, underwritten and/or administrated by the United Healthcare Defendants and/or the predecessor(s), assignor(s), agent(s), alter ego(s) or related entities of the United Healthcare Defendants.

**109.** Plaintiff is informed and believes, and based thereon alleges, that Defendants are discriminating against the Patients of Plaintiff who are suffering from a severe mental illness or SUDs by restricting benefits that are not imposed on other patients.

**110.** This claim is alleged by Plaintiff for relief in connection with claims for treatment rendered to members of an ERISA Plan. This claim seeks to recover benefits, enforce rights and clarify rights to benefits under 29 U.S.C. § 1132(a)(1)(B). Plaintiff has standing to pursue these claims as assignee of the Patients' benefits under the ERISA Plans. As the assignee of benefits under the ERISA Plans, Plaintiff is a "beneficiary" entitled to collect benefits under the terms of the ERISA Plans, and is the "claimant" for purposes of ERISA.

**111.**     Plaintiff is informed and believes, and based thereon alleges, that the
United Healthcare Defendants are the insurer, sponsor, and/or financially
responsible payer, serve as a designated plan administrator, and/or services as the
named plan administrator's designee.  Plaintiff is further informed and believes,
and based thereon alleges, that with respect to each of the ERISA Plans at issue in
this case that are self-insured plans, but which do not specifically designate a plan
administrator, the United Healthcare Defendants effectively control the decision
whether to honor or deny the a claim under the Plan, exercise authority over the
resolution of benefits claims, and/or have responsibility to pay the claims.  The
United Healthcare Defendants also play the role as the *de facto* plan administrator
for such ERISA Plans.

**112.**     The United Healthcare Defendants previously argued in their motion
to dismiss that Plaintiff had not sufficiently alleged a claim under ERISA because
the operative complaint did not identify the particular services provided by
Morningside to each patient or the plan terms that obligated these defendants to
cover these services.  [United Health Litigation, ECF No. 17].  This Court denied
the motion to dismiss the ERISA claim for relief.[3]  [ECF No. 31, p. 7].

**113.**     At the June 17, 2019 Status Conference in the lawsuit against the
United Health Litigation, the Hon. David O. Carter discussed plan documents with
counsel for Plaintiff and Defendants:

> THE COURT: In the minute order, I ordered plaintiff to amend the
> Complaint in the ruling on the motion to dismiss. And I'm concerned
> that there -- you may want discovery of documents for patients
> involved, obviously, in this lawsuit. So you only had one plan
> document that you submitted to me. How many other plan documents
> do we have?

---

[3]     A true and correct copy of this Order is attached as <u>Exhibit C</u> to this
Complaint and incorporated herein by this reference.

1    MR. GARNER: Your Honor, the one plan document was submitted

2    by defendants.

3    THE COURT: And that's all we have so far. And you were

4    complaining. You were concerned about that. You said, Judge, we

5    have one plan document. I'm gonna ask you again: How many

6    documents do we have?

7    MR. GLASSMAN: My understanding's that they're bringing the case

8    on behalf of approximately 150 patients.

9    THE COURT: Yeah.

10   MR. GLASSMAN: So we're talking 150 plan documents.

11                                      *****

12   THE COURT: Okay. So you need those plan documents?

13   MR. GARNER: That's correct.

14   THE COURT: And, of course, that's burdensome?

15   MR. GLASSMAN: It is a little burdensome, yes, Your Honor.

16   THE COURT: But we can get those?

17   MR. GLASSMAN: But we can get those.

18   THE COURT: . . .  And, therefore, unfortunately I'm gonna need a

19   special master to wade through this 'cause I'm not gonna tie up my

20   magistrate judge with this. So we need a special master. And we need

21   to find that person today . . .

22   [ECF No. 37, Transcript from June 17, 2019 Status Conference, United

23   Health Litigation, 5:3 to 7:8, a true and correct copy of which is attached as

24   Exhibit D and incorporated herein by this reference].

25        **114.**   To ensure that the United Healthcare Defendants produced the ERISA

26   (and other) plan documents, the District Court appointed Robert O'Brien as the

27   Special Master in this case, charged in part with the task of facilitating production

28   of these plan documents from the United Defendants to Plaintiff.  "Among other

things, the Parties believe the Special Master may help facilitate the exchange of information, including the identification and production of benefit plan documents and administrative records related to the benefit claims at issue. . . ."  [ECF No. 47, 2:27 to 3:3, United Healthcare Litigation, a true and correct copy of which is attached as Exhibit E and incorporated herein by this reference].

115.   With respect to the ERISA Plans provided by the United Healthcare Defendants, Plaintiff's claims against the United Healthcare Defendants includes 152 patients of Morningside.  To date, there remains a balance due and owing by the United Healthcare Defendants to Plaintiff in the amount of $6,153,607.90.

116.   As this Court previously denied the motion to dismiss the ERISA claims for relief filed by Plaintiff against the United Healthcare Defendants, Plaintiff and the United Healthcare Defendants have already exchanged the relevant patient information, and in particular the information related to the ERISA Plan patients. The United Healthcare Defendants still must produce ERISA Plan documentation for 58 patients, notwithstanding the order from the previous Special Master.

117.   Plaintiff is informed and believes, and based thereon alleges, that for each of these claims and for each of the involved Patients, Defendants have failed and refused to pay, process or adjust these claims in an appropriate fashion by, among other acts and omissions:

   a.   Delaying the processing, adjustment and/or payment of claims for periods of time greater than 45 days after submission of the claims in violation of 29 C.F.R. § 2560.503-1(f)(2)(iii)(B);

   b.   Failing and refusing to provide any notice and/or explanation for the denial of benefits, payments or reimbursement of the claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

**c.**     Failing and refusing to provide an adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

**d.**     Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, and by failing and refusing to set forth the specific reasons for such denials, all in violation of 29 U.S.C. § 1133(1);

**e.**     Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, written in a manner calculated to be understood by the participant, in violation of 29 U.S.C. § 1133(1);

**f.**     Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in an appeals process, in violation of 29 U.S.C. § 1133(2); Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in meaningful appeal process which was full and fair, in violation of 29 U.S.C. § 1133(2)Failing and refusing to provide Plaintiff and/or its Patients with information pertaining to their rights to appeal, including not limited to those deadlines for filing appeals and/or the requirements that an appeal be filed, in violation of 29 U.S.C. § 1133(1);

**g.**     Violating the minimum requirements for employee benefit plans pertaining to claims and benefits by participants and beneficiaries, in violation of 29 C.F.R. § 2560.503-1(a), *et seq.*;

**h.**     Failing and refusing to establish and maintain reasonable claims procedures in violation of 29 C.F.R. § 2560.503-1(b);

**i.**     Establishing, maintaining and enforcing claims procedures which unduly inhibit the initiation and processing of claims for benefits, in violation of 29 C.F.R. § 2560.503.1(b)(3);

**j.** Precluding and prohibiting Plaintiff from acting as an authorized representative of the Patients in pursuing a benefit claim or appeal of an adverse benefit determination, in violation of 29 C.F.R. § 2560.503-1(b)(4);

**k.** Failing and refusing to design, administer and enforce their processes, procedures and claims administration to ensure that their governing plan documents and provisions have been applied consistently with respect to similarly situated participants, beneficiaries and claimants, in violation of 29 C.F.R. § 2560.503-1(b)(5);

**l.** Failing and refusing to pay benefits for authorized services rendered by Plaintiff;

**m.** Failing to offer coverage for mental health and SUD treatment in parity with the medical and surgical benefits afforded by the same Plan, as required by 26 U.S.C. § 9812(3), as well as other mandates set forth at 26 U.S.C. § 9812, *et seq*.; and

**n.** Failing and refusing to pay Plaintiff for the SUD treatments provided to the Patients in violation of 26 U.S.C. § 9812(3).

**118.** The failure and refusal of the United Healthcare Defendants to provide coverage, reimbursement, payment and/or benefits for the SUD and/or mental health treatment benefits rendered by Plaintiff to Plaintiff's patients who were covered by Defendants and Defendants' denial of health insurance benefits coverage constitutes a breach of the insurance plans and/or employee benefit Plans between Defendants and Plaintiff's Patients. Plaintiff seeks reimbursement and compensation for any and all payments which it would have received and to which it will be entitled as a result of the United Healthcare Defendants' failure to pay benefits and cover those services rendered by Plaintiff to the Patients, in an amount not less than $6,153,607.90, according to proof at trial.

119.   Defendants have arbitrarily and capriciously breached the obligations set forth in the ERISA Plans issued by the United Healthcare Defendants, and the United Healthcare Defendants have arbitrarily and capriciously breached their obligations under the ERISA Plans to provide Plaintiff and the Patients with health benefits.

120.   As a direct and proximate result of the actions by the United Healthcare Defendants, Plaintiff has been damaged in an amount equal to the amount of benefits Plaintiff should have received and to which the Patients would have been entitled had Defendants paid the proper amounts, which Plaintiff estimates to be $6,153,607,l90.

121.   As a direct and. proximate result of the aforesaid conduct of Defendants in failing to provide coverage as required, Plaintiff has suffered, and will continue to suffer in the future, damages, plus interest and other economic and consequential damages, for a total amount Plaintiff estimates to be $6,153,909.9 or as otherwise determined at the time of trial.

122.   Plaintiff is entitled to an award of statutory penalties against the United Healthcare Defendants.

123.   Plaintiff is entitled to an award of reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1).  As a result of the actions and failings of the United Healthcare Defendants, Plaintiff has retained the services of legal counsel and has necessarily incurred attorneys' fees and costs in prosecuting this action. Furthermore, Plaintiff anticipates incurring additional attorneys' fees and costs hereafter pursing this action.

//
//
//
//

## SECOND CLAIM FOR RELIEF

### (Claims for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B)

### Against the BCBS KC)

124.   Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

125.   Plaintiff is informed and believes, and based thereon alleges, that Morningside provided treatment for 1 patient insured for SUD and/or mental health treatment by BCBS KC under an ERISA Plan issued, underwritten and/or administered by BCBS KC and/or the predecessor(s), assignor(s), agent(s), alter ego(s) or related entities of BCBS KC.

126.   This claim is alleged by Plaintiff for relief in connection with claims for treatment rendered to members of an ERISA Plan. This claim seeks to recover benefits, enforce rights and clarify rights to benefits under 29 U.S.C. § 1132(a)(1)(B). Plaintiff has standing to pursue these claims as assignee of the Patients' benefits under the ERISA Plans. As the assignee of benefits under the ERISA Plans, Plaintiff is a "beneficiary" entitled to collect benefits under the terms of the ERISA Plans, and is the "claimant" for purposes of ERISA.

127.   Plaintiff is informed and believes, and based thereon alleges, that BCBS KC is the insurer, sponsor, and/or financially responsible payer, serve as a designated plan administrator, and/or services as the named plan administrator's designee.  Plaintiff is further informed and believes, and based thereon alleges, that with respect to each of the ERISA Plans at issue in this case that are self-insured plans, but which do not specifically designate a plan administrator, BCBS KC effectively controls the decision whether to honor or deny the a claim under the Plan, exercise authority over the resolution of benefits claims, and/or have responsibility to pay the claims.  BCBS KC also plays the role as the *de facto* plan administrator for such ERISA Plans.

128.   To date, there remains a balance due and owing by BCBS KC to Plaintiff in the amount of $107,259.45. The individual patient claims relating to BCBS KC include the following: patient RP, with a balance due and owing to Plaintiff in the amount of $107,259.45.  This patient had a Preferred-Care Blue plan (the "**RP BCBS KC Plan**").  As required under the ACA and ERISA, the RP BCBS KC Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

129.   Plaintiff is informed and believes, and based thereon alleges, that for each of these claims and for each of the involved Patients, BCBS KC has failed and refused to pay, process or adjust these claims in an appropriate fashion by, among other acts and omissions:

   **a.**   Delaying the processing, adjustment and/or payment of claims for periods of time greater than 45 days after submission of the claims in violation of 29 C.F.R. § 2560.503-1(f)(2)(iii)(B);

   **b.**   Failing and refusing to provide any notice and/or explanation for the denial of benefits, payments or reimbursement of the claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

   **c.**   Failing and refusing to provide an adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

   **d.**   Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, and by failing and refusing to set forth the specific reasons for such denials, all in violation of 29 U.S.C. § 1133(1);

   **e.**   Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of

the Patients, written in a manner calculated to be understood by the participant, in violation of 29 U.S.C. § 1133(1);

**f.** Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in an appeals process, in violation of 29 U.S.C. § 1133(2);

**g.** Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in meaningful appeal process which was full and fair, in violation of 29 U.S.C. § 1133(2);

**h.** Failing and refusing to provide Plaintiff and/or its Patients with information pertaining to their rights to appeal, including not limited to those deadlines for filing appeals and/or the requirements that an appeal be filed, in violation of 29 U.S.C. § 1133(1);

**i.** Violating the minimum requirements for employee benefit plans pertaining to claims and benefits by participants and beneficiaries, in violation of 29 C.F.R. § 2560.503-1(a), *et seq.*;

**j.** Failing and refusing to establish and maintain reasonable claims procedures in violation of 29 C.F.R. § 2560.503-1(b);

**k.** Establishing, maintaining and enforcing claims procedures which unduly inhibit the initiation and processing of claims for benefits, in violation of 29 C.F.R. § 2560.503.1(b)(3);

**l.** Precluding and prohibiting Plaintiff from acting as an authorized representative of the Patients in pursuing a benefit claim or appeal of an adverse benefit determination, in violation of 29 C.F.R. § 2560.503-1(b)(4);

**m.** Failing and refusing to design, administer and enforce their processes, procedures and claims administration to ensure that their governing plan documents and provisions have been applied

consistently with respect to similarly situated participants, beneficiaries and claimants, in violation of 29 C.F.R. § 2560.503-1(b)(5);

**n.**     Failing and refusing to pay benefits for authorized services rendered by Plaintiff;

**o.**     Failing to offer coverage for mental health and SUD treatment in parity with the medical and surgical benefits afforded by the same Plan, as required by 26 U.S.C. § 9812(3), as well as other mandates set forth at 26 U.S.C. § 9812, *et seq*.; and

**p.**     Failing and refusing to pay Plaintiff for the SUD treatments provided to the Patients in violation of 26 U.S.C. § 9812(3).

**130.**   The failure and refusal of BCBS KC to provide coverage, reimbursement, payment and/or benefits for the SUD and/or mental health treatment benefits rendered by Morningside to Plaintiff's patients who were covered by BCBS KC and BCBK KC's denial of health insurance benefits coverage constitutes a breach of the insurance plans and/or employee benefit Plans between BCBS KC and the Patients at issue in this lawsuit.

**131.**   BCBS KC has arbitrarily and capriciously breached the obligations set forth in the ERISA Plans issued by BCBS KC and BCBS KC has arbitrarily and capriciously breached their obligations under the ERISA Plans to provide Plaintiff and that as a direct and proximate result of the actions by Defendants, Plaintiff has been damaged in an amount equal to the amount of benefits Plaintiff should have received and to which the Patients would have been entitled had BCBS KC paid the proper amounts, which Plaintiff estimates to be $107,259.45.

**132.**   As a direct and proximate result of the aforesaid conduct of BCBS KC in failing to provide coverage as required, Plaintiff has suffered, and will continue to suffer in the future, damages, plus interest and other economic and consequential damages, for a total amount Plaintiff estimates to be $107,259.45, or as otherwise determined at the time of trial.

133.   Plaintiff is entitled to an award of statutory penalties in the amount to be determined at the time of trial against BCBS KC.

134.   Plaintiff is entitled to an award of reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1).  As a result of the actions and failings of the BCBS KC, Plaintiff has retained the services of legal counsel and has necessarily incurred attorneys' fees and costs in prosecuting this action.  Furthermore, Plaintiff anticipates incurring additional attorneys' fees and costs hereafter pursing this action

## THIRD CLAIM FOR RELIEF

### (Claims for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B)

### Against the BCBS KI)

135.   Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

136.   Plaintiff is informed and believes, and based thereon alleges, that Morningside provided treatment for  patients insured for SUD and/or mental health treatment by BCBS KI under an ERISA Plan issued, underwritten and/or administrated by BCBS KI and/or the predecessor(s), assignor(s), agent(s), alter ego(s) or related entities of BCBS KI.

137.   This claim is alleged by Plaintiff for relief in connection with claims for treatment rendered to members of an ERISA Plan. This claim seeks to recover benefits, enforce rights and clarify rights to benefits under 29 U.S.C. § 1132(a)(1)(B). Plaintiff has standing to pursue these claims as assignee of the Patients' benefits under the ERISA Plans. As the assignee of benefits under the ERISA Plans, Plaintiff is a "beneficiary" entitled to collect benefits under the terms of the ERISA Plans, and is the "claimant" for purposes of ERISA.

138.   Plaintiff is informed and believes, and based thereon alleges, that BCBS KI is the insurer, sponsor, and/or financially responsible payer, serve as a designated plan administrator, and/or services as the named plan administrator's

designee.  Plaintiff is further informed and believes, and based thereon alleges, that with respect to each of the ERISA Plans at issue in this case that are self-insured plans, but which do not specifically designate a plan administrator, BCBS KI effectively controls the decision whether to honor or deny the a claim under the Plan, exercise authority over the resolution of benefits claims, and/or have responsibility to pay the claims.  BCBS KI also plays the role as the *de facto* plan administrator for such ERISA Plans.

139.   With respect to the ERISA Plans relating to BCBS KI, Plaintiff's claims against BCBS KI include 5 separate patients of Morningside.  To date, there remains a balance due and owing by BCBS KI to Plaintiff in the amount of $475,043.94.

140.   The individual patient claims relating to BCBS KI include the following:

a.   Patient MA, with a balance due and owing to Plaintiff in the amount of $39,000.00.  This patient had an Individual Business plan (the "**MA BCBS KI Plan**").  As required under the ACA and ERISA, the MA BCBS KI Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

b.   Patient SH, with a balance due and owing to Plaintiff in the amount of $27,083.62.  This patient had the Twin Motors Ford, Inc. plan (the "**SH BCBS KI Plan**"). As required under the ACA and ERISA, the SH BCBS KI Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

**c.**     Patient TJ, with a balance due and owing to Plaintiff in the amount of $26,106.84.  This patient had a Minneola Cooperative, Inc. plan (the "**TJ BCBS KI Plan**").  As required under the ACA and ERISA, the TJ BCBS KI Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

**d.**     Patient BMc, with a balance due and owing to Plaintiff in the amount of $270,242.44.  This patient had the Big Bins Mini Storage plan (the "**BMc BCBS KI Plan**").  As required under the ACA and ERISA, the BMc BCBS KI Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

**e.**     Patient BM, with a balance due and owing to Plaintiff in the amount of $112,611.04.  This patient had the Individual Business plan (the "**BM BCBS KI Plan**").  As required under the ACA and ERISA, the BM BCBS KI Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

**f.**     The MA BCBS KI Plan, the SH BCBS KI Plan, the TJ BCBS KI Plan, the Bmc BCBS KI Plan, and the BM BCBS KI Plan shall sometimes be referred to collectively as the "**BCBS KI Plans**" copay and deductible obligations as set forth in the plan documents.

**141.**   Plaintiff is informed and believes, and based thereon alleges, that for each of these claims and for each of the involved Patients, BCBS KI has failed and

refused to pay, process or adjust these claims in an appropriate fashion by, among other acts and omissions:

      **a.**     Delaying the processing, adjustment and/or payment of claims for periods of time greater than 45 days after submission of the claims in violation of 29 C.F.R. § 2560.503-1(f)(2)(iii)(B);

      **b.**     Failing and refusing to provide any notice and/or explanation for the denial of benefits, payments or reimbursement of the claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

      **c.**     Failing and refusing to provide an adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

      **d.**     Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, and by failing and refusing to set forth the specific reasons for such denials, all in violation of 29 U.S.C. § 1133(1);

      **e.**     Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, written in a manner calculated to be understood by the participant, in violation of 29 U.S.C. § 1133(1);

      **f.**     Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in an appeals process, in violation of 29 U.S.C. § 1133(2);

      **g.**     Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in meaningful appeal process which was full and fair, in violation of 29 U.S.C. § 1133(2);

      **h.**     Failing and refusing to provide Plaintiff and/or its Patients with information pertaining to their rights to appeal, including not

limited to those deadlines for filing appeals and/or the requirements that an appeal be filed, in violation of 29 U.S.C. § 1133(1);

**i.** Violating the minimum requirements for employee benefit plans pertaining to claims and benefits by participants and beneficiaries, in violation of 29 C.F.R. § 2560.503-1(a), *et seq.*;

**j.** Failing and refusing to establish and maintain reasonable claims procedures in violation of 29 C.F.R. § 2560.503-1(b);

**k.** Establishing, maintaining and enforcing claims procedures which unduly inhibit the initiation and processing of claims for benefits, in violation of 29 C.F.R. § 2560.503.1(b)(3);

**l.** Precluding and prohibiting Plaintiff from acting as an authorized representative of the Patients in pursuing a benefit claim or appeal of an adverse benefit determination, in violation of 29 C.F.R. § 2560.503-1(b)(4);

**m.** Failing and refusing to design, administer and enforce their processes, procedures and claims administration to ensure that their governing plan documents and provisions have been applied consistently with respect to similarly situated participants, beneficiaries and claimants, in violation of 29 C.F.R. § 2560.503-1(b)(5);

**n.** Failing and refusing to pay benefits for authorized services rendered by Plaintiff;

**o.** Failing to offer coverage for mental health and SUD treatment in parity with the medical and surgical benefits afforded by the same Plan, as required by 26 U.S.C. § 9812(3), as well as other mandates set forth at 26 U.S.C. § 9812, *et seq.*; and

**p.** Failing and refusing to pay Plaintiff for the SUD treatments provided to the Patients in violation of 26 U.S.C. § 9812(3).

142.   The failure and refusal of BCBS KI to provide coverage, reimbursement, payment and/or benefits for the SUD and/or mental health treatment benefits rendered by Morningside to Plaintiff's patients who were covered by BCBS KI and BCBK KI's denial of health insurance benefits coverage constitutes a breach of the insurance plans and/or employee benefit Plans between BCBS KI and the Patients at issue in this lawsuit.

143.   BCBS KI has arbitrarily and capriciously breached the obligations set forth in the ERISA Plans issued by BCBS KI and BCBS KI has arbitrarily and capriciously breached their obligations under the ERISA Plans to provide Plaintiff and that as a direct and proximate result of the actions by BCBS KI, Plaintiff has been damaged in an amount equal to the amount of benefits Plaintiff should have received and to which the Patients would have been entitled had BCBS KI paid the proper amounts, which Plaintiff estimates to be $475,043.94.

144.   As a direct and proximate result of the aforesaid conduct of BCBS KI in failing to provide coverage as required, Plaintiff has suffered, and will continue to suffer in the future, damages, plus interest and other economic and consequential damages, for a total amount Plaintiff estimates to be $475,043.94, or as otherwise determined at the time of trial.

145.   Plaintiff is entitled to an award of statutory penalties in the amount to be determined at the time of trial against BCBS KI.

146.   Plaintiff is entitled to an award of reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1).  As a result of the actions and failings of the BCBS KI, Plaintiff has retained the services of legal counsel and has necessarily incurred attorneys' fees and costs in prosecuting this action.  Furthermore, Plaintiff anticipates incurring additional attorneys' fees and costs hereafter pursing this action.

# FOURTH CLAIM FOR RELIEF

## (Claims for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B)

## Against the BCBS Miss)

147.   Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

148.   Plaintiff is informed and believes, and based thereon alleges, that Morningside provided treatment for  patients insured for SUD and/or mental health treatment by BCBS Miss under an ERISA Plan issued, underwritten and/or administrated by BCBS Miss and/or the predecessor(s), assignor(s), agent(s), alter ego(s) or related entities of BCBS Miss.

149.   This claim is alleged by Plaintiff for relief in connection with claims for treatment rendered to members of an ERISA Plan. This claim seeks to recover benefits, enforce rights and clarify rights to benefits under 29 U.S.C. § 1132(a)(1)(B). Plaintiff has standing to pursue these claims as assignee of the Patients' benefits under the ERISA Plans. As the assignee of benefits under the ERISA Plans, Plaintiff is a "beneficiary" entitled to collect benefits under the terms of the ERISA Plans, and is the "claimant" for purposes of ERISA.

150.   Plaintiff is informed and believes, and based thereon alleges, that BCBS Miss is the insurer, sponsor, and/or financially responsible payer, serve as a designated plan administrator, and/or services as the named plan administrator's designee.  Plaintiff is further informed and believes, and based thereon alleges, that with respect to each of the ERISA Plans at issue in this case that are self-insured plans, but which do not specifically designate a plan administrator, BCBS Miss effectively controls the decision whether to honor or deny the a claim under the Plan, exercise authority over the resolution of benefits claims, and/or have responsibility to pay the claims.  BCBS Miss also plays the role as the *de facto* plan administrator for such ERISA Plans.

151.   With respect to the ERISA Plans relating to BCBS Miss, Plaintiff's claims against BCBS Miss include 3 separate patients of Morningside.  To date, there remains a balance due and owing by BCBS Miss to Plaintiff in the amount of $259,828.34.

152.   The individual patient claims relating to BCBS Miss include the following:

a.   Patient DD, with a balance due and owing to Plaintiff in the amount of $188,490.54. This patient had a (redacted) plan (the "**DD BCBS Miss Plan**"). As required under the ACA and ERISA, the DD BCBS Miss Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

b.   Patient JH, with a balance due and owing to Plaintiff in the amount of $5,772.67. This patient had the Partridge-Sibley Industrial Services, Inc. plan (the "**JH BCBS Miss Plan**").  As required under the ACA and ERISA, the JH BCBS Miss Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

c.   Patient RM, with a balance due and owing to Plaintiff in the amount of $65,565.13.  BCBS Miss has not provided information to Plaintiff whether the above-referenced BCBS Miss patient at issue falls under an ERISA plan or not, so in an abundance of caution, Plaintiff lists all claims at this time.

d.   The DD BCBS Miss Plan and the JH BCBS Miss Plan shall sometimes be referred to collectively as the "**BCBS Miss Plans**"

153.   Plaintiff is informed and believes, and based thereon alleges, that for each of these claims and for each of the involved Patients, BCBS Miss has failed

and refused to pay, process or adjust these claims in an appropriate fashion by, among other acts and omissions:

     **a.**    Delaying the processing, adjustment and/or payment of claims for periods of time greater than 45 days after submission of the claims in violation of 29 C.F.R. § 2560.503-1(f)(2)(iii)(B);

     **b.**    Failing and refusing to provide any notice and/or explanation for the denial of benefits, payments or reimbursement of the claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

     **c.**    Failing and refusing to provide an adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

     **d.**    Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, and by failing and refusing to set forth the specific reasons for such denials, all in violation of 29 U.S.C. § 1133(1);

     **e.**    Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, written in a manner calculated to be understood by the participant, in violation of 29 U.S.C. § 1133(1);

     **f.**    Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in an appeals process, in violation of 29 U.S.C. § 1133(2);

     **g.**    Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in meaningful appeal process which was full and fair, in violation of 29 U.S.C. § 1133(2);

     **h.**    Failing and refusing to provide Plaintiff and/or its Patients with information pertaining to their rights to appeal, including not

limited to those deadlines for filing appeals and/or the requirements that an appeal be filed, in violation of 29 U.S.C. § 1133(1);

**i.** Violating the minimum requirements for employee benefit plans pertaining to claims and benefits by participants and beneficiaries, in violation of 29 C.F.R. § 2560.503-1(a), *et seq.*;

**j.** Failing and refusing to establish and maintain reasonable claims procedures in violation of 29 C.F.R. § 2560.503-1(b);

**k.** Establishing, maintaining and enforcing claims procedures which unduly inhibit the initiation and processing of claims for benefits, in violation of 29 C.F.R. § 2560.503.1(b)(3);

**l.** Precluding and prohibiting Plaintiff from acting as an authorized representative of the Patients in pursuing a benefit claim or appeal of an adverse benefit determination, in violation of 29 C.F.R. § 2560.503-1(b)(4);

**m.** Failing and refusing to design, administer and enforce their processes, procedures and claims administration to ensure that their governing plan documents and provisions have been applied consistently with respect to similarly situated participants, beneficiaries and claimants, in violation of 29 C.F.R. § 2560.503-1(b)(5);

**n.** Failing and refusing to pay benefits for authorized services rendered by Plaintiff;

**o.** Failing to offer coverage for mental health and SUD treatment in parity with the medical and surgical benefits afforded by the same Plan, as required by 26 U.S.C. § 9812(3), as well as other mandates set forth at 26 U.S.C. § 9812, *et seq.*; and

**p.** Failing and refusing to pay Plaintiff for the SUD treatments provided to the Patients in violation of 26 U.S.C. § 9812(3).

154.   The failure and refusal of BCBS Miss to provide coverage, reimbursement, payment and/or benefits for the SUD and/or mental health treatment benefits rendered by Morningside to Plaintiff's patients who were covered by BCBS Miss and BCBS Miss's denial of health insurance benefits coverage constitutes a breach of the insurance plans and/or employee benefit Plans between BCBS Miss and the Patients at issue in this lawsuit.

155.   BCBS Miss has arbitrarily and capriciously breached the obligations set forth in the ERISA Plans issued by BCBS Miss and BCBS Miss has arbitrarily and capriciously breached their obligations under the ERISA Plans to provide Plaintiff and that as a direct and proximate result of the actions by Defendants, Plaintiff has been damaged in an amount equal to the amount of benefits Plaintiff should have received and to which the Patients would have been entitled had BCBS Miss paid the proper amounts, which Plaintiff estimates to be $259,828.34.

156.   As a direct and proximate result of the aforesaid conduct of BCBS Miss in failing to provide coverage as required, Plaintiff has suffered, and will continue to suffer in the future, damages, plus interest and other economic and consequential damages, for a total amount Plaintiff estimates to be $259,828.34, or as otherwise determined at the time of trial.

157.   Plaintiff is entitled to an award of statutory penalties in the amount to be determined at the time of trial against BCBS Miss.

158.   Plaintiff is entitled to an award of reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1).  As a result of the actions and failings of the BCBS Miss, Plaintiff has retained the services of legal counsel and has necessarily incurred attorneys' fees and costs in prosecuting this action.  Furthermore, Plaintiff anticipates incurring additional attorneys' fees and costs hereafter pursing this action.

## FIFTH CLAIM FOR RELIEF

### (Claims for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B)

### Against BCBS Ok)

159.   Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

160.   This claim is alleged by Plaintiff for relief in connection with claims for treatment rendered to members of an ERISA Plan. This claim seeks to recover benefits, enforce rights and clarify rights to benefits under 29 U.S.C. § 1132(a)(1)(B). Plaintiff has standing to pursue these claims as assignee of the Patients' benefits under the ERISA Plans. As the assignee of benefits under the ERISA Plans, Plaintiff is a "beneficiary" entitled to collect benefits under the terms of the ERISA Plans, and is the "claimant" for purposes of ERISA.

161.   Plaintiff is informed and believes, and based thereon alleges, that BCBS Ok is the insurer, sponsor, and/or financially responsible payer, serve as a designated plan administrator, and/or services as the named plan administrator's designee.  Plaintiff is further informed and believes, and based thereon alleges, that with respect to each of the ERISA Plans at issue in this case that are self-insured plans, but which do not specifically designate a plan administrator, BCBS Ok effectively controls the decision whether to honor or deny a claim under the Plan, exercise authority over the resolution of benefits claims, and/or have responsibility to pay the claims.  BCBS Ok also plays the role as the *de facto* plan administrator for such ERISA Plans.

162.   With respect to the ERISA Plans relating to BCBS Ok, Plaintiff's claims against BCBS Ok include 4 separate patients of Morningside.  To date, there remains a balance due and owing by BCBS Ok to Plaintiff in the amount of $362,679.51.

163.   The individual patient claims relating to BCBS Ok include the following:

**a.**     Patient CB, with a balance due and owing to Plaintiff in the amount of $100,955.79.  This patient had a Blue Advantage Gold PPO 102 plan with the Blue Advantage PPO Network (the "**CB BCBS Ok Plan**"). As required under the ACA and ERISA, the CB BCBS Ok Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

**b.**     Patient MF, with a balance due and owing to Plaintiff in the amount of $1,396.30.  This patient had a Blue Choice Gold PPO 201 plan with the Blue Choice PPO Network (the "**MF BCBS Ok Plan**"). As required under the ACA and ERISA, the MF BCBS Ok Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

**c.**     Patient RW, with a balance due and owing to Plaintiff in the amount of $45,098.56.  This patient had a Blue Choice Silver PPO 003 plan with the Blue Choice PPO Network (the "**RW BCBS Ok Plan**").  As required under the ACA and ERISA, the RW BCBS Ok Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

**d.**     Patient MZ, with a balance due and owing to Plaintiff in the amount of $215,228.86.  This patient had a Blue Advantage Silver PPO 111 plan with the Blue Advantage PPO Network (the "**MZ BCBS Ok Plan**"). As required under the ACA and ERISA, the MZ BCBS Ok Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

  **e.**  The CB BCBS Ok Plan, the MF BCBS Ok Plan, the RW BCBS Ok Plan and the MZ BCBS Ok Plan shall sometimes be referred to collectively as the "**BCBS Ok Plans**".

**164.** Plaintiff is informed and believes, and based thereon alleges, that for each of these claims and for each of the involved Patients, BCBS Ok has failed and refused to pay, process or adjust these claims in an appropriate fashion by, among other acts and omissions:

  **a.**  Delaying the processing, adjustment and/or payment of claims for periods of time greater than 45 days after submission of the claims in violation of 29 C.F.R. § 2560.503-1(f)(2)(iii)(B);

  **b.**  Failing and refusing to provide any notice and/or explanation for the denial of benefits, payments or reimbursement of the claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

  **c.**  Failing and refusing to provide an adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

  **d.**  Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, and by failing and refusing to set forth the specific reasons for such denials, all in violation of 29 U.S.C. § 1133(1);

  **e.**  Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, written in a manner calculated to be understood by the participant, in violation of 29 U.S.C. § 1133(1);

  **f.**  Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in an appeals process, in violation of 29 U.S.C. § 1133(2);

**g.**     Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in meaningful appeal process which was full and fair, in violation of 29 U.S.C. § 1133(2);

**h.**     Failing and refusing to provide Plaintiff and/or its Patients with information pertaining to their rights to appeal, including not limited to those deadlines for filing appeals and/or the requirements that an appeal be filed, in violation of 29 U.S.C. § 1133(1);

**i.**     Violating the minimum requirements for employee benefit plans pertaining to claims and benefits by participants and beneficiaries, in violation of 29 C.F.R. § 2560.503-1(a), *et seq.*;

**j.**     Failing and refusing to establish and maintain reasonable claims procedures in violation of 29 C.F.R. § 2560.503-1(b);

**k.**     Establishing, maintaining and enforcing claims procedures which unduly inhibit the initiation and processing of claims for benefits, in violation of 29 C.F.R. § 2560.503.1(b)(3);

**l.**     Precluding and prohibiting Plaintiff from acting as an authorized representative of the Patients in pursuing a benefit claim or appeal of an adverse benefit determination, in violation of 29 C.F.R. § 2560.503-1(b)(4);

**m.**     Failing and refusing to design, administer and enforce their processes, procedures and claims administration to ensure that their governing plan documents and provisions have been applied consistently with respect to similarly situated participants, beneficiaries and claimants, in violation of 29 C.F.R. § 2560.503-1(b)(5);

**n.**     Failing and refusing to pay benefits for authorized services rendered by Plaintiff;

**o.**     Failing to offer coverage for mental health and SUD treatment in parity with the medical and surgical benefits afforded by

the same Plan, as required by 26 U.S.C. § 9812(3), as well as other mandates set forth at 26 U.S.C. § 9812, *et seq*.; and

    **p.**    Failing and refusing to pay Plaintiff for the SUD treatments provided to the Patients in violation of 26 U.S.C. § 9812(3).

**165.**    The failure and refusal of BCBS Ok to provide coverage, reimbursement, payment and/or benefits for the SUD and/or mental health treatment benefits rendered by Morningside to Plaintiff's patients who were covered by BCBS Ok and BCBK Ok's denial of health insurance benefits coverage constitutes a breach of the insurance plans and/or employee benefit Plans between BCBS Ok and the Patients at issue in this lawsuit.

**166.**    BCBS Ok has arbitrarily and capriciously breached the obligations set forth in the ERISA Plans issued by BCBS Ok and BCBS Ok has arbitrarily and capriciously breached their obligations under the ERISA Plans to provide Plaintiff and that as a direct and proximate result of the actions by Defendants, Plaintiff has been damaged in an amount equal to the amount of benefits Plaintiff should have received and to which the Patients would have been entitled had BCBS Ok paid the proper amounts, which Plaintiff estimates to be $362,679.51.

**167.**    As a direct and proximate result of the aforesaid conduct of BCBS Ok in failing to provide coverage as required, Plaintiff has suffered, and will continue to suffer in the future, damages, plus interest and other economic and consequential damages, for a total amount Plaintiff estimates to be $362,679.51, or as otherwise determined at the time of trial.

**168.**    Plaintiff is entitled to an award of statutory penalties in the amount to be determined at the time of trial against BCBS Ok.

**169.**    Plaintiff is entitled to an award of reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1).  As a result of the actions and failings of the BCBS Ok, Plaintiff has retained the services of legal counsel and has necessarily incurred attorneys' fees and costs in prosecuting this action.  Furthermore, Plaintiff

anticipates incurring additional attorneys' fees and costs hereafter pursing this action.

### SIXTH CLAIM FOR RELIEF

**(Claims for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B)**

**Against the Humana Defendants)**

170.    Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

171.    This claim is alleged by Plaintiff for relief in connection with claims for treatment rendered to members of ERISA Plans. This claim seeks to recover benefits, enforce rights and clarify rights to benefits under 29 U.S.C. § 1132(a)(1)(B). Plaintiff has standing to pursue these claims as assignee of the Patients' benefits under the ERISA Plans. As the assignee of benefits under the ERISA Plans, Plaintiff is a "beneficiary" entitled to collect benefits under the terms of the ERISA Plans, and is the "claimant" for purposes of ERISA.

172.    Plaintiff is informed and believes, and based thereon alleges, that the Humana Defendants are the insurer, sponsor, and/or financially responsible payer, serve as a designated plan administrator, and/or services as the named plan administrator's designee.  Plaintiff is further informed and believes, and based thereon alleges, that with respect to each of the ERISA Plans at issue in this case that are self-insured plans, but which do not specifically designate a plan administrator, the Humana Defendants effectively control the decision whether to honor or deny the a claim under the ERISA Plans, exercise authority over the resolution of benefits claims, and/or have responsibility to pay the claims.  The Humana Defendants also play the role as the *de facto* plan administrator for such ERISA Plans.

173.    With respect to the ERISA Plans relating to the Humana Defendants, Plaintiff's claims against the Humana Defendants include 25 separate patients of

Morningside.  To date, there remains a balance due and owing by the Humana Defendants to Plaintiff in the amount of $1,794,394.00.

**174.**   The individual patient claims relating to the Humana Defendants include the following:

      **a.**   Patient JB, with a balance due and owing to Plaintiff in the amount of $104,322.26.  This patient had a PPO plan with the Humana Network (the "**JB Humana Plan**").  As required under the ACA and ERISA, the JB Humana Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

      **b.**   Patient AB, with a balance due and owing to Plaintiff in the amount of $99,440.75.  This patient had a USAA Medical Care Program/Humana Insurance Company plan with the Humana Network (the "**AB Humana Plan**"). As required under the ACA and ERISA, the AB Humana Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

      **c.**   Patient KB, with a balance due and owing to Plaintiff in the amount of $191,712.63.  This patient had a Humana Insurance Company and Humana Employers Health Plan of Georgia, Inc. plan with the Humana Network (the "**KB Humana Plan**").  As required under the ACA and ERISA, the KB Humana Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

**d.**     Patient BC, with a balance due and owing to Plaintiff in the amount of $11,536.11.  This patient had a Humana Insurance Company plan with the Humana Network plan with the Humana Network (the "**BC Humana Plan**").  As required under the ACA and ERISA, the BC Humana Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

**e.**     Patient RC, with a balance due and owing to Plaintiff in the amount of $71,032.04.  This patient had a Humana Insurance Company and Humana Employers Health Plan of Georgia, Inc. with the Humana Network (the "**RC Humana Plan**").  As required under the ACA and ERISA, the RC Humana Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

**f.**     Patient MD, with a balance due and owing to Plaintiff in the amount of $74,351.    This patient had a Humana Insurance Company and Humana Employers Health Plan of Georgia, Inc. with the Humana Network (the "**MD Humana Plan**").  As required under the ACA and ERISA, the MD Humana Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

**g.**     Patient DD, with a balance due and owing to Plaintiff in the amount of $94,225.28.  This patient had a Humana Health Plan of Texas, Inc. Plan with the Humana Network (the "**DD Humana Plan**").  As required under the ACA and ERISA, the DD Humana Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount

required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

**h.**     Patient BG, with a balance due and owing to Plaintiff in the amount of $122,166.70.  This patient had a Humana Insurance Company Plan with the Humana Network (the "**BG Humana Plan**").  As required under the ACA and ERISA, the BG Humana Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

**i.**     Patient GG, with a balance due and owing to Plaintiff in the amount of $31,655.00.  This patient had a Humana Health Benefit Plan of Louisiana, Inc. Plan with the Humana Network (the "**GG Humana Plan**").  As required under the ACA and ERISA, the GG Humana Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

**j.**     Patient JJ, with a balance due and owing to Plaintiff in the amount of $62,801.00.  This patient had a Humana Health Plan, Inc. Plan with the Humana Network (the "**JJ Humana Plan**").  As required under the ACA and ERISA, the JJ Humana Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

**k.**     Patient MJ, with a balance due and owing to Plaintiff in the amount of $76,076.06.  This patient had a Humana Insurance Company Plan with the Humana Network (the "**MJ Humana Plan**").  As required under the ACA and ERISA, the MJ Humana Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by

law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

l.      Patient LK, with a balance due and owing to Plaintiff in the amount of $89,837.95.  This patient had a Humana Insurance Company and Humana Employers Health Plan of Georgia, Inc. Plan with the Humana Network (the "**LK Humana Plan**").  As required under the ACA and ERISA, the LK Humana Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

m.      Patient LL, with a balance due and owing to Plaintiff in the amount of $97,542.85.  This patient had a Humana Health Benefit Plan of Louisiana, Inc. Plan with the Humana Network (the "**LL Humana Plan**").  As required under the ACA and ERISA, the LL Humana Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

n.      Patient AL, with a balance due and owing to Plaintiff in the amount of $23,865.55.  This patient had a Humana Insurance Company Plan with the Humana Network (the "**AL Humana Plan**").  As required under the ACA and ERISA, the AL Humana Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

o.      Patient TM, with a balance due and owing in the amount of $30,000.00.  This patient had a Humana Insurance Company Plan with the Humana Network (the "**TM Humana Plan**").  As required under the ACA and ERISA, the TM Humana Plan must provide plan benefits for SUD and ERISA, the TM Humana Plan must provide plan benefits for SUD

1    and/or mental health treatment at no less than the amount required by law of

2    UCR, notwithstanding patient copay and deductible obligations as set forth

3    in the plan documents.

4          **p.**     Patient JM, with a balance due and owing in the amount of

5    $23,160.00.  This patient had a Humana Insurance Company Plan with the

6    Humana Network (the "**JM Humana Plan**").  As required under the ACA

7    and ERISA, the JM Humana Plan must provide plan benefits for SUD and/or

8    mental health treatment at no less than the amount required by law of UCR,

9    notwithstanding patient copay and deductible obligations as set forth in the

10   plan documents.

11         **q.**     Patient KMc, with a balance due and owing in the amount of

12   $23,040.00.  This patient had a Humana Health Plan, Inc. Plan with the

13   Humana Network (the "**KMc Humana Plan**").  As required under the ACA

14   and ERISA, the KMc Humana Plan must provide plan benefits for SUD

15   and/or mental health treatment at no less than the amount required by law of

16   UCR, notwithstanding patient copay and deductible obligations as set forth

17   in the plan documents.

18         **r.**     Patient KR, with a balance due and owing in the amount of

19   $11,460.00.  This patient had a Humana Insurance Company Plan with the

20   Humana Network (the "**KR Humana Plan**").  As required under the ACA

21   and ERISA, the KR Humana Plan must provide plan benefits for SUD

22   and/or mental health treatment at no less than the amount required by law of

23   UCR, notwithstanding patient copay and deductible obligations as set forth

24   in the plan documents.

25         **s.**     Patient JS, with a balance due and owing in the amount of

26   $40,285.55.  This patient had a Humana Insurance Company Plan with the

27   Humana Network (the "**JS Humana Plan**").  As required under the ACA

28   and ERISA, the JS Humana Plan must provide plan benefits for SUD and/or

mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

      **t.**      Patient ET, with a balance due and owing in the amount of $106,072.28.  This patient had a Humana Insurance Company Plan with the Humana Network (the "**ET Humana Plan**").  As required under the ACA and ERISA, the ET Humana Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

      **u.**      Patient MT, with a balance due and owing in the amount of $18,100.00.  This patient had a Humana Insurance Company Plan with the Humana Network (the "**MT Humana Plan**").  As required under the ACA and ERISA, the MT Humana Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

      **v.**      Patient SW, with a balance due and owing in the amount of $61,103.58.  This patient had a Humana Insurance Company and Humana Employers Health Plan of Georgia, Inc. Plan with the Humana Network (the "**SW Humana Plan**").  As required under the ACA and ERISA, the SW Humana Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

      **w.**      Patient JW, with a balance due and owing in the amount of $100,341.39.  This patient had a Humana Insurance Company Plan with the Humana Network (the "**JW Humana Plan**").  As required under the ACA

and ERISA, the JW Humana Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

**x.**     Patient DW, with a balance due and owing in the amount of $65,355.00.  This patient had a Humana Health Plan, Inc. with the Humana Network (the "**DW Humana Plan**").  As required under the ACA and ERISA, the DW Humana Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

**y.**     Patient DY, with a balance due and owing in the amount of $76,204.14.  This patient had a Humana Insurance Company Plan with the Humana Network (the "**DY Humana Plan**").  As required under the ACA and ERISA, the DY Humana Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

**175.**     The JB Humana Plan, the AB Humana Plan, the KB Humana Plan, the BC Humana Plan, the RC Humana Plan, the MD Humana Plan, the DD Humana Plan, the BG Humana Plan, the GG Humana Plan, the JJ Humana Plan, the MJ Humana Plan, the LK Humana Plan, the LL Humana Plan, the AL Humana Plan, the TM Humana Plan, the JM Humana Plan, the KMc Humana Plan, the KR Humana Plan, the JS Humana Plan, the ET Humana Plan, the MT Humana Plan, the SW Humana Plan, the MW Humana Plan, the JW Humana Plan, the DW Humana Plan, and the DY Humana Plan shall sometimes be referred to collectively as the "**Humana Plans**".

**176.** Plaintiff is informed and believes, and based thereon alleges, that for each of these claims and for each of the involved Patients, the Humana Defendants have failed and refused to pay, process or adjust these claims in an appropriate fashion by, among other acts and omissions:

    **a.** Delaying the processing, adjustment and/or payment of claims for periods of time greater than 45 days after submission of the claims in violation of 29 C.F.R. § 2560.503-1(f)(2)(iii)(B);

    **b.** Failing and refusing to provide any notice and/or explanation for the denial of benefits, payments or reimbursement of the claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

    **c.** Failing and refusing to provide an adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

    **d.** Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, and by failing and refusing to set forth the specific reasons for such denials, all in violation of 29 U.S.C. § 1133(1);

    **e.** Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, written in a manner calculated to be understood by the participant, in violation of 29 U.S.C. § 1133(1);

    **f.** Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in an appeals process, in violation of 29 U.S.C. § 1133(2);

    **g.** Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in meaningful appeal process which was full and fair, in violation of 29 U.S.C. § 1133(2);

**h.**     Failing and refusing to provide Plaintiff and/or its Patients with information pertaining to their rights to appeal, including not limited to those deadlines for filing appeals and/or the requirements that an appeal be filed, in violation of 29 U.S.C. § 1133(1);

**i.**     Violating the minimum requirements for employee benefit plans pertaining to claims and benefits by participants and beneficiaries, in violation of 29 C.F.R. § 2560.503-1(a), *et seq.*;

**j.**     Failing and refusing to establish and maintain reasonable claims procedures in violation of 29 C.F.R. § 2560.503-1(b);

**k.**     Establishing, maintaining and enforcing claims procedures which unduly inhibit the initiation and processing of claims for benefits, in violation of 29 C.F.R. § 2560.503.1(b)(3);

**l.**     Precluding and prohibiting Plaintiff from acting as an authorized representative of the Patients in pursuing a benefit claim or appeal of an adverse benefit determination, in violation of 29 C.F.R. § 2560.503-1(b)(4);

**m.**     Failing and refusing to design, administer and enforce their processes, procedures and claims administration to ensure that their governing plan documents and provisions have been applied consistently with respect to similarly situated participants, beneficiaries and claimants, in violation of 29 C.F.R. § 2560.503-1(b)(5);

**n.**     Failing and refusing to pay benefits for authorized services rendered by Plaintiff;

**o.**     Failing to offer coverage for mental health and SUD treatment in parity with the medical and surgical benefits afforded by the same Plan, as required by 26 U.S.C. § 9812(3), as well as other mandates set forth at 26 U.S.C. § 9812, *et seq.*; and

**p.** Failing and refusing to pay Plaintiff for the SUD treatments provided to the Patients in violation of 26 U.S.C. § 9812(3).

**177.** The failure and refusal of the Humana Defendants to provide coverage, reimbursement, payment and/or benefits for the SUD and/or mental health treatment benefits rendered by Morningside to Plaintiff's patients who were covered by the Humana Defendants and check if the Humana Defendants and the Humana Defendants denial of health insurance benefits coverage constitutes a breach of the insurance plans and/or employee benefit Plans between the Humana Defendants  and the Patients at issue in this lawsuit.

**178.** The Humana Defendants have arbitrarily and capriciously breached the obligations set forth in the ERISA Plans issued by the Humana Defendants and the Humana Defendants have arbitrarily and capriciously breached their obligations under the ERISA Plans to provide Plaintiff and that as a direct and proximate result of their actions, Plaintiff has been damaged in an amount equal to the amount of benefits Plaintiff should have received and to which the Patients would have been entitled had the Humana Defendants paid the proper amounts, which Plaintiff estimates to be $362,679.51.

**179.** As a direct and proximate result of the aforesaid conduct of BCBS Ok in failing to provide coverage as required, Plaintiff has suffered, and will continue to suffer in the future, damages, plus interest and other economic and consequential damages, for a total amount Plaintiff estimates to be $362,679.51, or as otherwise determined at the time of trial.

**180.** Plaintiff is entitled to an award of statutory penalties in the amount to be determined at the time of trial against the Humana Defendants.

**181.** Plaintiff is entitled to an award of reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1).  As a result of the actions and failings of the Humana Defendants, Plaintiff has retained the services of legal counsel and has necessarily incurred attorneys' fees and costs in prosecuting this action.  Furthermore, Plaintiff

anticipates incurring additional attorneys' fees and costs hereafter pursing this action.

## SEVENTH  CLAIM FOR RELIEF

### (Claims for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B)
### Against BCBS Ala)

**182.**   Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

**183.**   This claim is alleged by Plaintiff for relief in connection with claims for treatment rendered to members of an ERISA Plan. This claim seeks to recover benefits, enforce rights and clarify rights to benefits under 29 U.S.C. § 1132(a)(1)(B). Plaintiff has standing to pursue these claims as assignee of the Patients' benefits under the ERISA Plans. As the assignee of benefits under the ERISA Plans, Plaintiff is a "beneficiary" entitled to collect benefits under the terms of the ERISA Plans, and is the "claimant" for purposes of ERISA.

**184.**   Plaintiff is informed and believes, and based thereon alleges, that BCBS Ala is the insurer, sponsor, and/or financially responsible payer, serve as a designated plan administrator, and/or services as the named plan administrator's designee.  Plaintiff is further informed and believes, and based thereon alleges, that with respect to each of the ERISA Plans at issue in this case that are self-insured plans, but which do not specifically designate a plan administrator, BCBS Ala effectively controls the decision whether to honor or deny the a claim under the Plan, exercise authority over the resolution of benefits claims, and/or have responsibility to pay the claims.  BCBS Ala also plays the role as the *de facto* plan administrator for such ERISA Plans.

**185.**   With respect to the ERISA Plans provided by BCBS Ala, Plaintiff's claims against BCBS Ala include 6 separate patients of Morningside.  To date, there remains a balance due and owing by BCBS Ala to Plaintiff in the amount of $487,311.36.

**186.**   The individual patient claims relating to BCBS Ala include the following:

a.      Patient KB, with a balance due and owing to Plaintiff in the amount of $208,156.43.  This patient had a Regions Financial Corporation Advantage Plan through BCBS Ala (the "**KB BCBS Ala Plan**").  The KB BCBS Ala Plan states: "Benefit levels for most mental health disorders and substance abuse are not separately stated."  The KB BCBS Ala Plan further provides that payment for the Morningside Services shall be 90% for network provider services and 70% for out-of-network provider services of "allowed amount" for services relating to "[t]he uncontrollable or excessive abuse of addictive substances, such as (but not limited to) alcohol, drugs, or other chemicals and the resultant physiological and/or psychological dependency that develops with continued use."

b.      Patient CP, with a balance due and owing to Plaintiff in the amount of $174,055.84.  This patient had an ADS, LLC plan through BCBS Ala (the "**CP BCBS Ala Plan**"). The CP BCBS Ala Plan states: "Benefit levels for most mental health disorders and substance abuse are not separately stated."  The CP BCBS Ala Plan further provides that payment for the Morningside Services shall be 100% of the "allowed amount" for services relating to "[t]he uncontrollable or excessive abuse of addictive substances, such as (but not limited to) alcohol, drugs, or other chemicals and the resultant physiological and/or psychological dependency that develops with continued use."

c.      Patient JD, with a balance due and owing to Plaintiff in the amount of $6,000. This patient had a ZF North America, Inc. plan through BCBS Ala (the "**JD BCBS Ala Plan**").  The JD BCBS Ala Plan states: "Benefit levels for most mental health disorders and substance abuse are not separately stated."  The JD BCBS Ala Plan further provides that payment for

the Morningside Services shall be shall be 80% for network provider
services and 60% for out-of-network provider services of "allowed amount"
for services relating to "[t]he uncontrollable or excessive abuse of addictive
substances, such as (but not limited to) alcohol, drugs, or other chemicals
and the resultant physiological and/or psychological dependency that
develops with continued use."

       **d.**    Patient HK, with a balance due and owing to Plaintiff in the
amount of $71,674.88.  This patient had a Blue Secure Silver for Business
plan through BCBS Ala (the "**HK BCBS Ala Plan**").  The HK BCBS Ala
Plan provides that payment for the Morningside Services shall be shall be
100% for network provider services and 50% for out-of-network provider
services of "allowed amount" for services relating to "[t]he uncontrollable or
excessive abuse of addictive substances, such as (but not limited to) alcohol,
drugs, or other chemicals and the resultant physiological and/or
psychological dependency that develops with continued use.

       **e.**    Patient MG, with a balance due and owing to Plaintiff in the
amount of $19,353.31.  This patient had a AAA Cooper Transportation
Consumer Driven Health Plan through BCBS Ala (the "**MG BCBS Ala
Plan**").  The MG BCBS Ala Plan covers substance abuse services, and
further provides that payment for the Morningside Services shall be shall be
80% for network provider services and 50% for out-of-network provider
services of "allowed amount" for services relating to "[t]he uncontrollable or
excessive abuse of addictive substances, such as (but not limited to) alcohol,
drugs, or other chemicals and the resultant physiological and/or
psychological dependency that develops with continued use."

       **f.**    Patient EM, with a balance due and owing to Plaintiff in the
amount of $8,070.90.  This patient had a General Electric Health Plan
through BCBS Ala (the "**MG BCBS Ala Plan**").  The EM BCBS Ala Plan

covers behavioral health and substance abuse services at a level in excess of the 60% minimum required under the Affordable Care Act."

**187.** Plaintiff is informed and believes, and based thereon alleges, that for each of these claims and for each of the involved Patients, BCBS Ala has failed and refused to pay, process or adjust these claims in an appropriate fashion by, among other acts and omissions:

> **a.** Delaying the processing, adjustment and/or payment of claims for periods of time greater than 45 days after submission of the claims in violation of 29 C.F.R. § 2560.503-1(f)(2)(iii)(B);

> **b.** Failing and refusing to provide any notice and/or explanation for the denial of benefits, payments or reimbursement of the claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

> **c.** Failing and refusing to provide an adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

> **d.** Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, and by failing and refusing to set forth the specific reasons for such denials, all in violation of 29 U.S.C. § 1133(1);

> **e.** Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, written in a manner calculated to be understood by the participant, in violation of 29 U.S.C. § 1133(1);

> **f.** Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in an appeals process, in violation of 29 U.S.C. § 1133(2);

**g.**     Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in meaningful appeal process which was full and fair, in violation of 29 U.S.C. § 1133(2);

**h.**     Failing and refusing to provide Plaintiff and/or its Patients with information pertaining to their rights to appeal, including not limited to those deadlines for filing appeals and/or the requirements that an appeal be filed, in violation of 29 U.S.C. § 1133(1);

**i.**     Violating the minimum requirements for employee benefit plans pertaining to claims and benefits by participants and beneficiaries, in violation of 29 C.F.R. § 2560.503-1(a), *et seq.*;

**j.**     Failing and refusing to establish and maintain reasonable claims procedures in violation of 29 C.F.R. § 2560.503-1(b);

**k.**     Establishing, maintaining and enforcing claims procedures which unduly inhibit the initiation and processing of claims for benefits, in violation of 29 C.F.R. § 2560.503.1(b)(3);

**l.**     Precluding and prohibiting Plaintiff from acting as an authorized representative of the Patients in pursuing a benefit claim or appeal of an adverse benefit determination, in violation of 29 C.F.R. § 2560.503-1(b)(4);

**m.**     Failing and refusing to design, administer and enforce their processes, procedures and claims administration to ensure that their governing plan documents and provisions have been applied consistently with respect to similarly situated participants, beneficiaries and claimants, in violation of 29 C.F.R. § 2560.503-1(b)(5);

**n.**     Failing and refusing to pay benefits for authorized services rendered by Plaintiff;

**o.**     Failing to offer coverage for mental health and SUD treatment in parity with the medical and surgical benefits afforded by

the same Plan, as required by 26 U.S.C. § 9812(3), as well as other mandates set forth at 26 U.S.C. § 9812, *et seq*.; and

  **p.** Failing and refusing to pay Plaintiff for the SUD treatments provided to the Patients in violation of 26 U.S.C. § 9812(3).

**188.** The failure and refusal of BCBS Ala to provide coverage, reimbursement, payment and/or benefits for the SUD and/or mental health treatment benefits rendered by Morningside to Plaintiff's patients who were covered by BCBS Ala and BCBS Ala's denial of health insurance benefits coverage constitutes a breach of the insurance plans and/or employee benefit Plans between BCBS Ala and the Patients at issue in this lawsuit.

**189.** BCBS Ala has arbitrarily and capriciously breached the obligations set forth in the ERISA Plans issued by BCBS Ala and BCBS Ala has arbitrarily and capriciously breached their obligations under the ERISA Plans to provide Plaintiff and that as a direct and proximate result of the actions by Defendants, Plaintiff has been damaged in an amount equal to the amount of benefits Plaintiff should have received and to which the Patients would have been entitled had BCBS Ala paid the proper amounts, which Plaintiff estimates to be $487,311.36

**190.** As a direct and proximate result of the aforesaid conduct of BCBS Ala in failing to provide coverage as required, Plaintiff has suffered, and will continue to suffer in the future, damages, plus interest and other economic and consequential damages, for a total amount Plaintiff estimates to be $487,311.36, or as otherwise determined at the time of trial.

**191.** Plaintiff is entitled to an award of statutory penalties in the amount to be determined at the time of trial against BCBS Ala.

**192.** Plaintiff is entitled to an award of reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1).  As a result of the actions and failings of the BCBS Ala, Plaintiff has retained the services of legal counsel and has necessarily incurred attorneys' fees and costs in prosecuting this action.  Furthermore, Plaintiff

anticipates incurring additional attorneys' fees and costs hereafter pursing this action.

## EIGHTH CLAIM FOR RELIEF

### (Claims for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B)

### Against the BCBS Tenn)

193.   Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

194.   This claim is alleged by Plaintiff for relief in connection with claims for treatment rendered to members of an ERISA Plan. This claim seeks to recover benefits, enforce rights and clarify rights to benefits under 29 U.S.C. § 1132(a)(1)(B). Plaintiff has standing to pursue these claims as assignee of the Patients' benefits under the ERISA Plans. As the assignee of benefits under the ERISA Plans, Plaintiff is a "beneficiary" entitled to collect benefits under the terms of the ERISA Plans, and is the "claimant" for purposes of ERISA.

195.   Plaintiff is informed and believes, and based thereon alleges, that BCBS Ala is the insurer, sponsor, and/or financially responsible payer, serve as a designated plan administrator, and/or services as the named plan administrator's designee.  Plaintiff is further informed and believes, and based thereon alleges, that with respect to each of the ERISA Plans at issue in this case that are self-insured plans, but which do not specifically designate a plan administrator, BCBS Tenn effectively controls the decision whether to honor or deny the a claim under the Plan, exercise authority over the resolution of benefits claims, and/or have responsibility to pay the claims.  BCBS Tenn also plays the role as the *de facto* plan administrator for such ERISA Plans.

196.   With respect to the ERISA Plans relating to the BCBS Tenn Defendants, Plaintiff's claims against BCBS Tenn include 18 separate patients of Morningside.  To date, there remains a balance due and owing by BCBS Tenn Defendants to Plaintiff in the amount of $1,724,523.68.

197.   The individual patient claims relating to BCBS Tenn include the following:

a.   Patient MB, with a balance due and owing to Plaintiff in the amount of $209,445.02.  This patient had a Dollar General Health Plan with the BCBS Tenn Network (the "**MB BCBS Tenn Plan**").  As required under the ACA and ERISA, the MB BCBS Tenn Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

b.   Patient ZB, with a balance due and owing to Plaintiff in the amount of $132,134.39.  This patient had an Evolve Financial Group HDHP plan with the BCBS Tenn Network (the "**ZB BCBS Tenn Plan**").  As required under the ACA and ERISA, the ZB BCBS Tenn Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

c.   Patient KF, with a balance due and owing to Plaintiff in the amount of $264.60.  This patient had an Ed's Supply Co. PPO plan with the BCBS Tenn Network (the "**KF BCBS Tenn Plan**"). As required under the ACA and ERISA, the KF BCBS Tenn Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

d.   Patient CG, with a balance due and owing to Plaintiff in the amount of $8,927.60.  This patient had a Bridgestone Americas Holdings, Inc. Health Benefit plan with the BCBS Tenn Network (the "**CG BCBS Tenn Plan**").  As required under the ACA and ERISA, the CG BCBS Tenn Plan must provide plan benefits for SUD and/or mental health treatment at

no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

e.      Patient NH, with a balance due and owing to Plaintiff in the amount of $45,761.06.  This patient had a Personal Health Coverage PPO plan with the BCBS Tenn Network (the "**NH BCBS Tenn Plan**").  As required under the ACA and ERISA, the NH BCBS Tenn Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

f.      Patient KH, with a balance due and owing to Plaintiff in the amount of $6,371.10.  This patient had a Personal Health Coverage PPO plan with the BCBS Tenn Network (the "**KH BCBS Tenn Plan**"). As required under the ACA and ERISA, the KH BCBS Tenn Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

g.      Patient AM, with a balance due and owing to Plaintiff in the amount of $45,472.56.  This patient had a Local Education PPO plan with the BCBS Tenn Network (the "**AM BCBS Tenn Plan**").  As required under the ACA and ERISA, the AM BCBS Tenn Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

h.      Patient KMc, with a balance due and owing to Plaintiff in the amount of $131,258.28.  This patient had a Charles Tombras Advertising, Inc. PPO plan with the BCBS Tenn Network (the "**KMc BCBS Tenn Plan**").  As required under the ACA and ERISA, the KMc BCBS Tenn Plan must provide plan benefits for SUD and/or mental health treatment at no less

than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

      **i.**     Patient MP1, with a balance due and owing to Plaintiff in the amount of $3,505.95.  This patient had a Logical Systems, LLC PPO plan with the BCBS Tenn Network (the "**MP1 BCBS Tenn Plan**").  As required under the ACA and ERISA, the MP1 BCBS Tenn Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

      **j.**     Patient MP2, with a balance due and owing to Plaintiff in the amount of $86,285.93.  This patient had a Ragan-Smith-Associates, Inc. BCBS Tenn plan with the BCBS Tenn Network (the "**MP2 BCBS Tenn Plan**").  As required under the ACA and ERISA, the MP2 BCBS Tenn Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

      **k.**     Patient SR, with a balance due and owing to Plaintiff in the amount of $238,934.03.  This patient had a First South Bancorp HDHP plan with the BCBS Tenn Network (the "**SR BCBS Tenn Plan**").  As required under the ACA and ERISA, the SR BCBS Tenn Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

      **l.**     Patient RR, with a balance due and owing to Plaintiff in the amount of $152,230.08.  BCBS Tenn has not provided information to Plaintiff whether or not patient RR falls under an ERISA plan or not, so in an abundance of caution, Plaintiff lists all claims against BCBS Tenn at this time.

**m.**     Patient RS, with a balance due and owing to Plaintiff in the amount of $112,519.31.  This patient had a Janus ESOP Holdings Inc. PPO plan with the BCBS Tenn Network (the "**RS BCBS Tenn Plan**").  As required under the ACA and ERISA, the RS BCBS Tenn Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

**n.**     Patient JS, with a balance due and owing to Plaintiff in the amount of $361,541.97.  This patient had a McKee Foods Corporation CDHP plan with the BCBS Tenn Network (the "**JS BCBS Tenn Plan**").  As required under the ACA and ERISA, the JS BCBS Tenn Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

**o.**     Patient MS, with a balance due and owing in the amount of $69,661.44.  BCBS Tenn has not provided information to Plaintiff whether or not patient MS falls under an ERISA plan or not, so in an abundance of caution, Plaintiff lists all claims against BCBS Tenn at this time.

**p.**     Patient JT, with a balance due and owing in the amount of $65,779.04.  This patient had a Envision Healthcare Corporation -- Network P PPO plan with the BCBS Tenn Network (the "**JT BCBS Tenn Plan**").  As required under the ACA and ERISA, the JT BCBS Tenn Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

**q.**     Patient ST, with a balance due and owing in the amount of $53,533.24.  This patient had a Pyramid Electric, Inc. PPO plan with the BCBS Tenn Network (the "**ST BCBS Tenn Plan**").  As required under the

ACA and ERISA, the ST BCBS Tenn Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

r.      Patient DY, with a balance due and owing in the amount of $898.08.  This patient had an Anderson County Government — Network P Health Benefit plan with the BCBS Tenn Network (the "**DY BCBS Tenn Plan**").  As required under the ACA and ERISA, the DY BCBS Tenn Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

s.      The MB BCBS Tenn Plan, the ZB BCBS Tenn Plan, the KF BCBS Tenn Plan, the CG BCBS Tenn Plan, the NH BCBS Tenn Plan, the KH BCBS Tenn Plan, the AM BCBS Tenn Plan, the KMc BCBS Tenn Plan, the MP1 BCBS Tenn Plan, the MP2 BCBS Tenn Plan, the SR BCBS Tenn Plan, the RR BCBS Tenn Plan, the RS BCBS Tenn Plan, the JS BCBS Tenn Plan, the MS BCBS Tenn Plan, the JT BCBS Tenn Plan, the ST BCBS Tenn Plan, and the DY BCBS Tenn Plan shall sometimes be referred to collectively as the "**BCBS Tenn Plans**".

**198.**  Plaintiff is informed and believes, and based thereon alleges, that for each of these claims and for each of the involved Patients, BCBS Tenn has failed and refused to pay, process or adjust these claims in an appropriate fashion by, among other acts and omissions:

a.      Delaying the processing, adjustment and/or payment of claims for periods of time greater than 45 days after submission of the claims in violation of 29 C.F.R. § 2560.503-1(f)(2)(iii)(B);

**b.**     Failing and refusing to provide any notice and/or explanation for the denial of benefits, payments or reimbursement of the claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

**c.**     Failing and refusing to provide an adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

**d.**     Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, and by failing and refusing to set forth the specific reasons for such denials, all in violation of 29 U.S.C. § 1133(1);

**e.**     Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, written in a manner calculated to be understood by the participant, in violation of 29 U.S.C. § 1133(1);

**f.**     Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in an appeals process, in violation of 29 U.S.C. § 1133(2);

**g.**     Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in meaningful appeal process which was full and fair, in violation of 29 U.S.C. § 1133(2);

**h.**     Failing and refusing to provide Plaintiff and/or its Patients with information pertaining to their rights to appeal, including not limited to those deadlines for filing appeals and/or the requirements that an appeal be filed, in violation of 29 U.S.C. § 1133(1);

**i.**     Violating the minimum requirements for employee benefit plans pertaining to claims and benefits by participants and beneficiaries, in violation of 29 C.F.R. § 2560.503-1(a), *et seq.*;

**j.**     Failing and refusing to establish and maintain reasonable claims procedures in violation of 29 C.F.R. § 2560.503-1(b);

**k.**     Establishing, maintaining and enforcing claims procedures which unduly inhibit the initiation and processing of claims for benefits, in violation of 29 C.F.R. § 2560.503.1(b)(3);

**l.**     Precluding and prohibiting Plaintiff from acting as an authorized representative of the Patients in pursuing a benefit claim or appeal of an adverse benefit determination, in violation of 29 C.F.R. § 2560.503-1(b)(4);

**m.**     Failing and refusing to design, administer and enforce their processes, procedures and claims administration to ensure that their governing plan documents and provisions have been applied consistently with respect to similarly situated participants, beneficiaries and claimants, in violation of 29 C.F.R. § 2560.503-1(b)(5);

**n.**     Failing and refusing to pay benefits for authorized services rendered by Plaintiff;

**o.**     Failing to offer coverage for mental health and SUD treatment in parity with the medical and surgical benefits afforded by the same Plan, as required by 26 U.S.C. § 9812(3), as well as other mandates set forth at 26 U.S.C. § 9812, *et seq*.; and

**p.**     Failing and refusing to pay Plaintiff for the SUD treatments provided to the Patients in violation of 26 U.S.C. § 9812(3).

**199.**   The failure and refusal of BCBS Tenn to provide coverage, reimbursement, payment and/or benefits for the SUD and/or mental health treatment benefits rendered by Morningside to Plaintiff's patients who were covered by BCBS Tenn and BCBS Tenn's denial of health insurance benefits coverage constitutes a breach of the insurance plans and/or employee benefit Plans between BCBS Tenn and the Patients at issue in this lawsuit.

200.   BCBS Tenn has arbitrarily and capriciously breached the obligations set forth in the ERISA Plans issued by BCBS Tenn and BCBS Tenn has arbitrarily and capriciously breached their obligations under the ERISA Plans to provide Plaintiff and that as a direct and proximate result of the actions by Defendants, Plaintiff has been damaged in an amount equal to the amount of benefits Plaintiff should have received and to which the Patients would have been entitled had BCBS Tenn paid the proper amounts, which Plaintiff estimates to be $1,724,523.68.

201.   As a direct and proximate result of the aforesaid conduct of BCBS Tenn in failing to provide coverage as required, Plaintiff has suffered, and will continue to suffer in the future, damages, plus interest and other economic and consequential damages, for a total amount Plaintiff estimates to be $1,724,523.68, or as otherwise determined at the time of trial.

202.   Plaintiff is entitled to an award of statutory penalties in the amount to be determined at the time of trial against BCBS Tenn.

203.   Plaintiff is entitled to an award of reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1).  As a result of the actions and failings of the BCBS Tenn, Plaintiff has retained the services of legal counsel and has necessarily incurred attorneys' fees and costs in prosecuting this action.  Furthermore, Plaintiff anticipates incurring additional attorneys' fees and costs hereafter pursing this action

## NINTH CLAIM FOR RELIEF

### (Claims for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B)

### Against ComPsych)

204.   Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

205.   This claim is alleged by Plaintiff for relief in connection with claims for treatment rendered to members of an ERISA Plan. This claim seeks to recover

1   benefits, enforce rights and clarify rights to benefits under 29 U.S.C. §

2   1132(a)(1)(B). Plaintiff has standing to pursue these claims as assignee of the

3   Patients' benefits under the ERISA Plans. As the assignee of benefits under the

4   ERISA Plans, Plaintiff is a "beneficiary" entitled to collect benefits under the terms

5   of the ERISA Plans, and is the "claimant" for purposes of ERISA.

6        **206.**   Plaintiff is informed and believes, and based thereon alleges, that

7   ComPsych is the insurer, sponsor, and/or financially responsible payer, serve as a

8   designated plan administrator, and/or services as the named plan administrator's

9   designee.  Plaintiff is further informed and believes, and based thereon alleges, that

10  with respect to each of the ERISA Plans at issue in this case that are self-insured

11  plans, but which do not specifically designate a plan administrator, ComPsych

12  effectively controls the decision whether to honor or deny the a claim under the

13  Plan, exercise authority over the resolution of benefits claims, and/or have

14  responsibility to pay the claims.  ComPsych also plays the role as the *de facto* plan

15  administrator for such ERISA Plans.

16       **207.**   With respect to the ERISA Plans relating to ComPsych, Plaintiff's

17  claims against ComPsych include 6 separate patients of Morningside.  To date,

18  there remains a balance due and owing by ComPsych to Plaintiff in the amount of

19  $384,769.03.

20       **208.**   ComPsych has not provided information to Plaintiff whether or not

21  the 6 patients at issue fall under an ERISA plan or not, so in an abundance of

22  caution, Plaintiff lists all claims against ComPsych at this time.  Plaintiff's

23  individual patient claims relating to ComPsych include the following:

24            **a.**   Patient SC, with a balance due and owing to Plaintiff in the

25      amount of $99,952.00.

26            **b.**   Patient DG, with a balance due and owing to Plaintiff in the

27      amount of $84,438.00.

28

1     **c.**     Patient CB, with a balance due and owing to Plaintiff in the

2     amount of $25,699.64.

3     **d.**     Patient NG, with a balance due and owing to Plaintiff in the

4     amount of $41,817.50.

5     **e.**     Patient ZR, with a balance due and owing to Plaintiff in the

6     amount of $14,294.00.

7     **f.**     Patient BT, with a balance due and owing to Plaintiff in the

8     amount of $118,567.89.

9     **209.**   Although ComPsych provided certain page excerpts from 4 different

10    Summary Plan Descriptions ("**SPD's**"), Plaintiff has no information to identify

11    which of the SPD's relate to the ComPsych Patients.  Therefore, Plaintiff shall only

12    set forth the names of the SPD's as follows:

13    **a.**     DuPont Connection Medical plan (the "**DUPONT**

14    **COMPSYCH Plan**").  As required under the ACA and ERISA, the

15    DUPONT COMPSYCH Plan must provide plan benefits for SUD and/or

16    mental health treatment at no less than the amount required by law of UCR,

17    notwithstanding patient copay and deductible obligations as set forth in the

18    plan documents.

19    **b.**     2015 Edward D. Jones, & Co., L.P., Edward Jones Trust

20    Company and the Jones Financial Companies, L.L.L.P. plan (the "**2015**

21    **EDWARD JONES COMPSYCH Plan**").  As required under the ACA and

22    ERISA, the EDWARD JONES Plan must provide plan benefits for SUD

23    and/or mental health treatment at no less than the amount required by law of

24    UCR, notwithstanding patient copay and deductible obligations as set forth

25    in the plan documents.

26    **c.**     2018 Edward D. Jones, & Co., L.P., Edward Jones Trust

27    Company and the Jones Financial Companies, L.L.L.P. plan (the "**2018**

28    **EDWARD JONES COMPSYCH Plan**").  As required under the ACA and

ERISA, the EDWARD COMPSYCHJONES Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

    **d.**    Chicago Regional Council of Carpenters Welfare Fund plan (the "**CHICAGO COMPSYCH Plan**").  As required under the ACA and ERISA, the CHICAGO COMPSYCH Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

    **e.**    The DUPONT COMPSYCH Plan, the 2015 EDWARD JONES COMPSYCH Plan, the 2018 EDWARD JONES COMPSYCH Plan, and the CHICAGO COMPSYCH Plan, shall sometimes be referred collectively to as "**the COMPSYCH Plans**".

**210.**    Plaintiff is informed and believes, and based thereon alleges, that for each of these claims and for each of the involved Patients, ComPsych has failed and refused to pay, process or adjust these claims in an appropriate fashion by, among other acts and omissions:

    **a.**    Delaying the processing, adjustment and/or payment of claims for periods of time greater than 45 days after submission of the claims in violation of 29 C.F.R. § 2560.503-1(f)(2)(iii)(B);

    **b.**    Failing and refusing to provide any notice and/or explanation for the denial of benefits, payments or reimbursement of the claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

    **c.**    Failing and refusing to provide an adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

**d.**      Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, and by failing and refusing to set forth the specific reasons for such denials, all in violation of 29 U.S.C. § 1133(1);

**e.**      Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, written in a manner calculated to be understood by the participant, in violation of 29 U.S.C. § 1133(1);

**f.**      Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in an appeals process, in violation of 29 U.S.C. § 1133(2);

**g.**      Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in meaningful appeal process which was full and fair, in violation of 29 U.S.C. § 1133(2);

**h.**      Failing and refusing to provide Plaintiff and/or its Patients with information pertaining to their rights to appeal, including not limited to those deadlines for filing appeals and/or the requirements that an appeal be filed, in violation of 29 U.S.C. § 1133(1);

**i.**      Violating the minimum requirements for employee benefit plans pertaining to claims and benefits by participants and beneficiaries, in violation of 29 C.F.R. § 2560.503-1(a), *et seq.*;

**j.**      Failing and refusing to establish and maintain reasonable claims procedures in violation of 29 C.F.R. § 2560.503-1(b);

**k.**      Establishing, maintaining and enforcing claims procedures which unduly inhibit the initiation and processing of claims for benefits, in violation of 29 C.F.R. § 2560.503.1(b)(3);

**l.**      Precluding and prohibiting Plaintiff from acting as an authorized representative of the Patients in pursuing a benefit claim or

appeal of an adverse benefit determination, in violation of 29 C.F.R. § 2560.503-1(b)(4);

**m.**    Failing and refusing to design, administer and enforce their processes, procedures and claims administration to ensure that their governing plan documents and provisions have been applied consistently with respect to similarly situated participants, beneficiaries and claimants, in violation of 29 C.F.R. § 2560.503-1(b)(5);

**n.**    Failing and refusing to pay benefits for authorized services rendered by Plaintiff;

**o.**    Failing to offer coverage for mental health and SUD treatment in parity with the medical and surgical benefits afforded by the same Plan, as required by 26 U.S.C. § 9812(3), as well as other mandates set forth at 26 U.S.C. § 9812, *et seq*.; and

**p.**    Failing and refusing to pay Plaintiff for the SUD treatments provided to the Patients in violation of 26 U.S.C. § 9812(3).

211.    The failure and refusal of ComPsych to provide coverage, reimbursement, payment and/or benefits for the SUD and/or mental health treatment benefits rendered by Morningside to Plaintiff's patients who were covered by ComPsych and ComPsych's denial of health insurance benefits coverage constitutes a breach of the insurance plans and/or employee benefit Plans between ComPsych and the Patients at issue in this lawsuit.

212.    ComPsych has arbitrarily and capriciously breached the obligations set forth in the ERISA Plans issued by ComPsych and ComPsych has arbitrarily and capriciously breached their obligations under the ERISA Plans to provide Plaintiff and that as a direct and proximate result of the actions by Defendants, Plaintiff has been damaged in an amount equal to the amount of benefits Plaintiff should have received and to which the Patients would have been entitled had ComPsych paid the proper amounts, which Plaintiff estimates to be $384,769.03.

213.   As a direct and proximate result of the aforesaid conduct of ComPsych in failing to provide coverage as required, Plaintiff has suffered, and will continue to suffer in the future, damages, plus interest and other economic and consequential damages, for a total amount Plaintiff estimates to be $384,769.03, or as otherwise determined at the time of trial.

214.   Plaintiff is entitled to an award of statutory penalties in the amount to be determined at the time of trial against ComPsych.

215.   Plaintiff is entitled to an award of reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1).  As a result of the actions and failings of the ComPsych, Plaintiff has retained the services of legal counsel and has necessarily incurred attorneys' fees and costs in prosecuting this action.  Furthermore, Plaintiff anticipates incurring additional attorneys' fees and costs hereafter pursing this action.

**TENTH CLAIM FOR RELIEF**

**(Claims for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B)**

**Against Meritain)**

216.   Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

217.   This claim is alleged by Plaintiff for relief in connection with claims for treatment rendered to members of an ERISA Plan. This claim seeks to recover benefits, enforce rights and clarify rights to benefits under 29 U.S.C. § 1132(a)(1)(B). Plaintiff has standing to pursue these claims as assignee of the Patients' benefits under the ERISA Plans. As the assignee of benefits under the ERISA Plans, Plaintiff is a "beneficiary" entitled to collect benefits under the terms of the ERISA Plans, and is the "claimant" for purposes of ERISA.

218.   Plaintiff is informed and believes, and based thereon alleges, that Meritain is the insurer, sponsor, and/or financially responsible payer, serve as a designated plan administrator, and/or services as the named plan administrator's

designee.  Plaintiff is further informed and believes, and based thereon alleges, that with respect to each of the ERISA Plans at issue in this case that are self-insured plans, but which do not specifically designate a plan administrator, Meritain effectively controls the decision whether to honor or deny the a claim under the Plan, exercise authority over the resolution of benefits claims, and/or have responsibility to pay the claims.  Meritain also plays the role as the *de facto* plan administrator for such ERISA Plans.

219.   With respect to the ERISA Plans relating to Meritain, Plaintiff's claims against Meritain include 7 separate patients of Morningside.  To date, there remains a balance due and owing by Meritain to Plaintiff in the amount of $530,622.86.   As set forth below, Meritain only produced three plan documents, although these plans did not have information to connect the ERISA Plans with the Patients.

220.   The individual patient claims relating to Meritain include the following:

a.      Patient HA, with a balance due and owing to Plaintiff in the amount of $110,259.81.  Meritain has not provided information to Plaintiff whether or not patient HA falls under an ERISA plan or not, so in an abundance of caution, Plaintiff lists all claims against Meritain at this time.

b.      Patient GB, with a balance due and owing to Plaintiff in the amount of $35,915.09.  Meritain has not provided information to Plaintiff whether or not patient GB falls under an ERISA plan or not, so in an abundance of caution, Plaintiff lists all claims against Meritain at this time.

c.      Patient NH, with a balance due and owing to Plaintiff in the amount of $8,358.79.  Meritain has not provided information to Plaintiff whether or not patient NH falls under an ERISA plan or not, so in an abundance of caution, Plaintiff lists all claims against Meritain at this time.

**d.**     Patient AT, with a balance due and owing to Plaintiff in the amount of $265,839.78.  Meritain has not provided information to Plaintiff whether or not patient AT falls under an ERISA plan or not, so in an abundance of caution, Plaintiff lists all claims against Meritain at this time.

**e.**     Patient KE, with a balance due and owing to Plaintiff in the amount of $43,103.11.  Meritain has not provided information to Plaintiff whether or not patient NH falls under an ERISA plan or not, so in an abundance of caution, Plaintiff lists all claims against Meritain at this time.

**f.**     Patient AL, with a balance due and owing to Plaintiff in the amount of $24,234.53.  Meritain has not provided information to Plaintiff whether or not patient AL falls under an ERISA plan or not, so in an abundance of caution, Plaintiff lists all claims against Meritain at this time.

**g.**     Patient AM, with a balance due and owing to Plaintiff in the amount of $42,911.75.  Meritain has not provided information to Plaintiff whether or not patient AM falls under an ERISA plan or not, so in an abundance of caution, Plaintiff lists all claims against Meritain at this time.

**221.**   Although Meritain provided three ERISA Plan documents (one plan was produced as twice), Plaintiff has no information to identify which of the ERISA Plans relate to the Meritain Patients.  Therefore, Plaintiff only sets forth the names of the three ERISA Plans as follows:

**a.**     Local 309 Electrical Health and Welfare Fund plan (the "**LOCAL 309 Meritain Plan**").  As required under the ACA and ERISA, the LOCAL 309 Meritain Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

**b.**     iHeart Media, Inc., Group Benefits HDPB plan (the "**IHEART MEDIA Meritain Plan**").  As required under the ACA and ERISA, the

IHEART MEDIA Meritain Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

    **c.**    Borrego Community Health Foundation POS 125 Medical Plan (the "**BORREGO Meritain Plan**").  As required under the ACA and ERISA, the BORREGO Meritain Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

    **d.**    The LOCAL 309 Meritain Plan, the IHEART MEDIA Meritain Plan, and the BORREGO Meritain Plan, shall sometimes be referred collectively to as "**the Meritain Plans**".

    **222.**    Plaintiff is informed and believes, and based thereon alleges, that for each of these claims and for each of the involved Patients, Meritain has failed and refused to pay, process or adjust these claims in an appropriate fashion by, among other acts and omissions:

    **a.**    Delaying the processing, adjustment and/or payment of claims for periods of time greater than 45 days after submission of the claims in violation of 29 C.F.R. § 2560.503-1(f)(2)(iii)(B);

    **b.**    Failing and refusing to provide any notice and/or explanation for the denial of benefits, payments or reimbursement of the claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

    **c.**    Failing and refusing to provide an adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

    **d.**    Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of

the Patients, and by failing and refusing to set forth the specific reasons for such denials, all in violation of 29 U.S.C. § 1133(1);

     **e.**    Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, written in a manner calculated to be understood by the participant, in violation of 29 U.S.C. § 1133(1);

     **f.**    Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in an appeals process, in violation of 29 U.S.C. § 1133(2);

     **g.**    Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in meaningful appeal process which was full and fair, in violation of 29 U.S.C. § 1133(2);

     **h.**    Failing and refusing to provide Plaintiff and/or its Patients with information pertaining to their rights to appeal, including not limited to those deadlines for filing appeals and/or the requirements that an appeal be filed, in violation of 29 U.S.C. § 1133(1);

     **i.**    Violating the minimum requirements for employee benefit plans pertaining to claims and benefits by participants and beneficiaries, in violation of 29 C.F.R. § 2560.503-1(a), *et seq.*;

     **j.**    Failing and refusing to establish and maintain reasonable claims procedures in violation of 29 C.F.R. § 2560.503-1(b);

     **k.**    Establishing, maintaining and enforcing claims procedures which unduly inhibit the initiation and processing of claims for benefits, in violation of 29 C.F.R. § 2560.503.1(b)(3);

     **l.**    Precluding and prohibiting Plaintiff from acting as an authorized representative of the Patients in pursuing a benefit claim or appeal of an adverse benefit determination, in violation of 29 C.F.R. § 2560.503-1(b)(4);

**m.** Failing and refusing to design, administer and enforce their processes, procedures and claims administration to ensure that their governing plan documents and provisions have been applied consistently with respect to similarly situated participants, beneficiaries and claimants, in violation of 29 C.F.R. § 2560.503-1(b)(5);

**n.** Failing and refusing to pay benefits for authorized services rendered by Plaintiff;

**o.** Failing to offer coverage for mental health and SUD treatment in parity with the medical and surgical benefits afforded by the same Plan, as required by 26 U.S.C. § 9812(3), as well as other mandates set forth at 26 U.S.C. § 9812, *et seq*.; and

**p.** Failing and refusing to pay Plaintiff for the SUD treatments provided to the Patients in violation of 26 U.S.C. § 9812(3).

**223.** The failure and refusal of Meritain to provide coverage, reimbursement, payment and/or benefits for the SUD and/or mental health treatment benefits rendered by Morningside to Plaintiff's patients who were covered by Meritain and Meritain's denial of health insurance benefits coverage constitutes a breach of the insurance plans and/or employee benefit Plans between Meritain and the Patients at issue in this lawsuit.

**224.** Meritain has arbitrarily and capriciously breached the obligations set forth in the ERISA Plans issued by Meritain, and Meritain has arbitrarily and capriciously breached their obligations under the ERISA Plans to provide Plaintiff and that as a direct and proximate result of the actions by Defendants, Plaintiff has been damaged in an amount equal to the amount of benefits Plaintiff should have received and to which the Patients would have been entitled had Meritain paid the proper amounts, which Plaintiff estimates to be $530,622.86.

**225.** As a direct and proximate result of the aforesaid conduct of Meritain in failing to provide coverage as required, Plaintiff has suffered, and will continue

to suffer in the future, damages, plus interest and other economic and
consequential damages, for a total amount Plaintiff estimates to be $530,622.86, or
as otherwise determined at the time of trial.

226.   Plaintiff is entitled to an award of statutory penalties in the amount to
be determined at the time of trial against Meritain.

227.   Plaintiff is entitled to an award of reasonable attorneys' fees pursuant
to 29 U.S.C. § 1132(g)(1).  As a result of the actions and failings of the Meritain,
Plaintiff has retained the services of legal counsel and has necessarily incurred
attorneys' fees and costs in prosecuting this action.  Furthermore, Plaintiff
anticipates incurring additional attorneys' fees and costs hereafter pursing this
action

## ELEVENTH CLAIM FOR RELIEF

### (Claims for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B)
### Against MHNet)

228.   Plaintiff realleges and incorporates by reference each and every
paragraph of this Complaint as though set forth herein.

229.   This claim is alleged by Plaintiff for relief in connection with claims
for treatment rendered to members of an ERISA Plan. This claim seeks to recover
benefits, enforce rights and clarify rights to benefits under 29 U.S.C. §
1132(a)(1)(B). Plaintiff has standing to pursue these claims as assignee of the
Patients' benefits under the ERISA Plans. As the assignee of benefits under the
ERISA Plans, Plaintiff is a "beneficiary" entitled to collect benefits under the terms
of the ERISA Plans, and is the "claimant" for purposes of ERISA.

230.   Plaintiff is informed and believes, and based thereon alleges, that
MHNet is the insurer, sponsor, and/or financially responsible payer, serve as a
designated plan administrator, and/or services as the named plan administrator's
designee.  Plaintiff is further informed and believes, and based thereon alleges, that
with respect to each of the ERISA Plans at issue in this case that are self-insured

plans, but which do not specifically designate a plan administrator, MHNet effectively controls the decision whether to honor or deny the a claim under the ERISA Plan, exercise authority over the resolution of benefits claims, and/or have responsibility to pay the claims.  MHNet also plays the role as the *de facto* plan administrator for such ERISA Plans.

**231.**   With respect to the ERISA Plans relating to Defendant MHNet, Plaintiff's claims against MHNet include 4 separate patients of Morningside.  To date, there remains a balance due and owing by MHNet to Plaintiff in the amount of $78,015.96.

**232.**   MHNet has not provided information to Plaintiff whether or not the MHNet patients at issue fall under an ERISA plan or not, so in an abundance of caution, Plaintiff lists all claims against MHNet at this time.  Plaintiff's individual patient claims relating to MHNet include the following:

**a.**   Patient TB, with a balance due and owing to Plaintiff in the amount of $1,707.00.

**b.**   Patient CH, with a balance due and owing to Plaintiff in the amount of $53,833.66.

**c.**   Patient DR, with a balance due and owing to Plaintiff in the amount of $11,229.60.

**233.**   Plaintiff is informed and believes, and based thereon alleges, that for each of these claims and for each of the involved Patients, MHNet has failed and refused to pay, process or adjust these claims in an appropriate fashion by, among other acts and omissions:

**a.**   Delaying the processing, adjustment and/or payment of claims for periods of time greater than 45 days after submission of the claims in violation of 29 C.F.R. § 2560.503-1(f)(2)(iii)(B);

**b.** Failing and refusing to provide any notice and/or explanation for the denial of benefits, payments or reimbursement of the claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

**c.** Failing and refusing to provide an adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

**d.** Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, and by failing and refusing to set forth the specific reasons for such denials, all in violation of 29 U.S.C. § 1133(1);

**e.** Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, written in a manner calculated to be understood by the participant, in violation of 29 U.S.C. § 1133(1);

**f.** Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in an appeals process, in violation of 29 U.S.C. § 1133(2);

**g.** Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in meaningful appeal process which was full and fair, in violation of 29 U.S.C. § 1133(2);

**h.** Failing and refusing to provide Plaintiff and/or its Patients with information pertaining to their rights to appeal, including not limited to those deadlines for filing appeals and/or the requirements that an appeal be filed, in violation of 29 U.S.C. § 1133(1);

**i.** Violating the minimum requirements for employee benefit plans pertaining to claims and benefits by participants and beneficiaries, in violation of 29 C.F.R. § 2560.503-1(a), *et seq.*;

**j.** Failing and refusing to establish and maintain reasonable claims procedures in violation of 29 C.F.R. § 2560.503-1(b);

**k.** Establishing, maintaining and enforcing claims procedures which unduly inhibit the initiation and processing of claims for benefits, in violation of 29 C.F.R. § 2560.503.1(b)(3);

**l.** Precluding and prohibiting Plaintiff from acting as an authorized representative of the Patients in pursuing a benefit claim or appeal of an adverse benefit determination, in violation of 29 C.F.R. § 2560.503-1(b)(4);

**m.** Failing and refusing to design, administer and enforce their processes, procedures and claims administration to ensure that their governing plan documents and provisions have been applied consistently with respect to similarly situated participants, beneficiaries and claimants, in violation of 29 C.F.R. § 2560.503-1(b)(5);

**n.** Failing and refusing to pay benefits for authorized services rendered by Plaintiff;

**o.** Failing to offer coverage for mental health and SUD treatment in parity with the medical and surgical benefits afforded by the same Plan, as required by 26 U.S.C. § 9812(3), as well as other mandates set forth at 26 U.S.C. § 9812, *et seq*.; and

**p.** Failing and refusing to pay Plaintiff for the SUD treatments provided to the Patients in violation of 26 U.S.C. § 9812(3).

**234.** The failure and refusal of MHNet to provide coverage, reimbursement, payment and/or benefits for the SUD and/or mental health treatment benefits rendered by Morningside to Plaintiff's patients who were covered by MHNet and MHNet's denial of health insurance benefits coverage constitutes a breach of the insurance plans and/or employee benefit Plans between MHNet and the Patients at issue in this lawsuit.

235.   MHNet has arbitrarily and capriciously breached the obligations set forth in the ERISA Plans issued by MHNet and MHNet has arbitrarily and capriciously breached their obligations under the ERISA Plans to provide Plaintiff and that as a direct and proximate result of the actions by MHNet, Plaintiff has been damaged in an amount equal to the amount of benefits Plaintiff should have received and to which the Patients would have been entitled had MHNet paid the proper amounts, which Plaintiff estimates to be $78,015.96

236.   As a direct and proximate result of the aforesaid conduct of MHNet in failing to provide coverage as required, Plaintiff has suffered, and will continue to suffer in the future, damages, plus interest and other economic and consequential damages, for a total amount Plaintiff estimates to be $78,015.96, or as otherwise determined at the time of trial.

237.   Plaintiff is entitled to an award of statutory penalties in the amount to be determined at the time of trial against MHNet.

238.   Plaintiff is entitled to an award of reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1).  As a result of the actions and failings of the MHNet, Plaintiff has retained the services of legal counsel and has necessarily incurred attorneys' fees and costs in prosecuting this action.  Furthermore, Plaintiff anticipates incurring additional attorneys' fees and costs hereafter pursing this action.

## TWELFTH CLAIM FOR RELIEF

### (Claims for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B)

### Against the Providence)

239.   Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

240.   This claim is alleged by Plaintiff for relief in connection with claims for treatment rendered to members of an ERISA Plan. This claim seeks to recover benefits, enforce rights and clarify rights to benefits under 29 U.S.C. §

1132(a)(1)(B). Plaintiff has standing to pursue these claims as assignee of the Patients' benefits under the ERISA Plans. As the assignee of benefits under the ERISA Plans, Plaintiff is a "beneficiary" entitled to collect benefits under the terms of the ERISA Plans, and is the "claimant" for purposes of ERISA.

241.   Plaintiff is informed and believes, and based thereon alleges, that Providence is the insurer, sponsor, and/or financially responsible payer, serve as a designated plan administrator, and/or services as the named plan administrator's designee.  Plaintiff is further informed and believes, and based thereon alleges, that with respect to each of the ERISA Plans at issue in this case that are self-insured plans, but which do not specifically designate a plan administrator, Providence effectively controls the decision whether to honor or deny the a claim under the Plan, exercise authority over the resolution of benefits claims, and/or have responsibility to pay the claims.  Providence also plays the role as the *de facto* plan administrator for such ERISA Plans.

242.   On May 4, 2020, the District Court held:  "[T]he Court has no difficulty finding that [Providence is] subject to personal jurisdiction in California. [Providence] contracted to sell insurance policies to California patients, who then sought treatment and reimbursement at a California facility, and (according to Plaintiff's allegations) [Providence] authorized that California facility to provide treatment.  Through this course of conduct, the out-of-state Defendants 'reach[ed] out beyond one state and creat[d] continuing relationships and obligations with citizens of another state,' rendering them 'subject to regulation and sanctions' in California.  *See Burger King,* 471 U.S. at 473 (citations omitted)."  [ECF No. 383, p. 14]

243.   With respect to the ERISA Plans relating to Providence, Plaintiff's claims against Providence include 5 separate patients of Morningside.  To date, there remains a balance due and owing by Providence to Plaintiff in the amount of $310,964.45.

244.    Providence has not provided information to Plaintiff whether or not the 5 patients at issue fall under an ERISA plan or not, so in an abundance of caution, Plaintiff lists all claims against Providence at this time.  Plaintiff's individual patient claims relating to Providence include the following:

　　　　a.    Patient WG, with a balance due and owing to Plaintiff in the amount of $115,728.73.

　　　　b.    Patient TG, with a balance due and owing to Plaintiff in the amount of $55,185.00.

　　　　c.    Patient AM, with a balance due and owing to Plaintiff in the amount of $111,038.87.

　　　　d.    Patient BO, with a balance due and owing to Plaintiff in the amount of $7,210.00.

　　　　e.    Patient ST, with a balance due and owing to Plaintiff in the amount $21,805.85.

245.    Although Providence provided page excerpts from three different health benefit plans with respect to three Providence Patients, Plaintiff does not have the full plans or information about the remaining two Providence Patients. Therefore, Plaintiff simply sets forth the names of the plans from the excerpts provided by Providence as follows:

　　　　a.    Patients WG and BO had the 2017 Providence Health & Services Health and Welfare Benefit Plan (the "**Providence H&S Plan**"). As required under the ACA and ERISA, the Providence H&S Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

　　　　b.    Patient AM had the Oregon Public Employees Benefit Board plan (the "**Providence PEBB Plan**").  As required under the ACA and ERISA, the Providence PEBB Plan must provide plan benefits for SUD

and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

      **c.**    The Providence H&S Plan and the Providence PEBB Plan shall sometimes be referred to collectively as the "**Providence Plans**".

**246.**   Plaintiff is informed and believes, and based thereon alleges, that for each of these claims and for each of the involved Patients, Providence has failed and refused to pay, process or adjust these claims in an appropriate fashion by, among other acts and omissions:

      **a.**    Delaying the processing, adjustment and/or payment of claims for periods of time greater than 45 days after submission of the claims in violation of 29 C.F.R. § 2560.503-1(f)(2)(iii)(B);

      **b.**    Failing and refusing to provide any notice and/or explanation for the denial of benefits, payments or reimbursement of the claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

      **c.**    Failing and refusing to provide an adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

      **d.**    Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, and by failing and refusing to set forth the specific reasons for such denials, all in violation of 29 U.S.C. § 1133(1);

      **e.**    Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, written in a manner calculated to be understood by the participant, in violation of 29 U.S.C. § 1133(1);

1        **f.**      Failing to afford Plaintiff and/or its Patients with a
2  reasonable opportunity to engage in an appeals process, in violation of
3  29 U.S.C. § 1133(2);

4        **g.**      Failing to afford Plaintiff and/or its Patients with a
5  reasonable opportunity to engage in meaningful appeal process which
6  was full and fair, in violation of 29 U.S.C. § 1133(2);

7        **h.**      Failing and refusing to provide Plaintiff and/or its Patients
8  with information pertaining to their rights to appeal, including not
9  limited to those deadlines for filing appeals and/or the requirements
10 that an appeal be filed, in violation of 29 U.S.C. § 1133(1);

11       **i.**      Violating the minimum requirements for employee benefit
12 plans pertaining to claims and benefits by participants and
13 beneficiaries, in violation of 29 C.F.R. § 2560.503-1(a), *et seq.*;

14       **j.**      Failing and refusing to establish and maintain reasonable
15 claims procedures in violation of 29 C.F.R. § 2560.503-1(b);

16       **k.**      Establishing, maintaining and enforcing claims
17 procedures which unduly inhibit the initiation and processing of claims
18 for benefits, in violation of 29 C.F.R. § 2560.503.1(b)(3);

19       **l.**      Precluding and prohibiting Plaintiff from acting as an
20 authorized representative of the Patients in pursuing a benefit claim or
21 appeal of an adverse benefit determination, in violation of 29 C.F.R. §
22 2560.503-1(b)(4);

23       **m.**      Failing and refusing to design, administer and enforce
24 their processes, procedures and claims administration to ensure that
25 their governing plan documents and provisions have been applied
26 consistently with respect to similarly situated participants, beneficiaries
27 and claimants, in violation of 29 C.F.R. § 2560.503-1(b)(5);

28

      **n.**     Failing and refusing to pay benefits for authorized services rendered by Plaintiff;

      **o.**     Failing to offer coverage for mental health and SUD treatment in parity with the medical and surgical benefits afforded by the same Plan, as required by 26 U.S.C. § 9812(3), as well as other mandates set forth at 26 U.S.C. § 9812, *et seq*.; and

      **p.**     Failing and refusing to pay Plaintiff for the SUD treatments provided to the Patients in violation of 26 U.S.C. § 9812(3).

**247.**   The failure and refusal of Providence to provide coverage, reimbursement, payment and/or benefits for the SUD and/or mental health treatment benefits rendered by Morningside to Plaintiff's patients who were covered by Providence and Providence's denial of health insurance benefits coverage constitutes a breach of the insurance plans and/or employee benefit Plans between Providence and the Patients at issue in this lawsuit.

**248.**   Providence has arbitrarily and capriciously breached the obligations set forth in the ERISA Plans issued by Providence and Providence has arbitrarily and capriciously breached their obligations under the ERISA Plans to provide Plaintiff and that as a direct and proximate result of the actions by Providence, Plaintiff has been damaged in an amount equal to the amount of benefits Plaintiff should have received and to which the Patients would have been entitled had Providence paid the proper amounts, which Plaintiff estimates to be $310,964.45.

**249.**   As a direct and proximate result of the aforesaid conduct of Providence in failing to provide coverage as required, Plaintiff has suffered, and will continue to suffer in the future, damages, plus interest and other economic and consequential damages, for a total amount Plaintiff estimates to be $310,964.45, or as otherwise determined at the time of trial.

**250.**   Plaintiff is entitled to an award of statutory penalties in the amount to be determined at the time of trial against Providence.

251.   Plaintiff is entitled to an award of reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1).  As a result of the actions and failings of the Providence, Plaintiff has retained the services of legal counsel and has necessarily incurred attorneys' fees and costs in prosecuting this action.  Furthermore, Plaintiff anticipates incurring additional attorneys' fees and costs hereafter pursing this action.

## THIRTEENTH CLAIM FOR RELIEF

### (Claims for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B)
### Against UMR)

252.   Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

253.   This claim is alleged by Plaintiff for relief in connection with claims for treatment rendered to members of an ERISA Plan. This claim seeks to recover benefits, enforce rights and clarify rights to benefits under 29 U.S.C. § 1132(a)(1)(B). Plaintiff has standing to pursue these claims as assignee of the Patients' benefits under the ERISA Plans. As the assignee of benefits under the ERISA Plans, Plaintiff is a "beneficiary" entitled to collect benefits under the terms of the ERISA Plans, and is the "claimant" for purposes of ERISA.

254.   Plaintiff is informed and believes, and based thereon alleges, that UMR is the insurer, sponsor, and/or financially responsible payer, serve as a designated plan administrator, and/or services as the named plan administrator's designee.  Plaintiff is further informed and believes, and based thereon alleges, that with respect to each of the ERISA Plans at issue in this case that are self-insured plans, but which do not specifically designate a plan administrator, UMR effectively controls the decision whether to honor or deny the a claim under the Plan, exercise authority over the resolution of benefits claims, and/or have responsibility to pay the claims.  UMR also plays the role as the *de facto* plan administrator for such ERISA Plans.

255.   With respect to the ERISA Plans relating to UMR, Plaintiff's claims against UMR Defendants include 11 separate patients of Morningside.  To date, there remains a balance due and owing by UMR to Plaintiff in the amount of $1,253,898.13.

256.   The individual patient claims relating to UMR Defendants include the following:

a.   Patient CS, with a balance due and owing to Plaintiff in the amount of $17,026.20.  This patient had a UMR plan with Community Health Care, Inc. (the "**CS UMR Plan**").  As required under the ACA and ERISA, the CS UMR Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

b.   Patient CG, with a balance due and owing to Plaintiff in the amount of $201,650.25.  This patient had a UMR plan with Abbott Laboratories (the "**CG UMR Plan**").  As required under the ACA and ERISA, the CG UMR Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

c.   Patient IL, with a balance due and owing to Plaintiff in the amount of $170,510.00.  This patient had a UMR plan with Trivergent Health Alliance MSO, LLC Hagerstown, MD (the "**IL UMR Plan**"). As required under the ACA and ERISA, the IL UMR Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

1          **d.**     Patient CDG, with a balance due and owing to Plaintiff in the

2   amount of $90,003.69.  This patient had a UMR plan with University of

3   North Carolina Health Care System Chapel Hill NC (the "**CDG UMR**

4   **Plan**").  As required under the ACA and ERISA, the CDG UMR Plan must

5   provide plan benefits for SUD and/or mental health treatment at no less than

6   the amount required by law of UCR, notwithstanding patient copay and

7   deductible obligations as set forth in the plan documents.

8          **e.**     Patient LN, with a balance due and owing to Plaintiff in the

9   amount of $3,850.00.  This patient had a UMR plan with Bi-Mart

10  Corporation (the "**LN UMR Plan**").  As required under the ACA and

11  ERISA, the LN UMR Plan must provide plan benefits for SUD and/or

12  mental health treatment at no less than the amount required by law of UCR,

13  notwithstanding patient copay and deductible obligations as set forth in the

14  plan documents.

15         **f.**     Patient EA, with a balance due and owing to Plaintiff in the

16  amount of $10,930.00.  This patient had a UMR plan with Vivant Solar, Inc.

17  (the "**EA UMR Plan**"). As required under the ACA and ERISA, the EA

18  UMR Plan must provide plan benefits for SUD and/or mental health

19  treatment at no less than the amount required by law of UCR,

20  notwithstanding patient copay and deductible obligations as set forth in the

21  plan documents.

22         **g.**     Patient JD, with a balance due and owing to Plaintiff in the

23  amount of $24,519.83.  This patient had a UMR plan with Caesars

24  Enterprise Services, LLC Las Vegas NV (the "**JD UMR Plan**").  As

25  required under the ACA and ERISA, the JD UMR Plan must provide plan

26  benefits for SUD and/or mental health treatment at no less than the amount

27  required by law of UCR, notwithstanding patient copay and deductible

28  obligations as set forth in the plan documents.

**h.**     Patient JS, with a balance due and owing to Plaintiff in the amount of $8,513.10.  This patient had a UMR plan with A Place For Mom, Inc. (the "**JS UMR Plan**").  As required under the ACA and ERISA, the JS UMR Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

**i.**     Patient BT, with a balance due and owing to Plaintiff in the amount of $135,942.58.  This patient had a UMR plan with Merchant Services, Inc., d/b/a EVO Merchant Services (the "**BT UMR Plan**").  As required under the ACA and ERISA, the BT UMR Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

**j.**     Patient CR, with a balance due and owing to Plaintiff in the amount of $243,195.40.  This patient had a UMR plan with TRH Health Insurance Company Home Office (the "**CR UMR Plan**").  As required under the ACA and ERISA, the CR UMR Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

**k.**     Patient CM, with a balance due and owing to Plaintiff in the amount of $347,757.08.  This patient had a UMR plan with the County of Sheboygan (the "**CM UMR Plan**").  As required under the ACA and ERISA, the CM UMR Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

**l.**     The CS UMR Plan, the CG UMR Plan, the IL Plan, the CDG
UMR Plan, the LN UMR Plan, the EA UMR Plan, the JD Plan, the JS UMR
Plan, the BT UMR Plan, the CR UMR Plan, and the CM UMR Plan shall
sometimes be referred to collectively as the "**UMR Plans**".

257.   Plaintiff is informed and believes, and based thereon alleges, that for
each of these claims and for each of the involved Patients, UMR has failed and
refused to pay, process or adjust these claims in an appropriate fashion by, among
other acts and omissions:

**a.**     Delaying the processing, adjustment and/or payment of
claims for periods of time greater than 45 days after submission of the
claims in violation of 29 C.F.R. § 2560.503-1(f)(2)(iii)(B);

**b.**     Failing and refusing to provide any notice and/or
explanation for the denial of benefits, payments or reimbursement of
the claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

**c.**     Failing and refusing to provide an adequate notice and/or
explanation for the denial of benefits, payments or reimbursement of
claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

**d.**     Failing and refusing to provide an explanation for the
denial of benefits, payments or reimbursements of claims of each of
the Patients, and by failing and refusing to set forth the specific reasons
for such denials, all in violation of 29 U.S.C. § 1133(1);

**e.**     Failing and refusing to provide an explanation for the
denial of benefits, payments or reimbursements of claims of each of
the Patients, written in a manner calculated to be understood by the
participant, in violation of 29 U.S.C. § 1133(1);

**f.**     Failing to afford Plaintiff and/or its Patients with a
reasonable opportunity to engage in an appeals process, in violation of
29 U.S.C. § 1133(2);

**g.**     Failing to afford Plaintiff and/or its Patients with a
reasonable opportunity to engage in meaningful appeal process which
was full and fair, in violation of 29 U.S.C. § 1133(2);

**h.**     Failing and refusing to provide Plaintiff and/or its Patients
with information pertaining to their rights to appeal, including not
limited to those deadlines for filing appeals and/or the requirements
that an appeal be filed, in violation of 29 U.S.C. § 1133(1);

**i.**     Violating the minimum requirements for employee benefit
plans pertaining to claims and benefits by participants and
beneficiaries, in violation of 29 C.F.R. § 2560.503-1(a), *et seq.*;

**j.**     Failing and refusing to establish and maintain reasonable
claims procedures in violation of 29 C.F.R. § 2560.503-1(b);

**k.**     Establishing, maintaining and enforcing claims
procedures which unduly inhibit the initiation and processing of claims
for benefits, in violation of 29 C.F.R. § 2560.503.1(b)(3);

**l.**     Precluding and prohibiting Plaintiff from acting as an
authorized representative of the Patients in pursuing a benefit claim or
appeal of an adverse benefit determination, in violation of 29 C.F.R. §
2560.503-1(b)(4);

**m.**     Failing and refusing to design, administer and enforce
their processes, procedures and claims administration to ensure that
their governing plan documents and provisions have been applied
consistently with respect to similarly situated participants, beneficiaries
and claimants, in violation of 29 C.F.R. § 2560.503-1(b)(5);

**n.**     Failing and refusing to pay benefits for authorized
services rendered by Plaintiff;

**o.**     Failing to offer coverage for mental health and SUD
treatment in parity with the medical and surgical benefits afforded by

the same Plan, as required by 26 U.S.C. § 9812(3), as well as other mandates set forth at 26 U.S.C. § 9812, *et seq*.; and

      **p.**    Failing and refusing to pay Plaintiff for the SUD treatments provided to the Patients in violation of 26 U.S.C. § 9812(3).

**258.**   The failure and refusal of UMR to provide coverage, reimbursement, payment and/or benefits for the SUD and/or mental health treatment benefits rendered by Morningside to Plaintiff's patients who were covered by UMR and UMR's denial of health insurance benefits coverage constitutes a breach of the insurance plans and/or employee benefit Plans between UMR and the Patients at issue in this lawsuit.

**259.**   UMR has arbitrarily and capriciously breached the obligations set forth in the ERISA Plans issued by UMR and UMR has arbitrarily and capriciously breached its obligations under the ERISA Plans to provide Plaintiff and that as a direct and proximate result of the actions by UMR, Plaintiff has been damaged in an amount equal to the amount of benefits Plaintiff should have received and to which the Patients would have been entitled had UMR paid the proper amounts, which Plaintiff estimates to be $1,253,898.13.

**260.**   As a direct and proximate result of the aforesaid conduct of UMR in failing to provide coverage as required, Plaintiff has suffered, and will continue to suffer in the future, damages, plus interest and other economic and consequential damages, for a total amount Plaintiff estimates to be $1,253,898.13, or as otherwise determined at the time of trial.

**261.**   Plaintiff is entitled to an award of statutory penalties in the amount to be determined at the time of trial against UMR.

**262.**   Plaintiff is entitled to an award of reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1).  As a result of the actions and failings of the UMR, Plaintiff has retained the services of legal counsel and has necessarily incurred attorneys' fees and costs in prosecuting this action.  Furthermore, Plaintiff

anticipates incurring additional attorneys' fees and costs hereafter pursing this action.

## **FOURTEENTH CLAIM FOR RELIEF**

### **(Claims for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B)**
### **Against Sierra)**

263.    Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

264.    This claim is alleged by Plaintiff for relief in connection with claims for treatment rendered to members of an ERISA Plan. This claim seeks to recover benefits, enforce rights and clarify rights to benefits under 29 U.S.C. § 1132(a)(1)(B). Plaintiff has standing to pursue these claims as assignee of the Patients' benefits under the ERISA Plans. As the assignee of benefits under the ERISA Plans, Plaintiff is a "beneficiary" entitled to collect benefits under the terms of the ERISA Plans, and is the "claimant" for purposes of ERISA.

265.    Plaintiff is informed and believes, and based thereon alleges, that Sierra is the insurer, sponsor, and/or financially responsible payer, serve as a designated plan administrator, and/or services as the named plan administrator's designee.  Plaintiff is further informed and believes, and based thereon alleges, that with respect to each of the ERISA Plans at issue in this case that are self-insured plans, but which do not specifically designate a plan administrator, Sierra effectively controls the decision whether to honor or deny the a claim under the Plan, exercise authority over the resolution of benefits claims, and/or have responsibility to pay the claims.  Sierra also plays the role as the *de facto* plan administrator for such ERISA Plans.

266.    With respect to the ERISA Plans relating to Sierra, Plaintiff's claims against Sierra include 1 patient of Morningside.  To date, there remains a balance due and owing by Sierra to Plaintiff in the amount of $72,693.27.

267.   The individual patient claims relating to Sierra include the following: Patient PM, with a balance due and owing to Plaintiff in the amount of $72,693.27. This patient had a Precision Plumbing Inc. plan (the "**PM Sierra Plan**" or the "**Sierra Plan**").  As required under the ACA and ERISA, the PM SIERRA Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

268.   Plaintiff is informed and believes, and based thereon alleges, that for each of these claims and for each of the involved Patients, Sierra has failed and refused to pay, process or adjust these claims in an appropriate fashion by, among other acts and omissions:

a.     Delaying the processing, adjustment and/or payment of claims for periods of time greater than 45 days after submission of the claims in violation of 29 C.F.R. § 2560.503-1(f)(2)(iii)(B);

b.     Failing and refusing to provide any notice and/or explanation for the denial of benefits, payments or reimbursement of the claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

c.     Failing and refusing to provide an adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

d.     Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, and by failing and refusing to set forth the specific reasons for such denials, all in violation of 29 U.S.C. § 1133(1);

e.     Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, written in a manner calculated to be understood by the participant, in violation of 29 U.S.C. § 1133(1);

**f.**     Failing to afford Plaintiff and/or its Patients with a
reasonable opportunity to engage in an appeals process, in violation of
29 U.S.C. § 1133(2);

**g.**     Failing to afford Plaintiff and/or its Patients with a
reasonable opportunity to engage in meaningful appeal process which
was full and fair, in violation of 29 U.S.C. § 1133(2);

**h.**     Failing and refusing to provide Plaintiff and/or its Patients
with information pertaining to their rights to appeal, including not
limited to those deadlines for filing appeals and/or the requirements
that an appeal be filed, in violation of 29 U.S.C. § 1133(1);

**i.**     Violating the minimum requirements for employee benefit
plans pertaining to claims and benefits by participants and
beneficiaries, in violation of 29 C.F.R. § 2560.503-1(a), *et seq.*;

**j.**     Failing and refusing to establish and maintain reasonable
claims procedures in violation of 29 C.F.R. § 2560.503-1(b);

**k.**     Establishing, maintaining and enforcing claims
procedures which unduly inhibit the initiation and processing of claims
for benefits, in violation of 29 C.F.R. § 2560.503.1(b)(3);

**l.**     Precluding and prohibiting Plaintiff from acting as an
authorized representative of the Patients in pursuing a benefit claim or
appeal of an adverse benefit determination, in violation of 29 C.F.R. §
2560.503-1(b)(4);

**m.**     Failing and refusing to design, administer and enforce
their processes, procedures and claims administration to ensure that
their governing plan documents and provisions have been applied
consistently with respect to similarly situated participants, beneficiaries
and claimants, in violation of 29 C.F.R. § 2560.503-1(b)(5);

**n.**     Failing and refusing to pay benefits for authorized services rendered by Plaintiff;

**o.**     Failing to offer coverage for mental health and SUD treatment in parity with the medical and surgical benefits afforded by the same Plan, as required by 26 U.S.C. § 9812(3), as well as other mandates set forth at 26 U.S.C. § 9812, *et seq*.; and

**p.**     Failing and refusing to pay Plaintiff for the SUD treatments provided to the Patients in violation of 26 U.S.C. § 9812(3).

**269.**   The failure and refusal of Sierra to provide coverage, reimbursement, payment and/or benefits for the SUD and/or mental health treatment benefits rendered by Morningside to Plaintiff's patients who were covered by Sierra and Sierra's denial of health insurance benefits coverage constitutes a breach of the insurance plans and/or employee benefit Plans between Sierra and the Patients at issue in this lawsuit.

**270.**   Sierra has arbitrarily and capriciously breached the obligations set forth in the ERISA Plans issued by Sierra and Sierra has arbitrarily and capriciously breached their obligations under the ERISA Plans to provide Plaintiff and that as a direct and proximate result of the actions by Defendants, Plaintiff has been damaged in an amount equal to the amount of benefits Plaintiff should have received and to which the Patients would have been entitled had Sierra paid the proper amounts, which Plaintiff estimates to be $72,693.27.

**271.**   As a direct and proximate result of the aforesaid conduct of Sierra in failing to provide coverage as required, Plaintiff has suffered, and will continue to suffer in the future, damages, plus interest and other economic and consequential damages, for a total amount Plaintiff estimates to be $72,693.27, or as otherwise determined at the time of trial.

**272.**   Plaintiff is entitled to an award of statutory penalties in the amount to be determined at the time of trial against Sierra.

273.   Plaintiff is entitled to an award of reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1).  As a result of the actions and failings of the Sierra, Plaintiff has retained the services of legal counsel and has necessarily incurred attorneys' fees and costs in prosecuting this action.  Furthermore, Plaintiff anticipates incurring additional attorneys' fees and costs hereafter pursing this action.

## FIFTEENTH CLAIM FOR RELIEF

### (Claims for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B)

### Against Medical Mutual)

274.   Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

275.   This claim is alleged by Plaintiff for relief in connection with claims for treatment rendered to members of an ERISA Plan. This claim seeks to recover benefits, enforce rights and clarify rights to benefits under 29 U.S.C. § 1132(a)(1)(B). Plaintiff has standing to pursue these claims as assignee of the Patients' benefits under the ERISA Plans. As the assignee of benefits under the ERISA Plans, Plaintiff is a "beneficiary" entitled to collect benefits under the terms of the ERISA Plans, and is the "claimant" for purposes of ERISA.

276.   Plaintiff is informed and believes, and based thereon alleges, that Medical Mutual is the insurer, sponsor, and/or financially responsible payer, serve as a designated plan administrator, and/or services as the named plan administrator's designee.  Plaintiff is further informed and believes, and based thereon alleges, that with respect to each of the ERISA Plans at issue in this case that are self-insured plans, but which do not specifically designate a plan administrator, Medical Mutual effectively controls the decision whether to honor or deny the a claim under the Plan, exercise authority over the resolution of benefits claims, and/or have responsibility to pay the claims.  Medical Mutual also plays the role as the *de facto* plan administrator for such ERISA Plans.

277.   With respect to the ERISA Plans relating to Medical Mutual, Plaintiff's claims against Medical Mutual include 8 separate patients of Morningside.  To date, there remains a balance due and owing by Medical Mutual to Plaintiff in the amount of $1,698,911.64.

278.   The individual patient claims relating to Medical Mutual include the following:

a.   Patient BD, with a balance due and owing to Plaintiff in the amount of $340,266.78.

b.   Patient TD, with a balance due and owing to Plaintiff in the amount of $138,001.57.

c.   Patient SG, with a balance due and owing to Plaintiff in the amount of $233,506.74.

d.   Patient JG, with a balance due and owing to Plaintiff in the amount of $297,572.04.

e.   Patient RL, with a balance due and owing to Plaintiff in the amount of $30,785.50.

f.   Patient JM, with a balance due and owing to Plaintiff in the amount of $265,551.32.

g.   Patient MR, with a balance due and owing to Plaintiff in the amount of $25,713.12.

h.   Patient JS, with a balance due and owing to Plaintiff in the amount of $367,514.57.

279.   Although Medical Mutual provided ERISA Plan documents, Plaintiff has no information to identify which of the ERISA Plans relate to the Medical Mutual Patients.  Therefore, Plaintiff simply sets forth the names of the Plan Documents as follows:

a.   PPO Network Comprehensive Major Medical Health Care plan (the "**PPO Network Comprehensive 1 Medical Mutual Plan**").  As

required under the ACA and ERISA, the PPO Network Comprehensive 1 Medical Mutual Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

      **b.**     PPO Network Comprehensive Major Medical Health Care plan (the "**PPO Network Comprehensive 2 Medical Mutual Plan**").  As required under the ACA and ERISA, the PPO Network Comprehensive 2 Medical Mutual Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

      **c.**     Ohio Public Employees Retirement System plan (the "**OPERS Medical Mutual Plan**").  As required under the ACA and ERISA, the OPERS Medical Mutual Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

      **d.**     COSE Health and Wellness Trust ("MEWA") plan (the "**COSE Medical Mutual Plan**").  As required under the ACA and ERISA, the COSE Medical Mutual Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

      **e.**     IP/MM/OFF SILVER CLASSIC 2000/4000 MMRX Health plan (the "**IP/MM/OFF MEDICAL Mutual Plan**").  As required under the ACA and ERISA, the IP/MM/OFF Medical Mutual Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount

required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

     **f.**     SMALL GROUP CONSUMER SUITE, SM PLUS HAS 3000/6000 P-PLAN, MM RX plan (the "**SMALL GROUP Medical Mutual Plan**").  As required under the ACA and ERISA, the SMALL GROUP Medical Mutual Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

     **g.**     CONCAST BIRMINGHAM, INC. plan (the "**CONCAST Medical Mutual Plan**").  As required under the ACA and ERISA, the CONCAST Medical Mutual Plan must provide plan benefits for SUD and/or mental health treatment at no less than the amount required by law of UCR, notwithstanding patient copay and deductible obligations as set forth in the plan documents.

     **h.**     The PPO Network Comprehensive 1 Medical Mutual Plan, the PPO Network Comprehensive 2 Medical Mutual Plan, the OPERS Medical Mutual Plan, the COSE Medical Mutual Plan, the IP/MM/OFF Medical Mutual Plan, the SMALL GROUP Medical Mutual Plan, and the CONCAST Medical Mutual Plan shall sometimes be referred to collectively as the "**Medical Mutual Plans**".

**280.**   Plaintiff is informed and believes, and based thereon alleges, that for each of these claims and for each of the involved Patients, Medical Mutual has failed and refused to pay, process or adjust these claims in an appropriate fashion by, among other acts and omissions:

     **a.**     Delaying the processing, adjustment and/or payment of claims for periods of time greater than 45 days after submission of the claims in violation of 29 C.F.R. § 2560.503-1(f)(2)(iii)(B);

**b.**      Failing and refusing to provide any notice and/or explanation for the denial of benefits, payments or reimbursement of the claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

**c.**      Failing and refusing to provide an adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

**d.**      Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, and by failing and refusing to set forth the specific reasons for such denials, all in violation of 29 U.S.C. § 1133(1);

**e.**      Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, written in a manner calculated to be understood by the participant, in violation of 29 U.S.C. § 1133(1);

**f.**      Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in an appeals process, in violation of 29 U.S.C. § 1133(2);

**g.**      Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in meaningful appeal process which was full and fair, in violation of 29 U.S.C. § 1133(2);

**h.**      Failing and refusing to provide Plaintiff and/or its Patients with information pertaining to their rights to appeal, including not limited to those deadlines for filing appeals and/or the requirements that an appeal be filed, in violation of 29 U.S.C. § 1133(1);

**i.**      Violating the minimum requirements for employee benefit plans pertaining to claims and benefits by participants and beneficiaries, in violation of 29 C.F.R. § 2560.503-1(a), *et seq.*;

**j.** Failing and refusing to establish and maintain reasonable claims procedures in violation of 29 C.F.R. § 2560.503-1(b);

**k.** Establishing, maintaining and enforcing claims procedures which unduly inhibit the initiation and processing of claims for benefits, in violation of 29 C.F.R. § 2560.503.1(b)(3);

**l.** Precluding and prohibiting Plaintiff from acting as an authorized representative of the Patients in pursuing a benefit claim or appeal of an adverse benefit determination, in violation of 29 C.F.R. § 2560.503-1(b)(4);

**m.** Failing and refusing to design, administer and enforce their processes, procedures and claims administration to ensure that their governing plan documents and provisions have been applied consistently with respect to similarly situated participants, beneficiaries and claimants, in violation of 29 C.F.R. § 2560.503-1(b)(5);

**n.** Failing and refusing to pay benefits for authorized services rendered by Plaintiff;

**o.** Failing to offer coverage for mental health and SUD treatment in parity with the medical and surgical benefits afforded by the same Plan, as required by 26 U.S.C. § 9812(3), as well as other mandates set forth at 26 U.S.C. § 9812, *et seq*.; and

**p.** Failing and refusing to pay Plaintiff for the SUD treatments provided to the Patients in violation of 26 U.S.C. § 9812(3).

**281.** The failure and refusal of Medical Mutual to provide coverage, reimbursement, payment and/or benefits for the SUD and/or mental health treatment benefits rendered by Morningside to Plaintiff's patients who were covered by Medical Mutual and Medical Mutual of health insurance benefits coverage constitutes a breach of the insurance plans and/or employee benefit Plans between Medical Mutual and the Patients at issue in this lawsuit.

282.   Medical Mutual has arbitrarily and capriciously breached the obligations set forth in the ERISA Plans issued by Medical Mutual and Medical Mutual vas arbitrarily and capriciously breached their obligations under the ERISA Plans to provide Plaintiff and that as a direct and proximate result of the actions by Medical Mutual, Plaintiff has been damaged in an amount equal to the amount of benefits Plaintiff should have received and to which the Patients would have been entitled had Medical Mutual paid the proper amounts, which Plaintiff estimates to be $1,698,911.64.

283.   As a direct and proximate result of the aforesaid conduct of Medical Mutual in failing to provide coverage as required, Plaintiff has suffered, and will continue to suffer in the future, damages, plus interest and other economic and consequential damages, for a total amount Plaintiff estimates to be $1,698,911.64, or as otherwise determined at the time of trial.

284.   Plaintiff is entitled to an award of statutory penalties in the amount to be determined at the time of trial against Medical Mutual.

285.   Plaintiff is entitled to an award of reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1).  As a result of the actions and failings of the Medical Mutual, Plaintiff has retained the services of legal counsel and has necessarily incurred attorneys' fees and costs in prosecuting this action.  Furthermore, Plaintiff anticipates incurring additional attorneys' fees and costs hereafter pursing this action

## SIXTEENTH CLAIM FOR RELIEF

### (Claims for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B)

### Against First Health)

286.   Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

287.   This claim is alleged by Plaintiff for relief in connection with claims for treatment rendered to members of an ERISA Plan. This claim seeks to recover

benefits, enforce rights and clarify rights to benefits under 29 U.S.C. §
1132(a)(1)(B). Plaintiff has standing to pursue these claims as assignee of the
Patients' benefits under the ERISA Plans. As the assignee of benefits under the
ERISA Plans, Plaintiff is a "beneficiary" entitled to collect benefits under the terms
of the ERISA Plans, and is the "claimant" for purposes of ERISA.

288.   Plaintiff is informed and believes, and based thereon alleges, that First
Health is the insurer, sponsor, and/or financially responsible payer, serve as a
designated plan administrator, and/or services as the named plan administrator's
designee.  Plaintiff is further informed and believes, and based thereon alleges, that
with respect to each of the ERISA Plans at issue in this case that are self-insured
plans, but which do not specifically designate a plan administrator, First Health
effectively controls the decision whether to honor or deny the a claim under the
Plan, exercise authority over the resolution of benefits claims, and/or have
responsibility to pay the claims.  First Health also plays the role as the *de facto*
plan administrator for such ERISA Plans.

289.   With respect to the ERISA Plans relating to First Health, Plaintiff's
claims against First Health include 1 patient of Morningside.  To date, there
remains a balance due and owing by First Health to Plaintiff in the amount of
$46,702.13.

290.   Plaintiff is informed and believes, and based thereon alleges, that for
each of these claims and for each of the involved Patients, First Health has failed
and refused to pay, process or adjust these claims in an appropriate fashion by,
among other acts and omissions:

a.   Delaying the processing, adjustment and/or payment of
claims for periods of time greater than 45 days after submission of the
claims in violation of 29 C.F.R. § 2560.503-1(f)(2)(iii)(B);

**b.**     Failing and refusing to provide any notice and/or explanation for the denial of benefits, payments or reimbursement of the claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

**c.**     Failing and refusing to provide an adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

**d.**     Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, and by failing and refusing to set forth the specific reasons for such denials, all in violation of 29 U.S.C. § 1133(1);

**e.**     Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, written in a manner calculated to be understood by the participant, in violation of 29 U.S.C. § 1133(1);

**f.**     Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in an appeals process, in violation of 29 U.S.C. § 1133(2);

**g.**     Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in meaningful appeal process which was full and fair, in violation of 29 U.S.C. § 1133(2);

**h.**     Failing and refusing to provide Plaintiff and/or its Patients with information pertaining to their rights to appeal, including not limited to those deadlines for filing appeals and/or the requirements that an appeal be filed, in violation of 29 U.S.C. § 1133(1);

**i.**     Violating the minimum requirements for employee benefit plans pertaining to claims and benefits by participants and beneficiaries, in violation of 29 C.F.R. § 2560.503-1(a), *et seq.*;

**j.**    Failing and refusing to establish and maintain reasonable claims procedures in violation of 29 C.F.R. § 2560.503-1(b);

**k.**    Establishing, maintaining and enforcing claims procedures which unduly inhibit the initiation and processing of claims for benefits, in violation of 29 C.F.R. § 2560.503.1(b)(3);

**l.**    Precluding and prohibiting Plaintiff from acting as an authorized representative of the Patients in pursuing a benefit claim or appeal of an adverse benefit determination, in violation of 29 C.F.R. § 2560.503-1(b)(4);

**m.**    Failing and refusing to design, administer and enforce their processes, procedures and claims administration to ensure that their governing plan documents and provisions have been applied consistently with respect to similarly situated participants, beneficiaries and claimants, in violation of 29 C.F.R. § 2560.503-1(b)(5);

**n.**    Failing and refusing to pay benefits for authorized services rendered by Plaintiff;

**o.**    Failing to offer coverage for mental health and SUD treatment in parity with the medical and surgical benefits afforded by the same Plan, as required by 26 U.S.C. § 9812(3), as well as other mandates set forth at 26 U.S.C. § 9812, *et seq*.; and

**p.**    Failing and refusing to pay Plaintiff for the SUD treatments provided to the Patients in violation of 26 U.S.C. § 9812(3).

**291.**    The failure and refusal of First Health to provide coverage, reimbursement, payment and/or benefits for the SUD and/or mental health treatment benefits rendered by Morningside to Plaintiff's patients who were covered by First Health and First Health denial of health insurance benefits coverage constitutes a breach of the insurance plans and/or employee benefit Plans between First Health and the Patients at issue in this lawsuit.

292.    First Health has arbitrarily and capriciously breached the obligations set forth in the ERISA Plans issued by First Health and First Health has arbitrarily and capriciously breached their obligations under the ERISA Plans to provide Plaintiff and that as a direct and proximate result of the actions by Defendants, Plaintiff has been damaged in an amount equal to the amount of benefits Plaintiff should have received and to which the Patients would have been entitled had First Health paid the proper amounts, which Plaintiff estimates to be $46,702.13

293.    As a direct and proximate result of the aforesaid conduct of First Health in failing to provide coverage as required, Plaintiff has suffered, and will continue to suffer in the future, damages, plus interest and other economic and consequential damages, for a total amount Plaintiff estimates to be $46,702.13, or as otherwise determined at the time of trial.

294.    Plaintiff is entitled to an award of statutory penalties in the amount to be determined at the time of trial against First Health.

295.    Plaintiff is entitled to an award of reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1).  As a result of the actions and failings of the 46,702.13, Plaintiff has retained the services of legal counsel and has necessarily incurred attorneys' fees and costs in prosecuting this action.  Furthermore, Plaintiff anticipates incurring additional attorneys' fees and costs hereafter pursing this action.

## SEVENTEENTH CLAIM FOR RELIEF

### (Claims for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B)

### Against BCBS Arkansas)

296.    Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

297.    This claim is alleged by Plaintiff for relief in connection with claims for treatment rendered to members of an ERISA Plan. This claim seeks to recover benefits, enforce rights and clarify rights to benefits under 29 U.S.C. §

1132(a)(1)(B). Plaintiff has standing to pursue these claims as assignee of the Patients' benefits under the ERISA Plans. As the assignee of benefits under the ERISA Plans, Plaintiff is a "beneficiary" entitled to collect benefits under the terms of the ERISA Plans, and is the "claimant" for purposes of ERISA.

298.   Plaintiff is informed and believes, and based thereon alleges, that BCBS Arkansas is the insurer, sponsor, and/or financially responsible payer, serve as a designated plan administrator, and/or services as the named plan administrator's designee.  Plaintiff is further informed and believes, and based thereon alleges, that with respect to each of the ERISA Plans at issue in this case that are self-insured plans, but which do not specifically designate a plan administrator, BCBS Arkansas effectively controls the decision whether to honor or deny the a claim under the ERISA Plans, exercise authority over the resolution of benefits claims, and/or have responsibility to pay the claims.  BCBS Arkansas also plays the role as the *de facto* plan administrator for such ERISA Plans.

299.   With respect to the ERISA Plans relating to BCBS Arkansas, Plaintiff's claims against BCBS Arkansas include 11 patients of Morningside.  To date, there remains a balance due and owing by BCBS Arkansas to Plaintiff in the amount of $1,016,780.99.

300.   The individual patient claims relating to BCBS Arkansas include the following:

a.     Patient MC, with a balance due and owing to Plaintiff in the amount of $77,034.00.

b.     Patient CC, with a balance due and owing to Plaintiff in the amount of $218,105.28.

c.     Patient RH, with a balance due and owing to Plaintiff in the amount of $20,129.79.

d.     Patient CJ, with a balance due and owing to Plaintiff in the amount of $4,978.00.

**e.** Patient MK, with a balance due and owing to Plaintiff in the amount of $15,230.85.

**f.** Patient ML, with a balance due and owing to Plaintiff in the amount of $9,928.20.

**g.** Patient TM, with a balance due and owing to Plaintiff in the amount of $70,180.56.

**h.** Patient SL, with a balance due and owing to Plaintiff in the amount of $360,902.75.

**i.** Patient JN, with a balance due and owing to Plaintiff in the amount of $133,715.08.

**j.** Patient ER, with a balance due and owing to Plaintiff in the amount of $83,813.23.

**k.** Patient MS, with a balance due and owing to Plaintiff in the amount of $22,493.25.

**301.** Plaintiff is informed and believes, and based thereon alleges, that for each of these claims and for each of the involved Patients, BCBS Arkansas has failed and refused to pay, process or adjust these claims in an appropriate fashion by, among other acts and omissions:

**a.** Delaying the processing, adjustment and/or payment of claims for periods of time greater than 45 days after submission of the claims in violation of 29 C.F.R. § 2560.503-1(f)(2)(iii)(B);

**b.** Failing and refusing to provide any notice and/or explanation for the denial of benefits, payments or reimbursement of the claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

**c.** Failing and refusing to provide an adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

**d.**   Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, and by failing and refusing to set forth the specific reasons for such denials, all in violation of 29 U.S.C. § 1133(1);

**e.**   Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, written in a manner calculated to be understood by the participant, in violation of 29 U.S.C. § 1133(1);

**f.**   Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in an appeals process, in violation of 29 U.S.C. § 1133(2);

**g.**   Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in meaningful appeal process which was full and fair, in violation of 29 U.S.C. § 1133(2);

**h.**   Failing and refusing to provide Plaintiff and/or its Patients with information pertaining to their rights to appeal, including not limited to those deadlines for filing appeals and/or the requirements that an appeal be filed, in violation of 29 U.S.C. § 1133(1);

**i.**   Violating the minimum requirements for employee benefit plans pertaining to claims and benefits by participants and beneficiaries, in violation of 29 C.F.R. § 2560.503-1(a), *et seq.*;

**j.**   Failing and refusing to establish and maintain reasonable claims procedures in violation of 29 C.F.R. § 2560.503-1(b);

**k.**   Establishing, maintaining and enforcing claims procedures which unduly inhibit the initiation and processing of claims for benefits, in violation of 29 C.F.R. § 2560.503.1(b)(3);

**l.**   Precluding and prohibiting Plaintiff from acting as an authorized representative of the Patients in pursuing a benefit claim or

appeal of an adverse benefit determination, in violation of 29 C.F.R. § 2560.503-1(b)(4);

    **m.**    Failing and refusing to design, administer and enforce their processes, procedures and claims administration to ensure that their governing plan documents and provisions have been applied consistently with respect to similarly situated participants, beneficiaries and claimants, in violation of 29 C.F.R. § 2560.503-1(b)(5);

    **n.**    Failing and refusing to pay benefits for authorized services rendered by Plaintiff;

    **o.**    Failing to offer coverage for mental health and SUD treatment in parity with the medical and surgical benefits afforded by the same Plan, as required by 26 U.S.C. § 9812(3), as well as other mandates set forth at 26 U.S.C. § 9812, *et seq*.; and

    **p.**    Failing and refusing to pay Plaintiff for the SUD treatments provided to the Patients in violation of 26 U.S.C. § 9812(3).

302.   The failure and refusal of BCBS Arkansas to provide coverage, reimbursement, payment and/or benefits for the SUD and/or mental health treatment benefits rendered by Morningside to Plaintiff's patients who were covered by BCBS Arkansas and BCBS Arkansas denial of health insurance benefits coverage constitutes a breach of the insurance plans and/or employee benefit Plans between BCBS Arkansas and the Patients at issue in this lawsuit.

303.   BCBS Arkansas has arbitrarily and capriciously breached the obligations set forth in the ERISA Plans issued by BCBS Arkansas and BCBS Arkansas has arbitrarily and capriciously breached their obligations under the ERISA Plans to provide Plaintiff and that as a direct and proximate result of the actions by Defendants, Plaintiff has been damaged in an amount equal to the amount of benefits Plaintiff should have received and to which the Patients would

have been entitled had BCBS Arkansas paid the proper amounts, which Plaintiff estimates to be $1,016,780.99.

304.   As a direct and proximate result of the aforesaid conduct of BCBS Arkansas in failing to provide coverage as required, Plaintiff has suffered, and will continue to suffer in the future, damages, plus interest and other economic and consequential damages, for a total amount Plaintiff estimates to be $1,016,780.99, or as otherwise determined at the time of trial.

305.   Plaintiff is entitled to an award of statutory penalties in the amount to be determined at the time of trial against BCBS Arkansas.

306.   Plaintiff is entitled to an award of reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1).  As a result of the actions and failings of BCBS Arkansas, Plaintiff has retained the services of legal counsel and has necessarily incurred attorneys' fees and costs in prosecuting this action.  Furthermore, Plaintiff anticipates incurring additional attorneys' fees and costs hereafter pursing this action.

## EIGHTEENTH CLAIM FOR RELIEF

### (Claims for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B)

### Against Coventry)

307.   Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

308.   This claim is alleged by Plaintiff for relief in connection with claims for treatment rendered to members of an ERISA Plan. This claim seeks to recover benefits, enforce rights and clarify rights to benefits under 29 U.S.C. § 1132(a)(1)(B). Plaintiff has standing to pursue these claims as assignee of the Patients' benefits under the ERISA Plans. As the assignee of benefits under the ERISA Plans, Plaintiff is a "beneficiary" entitled to collect benefits under the terms of the ERISA Plans, and is the "claimant" for purposes of ERISA.

1    **309.**   Plaintiff is informed and believes, and based thereon alleges, that

2    Coventry is the insurer, sponsor, and/or financially responsible payer, serve as a

3    designated plan administrator, and/or services as the named plan administrator's

4    designee.  Plaintiff is further informed and believes, and based thereon alleges, that

5    with respect to each of the ERISA Plans at issue in this case that are self-insured

6    plans, but which do not specifically designate a plan administrator, Coventry

7    effectively controls the decision whether to honor or deny the a claim under the

8    ERISA Plans, exercise authority over the resolution of benefits claims, and/or have

9    responsibility to pay the claims.  Coventry also plays the role as the *de facto* plan

10   administrator for such ERISA Plans.

11   **310.**   With respect to the ERISA Plans relating to Coventry, Plaintiff's

12   claims against Coventry include 6 patients of Morningside.  To date, there remains

13   a balance due and owing by Coventry to Plaintiff in the amount of $471,554.58.

14   **311.**   Coventry has not provided Plaintiff with any plan documents, nor has

15   Coventry disclosed to Plaintiff the Coventry patients at issue falling under an

16   ERISA Plan or not, so in an abundance of caution, Plaintiff lists all claims against

17   Coventry at this time.  Plaintiff's individual patient claims relating to Coventry

18   include the following:

19          **a.**      Patient TC, with a balance due and owing to Plaintiff in the

20   amount of $289,113.97.

21          **b.**      Patient MC, with a balance due and owing to Plaintiff in the

22   amount of $45,082.66.

23          **c.**      Patient KC, with a balance due and owing to Plaintiff in the

24   amount of $67,534.37.

25          **d.**      Patient CH, with a balance due and owing to Plaintiff in the

26   amount of $35,280.00.

27          **e.**      Patient MR, with a balance due and owing to Plaintiff in the

28   amount of $29,441.16.

**f.**     Patient DR, with a balance due and owing to Plaintiff in the amount of $5,092.42

**312.**   Plaintiff is informed and believes, and based thereon alleges, that for each of these claims and for each of the involved Patients, Coventry has failed and refused to pay, process or adjust these claims in an appropriate fashion by, among other acts and omissions:

**a.**     Delaying the processing, adjustment and/or payment of claims for periods of time greater than 45 days after submission of the claims in violation of 29 C.F.R. § 2560.503-1(f)(2)(iii)(B);

**b.**     Failing and refusing to provide any notice and/or explanation for the denial of benefits, payments or reimbursement of the claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

**c.**     Failing and refusing to provide an adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

**d.**     Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, and by failing and refusing to set forth the specific reasons for such denials, all in violation of 29 U.S.C. § 1133(1);

**e.**     Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, written in a manner calculated to be understood by the participant, in violation of 29 U.S.C. § 1133(1);

**f.**     Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in an appeals process, in violation of 29 U.S.C. § 1133(2);

**g.**     Failing to afford Plaintiff and/or its Patients with a
reasonable opportunity to engage in meaningful appeal process which
was full and fair, in violation of 29 U.S.C. § 1133(2);

**h.**     Failing and refusing to provide Plaintiff and/or its Patients
with information pertaining to their rights to appeal, including not
limited to those deadlines for filing appeals and/or the requirements
that an appeal be filed, in violation of 29 U.S.C. § 1133(1);

**i.**     Violating the minimum requirements for employee benefit
plans pertaining to claims and benefits by participants and
beneficiaries, in violation of 29 C.F.R. § 2560.503-1(a), *et seq.*;

**j.**     Failing and refusing to establish and maintain reasonable
claims procedures in violation of 29 C.F.R. § 2560.503-1(b);

**k.**     Establishing, maintaining and enforcing claims
procedures which unduly inhibit the initiation and processing of claims
for benefits, in violation of 29 C.F.R. § 2560.503.1(b)(3);

**l.**     Precluding and prohibiting Plaintiff from acting as an
authorized representative of the Patients in pursuing a benefit claim or
appeal of an adverse benefit determination, in violation of 29 C.F.R. §
2560.503-1(b)(4);

**m.**     Failing and refusing to design, administer and enforce
their processes, procedures and claims administration to ensure that
their governing plan documents and provisions have been applied
consistently with respect to similarly situated participants, beneficiaries
and claimants, in violation of 29 C.F.R. § 2560.503-1(b)(5);

**n.**     Failing and refusing to pay benefits for authorized
services rendered by Plaintiff;

**o.**     Failing to offer coverage for mental health and SUD
treatment in parity with the medical and surgical benefits afforded by

the same Plan, as required by 26 U.S.C. § 9812(3), as well as other mandates set forth at 26 U.S.C. § 9812, *et seq*.; and

      **p.**     Failing and refusing to pay Plaintiff for the SUD treatments provided to the Patients in violation of 26 U.S.C. § 9812(3).

**313.**   The failure and refusal of Coventry to provide coverage, reimbursement, payment and/or benefits for the SUD and/or mental health treatment benefits rendered by Morningside to Plaintiff's patients who were covered by Coventry and Coventry's denial of health insurance benefits coverage constitutes a breach of the insurance plans and/or employee benefit Plans between BCBS Arkansas and the Patients at issue in this lawsuit.

**314.**   Coventry has arbitrarily and capriciously breached the obligations set forth in the ERISA Plans issued by Coventry and Coventry has arbitrarily and capriciously breached their obligations under the ERISA Plans to provide Plaintiff and that as a direct and proximate result of the actions by Defendants, Plaintiff has been damaged in an amount equal to the amount of benefits Plaintiff should have received and to which the Patients would have been entitled had Coventry paid the proper amounts, which Plaintiff estimates to be $471,554.58.

**315.**   As a direct and proximate result of the aforesaid conduct of Coventry in failing to provide coverage as required, Plaintiff has suffered, and will continue to suffer in the future, damages, plus interest and other economic and consequential damages, for a total amount Plaintiff estimates to be $471,554.58, or as otherwise determined at the time of trial.

**316.**   Plaintiff is entitled to an award of statutory penalties in the amount to be determined at the time of trial against Coventry.

**317.**   Plaintiff is entitled to an award of reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1).  As a result of the actions and failings of Coventry, Plaintiff has retained the services of legal counsel and has necessarily incurred attorneys' fees and costs in prosecuting this action.  Furthermore, Plaintiff

anticipates incurring additional attorneys' fees and costs hereafter pursing this action.

### NINETEENTH CLAIM FOR RELIEF

### (Claims for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B)
### Against Group Health Plan)

318.   Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

319.   This claim is alleged by Plaintiff for relief in connection with claims for treatment rendered to members of an ERISA Plan. This claim seeks to recover benefits, enforce rights and clarify rights to benefits under 29 U.S.C. § 1132(a)(1)(B). Plaintiff has standing to pursue these claims as assignee of the Patients' benefits under the ERISA Plans. As the assignee of benefits under the ERISA Plans, Plaintiff is a "beneficiary" entitled to collect benefits under the terms of the ERISA Plans, and is the "claimant" for purposes of ERISA.

320.   Plaintiff is informed and believes, and based thereon alleges, that Group Health Plan is the insurer, sponsor, and/or financially responsible payer, serve as a designated plan administrator, and/or services as the named plan administrator's designee.  Plaintiff is further informed and believes, and based thereon alleges, that with respect to each of the ERISA Plans at issue in this case that are self-insured plans, but which do not specifically designate a plan administrator, Group Health Plan effectively controls the decision whether to honor or deny the a claim under the ERISA Plans, exercise authority over the resolution of benefits claims, and/or have responsibility to pay the claims.  Group Health Plan also plays the role as the *de facto* plan administrator for such ERISA Plans.

321.   With respect to the ERISA Plans relating to Group Health Plan, Plaintiff's claims against Group Health Plan include 4 patients of Morningside.  To

date, there remains a balance due and owing by Coventry to Plaintiff in the amount of $273,212.78.

322.   Group Health Plan has not provided Plaintiff with any plan documents, nor has Group Health Plan disclosed to Plaintiff the Group Health Plan patients at issue falling under an ERISA Plan or not, so in an abundance of caution, Plaintiff lists all claims against Group Health Plan at this time.  Plaintiff's individual patient claims relating to Group Health Plan include the following:

a.   Patient RD, with a balance due and owing to Plaintiff in the amount of $41,341.09.

b.   Patient ME, with a balance due and owing to Plaintiff in the amount of $9,165.00.

c.   Patient JP, with a balance due and owing to Plaintiff in the amount of $96,591.46.

d.   Patient TR, with a balance due and owing to Plaintiff in the amount of $126,115.23.

323.   Plaintiff is informed and believes, and based thereon alleges, that for each of these claims and for each of the involved Patients, Group Health Plan has failed and refused to pay, process or adjust these claims in an appropriate fashion by, among other acts and omissions:

a.   Delaying the processing, adjustment and/or payment of claims for periods of time greater than 45 days after submission of the claims in violation of 29 C.F.R. § 2560.503-1(f)(2)(iii)(B);

b.   Failing and refusing to provide any notice and/or explanation for the denial of benefits, payments or reimbursement of the claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

c.   Failing and refusing to provide an adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

     **d.**     Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, and by failing and refusing to set forth the specific reasons for such denials, all in violation of 29 U.S.C. § 1133(1);

     **e.**     Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, written in a manner calculated to be understood by the participant, in violation of 29 U.S.C. § 1133(1);

     **f.**     Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in an appeals process, in violation of 29 U.S.C. § 1133(2);

     **g.**     Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in meaningful appeal process which was full and fair, in violation of 29 U.S.C. § 1133(2);

     **h.**     Failing and refusing to provide Plaintiff and/or its Patients with information pertaining to their rights to appeal, including not limited to those deadlines for filing appeals and/or the requirements that an appeal be filed, in violation of 29 U.S.C. § 1133(1);

     **i.**     Violating the minimum requirements for employee benefit plans pertaining to claims and benefits by participants and beneficiaries, in violation of 29 C.F.R. § 2560.503-1(a), *et seq.*;

     **j.**     Failing and refusing to establish and maintain reasonable claims procedures in violation of 29 C.F.R. § 2560.503-1(b);

     **k.**     Establishing, maintaining and enforcing claims procedures which unduly inhibit the initiation and processing of claims for benefits, in violation of 29 C.F.R. § 2560.503.1(b)(3);

     **l.**     Precluding and prohibiting Plaintiff from acting as an authorized representative of the Patients in pursuing a benefit claim or

appeal of an adverse benefit determination, in violation of 29 C.F.R. § 2560.503-1(b)(4);

**m.**     Failing and refusing to design, administer and enforce their processes, procedures and claims administration to ensure that their governing plan documents and provisions have been applied consistently with respect to similarly situated participants, beneficiaries and claimants, in violation of 29 C.F.R. § 2560.503-1(b)(5);

**n.**     Failing and refusing to pay benefits for authorized services rendered by Plaintiff;

**o.**     Failing to offer coverage for mental health and SUD treatment in parity with the medical and surgical benefits afforded by the same Plan, as required by 26 U.S.C. § 9812(3), as well as other mandates set forth at 26 U.S.C. § 9812, *et seq.*; and

**p.**     Failing and refusing to pay Plaintiff for the SUD treatments provided to the Patients in violation of 26 U.S.C. § 9812(3).

324.   The failure and refusal of Group Health Plan to provide coverage, reimbursement, payment and/or benefits for the SUD and/or mental health treatment benefits rendered by Morningside to Plaintiff's patients who were covered by Group Health Plan and Group Health Plan's denial of health insurance benefits coverage constitutes a breach of the insurance plans and/or employee benefit Plans between Group Health Plan and the Patients at issue in this lawsuit.

325.   Group Health Plan has arbitrarily and capriciously breached the obligations set forth in the ERISA Plans issued by Group Health Plan and Group Health Plan has arbitrarily and capriciously breached their obligations under the ERISA Plans to provide Plaintiff and that as a direct and proximate result of the actions by Defendants, Plaintiff has been damaged in an amount equal to the amount of benefits Plaintiff should have received and to which the Patients would

have been entitled had Group Health Plan paid the proper amounts, which Plaintiff estimates to be $273,212.78.

326.   As a direct and proximate result of the aforesaid conduct of Group Health Plan in failing to provide coverage as required, Plaintiff has suffered, and will continue to suffer in the future, damages, plus interest and other economic and consequential damages, for a total amount Plaintiff estimates to be $273,212.78, or as otherwise determined at the time of trial.

327.   Plaintiff is entitled to an award of statutory penalties in the amount to be determined at the time of trial against Group Health Plan.

328.   Plaintiff is entitled to an award of reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1).  As a result of the actions and failings of Group Health Plan, Plaintiff has retained the services of legal counsel and has necessarily incurred attorneys' fees and costs in prosecuting this action.  Furthermore, Plaintiff anticipates incurring additional attorneys' fees and costs hereafter pursing this action.

## TWENTIETH CLAIM FOR RELIEF
### (Claims for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B)
### Against the Cigna Defendants)

329.   Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

330.   This claim is alleged by Plaintiff for relief in connection with claims for treatment rendered to members of an ERISA Plan. This claim seeks to recover benefits, enforce rights and clarify rights to benefits under 29 U.S.C. § 1132(a)(1)(B). Plaintiff has standing to pursue these claims as assignee of the Patients' benefits under the ERISA Plans. As the assignee of benefits under the ERISA Plans, Plaintiff is a "beneficiary" entitled to collect benefits under the terms of the ERISA Plans, and is the "claimant" for purposes of ERISA.

331.    Plaintiff is informed and believes, and based thereon alleges, that the Cigna Defendants are the insurer, sponsor, and/or financially responsible payer, serve as a designated plan administrator, and/or services as the named plan administrator's designee.  Plaintiff is further informed and believes, and based thereon alleges, that with respect to each of the ERISA Plans at issue in this case that are self-insured plans, but which do not specifically designate a plan administrator, the Cigna Defendants effectively control the decision whether to honor or deny a claim under the ERISA Plans, exercise authority over the resolution of benefits claims, and/or have responsibility to pay the claims.  The Cigna Defendants also play the role as the *de facto* plan administrator for such ERISA Plans.

332.    With respect to the patient information relating to the Cigna Defendants, a list of Plaintiff's claims against the Cigna Defendants are concurrently filed under seal as <u>Exhibit F</u> and incorporated herein by this reference.

333.    The Cigna Defendants have not provided Plaintiff with information about which of these claims fall under an ERISA Plan and which ones do not, so in an abundance of caution, Plaintiff lists all claims against the Anthem Defendants at this time.  To date, there remains a balance due and owing by the Cigna Defendants to Plaintiff in the amount of $10,055,275.66.

334.    The Cigna Defendants provided Plaintiff with copies of a few plan documents in connection with the Cigna Defendants' motion to dismiss. Plaintiff is informed and believes, and based thereon alleges, that the total number of patients and plans applicable to the Cigna Defendants may exceed 200.

335.    Plaintiff is informed and believes, and based thereon alleges, that for each of these claims and for each of the involved Patients, the Cigna Defendants have failed and refused to pay, process or adjust these claims in an appropriate fashion by, among other acts and omissions:

**a.**     Delaying the processing, adjustment and/or payment of claims for periods of time greater than 45 days after submission of the claims in violation of 29 C.F.R. § 2560.503-1(f)(2)(iii)(B);

**b.**     Failing and refusing to provide any notice and/or explanation for the denial of benefits, payments or reimbursement of the claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

**c.**     Failing and refusing to provide an adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

**d.**     Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, and by failing and refusing to set forth the specific reasons for such denials, all in violation of 29 U.S.C. § 1133(1);

**e.**     Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, written in a manner calculated to be understood by the participant, in violation of 29 U.S.C. § 1133(1);

**f.**     Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in an appeals process, in violation of 29 U.S.C. § 1133(2);

**g.**     Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in meaningful appeal process which was full and fair, in violation of 29 U.S.C. § 1133(2);

**h.**     Failing and refusing to provide Plaintiff and/or its Patients with information pertaining to their rights to appeal, including not limited to those deadlines for filing appeals and/or the requirements that an appeal be filed, in violation of 29 U.S.C. § 1133(1);

**i.**    Violating the minimum requirements for employee benefit plans pertaining to claims and benefits by participants and beneficiaries, in violation of 29 C.F.R. § 2560.503-1(a), *et seq.*;

**j.**    Failing and refusing to establish and maintain reasonable claims procedures in violation of 29 C.F.R. § 2560.503-1(b);

**k.**    Establishing, maintaining and enforcing claims procedures which unduly inhibit the initiation and processing of claims for benefits, in violation of 29 C.F.R. § 2560.503.1(b)(3);

**l.**    Precluding and prohibiting Plaintiff from acting as an authorized representative of the Patients in pursuing a benefit claim or appeal of an adverse benefit determination, in violation of 29 C.F.R. § 2560.503-1(b)(4);

**m.**    Failing and refusing to design, administer and enforce their processes, procedures and claims administration to ensure that their governing plan documents and provisions have been applied consistently with respect to similarly situated participants, beneficiaries and claimants, in violation of 29 C.F.R. § 2560.503-1(b)(5);

**n.**    Failing and refusing to pay benefits for authorized services rendered by Plaintiff;

**o.**    Failing to offer coverage for mental health and SUD treatment in parity with the medical and surgical benefits afforded by the same Plan, as required by 26 U.S.C. § 9812(3), as well as other mandates set forth at 26 U.S.C. § 9812, *et seq.*; and

**p.**    Failing and refusing to pay Plaintiff for the SUD treatments provided to the Patients in violation of 26 U.S.C. § 9812(3).

**336.**    The failure and refusal of the Cigna Defendants to provide coverage, reimbursement, payment and/or benefits for the SUD and/or mental health treatment benefits rendered by Morningside to Plaintiff's patients who were

covered by the Cigna Defendants and the Cigna Defendants denial of health insurance benefits coverage constitutes a breach of the insurance plans and/or employee benefit Plans between the Cigna Defendants and the Patients at issue in this lawsuit.

337.   The Cigna Defendants have arbitrarily and capriciously breached the obligations set forth in the ERISA Plans issued by the Cigna Defendants and the Cigna Defendants has arbitrarily and capriciously breached their obligations under the ERISA Plans to provide Plaintiff and that as a direct and proximate result of their actions, Plaintiff has been damaged in an amount equal to the amount of benefits Plaintiff should have received and to which the Patients would have been entitled had Coventry paid the proper amounts, which Plaintiff estimates to be $10,055,275.66.

338.   As a direct and proximate result of the aforesaid conduct of Coventry in failing to provide coverage as required, Plaintiff has suffered, and will continue to suffer in the future, damages, plus interest and other economic and consequential damages, for a total amount Plaintiff estimates to be $10,055,763.66, or as otherwise determined at the time of trial.

339.   Plaintiff is entitled to an award of statutory penalties in the amount to be determined at the time of trial against the Cigna Defendants.

340.   Plaintiff is entitled to an award of reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1).  As a result of the actions and failings of the Cigna Defendants, Plaintiff has retained the services of legal counsel and has necessarily incurred attorneys' fees and costs in prosecuting this action.  Furthermore, Plaintiff anticipates incurring additional attorneys' fees and costs hereafter pursing this action.

1

## TWENTY-FIRST CLAIM FOR RELIEF

2

### (Claims for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B)

3

### Against the Beacon Defendants)

4      **341.**   Plaintiff realleges and incorporates by reference each and every

5    paragraph of this Complaint as though set forth herein.

6      **342.**   This claim is alleged by Plaintiff for relief in connection with claims

7    for treatment rendered to members of an ERISA Plan. This claim seeks to recover

8    benefits, enforce rights and clarify rights to benefits under 29 U.S.C. §

9    1132(a)(1)(B). Plaintiff has standing to pursue these claims as assignee of the

10   Patients' benefits under the ERISA Plans. As the assignee of benefits under the

11   ERISA Plans, Plaintiff is a "beneficiary" entitled to collect benefits under the terms

12   of the ERISA Plans, and is the "claimant" for purposes of ERISA.

13     **343.**   Plaintiff is informed and believes, and based thereon alleges, that the

14   Beacon Defendants are the insurer, sponsor, and/or financially responsible payer,

15   serve as a designated plan administrator, and/or serves as the named plan

16   administrator's designee.  Plaintiff is further informed and believes, and based

17   thereon alleges, that with respect to each of the ERISA Plans at issue in this case

18   that are self-insured plans, but which do not specifically designate a plan

19   administrator, the Beacon Defendants effectively control the decision whether to

20   honor or deny the a claim under the ERISA Plans, exercise authority over the

21   resolution of benefits claims, and/or have responsibility to pay the claims.  The

22   Beacon Defendants also play the role as the *de facto* plan administrator for such

23   ERISA Plans.

24     **344.**   With respect to the ERISA Plans relating to the Beacon Defendants, to

25   date, there remains a balance due and owing by the Beacon Defendants to Plaintiff

26   in the amount of $1,192,890.55.

27     **345.**   The Beacon Defendants have not provided Plaintiff with any plan

28   documents, nor have the Beacon Defendants disclosed to Plaintiff the Beacon

patients at issue falling under an ERISA Plan or not, so in an abundance of caution, Plaintiff lists all claims against the Beacon Defendants at this time.

**346.**   Plaintiff is informed and believes, and based thereon alleges, that for each of these claims and for each of the involved Patients, the Beacon Defendants have failed and refused to pay, process or adjust these claims in an appropriate fashion by, among other acts and omissions:

**a.**   Delaying the processing, adjustment and/or payment of claims for periods of time greater than 45 days after submission of the claims in violation of 29 C.F.R. § 2560.503-1(f)(2)(iii)(B);

**b.**   Failing and refusing to provide any notice and/or explanation for the denial of benefits, payments or reimbursement of the claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

**c.**   Failing and refusing to provide an adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

**d.**   Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, and by failing and refusing to set forth the specific reasons for such denials, all in violation of 29 U.S.C. § 1133(1);

**e.**   Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, written in a manner calculated to be understood by the participant, in violation of 29 U.S.C. § 1133(1);

**f.**   Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in an appeals process, in violation of 29 U.S.C. § 1133(2);

**g.**     Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in meaningful appeal process which was full and fair, in violation of 29 U.S.C. § 1133(2);

**h.**     Failing and refusing to provide Plaintiff and/or its Patients with information pertaining to their rights to appeal, including not limited to those deadlines for filing appeals and/or the requirements that an appeal be filed, in violation of 29 U.S.C. § 1133(1);

**i.**     Violating the minimum requirements for employee benefit plans pertaining to claims and benefits by participants and beneficiaries, in violation of 29 C.F.R. § 2560.503-1(a), *et seq.*;

**j.**     Failing and refusing to establish and maintain reasonable claims procedures in violation of 29 C.F.R. § 2560.503-1(b);

**k.**     Establishing, maintaining and enforcing claims procedures which unduly inhibit the initiation and processing of claims for benefits, in violation of 29 C.F.R. § 2560.503.1(b)(3);

**l.**     Precluding and prohibiting Plaintiff from acting as an authorized representative of the Patients in pursuing a benefit claim or appeal of an adverse benefit determination, in violation of 29 C.F.R. § 2560.503-1(b)(4);

**m.**     Failing and refusing to design, administer and enforce their processes, procedures and claims administration to ensure that their governing plan documents and provisions have been applied consistently with respect to similarly situated participants, beneficiaries and claimants, in violation of 29 C.F.R. § 2560.503-1(b)(5);

**n.**     Failing and refusing to pay benefits for authorized services rendered by Plaintiff;

**o.**     Failing to offer coverage for mental health and SUD treatment in parity with the medical and surgical benefits afforded by

the same Plan, as required by 26 U.S.C. § 9812(3), as well as other mandates set forth at 26 U.S.C. § 9812, *et seq*.; and

    **p.**    Failing and refusing to pay Plaintiff for the SUD treatments provided to the Patients in violation of 26 U.S.C. § 9812(3).

**347.**  The failure and refusal of the Beacon Defendants to provide coverage, reimbursement, payment and/or benefits for the SUD and/or mental health treatment benefits rendered by Morningside to Plaintiff's patients who were covered by the Beacon Defendants and the Beacon Defendants' denial of health insurance benefits coverage constitutes a breach of the insurance plans and/or employee benefit Plans between the Beacon Defendants and the Patients at issue in this lawsuit.

**348.**  The Beacon Defendants have arbitrarily and capriciously breached the obligations set forth in the ERISA Plans issued by the Beacon Defendants and the Beacon Defendants have arbitrarily and capriciously breached their obligations under the ERISA Plans to provide Plaintiff and that as a direct and proximate result of their actions by the Beacon Defendants, Plaintiff has been damaged in an amount equal to the amount of benefits Plaintiff should have received and to which the Patients would have been entitled had the Beacon Defendants paid the proper amounts, which Plaintiff estimates to be $1,192,80.55.

**349.**  As a direct and proximate result of the aforesaid conduct of Coventry in failing to provide coverage as required, Plaintiff has suffered, and will continue to suffer in the future, damages, plus interest and other economic and consequential damages, for a total amount Plaintiff estimates to be $1,192,80.55, or as otherwise determined at the time of trial.

**350.**  Plaintiff is entitled to an award of statutory penalties in the amount to be determined at the time of trial against the Beacon Defendants.

**351.**  Plaintiff is entitled to an award of reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1).  As a result of the actions and failings of the Beacon

Defendants, Plaintiff has retained the services of legal counsel and has necessarily incurred attorneys' fees and costs in prosecuting this action.  Furthermore, Plaintiff anticipates incurring additional attorneys' fees and costs hereafter pursing this action.

**TWENTY-SECOND CLAIM FOR RELIEF**

**(Claims for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B)**

**Against the Anthem Defendants)**

352.   Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

353.   This claim is alleged by Plaintiff for relief in connection with claims for treatment rendered to members of an ERISA Plan. This claim seeks to recover benefits, enforce rights and clarify rights to benefits under 29 U.S.C. § 1132(a)(1)(B). Plaintiff has standing to pursue these claims as assignee of the Patients' benefits under the ERISA Plans. As the assignee of benefits under the ERISA Plans, Plaintiff is a "beneficiary" entitled to collect benefits under the terms of the ERISA Plans, and is the "claimant" for purposes of ERISA.

354.   Plaintiff is informed and believes, and based thereon alleges, that the Anthem Defendants are the insurer, sponsor, and/or financially responsible payer, serve as a designated plan administrator, and/or services as the named plan administrator's designee.  Plaintiff is further informed and believes, and based thereon alleges, that with respect to each of the ERISA Plans at issue in this case that are self-insured plans, but which do not specifically designate a plan administrator, the Anthem Defendants effectively control the decision whether to honor or deny the a claim under the ERISA Plans, exercise authority over the resolution of benefits claims, and/or have responsibility to pay the claims.  The Anthem Defendants also play the role as the *de facto* plan administrator for such ERISA Plans.

355.   With respect to the patient information relating to the Anthem Defendants, a list of Plaintiff's claims against the Anthem Defendants are concurrently filed under seal as <u>Exhibit G</u> and incorporated herein by this reference.  Counsel for Plaintiff sent a copy of this list of claims to counsel for the Anthem Defendants on August 16, 2019.

356.   The Anthem Defendants have not provided Plaintiff with information about which of these claims fall under an ERISA Plan and which ones do not, so in an abundance of caution, Plaintiff lists all claims against the Anthem Defendants at this time.  To date, there remains a balance due and owing by the Anthem Defendants to Plaintiff in the amount of $54,057,080.22.

357.   The Anthem Defendants provided Plaintiff with copies of approximately 30 plan documents in connection with the Anthem Defendants motion to dismiss. Plaintiff is informed and believes, and based thereon alleges, that the total number of patients and plants applicable to the Anthem Defendants may exceed 1,000.

358.   Plaintiff is informed and believes, and based thereon alleges, that for each of these claims and for each of the involved Patients, the Anthem Defendants has failed and refused to pay, process or adjust these claims in an appropriate fashion by, among other acts and omissions:

    **a.**   Delaying the processing, adjustment and/or payment of claims for periods of time greater than 45 days after submission of the claims in violation of 29 C.F.R. § 2560.503-1(f)(2)(iii)(B);

    **b.**   Failing and refusing to provide any notice and/or explanation for the denial of benefits, payments or reimbursement of the claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

    **c.**   Failing and refusing to provide an adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

**d.**     Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, and by failing and refusing to set forth the specific reasons for such denials, all in violation of 29 U.S.C. § 1133(1);

**e.**     Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, written in a manner calculated to be understood by the participant, in violation of 29 U.S.C. § 1133(1);

**f.**     Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in an appeals process, in violation of 29 U.S.C. § 1133(2);

**g.**     Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in meaningful appeal process which was full and fair, in violation of 29 U.S.C. § 1133(2);

**h.**     Failing and refusing to provide Plaintiff and/or its Patients with information pertaining to their rights to appeal, including not limited to those deadlines for filing appeals and/or the requirements that an appeal be filed, in violation of 29 U.S.C. § 1133(1);

**i.**     Violating the minimum requirements for employee benefit plans pertaining to claims and benefits by participants and beneficiaries, in violation of 29 C.F.R. § 2560.503-1(a), *et seq.*;

**j.**     Failing and refusing to establish and maintain reasonable claims procedures in violation of 29 C.F.R. § 2560.503-1(b);

**k.**     Establishing, maintaining and enforcing claims procedures which unduly inhibit the initiation and processing of claims for benefits, in violation of 29 C.F.R. § 2560.503.1(b)(3);

**l.**     Precluding and prohibiting Plaintiff from acting as an authorized representative of the Patients in pursuing a benefit claim or

appeal of an adverse benefit determination, in violation of 29 C.F.R. §
2560.503-1(b)(4);

**m.**     Failing and refusing to design, administer and enforce
their processes, procedures and claims administration to ensure that
their governing plan documents and provisions have been applied
consistently with respect to similarly situated participants, beneficiaries
and claimants, in violation of 29 C.F.R. § 2560.503-1(b)(5);

**n.**     Failing and refusing to pay benefits for authorized
services rendered by Plaintiff;

**o.**     Failing to offer coverage for mental health and SUD
treatment in parity with the medical and surgical benefits afforded by
the same Plan, as required by 26 U.S.C. § 9812(3), as well as other
mandates set forth at 26 U.S.C. § 9812, *et seq*.; and

**p.**     Failing and refusing to pay Plaintiff for the SUD
treatments provided to the Patients in violation of 26 U.S.C. § 9812(3).

**359.**   The failure and refusal of the Anthem Defendants to provide
coverage, reimbursement, payment and/or benefits for the SUD and/or mental
health treatment benefits rendered by Morningside to Plaintiff's patients who were
covered by the Anthem Defendants and the Anthem Defendants' denial of health
insurance benefits coverage constitutes a breach of the insurance plans and/or
employee benefit Plans between the Anthem Defendants and the Patients at issue
in this lawsuit.

**360.**   The Anthem Defendants have arbitrarily and capriciously breached
the obligations set forth in the ERISA Plans issued by the Anthem Defendants and
the Anthem Defendants have arbitrarily and capriciously breached their obligations
under the ERISA Plans to provide Plaintiff and that as a direct and proximate result
of the their actions, Plaintiff has been damaged in an amount equal to the amount
of benefits Plaintiff should have received and to which the Patients would have

been entitled had the Anthem Defendants paid the proper amounts, which Plaintiff estimates to be $54,057,080.22.

361.   As a direct and proximate result of the aforesaid conduct of the Anthem Defendants in failing to provide coverage as required, Plaintiff has suffered, and will continue to suffer in the future, damages, plus interest and other economic and consequential damages, for a total amount Plaintiff estimates to be $54,057,080.22, or as otherwise determined at the time of trial.

362.   Plaintiff is entitled to an award of statutory penalties in the amount to be determined at the time of trial against $54,057,080.22.

363.   Plaintiff is entitled to an award of reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1).  As a result of the actions and failings of the Anthem Defendants, Plaintiff has retained the services of legal counsel and has necessarily incurred attorneys' fees and costs in prosecuting this action.  Furthermore, Plaintiff anticipates incurring additional attorneys' fees and costs hereafter pursing this action.

## TWENTY-THIRD CLAIM FOR RELIEF

### (Claims for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B)

### Against Aetna)

364.   Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

365.   This claim is alleged by Plaintiff for relief in connection with claims for treatment rendered to members of an ERISA Plan. This claim seeks to recover benefits, enforce rights and clarify rights to benefits under 29 U.S.C. § 1132(a)(1)(B). Plaintiff has standing to pursue these claims as assignee of the Patients' benefits under the ERISA Plans. As the assignee of benefits under the ERISA Plans, Plaintiff is a "beneficiary" entitled to collect benefits under the terms of the ERISA Plans, and is the "claimant" for purposes of ERISA.

366.   Plaintiff is informed and believes, and based thereon alleges, that Aetna, as the insurer, sponsor, and/or financially responsible payer, serve as a designated plan administrator, and/or services as the named plan administrator's designee.  Plaintiff is further informed and believes, and based thereon alleges, that with respect to each of the ERISA Plans at issue in this case that are self-insured plans, but which do not specifically designate a plan administrator, Aetna effectively controls the decision whether to honor or deny the a claim under the ERISA Plans, exercise authority over the resolution of benefits claims, and/or have responsibility to pay the claims.  Aetna also plays the role as the *de facto* plan administrator for such ERISA Plans.

367.   With respect to the ERISA Plans relating to Aetna, Plaintiff's claims against Aetna include are due and owing by Aetna to Plaintiff in the amount of $3,524,817.46.

368.   Plaintiff is informed and believes, and based thereon alleges, that for each of these claims and for each of the involved Patients, Coventry has failed and refused to pay, process or adjust these claims in an appropriate fashion by, among other acts and omissions:

a.   Delaying the processing, adjustment and/or payment of claims for periods of time greater than 45 days after submission of the claims in violation of 29 C.F.R. § 2560.503-1(f)(2)(iii)(B);

b.   Failing and refusing to provide any notice and/or explanation for the denial of benefits, payments or reimbursement of the claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

c.   Failing and refusing to provide an adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

d.   Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of

the Patients, and by failing and refusing to set forth the specific reasons for such denials, all in violation of 29 U.S.C. § 1133(1);

e.      Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, written in a manner calculated to be understood by the participant, in violation of 29 U.S.C. § 1133(1);

f.      Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in an appeals process, in violation of 29 U.S.C. § 1133(2);

g.      Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in meaningful appeal process which was full and fair, in violation of 29 U.S.C. § 1133(2);

h.      Failing and refusing to provide Plaintiff and/or its Patients with information pertaining to their rights to appeal, including not limited to those deadlines for filing appeals and/or the requirements that an appeal be filed, in violation of 29 U.S.C. § 1133(1);

i.      Violating the minimum requirements for employee benefit plans pertaining to claims and benefits by participants and beneficiaries, in violation of 29 C.F.R. § 2560.503-1(a), *et seq.*;

j.      Failing and refusing to establish and maintain reasonable claims procedures in violation of 29 C.F.R. § 2560.503-1(b);

k.      Establishing, maintaining and enforcing claims procedures which unduly inhibit the initiation and processing of claims for benefits, in violation of 29 C.F.R. § 2560.503.1(b)(3);

l.      Precluding and prohibiting Plaintiff from acting as an authorized representative of the Patients in pursuing a benefit claim or appeal of an adverse benefit determination, in violation of 29 C.F.R. § 2560.503-1(b)(4);

       **m.**    Failing and refusing to design, administer and enforce their processes, procedures and claims administration to ensure that their governing plan documents and provisions have been applied consistently with respect to similarly situated participants, beneficiaries and claimants, in violation of 29 C.F.R. § 2560.503-1(b)(5);

       **n.**    Failing and refusing to pay benefits for authorized services rendered by Plaintiff;

       **o.**    Failing to offer coverage for mental health and SUD treatment in parity with the medical and surgical benefits afforded by the same Plan, as required by 26 U.S.C. § 9812(3), as well as other mandates set forth at 26 U.S.C. § 9812, *et seq*.; and

       **p.**    Failing and refusing to pay Plaintiff for the SUD treatments provided to the Patients in violation of 26 U.S.C. § 9812(3).

**369.**   The failure and refusal of Coventry to provide coverage, reimbursement, payment and/or benefits for the SUD and/or mental health treatment benefits rendered by Morningside to Plaintiff's patients who were covered by Coventry and Coventry's denial of health insurance benefits coverage constitutes a breach of the insurance plans and/or employee benefit Plans between BCBS Arkansas and the Patients at issue in this lawsuit.

**370.**   Coventry has arbitrarily and capriciously breached the obligations set forth in the ERISA Plans issued by Coventry and Coventry has arbitrarily and capriciously breached their obligations under the ERISA Plans to provide Plaintiff and that as a direct and proximate result of the actions by Defendants, Plaintiff has been damaged in an amount equal to the amount of benefits Plaintiff should have received and to which the Patients would have been entitled had Coventry paid the proper amounts, which Plaintiff estimates to be $471,554.58.

**371.**   As a direct and proximate result of the aforesaid conduct of Coventry in failing to provide coverage as required, Plaintiff has suffered, and will continue

to suffer in the future, damages, plus interest and other economic and
consequential damages, for a total amount Plaintiff estimates to be $471,554.58, or
as otherwise determined at the time of trial.

372.   Plaintiff is entitled to an award of statutory penalties in the amount to
be determined at the time of trial against Coventry.

373.   Plaintiff is entitled to an award of reasonable attorneys' fees pursuant
to 29 U.S.C. § 1132(g)(1).  As a result of the actions and failings of Coventry,
Plaintiff has retained the services of legal counsel and has necessarily incurred
attorneys' fees and costs in prosecuting this action.  Furthermore, Plaintiff
anticipates incurring additional attorneys' fees and costs hereafter pursing this
action.

## TWENTY-FOURTH CLAIM FOR RELIEF

### (Claims for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B)
### Against HMC)

374.   Plaintiff realleges and incorporates by reference each and every
paragraph of this Complaint as though set forth herein.

375.   This claim is alleged by Plaintiff for relief in connection with claims
for treatment rendered to members of an ERISA Plan. This claim seeks to recover
benefits, enforce rights and clarify rights to benefits under 29 U.S.C. §
1132(a)(1)(B). Plaintiff has standing to pursue these claims as assignee of the
Patients' benefits under the ERISA Plans. As the assignee of benefits under the
ERISA Plans, Plaintiff is a "beneficiary" entitled to collect benefits under the terms
of the ERISA Plans, and is the "claimant" for purposes of ERISA.

376.   Plaintiff is informed and believes, and based thereon alleges, that
HMC is the insurer, sponsor, and/or financially responsible payer, serve as a
designated plan administrator, and/or services as the named plan administrator's
designee.  Plaintiff is further informed and believes, and based thereon alleges, that
with respect to each of the ERISA Plans at issue in this case that are self-insured

plans, but which do not specifically designate a plan administrator, HMC effectively controls the decision whether to honor or deny the a claim under the ERISA Plans, exercise authority over the resolution of benefits claims, and/or have responsibility to pay the claims.  HMC also plays the role as the *de facto* plan administrator for such ERISA Plans.

377.   With respect to the ERISA Plans relating to HMC, Plaintiff's claims against Coventry include 4 patients of Morningside.  To date, there remains a balance due and owing by HMC to Plaintiff in the amount of $406,572.11.

378.   HMC has not provided Plaintiff with any plan documents, nor has HMC disclosed to Plaintiff the HMC patients at issue falling under an ERISA Plan or not, so in an abundance of caution, Plaintiff lists all claims against HMC at this time.  Plaintiff's individual patient claims relating to HMC include the following.

a.      Patient PF, with a balance due and owing to Plaintiff in the amount of $23,449.50.

b.      Patient AB, with a balance due and owing to Plaintiff in the amount of $180,323.04.

c.      Patient DK, with a balance due and owing to Plaintiff in the amount of $148,.757.50.

d.      Patient GL, with a balance due and owing to Plaintiff in the amount of $54,042.07.

379.   Plaintiff is informed and believes, and based thereon alleges, that for each of these claims and for each of the involved Patients, HMC has failed and refused to pay, process or adjust these claims in an appropriate fashion by, among other acts and omissions:

a.      Delaying the processing, adjustment and/or payment of claims for periods of time greater than 45 days after submission of the claims in violation of 29 C.F.R. § 2560.503-1(f)(2)(iii)(B);

**b.**      Failing and refusing to provide any notice and/or explanation for the denial of benefits, payments or reimbursement of the claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

**c.**      Failing and refusing to provide an adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

**d.**      Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, and by failing and refusing to set forth the specific reasons for such denials, all in violation of 29 U.S.C. § 1133(1);

**e.**      Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, written in a manner calculated to be understood by the participant, in violation of 29 U.S.C. § 1133(1);

**f.**      Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in an appeals process, in violation of 29 U.S.C. § 1133(2);

**g.**      Failing to afford Plaintiff and/or its Patients with a reasonable opportunity to engage in meaningful appeal process which was full and fair, in violation of 29 U.S.C. § 1133(2);

**h.**      Failing and refusing to provide Plaintiff and/or its Patients with information pertaining to their rights to appeal, including not limited to those deadlines for filing appeals and/or the requirements that an appeal be filed, in violation of 29 U.S.C. § 1133(1);

**i.**      Violating the minimum requirements for employee benefit plans pertaining to claims and benefits by participants and beneficiaries, in violation of 29 C.F.R. § 2560.503-1(a), *et seq.*;

**j.**     Failing and refusing to establish and maintain reasonable claims procedures in violation of 29 C.F.R. § 2560.503-1(b);

**k.**     Establishing, maintaining and enforcing claims procedures which unduly inhibit the initiation and processing of claims for benefits, in violation of 29 C.F.R. § 2560.503.1(b)(3);

**l.**     Precluding and prohibiting Plaintiff from acting as an authorized representative of the Patients in pursuing a benefit claim or appeal of an adverse benefit determination, in violation of 29 C.F.R. § 2560.503-1(b)(4);

**m.**    Failing and refusing to design, administer and enforce their processes, procedures and claims administration to ensure that their governing plan documents and provisions have been applied consistently with respect to similarly situated participants, beneficiaries and claimants, in violation of 29 C.F.R. § 2560.503-1(b)(5);

**n.**     Failing and refusing to pay benefits for authorized services rendered by Plaintiff;

**o.**     Failing to offer coverage for mental health and SUD treatment in parity with the medical and surgical benefits afforded by the same Plan, as required by 26 U.S.C. § 9812(3), as well as other mandates set forth at 26 U.S.C. § 9812, *et seq*.; and

**p.**     Failing and refusing to pay Plaintiff for the SUD treatments provided to the Patients in violation of 26 U.S.C. § 9812(3).

**380.**    The failure and refusal of HMC to provide coverage, reimbursement, payment and/or benefits for the SUD and/or mental health treatment benefits rendered by Morningside to Plaintiff's patients who were covered by HMC and HMC's denial of health insurance benefits coverage constitutes a breach of the insurance plans and/or employee benefit Plans between HMC and the Patients at issue in this lawsuit.

381.   HMC has arbitrarily and capriciously breached the obligations set forth in the ERISA Plans issued by HMC and HMC has arbitrarily and capriciously breached their obligations under the ERISA Plans to provide Plaintiff and that as a direct and proximate result of its actions, Plaintiff has been damaged in an amount equal to the amount of benefits Plaintiff should have received and to which the Patients would have been entitled had HMC paid the proper amounts, which Plaintiff estimates to be $406,572.11.

382.   As a direct and proximate result of the aforesaid conduct of HMC in failing to provide coverage as required, Plaintiff has suffered, and will continue to suffer in the future, damages, plus interest and other economic and consequential damages, for a total amount Plaintiff estimates to be $406,572.11, or as otherwise determined at the time of trial.

383.   Plaintiff is entitled to an award of statutory penalties in the amount to be determined at the time of trial against HMC.

384.   Plaintiff is entitled to an award of reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1).  As a result of the actions and failings of HMC, Plaintiff has retained the services of legal counsel and has necessarily incurred attorneys' fees and costs in prosecuting this action.  Furthermore, Plaintiff anticipates incurring additional attorneys' fees and costs hereafter pursing this action.

## TWENTY-FIFTH CLAIM FOR RELIEF

### (Claims for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B)
### Against GHI)

385.   Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though set forth herein.

386.   This claim is alleged by Plaintiff for relief in connection with claims for treatment rendered to members of an ERISA Plan. This claim seeks to recover benefits, enforce rights and clarify rights to benefits under 29 U.S.C. §

1132(a)(1)(B). Plaintiff has standing to pursue these claims as assignee of the Patients' benefits under the ERISA Plans. As the assignee of benefits under the ERISA Plans, Plaintiff is a "beneficiary" entitled to collect benefits under the terms of the ERISA Plans, and is the "claimant" for purposes of ERISA.

387.   Plaintiff is informed and believes, and based thereon alleges, that GHI is the insurer, sponsor, and/or financially responsible payer, serve as a designated plan administrator, and/or services as the named plan administrator's designee. Plaintiff is further informed and believes, and based thereon alleges, that with respect to each of the ERISA Plans at issue in this case that are self-insured plans, but which do not specifically designate a plan administrator, GHI effectively controls the decision whether to honor or deny the a claim under the ERISA Plans, exercise authority over the resolution of benefits claims, and/or have responsibility to pay the claims.  GHI also plays the role as the *de facto* plan administrator for such ERISA Plans.

388.   The Clerk of the Court for the Central District of California entered the default against GHI, the only named defendant in Case No. 8-19-cv-02129. [ECF No. 343.]

//
//
//
//
//
//

1

# PRAYER FOR RELIEF

2

**AS TO ALL ERISA CLAIMS FOR RELIEF**:

3

    **WHEREFORE**, Plaintiff prays as follows:

4

    **1.**    For an order that Consolidated Defendants pay to Plaintiff an amount to

5

be proven at Trial, but no less than $75,000,000.00;

6

    **2.**    For economic damages according to proof;

7

    **3.**    For pre- and post-judgment interest as allowed by law;

8

    **4.**    For statutory penalties as allowed by law;

9

    **5.**    For attorney's fees and costs of suit incurred herein; and

10

    **6.**    For such other and further relief as the Court deems appropriate.

11

12

    Respectfully Submitted,

13

Dated: February 28, 2022    GARNER HEALTH LAW CORPORATION

14

15

    By:  _Craig B. Garner_

16

        CRAIG B. GARNER
Attorneys for PLAINTIFF ABC SERVICES

17

GROUP, INC., in its capacity as assignee for
the benefit of creditors of MORNINGSIDE

18

RECOVERY, LLC

19

20

SQUIRES, SHERMAN & BIOTEAU, LLP

21

22

ROCHELLE J. BIOTEAU
Attorneys for PLAINTIFF ABC SERVICES

23

GROUP, INC., in its capacity as assignee for
the benefit of creditors of MORNINGSIDE

24

RECOVERY, LLC

25

26

27

28

1

## <u>CERTIFICATE OF SERVICE</u>

2

3

I hereby certify that on February 28, 2022, I caused the

4

5

6

**CONSOLIDATED AMENDED COMPLAINT FOR BREACH OF EMPLOYEE WELFARE BENEFIT PLAN (RECOVERY OF PLAN BENEFITS UNDER E.R.I.S.A.) 29 U.S.C. § 1132(a)(1)(b)**

7

to be served upon counsel in the manner described below:

8

Participants in the case who are registered CM/ECF users will be served by the Central District CM/ECF system.

9

10

11

*Special Master*

12

13

Stephen G Larson
Larson O'Brien LLP
555 South Flower Street Suite 4400
Los Angeles, CA 90071
213-436-4864
slarson@larsonobrienlaw.com

14

15

16

17

18

*Aetna Health and Life Insurance Company*

19

Benjamin H. McCoy
Fox Rothchild LLP
10 Sentry Parkway, Suite 200
Blue Bell, PA 19422
610-397-7972
bmccoy@foxrothschild.com

20

21

22

23

24

John Shaeffer
Fox Rothschild LLP
10250 Constellation Boulevard
Suite 900
Los Angeles, CA 90067
310-598-4150

25

26

27

28

1

2
***Anthem Blue Cross Life and Health Insurance Company***
***Anthem, Inc.***
***Blue Cross of California, Inc.***

3
***The Anthem Companies of California, Inc.***

4

5
Steven D Allison
Samrah R Mahmoud

6
Troutman Sanders LLP
5 Park Plaza Suite 1400

7
Irvine, CA 92614

8
949-622-2700
steve.allison@troutman.com

9
samrah.mahmoud@troutman.com

10

11
Virginia Bell Flynn
Troutman Sanders LLP

12
4320 Fairfax Drive
Dallas, TX 75205

13
804-697-1480

14
virginia.flynn@troutman.com

15
Chad R Fuller

16
Troutman Sanders LLP
11682 El Camino Real Suite 400

17
San Diego, CA 92130

18
858-509-6000
chad.fuller@troutman.com

19

20
***Blue Cross and Blue Shield of Alabama***

21
Neil J Barker

22
Neil J Barker APC
225 South Lake Avenue Suite 300

23
Pasadena, CA 91101

24
626-440-5980
neiljbarker@sbcglobal.net

25

26

27

28

1

***Health Care Service Corporation***

2

3   Amir Shlesinger
    Reed Smith LLP
4   335 South Grand Avenue Suite 2900
    Los Angeles, CA 90071-1514
5   213-457-8000
6   jgershon@reedsmith.com
    ashlesinger@reedsmith.com
7   ftabibkhoei@reedsmith.com

8
    Dan J Hofmeister, Jr
9   Reed Smith LLP
10  10 South Wacker Drive Suite 4000
    Chicago, IL 60606
11  312-207-6545
12  dhofmeister@reedsmith.com

13

14  ***Blue Cross and Blue Shield of Kansas City***

15  Jonathan Daniel Gershon
16  Amir Shlesinger
    Farah Tabibkhoei
17  Reed Smith LLP
18  335 South Grand Avenue Suite 2900
    Los Angeles, CA 90071-1514
19  213-457-8000
20  jgershon@reedsmith.com
    ashlesinger@reedsmith.com
21  ftabibkhoei@reedsmith.com

22
    Dan J Hofmeister, Jr
23  Reed Smith LLP
24  10 South Wacker Drive Suite 4000
    Chicago, IL 60606
25  312-207-6545
26  dhofmeister@reedsmith.com

27

28

***Blue Cross and Blue Shield of Kansas Inc***

Kimberly Ann Klinsport
Foley and Lardner LLP
555 South Flower Street Suite 3300
Los Angeles, CA 90071-2411
213-972-4500
kklinsport@foley.com

Michael A Naranjo
Jason Yon-Wai Wu
Foley and Lardner LLP
555 California Street Suite 1700
San Francisco, CA 94104
415-434-4484
mnaranjo@foley.com
jwu@foley.com

***USable Mutual Insurance Company***

Kimberly Ann Klinsport
Foley and Lardner LLP
555 South Flower Street Suite 3300
Los Angeles, CA 90071-2411
213-972-4500
kklinsport@foley.com

Michael A Naranjo
Jason Yon-Wai Wu
Foley and Lardner LLP
555 California Street Suite 1700
San Francisco, CA 94104
415-434-4484
mnaranjo@foley.com
jwu@foley.com

***Bluecross Blueshield of Tennessee Inc.***

Jason Jonathan Kim
Ann Marie Mortimer
Hunton Andrews Kurth LLP
550 South Hope Street Suite 2000
Los Angeles, CA 90071
213-532-2000
kimj@huntonak.com
amortimer@huntonAK.com

John B Shely
Bridget B Vick
Hunton Andrews Kurth LLP
600 Travis Street Suite 4200
Houston, TX 77002
713-220-4200
jshely@huntonak.com
bvick@huntonak.com

***Humana Behavioral Health, Inc.***
***Humana Health Plan of California Inc.***
***Humana Inc.***
***Humana Insurance Company***

Ronald K Alberts
Norvik Azarian
Gordon Reese Scully Mansukhani LLP
633 West Fifth Street 52nd Floor Los Angeles, CA 90071
213-576-5000
ralberts@grsm.com
nazarian@grsm.com

*United Behavioral Health*
*United Healthcare Services Inc.*
*Optum Services, Inc.*

Jennifer S. Romano
Crowell and Moring LLP
3 Park Plaza 20th Floor
Irvine, CA 92614-8505
949-263-8400
dglassman@crowell.com
sphan@crowell.com
jromano@crowell.com

*Cigna HealthCare of California, Inc.*
*Cigna Behavioral Health of California, Inc.*
*Cigna Health and Life Insurance Company*

Jeanne Louise Detch
Mazda K. Antia
Cooley LLP
4401 Eastgate Mall
San Diego, CA 92121
858-550-6000
jdetch@cooley.com
mantia@cooley.com

Matthew D. Caplan
Cooley LLP
1333 2nd St. Suite 400
Santa Monica, CA 90401
415-693-2000
mcaplan@cooley.com

*HMC Healthworks, Inc.*

Kathleen V. Fisher
Rodney James Jacob
Calvo Fisher and Jacob LLP
535 Pacific Avenue
Suite 201
San Francisco, CA 94133
415-374-8370
kfisher@calvofisher.com
rjacob@calvofisher.com

*Providence Health Plan*

Jose Dino Vasquez
Karr Tuttle Campbell
701 5th Avenue
Suite 3300
Seattle, WA 98104
206-223-1313
dvasquez@karrtuttle.com

Arden J. Olson
Harrang Long Gary Rudnick PC
Oakway Financial Center
497 Oakway Road
Suite 380
Eugene, OR 97401
541-485-0220
Arden.j.olson@harrang.com

*United Medical Resources, Inc.*

Dylan Scott Burstein
Crowell and Moring LLP
515 South Flower Street 40th Floor
Los Angeles, CA 90071
213-622-4750

1

2   Daniel M Glassman
    Stephanie V Phan
3   Jennifer S. Romano
    Crowell and Moring LLP
4   3 Park Plaza 20th Floor
    Irvine, CA 92614-8505
5   949-263-8400
    dglassman@crowell.com
6
    sphan@crowell.com
7   jromano@crowell.com
8

9

10  ***MHNet Specialty Services LLC***

11  Benjamin H. McCoy
    Fox Rothchild LLP
12  10 Sentry Parkway, Suite 200
    Blue Bell, PA 19422
13  610-397-7972
14  bmccoy@foxrothschild.com

15

16  John Shaeffer
    Fox Rothchild LLP
17  10250 Constellation Boulevard
    Suite 900
18  Los Angeles, CA 90067
19  310-598-4150
    jshaeffer@foxrothschild.com
20

21  ***Meritain Health, Inc.***

22
    Benjamin H. McCoy
23  Fox Rothchild LLP
    10 Sentry Parkway, Suite 200
24  Blue Bell, PA 19422
    610-397-7972
25  bmccoy@foxrothschild.com
26

27

28

John Shaeffer
Fox Rothschild LLP
10250 Constellation Boulevard
Suite 900
Los Angeles, CA 90067
310-598-4150
jshaeffer@foxrothschild.com

***First Health Group Corporation***

Benjamin H. McCoy
Fox Rothchild LLP
10 Sentry Parkway, Suite 200
Blue Bell, PA 19422
610-397-7972
bmccoy@foxrothschild.com

John Shaeffer
Fox Rothschild LLP
10250 Constellation Boulevard
Suite 900
Los Angeles, CA 90067
310-598-4150
jshaeffer@foxrothschild.com

Daniel M Glassman
Stephanie V Phan
Jennifer S. Romano
Crowell and Moring LLP
3 Park Plaza 20th Floor
Irvine, CA 92614-8505
949-263-8400
dglassman@crowell.com
sphan@crowell.com
jromano@crowell.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

***Sierra Health and Life Company***
Stephanie V Phan
Jennifer S. Romano
Crowell and Moring LLP
3 Park Plaza 20th Floor
Irvine, CA 92614-8505
949-263-8400
dglassman@crowell.com
sphan@crowell.com
jromano@crowell.com

***Coventry Health Care, Inc.***

Benjamin H. McCoy
Fox Rothchild LLP
10 Sentry Parkway, Suite 200
Blue Bell, PA 19422
610-397-7972
bmccoy@foxrothschild.com

***Medica Health Plans***

Elise D. Klein
Lewis Brisbois Bisgaard and Smith LLP
633 West 5th Street
Suite 4000
Los Angeles, CA 90071
213-250-1800
Elise.klein@lewisbrisbois.com
***Medical Mutual of Ohio***

S. Christopher Yoo
Alvaradosmith
1 MacArthur Pl., Suite 200
Santa Ana, CA 92707
714-852-6800
cyoo@alvaradosmith.com

***Beacon Health Options, Inc.***
***Beacon Health Strategies, LLC***
***ValueOptions Federal Services, Inc.,***
***ValueOptions of California, n/k/a Beacon Health Options of California, Inc.***

Henry I. Willett, III
Christian & Barton LLP
909 East Main Street, Suite 1200
Richmond, VA 23219
804-697-4130
hwillett@cblaw.com

***Common Ground Healthcare Cooperative***

William D. Naeve
Murchison & Cumming
18201 Von Karman Ave.
Suite 1100
Irvine, CA 92612
714-953-2233
wnaeve@murchisonlaw.com

***Providence Health Plan***

Arden J. Olson
Harrang Long Gary Rudnick PC
Oakway Financial Center
497 Oakway Road
Suite 380
Eugene, OR 97401
541-485-0220
Arden.j.olson@harrang.com

                    */s/ Craig B. Garner*
                      Craig B. Garner
                    *Counsel for Plaintiff*