CRAIG B. GARNER (CA SBN 177971)
GARNER HEALTH LAW CORPORATION
13274 Fiji Way, Suite 250
Marina Del Rey, CA 90292
Telephone: (310) 458-1560
Facsimile: (310) 694-9025
Email: craig@garnerhealth.com

ROCHELLE J. BIOTEAU (CA SBN 228348)
SQUIRES, SHERMAN & BIOTEAU, LLP
1901 1ST Ave., Suite 415
San Diego, CA 92101
Telephone: (619) 696-8854
Email: rochelle@ssbllp.com

Attorneys for PLAINTIFF ABC SERVICES GROUP, INC., in its capacity as assignee for the benefit of creditors of MORNINGSIDE RECOVERY, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| ABC SERVICES GROUP, INC., a Delaware corporation, in its capacity as assignee for the benefit of creditors of MORNINGSIDE RECOVERY, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>UNITED HEALTHCARE SERVICES, INC., *et al.*,<br><br>Defendants. | Lead Case No. 8:19−cv−00243-DOC-DFM<br><br>Hon. David O. Carter<br><br>**EXHIBITS** TO CONSOLIDATED AMENDED COMPLAINT FOR BREACH OF EMPLOYEE WELFARE BENEFIT PLAN (RECOVERY OF PLAN BENEFITS UNDER E.R.I.S.A.) 29 U.S.C. § 1132(a)(1)(b) **.** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT A**

# GENERAL ASSIGNMENT FOR THE BENEFIT OF CREDITORS

This General Assignment for the Benefit of Creditors ("General Assignment") is made and entered into as of the 21st day of September, 2018 (the "Effective Date"), by and between Morningside Recovery, LLC a California Limited Liability Company, Federal Taxpayer Identification Number 75-3033468,  located at 1400 Reynolds Avenue, Ste 200, Irvine, CA 92614, (hereinafter "Assignor") and ABC Services Group, Inc., a Delaware Corporation (hereinafter "ABC Services" or "Assignee") with respect to the following facts:

## RECITALS

WHEREAS, California law including, but not limited to, California Code of Civil Procedures Sections 493.010 through 493.060 and Sections 1800 through 1802 provide that debtors may make an General Assignment for the benefit of creditors, pursuant to which the Assignee will liquidate the debtor's assets and in accordance with the requirements of applicable law distribute the proceeds; and

WHEREAS, Assignor has carefully considered the various options available to Assignor to deal with Assignor's creditors, and has decided that it would be in Assignor's best interest and the best interests of Assignor's creditors to make an General Assignment for the benefit of creditors pursuant to California law; and

WHEREAS, ABC SERVICES is in the business, amongst other matters, of managing and conducting General Assignments for the benefit of creditors in accordance with California law, and effectuating the sale of the debtor's assets and distribution of the proceeds in accordance with applicable law; and

WHEREAS, Assignor desires to, pursuant to the terms set forth hereinbelow, retain ABC SERVICES for the purposes of making a General Assignment for the benefit of creditors pursuant to which ABC SERVICES will act as Assignee, liquidate the assets of Assignor, and distribute the proceeds in accordance with applicable law, and ABC SERVICES desires to be so retained pursuant to the terms forth hereinbelow.

Now, therefore, in consideration of the General Assignment, covenants, conditions, representations and agreements described hereinbelow, Assignor and Assignee agree as follows:

## AGREEMENT

1.0     Assignment of Assets for the Benefit of Creditors.  Assignor hereby makes this General Assignment for the benefit of Assignor's creditors to ABC SERVICES.   Assignor does hereby grant, bargain, sell, assign, convey and transfer unto said Assignee, its successors and assigns, in trust, for the benefit of Assignor's creditors, all of the property of the Assignor of every kind and nature and where so ever situated, both real property (but not real property lease arrangements) and personal property, and any interest or equity, including, but not limited to, all that certain stock of merchandise, furniture, fixtures, equipment, book accounts, books, bills receivable, cash on hand, cash in banks, deposits, patents, copyrights, trademarks and trade names and all associated good will, source codes, URL's, or related website rights, social media platforms, software and related documents, insurance policies, tax refunds, rebates, insurance refunds and claims, choses in action that are legally assignable, together with

1

Exhibit A, Page 000001

the proceeds of any existing non-assignable choses in action that may hereafter be recovered or received by the Assignor, to Assignee. Assignor agrees to execute such additional documents as shall be necessary to accomplish the purposes of this General Assignment.

Without limiting the foregoing this General Assignment specifically includes and covers all claims for refund or abatement of all excess taxes heretofore or hereafter assessed against or collected from the Assignor by the U.S. Treasury Department, and any State or local taxing agency, and the Assignor agrees to sign and execute a Power of Attorney attached hereto as "Schedule C" or all other documents as required to enable said Assignee to file and prosecute, compromise and/or settle, all such claims before the Internal Revenue Service and any State or local taxing agency, and agrees to endorse any tax refund checks relating to the prior operations of said Assignor's business and to deliver such checks to the Assignee.

This General Assignment constitutes a Grant Deed to all real property owned by Assignor (except for real property leases and leasehold interests), whether or not the Assignor's real property is specifically described in this General Assignment.

Assignee is to receive said property, conduct said business, should it deem it proper, and is hereby authorized at any time after the signing hereof by Assignor to sell and dispose of said property upon such time and terms as it may see fit, and is to pay to creditors of Assignor pro rata, the net proceeds arising from the conducting of said business and sale and disposal of said property, after deducting all moneys which Assignee may at its option pay for the discharge of any lien on any of said property and any indebtedness which under the law is entitled to priority of payment, and all expenses, including a reasonable fee to Assignee and its attorneys.

Notwithstanding the foregoing, leases and leasehold interests in real estate are not included in this General Assignment. However, if the Assignee shall determine that the same may be assigned and also that the same has a realizable value for creditors, then the Assignor agrees that upon written demand of the Assignee, it will assign and transfer said lease or leasehold interest to said Assignee, or nominee, for administration under the terms of this General Assignment.

All property assigned to Assignee is hereinafter referred to as "Assigned Property".

Notwithstanding the foregoing, contracts and/or agreements between Assignor and any Labor Union, or Trade Associations and properties exempt from executions, are excluded from this General Assignment and are not hereby assigned.

2.0     Certain Acknowledgments Regarding Transfer. Assignor acknowledges that certain of the assets being assigned under this General Assignment may be subject to restrictions on the use or transfer of such assets, the unauthorized use or transfer of which may result in further damages or claims. Such assets may include, without limitation, intellectual property rights of the Assignor (e.g., trade names, service names, registered and unregistered trademarks and service marks and logos; internet domain names; patents, patent rights and applications therefore, copyrights and registrations and applications therefor; software and source code (and software licenses with respect thereto); customer lists and customer information; know-how, trade secrets, inventions, discoveries, concepts, ideas, methods, processes, designs, formulae, technical data, drawings, specifications, data bases and other proprietary assets (collectively, "Intellectual Property")).

Exhibit A, Page 000002

Assignor represents and warrants that its officers, directors, shareholders, employees, agents, customers and other third parties have been advised not to use, remove or cause a transfer (other than pursuant to this General Assignment) of any of the assets of Assignor, including without limitation the Intellectual Property, either prior or subsequent to this General Assignment, except as expressly authorized in writing in advance, which written authorization is not inconsistent with or otherwise may constitute a breach of any other written agreement. Except as authorized in writing, which has been disclosed in writing to Assignee, Assignor further represents and warrants that no asset (including, without limitation, the Intellectual Property) has been transferred, used, or removed; in whole or in part, in a manner that interferes with the rights and interests of a third party(ies) in such asset or otherwise may constitute a breach of any contract with such third party(ies).

3.0   Duties of Assignor.

     3.1   Mail.  Assignor hereby agrees that all postal correspondence is hereby routed to Assignee through Assignee's method of delivery designed in writing by Assignee.

     3.2   Creditor List.  Assignor shall concurrently herewith furnish to ABC SERVICES a true and complete listing of all Assignor's creditors and shareholders including but not limited to name, address, contact information, amount of the claim and a brief description of the claims, together with an affidavit verify same in the form attached hereto as Schedule A.

4.0   Duties of Assignee.

     4.1   Care for Assigned Property.  Assignee shall provide commercial reasonable care for the Assigned Property, to the extent that the Assigned Property includes funds and materials necessary to do so.

     4.2   Operation of the Business.  Assignee may at Assignee's discretion continue to operate the business of Assignee, pending the sale or other liquidation of the Assigned Property.  Such operation may include the use of independent contractors retained through an outside service and such other consultants, counsel and advisors as Assignee deems appropriate.

     4.3   Conduct of the General Assignment for the Benefit of Creditor.  Assignee shall be responsible to conduct this General Assignment for the Benefit of Creditors in accordance with applicable law, including but not necessarily limited to the following:

    (a) Within 30 days of the date hereof provide notice to all creditors of the bar date for claims to be filed of not less than 150 and not more than 180 days of the notice;

    (b) Conduct the orderly disposition of the Assigned Assets; and

    (c) Distribute the proceeds of the disposition of Assigned Assets, less Assignee's fees and expenses in accordance with applicable legal requirements.

(d) Said Assignee is to receive the said property, conduct the said business, should it deem it proper, and is hereby irrevocably authorized at any time after the execution hereof to sell, lease, or otherwise dispose of said property upon such time and terms as it may see fit.

(e) Said Assignee shall use and apply the net proceeds arising from the conducting of said business and from the sale, or lease or other disposition of said property as follows:

(1) To deduct therefrom (or to reimburse itself with respect to) all sums which said Assignee may at its option pay for the discharge of any lien on any of said property and any indebtedness which under the law is entitled to priority of payment, and all expenses, including a reasonable fee to the Assignee (as hereinafter defined) and to its attorney, and to the attorney for the Assignor; and, in those instances where a creditors' committee has been selected at any meeting of the creditors of the Assignor (without regard to the actual amount or number of creditors present at such creditors' meeting) then a reasonable fee shall be paid to the attorney appointed by said Creditors' Committee in an amount fixed by the said creditors' committee and said Assignee.

(2) The balance of the proceeds then remaining shall be paid to the creditors of the Assignor, pro rata, according to the indebtedness due each of them, individually, from the Assignor.

5.0    Compensation to Assignee and Reimbursement of Expenses.  With respect to the fees of the Assignee referred to in paragraph 4.3(e)(1) hereinabove, Assignor hereby expressly and irrevocably agrees as follows:  That the term "a reasonable fee to Assignee", as used herein, is defined as, and includes the following: (a) A minimum fee payable of $50,000.00 shall be paid as a non-refundable deposit concurrently with execution of this assignment, plus and (b) ABC Services hourly rate for services payable on a monthly basis plus actual out-of-pocket expenses,  including but not limited,  to attorneys, accountants, appraisers, liquidators, real estate brokers, and outside vendors or service provider(s). Reasonable compensation does not replace or subsume the reimbursement of all the Assignee's expenses incurred as a result of the administration of the assignment estate from the proceeds generated therefrom.  ABC Services agrees to cap its fee at $50,000 until such time as SunWest Bank's secured claim or any claim subrogated to Sunwest Bank's secured claim is paid in full.. To the extent that all or any portion of the $50,000.00 has been paid to the Assignee by the Assignor same shall be deemed as earned upon receipt as a nonrefundable deposit.

Once the secured claims as stated above are satisfied in full, ABC Services is entitled to a fee of 10% of the total monies collected in connection with this General Assignment and for the collection and liquidation of the assets assigned, but in no event shall ABC Services receive less than $25,000 for the post secured claim satisfaction services, and (c) a fee of 5% shall be charged on distributions to general unsecured creditors. If any undeliverable dividends to unsecured creditors or any reserve of other funds remain unclaimed for a period of one hundred and twenty (120) days after issuance of last distribution checks by the Assignee, ("Unclaimed Funds"), then the same shall become the property of Assignee and used to supplement its fees for services rendered during the administering this General Assignment, and pay for any services rendered post-closing of the assignment estate.

In an addition to all of the foregoing, when applicable, in the opinion of the Board of Directors of Assignee, an additional and reasonable fee may be taken for special, unusual, or extraordinary services actually performed by Assignee in connection with the operation, management, preservation, or administration of the property of the General Assignment; and, in this connection the Board of Directors

4

of the Assignee corporation, or the President of the Assignee corporation, is hereby given the right and discretion to determine the nature and extent of such special, unusual or extraordinary services, and the amount of additional fees in connection therewith.

The total of all of said fees shall be paid from the property assigned, and from all of the proceeds thereof and from any interest, income and increments and any additions thereto. All of the aforementioned amounts shall be determined at Assignee's sole discretion and judgment.

6.0    <u>Warranties of Assignee</u>.  While having performed preliminary due diligence, Assignee hereby relies upon many representations made by Assignor.  Assignee makes no warranties other than the following:

(a)    A list of creditors and equity holders has been delivered to Assignee along with an affidavit by Assignor's agents verifying same.

(b)    Assignor has completed Assignee's pro forma due diligence (or tendered an equivalent version thereof) and has certified that all information provided is true and correct to the best of its knowledge.

(c)    Assignor also warrants that Assignee did not aid in the completion of said documents.

Apart from the receipt of said documents, Assignee makes no warranties or representations regarding Assignor's operations.

7.0    <u>Warranties of Assignor</u>.  Assignor represents and warrants to Assignee, acknowledging the Assignee will be relying upon the warranty of Assignor as follows:

(a)    Assignor has delivered to Assignee a true correct and complete list of creditors and equity holders, amounts due to each creditor, and contact information for each creditor, amount of equity held by each equity holder and contact information for each equity holder, along with an affidavit verifying same;

(b)    Assignor has correctly and completely completed Assignee's pro forma due diligence (or tendered an equivalent version thereof acceptable in the sole discretion of Assignee) and has certified that all info provided is true and correct to the best of its knowledge;

(c)    Assignor also warrants that Assignee did not aid in the completion of the documents referenced in (a) and (b) above;

(d)    That this General Assignment for the Benefit of Creditors has been properly authorized by all appropriate actions true and correct copies of which are attached hereto as Schedule B and the each of individual(s) executing this General Assignment on behalf of Assignor are property authorized to do so;

5

(e)     That all information provided by the Assignor to Assignee with respect to the Assigned Property and/or Assignor's business is true and correct in all material respects and does not fail or omit to state any facts with respect thereto which would be material;

(f)     Assignor has all requisite power and authority to execute, deliver and perform its obligations under this General Assignment, including, without limitation, to transfer the property transferred to the Assignee hereby;

(g)     The execution, delivery and performance by the Assignor of this General Assignment has been duly authorized by all necessary corporate and other action and does not and will not require any registration with, consent or approval of, or notice to or action by, any person (including any governmental authority) in order to be effective and enforceable;

(h)     This General Assignment constitutes the legal, valid and binding obligations of the Assignor, enforceable against Assignor in accordance with their respective terms; and

8.0     <u>Limitations on Liability of Assignee</u>.  Assignor acknowledges that Assignee is acting solely as Assignee in connection with this General Assignment and not in its personal capacity. As a result, Assignor expressly agrees that Assignee, its members, officers and agents shall not be subject to any personal liability whatsoever to any person in connection with the affairs of this General Assignment, except for its own gross negligence and misconduct knowingly and intentionally committed in bad faith.  No provision of this Agreement shall be construed to relieve the Assignee from liability for its own gross negligence and misconduct knowingly and intentionally committed in bad faith, except that:

(a)     The Assignee shall not be required to perform any duties or obligations except for the performance of such duties and obligations, as are specifically set forth in this General Assignment, and no implied covenants or obligations shall be read into this General Assignment against the Assignee;

(b)     In the absence of bad faith on the part of the Assignee, the Assignee may conclusively rely, as to the truth, accuracy and completeness thereof, on the statements and certificates or opinions furnished to the Assignee by the Assignor and conforming to the requirements of this General Assignment;

(c)     The Assignee shall not be liable for any error of judgment made in good faith;

(d)     The Assignee's maximum liability under all circumstances shall be limited to the total amount of fees received.

In connection with the foregoing, the General Assignment estate shall defend, indemnify and hold the Assignee and its past and present officers, members, managers, directors, employees, counsel, agents, attorneys, parent, subsidiaries, affiliates, successors and assigns, (collectively, the "Indemnified Persons") harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, charges, expenses and disbursements (including reasonable attorneys' fees and costs) of any kind or nature whatsoever which may at any time be imposed on, incurred by, or asserted against any such Indemnified Person in any way relating to or

6

arising out of this General Assignment, any other document contemplated by or referred to herein or therein, the transactions contemplated hereby or thereby, or any action taken or omitted by any Indemnified Person under or in connection with any of the foregoing, including, without limitation, with respect to any investigation, litigation or proceeding related to or arising out of any of the foregoing, whether or not any Indemnified Person is a party thereto, and including, without limitation, any other Indemnified Claims (defined below) provided, that the General Assignment estate shall have no obligation hereunder to any Indemnified Person with respect to indemnified claims to the extent resulting from the willful misconduct or gross negligence of any Indemnified Person. The foregoing indemnification shall survive any termination of this General Assignment or the transactions contemplated hereby. For purposes hereof, "Indemnified Claims" means any and all claims, demands, actions, causes of action, judgments, obligations, liabilities, losses, damages and consequential damages, penalties, fines, costs, fees, expenses and disbursements (including without limitation, fees and expenses of attorneys and other professional consultants and experts in connection with investigation or defense) of every kind, known or unknown, existing or hereafter arising, foreseeable or unforeseeable, which may be imposed upon, threatened or asserted against, or incurred or paid by, any Indemnified Person at any time and from time to time, because of, resulting from, in connection with, or arising out of any transaction, act, omission, event or circumstance in any way connected with this General Assignment, any other document contemplated by or referred to herein or therein, the transactions contemplated hereby or thereby, or any action taken or omitted by any Indemnified Person under or in connection with any of the foregoing, including but not limited to economic loss, property damage, personal injury or death in connection with, or occurring on or in the vicinity of, any assets of the General Assignment estate through any cause whatsoever, any act performed or omitted to be performed under this General Assignment, any other document contemplated by or referred to herein, the transactions contemplated hereby, or any action taken or omitted by any Indemnified Person under or in connection with any of the foregoing, any breach by Assignor of any representation, warranty, covenant, agreement or condition contained herein or in any other agreement between Assignor and Assignee.

9.0   Reliance.

(a)   The Assignee may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties.

(b)   The Assignee may consult with legal counsel to be selected by it, and the Assignee shall not be liable for any action taken or suffered by it in accordance with the advice of such counsel.

(c)   Persons dealing with the Assignee shall look only to the General Assignment estate to satisfy any liability incurred by the Assignee in good faith to any such person in carrying out the terms of this General Assignment, and the Assignee shall have no personal or individual obligation to satisfy any such liability.

10.0   Resignation and Replacement of Assignee.  The Assignee may resign and be discharged from its duties hereunder at any time; provided that such resignation shall not become effective until

7

a successor Assignee has been appointed by the resigning Assignee and such successor has accepted its appointment in writing delivered to the resigning Assignee.  Any successor Assignee appointed hereunder shall execute an instrument accepting such appointment hereunder and shall deliver one counterpart thereof to the resigning Assignee.  Thereupon such successor Assignee shall, without any further act, become vested with all the estate, properties, rights, powers, trusts, and duties of his predecessor in connection with the General Assignment with like effect as  if originally named therein, but the resigning Assignee shall nevertheless, when requested in writing by the successor Assignee, execute and deliver an instrument or instruments conveying and transferring to such successor Assignee all of the estates, properties, rights, powers and trusts of such resigning Assignor in connection with the General Assignment, and shall duly assign, transfer, and deliver to such successor Assignee all property and money held by it hereunder.

11.0   Miscellaneous Provisions

(a)   Governing Law, Jurisdiction and Venue.  This General Assignment shall be construed under and in accordance with the laws of the State of California, including but not limited to Statute of Limitations laws.  The state courts of California shall exercise jurisdiction with respect to any dispute hereunder, and the parties agree that the proper venue for any such dispute shall be in Orange County, State of California.

(b)   Construction.  This General Assignment is to be viewed as having been drafted jointly by the parties and is not to be construed for or against any of the parties.

(c)   Duplicate Counterparts.  This General Assignment may be executed in duplicate counterparts, each of which shall be deemed to be an original; provided, however, such counterparts shall together constitute only one instrument.

(d)   Severability.  If any provision of this General Assignment or any portion of any provision of this General Assignment shall be deemed to be invalid, illegal or unenforceable, such invalidity, illegality or unenforceability shall not alter the remaining portion of such provision, or any other provision hereof, as each provision of this General Assignment shall be deemed severable from all other provisions hereof.

(e)   No Third-Party Beneficiary.  No term or provision of this General Assignment or the schedules hereto is intended to be, nor shall any such term or provision be construed to be, for the benefit of any person, firm, corporation or any other entity not a party hereto (including, without limitation, real estate brokers and finders), and no such other person, firm, corporation or entity shall have any right or cause of action hereunder.

(f)   Time of Essence.  Time is expressly made of the essence as to the performance of each and every obligation and condition of this General Assignment.

(g)   Notices.  Any notice or other communication provided for herein or given hereunder to a party hereto must be in writing addressed to the respective party's address listed below, and shall be deemed received upon: (i) actual receipt, or (ii) 24 hours after sent by facsimile (with "answerback" confirmation of facsimile transmission) of receipt by receiving party, or (iii) by overnight delivery by major recognized carrier with written verification of receipt by receiving party or, (iv) five (5) days

8

after sent by Certified Mail, Return Receipt Requested.  Each such notice, request or consent shall be deemed effective upon same being 'received' in the fashion as defined above.

9

| | |
|---|---|
| If To Assignee | ABC Services Group, Inc.<br>13681 Newport Avenue, Suite 8-609,<br>Tustin, CA 92781<br>Attention: Charles Klaus, President<br>Tel. No.: (949) 922-1211<br>Fax No.: (714) 844-9090<br>Email: chuck@abcservices.group |
| With a copy to<br>Counsel for Assignee: | Jeffrey Broker<br>Broker & Associates, PC<br>18191 Von Karman Ave<br>Irvine, CA 92612<br>Tel. No.:  949-555-2000<br>Email:  JBroker @brokerlaw.biz |
| If To Assignor: | Raymond G Yates<br>1101 Ebtide Road<br>Corona Del Mar, CA 92625<br>Tel No. _____<br>Email: ray@theyateshome.com |
| With a copy to<br>Counsel for Assignor: | Leonard Shulman<br>8105 Irvine Center Dr, Ste 600<br>Irvine, CA 92618<br>Tel. No.:  949-340-3400<br> Email: LShulman@shbllp.com |

Either party may change its address for notice purposes by giving notice in the manner set forth in this Section.

(h)  Headings.  The headings of this General Assignment are for the purpose of reference only and shall not limit or define the meaning hereof.

(i)  Attorney Fees.  If there is any dispute between the Parties with respect to the Property, this General Assignment, the Deposits, the performance of the obligations hereunder or the effect of a termination under this General Assignment, the prevailing party shall be paid all costs and expenses incurred by the other party in connection with such proceedings, including reasonable attorneys' fees (including fees for the service of salaried attorneys regularly employed by a party) and costs. The parties agree that each of them shall bear its own legal costs and expenses in connection with the negotiation, drafting, execution of this General Assignment

(j)  No Waiver.  A waiver by either party of a breach of any of the covenants, conditions or obligations under this General Assignment to be performed by the other party shall not be construed as

10

a waiver of any succeeding breach of the same or other covenants, conditions or obligations of this General Assignment.

(k)     Entire Agreement.  This General Assignment constitutes the entire agreement between the Parties.  This General Assignment may not be amended or modified except by an amendment in writing signed by the handwritten signature of each party.  Without limiting the foregoing no exchange of emails shall serve to amend this General Assignment.

(l)     Time is of the Essence.   Time is of the essence in the performance of and conditions set forth in this General Assignment.

(m)     No Adequate Remedy at Law.  Each party hereto acknowledges and agrees that damages will not adequately compensate the other party for a breach of the terms of this General General Assignment and that, as such, each party shall be entitled to specific performance of this General General Assignment.

12.     Arbitration.  All disputes, claims and controversies, including and not limited to all other matters including breach of fiduciary duty, breach of contract, negligence or other tort claims (intentional or unintentional) and/or declaratory or other equitable relief arising under or concerning the performance of this General Assignment shall be submitted to binding arbitration pursuant to the provisions of California Code of Civil Procedure 1282 through 1284.2, inclusive, before one (1) retired California judge or justice selected by agreement of the parties, or from the Business Civil Litigation Panel of Attorneys published by the Administrator for Orange County Arbitration.  If the parties cannot agree upon an arbitrator within ten days after any party demands arbitration, then JUDICATE WEST shall provide the names of three available retired judges on its staff and each party shall be entitled to strike one name.  The remaining judge shall be the selected arbitrator.  If either side refuses to strike an arbitrator within ten days form the service of the names of the arbitrators, then JUDICATE WEST shall decide which of the remaining two shall be selected.  The findings, order or award of the arbitrator may thereafter be entered as a judgment upon petition to the Orange County Superior Court.  It shall be a condition precedent to the subject matter jurisdiction of any court of the State of California that any such disputes, controversies and actions arising out of this agreement or of any services performed as a result of this agreement, including, without limitation, the scope and extent of the issues to be arbitrated, shall first have been determined by arbitration.  You understand and agree that by consenting to arbitrate all disputes and controversies you agree to waive trial by jury.

Assignor Initials approving
arbitration provision

[Signatures on next page]

In witness whereof, the parties have executed this General Assignment sufficient to bind themselves as of the date first above written.

11

Morningside Recovery, LLC                    ABC Services Group, Inc.

By: _____               By:  Charles Klaus

Its: RAYMOND G. YATES                       Its:  President
     MANAGING MEMBER

By: _____

Its: _____

12

Exhibit A, Page 000012

# SCHEDULE A

## CREDITOR LIST AFFIDAVIT

13

# Affidavit

Attached hereto is a complete list of the creditors and shareholders of Morning Side Recovery, LLC, which list includes names, addresses, cities, states, zip codes, together with the anticipated claim for each creditor of the General Assignment estate.

I declare under penalty of perjury under the laws of the State of California that the information contained in the attached list is true and correct to the best of my knowledge.

Dated:  September 21, 2018

Morningside Recovery, LLC

By: _Raymond G. Yaes_

Its: _Managing Member_

14

# SCHEDULE B

## CONSENT OF MEMBERSHIP AND MANAGERS TO THE GENERAL ASSIGNMENT FOR THE BENEFIT OF CREDITORS

15

Exhibit A, Page 000015

# WRITTEN CONSENT OF THE MEMBERSHIP AND MANAGERS OF MORNINGSIDE RECOVERY, LLC
## (a California Limited Liability Company)
## TO GENERAL ASSIGNMENT FOR THE BENEFIT OF CREDITORSS

On September 21, 2018 as evidenced by their signatures below, and pursuant to the provisions of 17104(I)(1) of the Beverly-Killea Limited Liability Act ("Act"), the authority granted to it by §17150 of the Act, and the provisions of that certain Operating Agreement dated as of March 18, 2002, ("Operating Agreement"), the undersigned being all the members of Morningside Recovery LLC, ("Company") as authorized at §17001(t) and defined at §17001(x) of the Act, and the undersigned individuals as managers of Company, without a meeting, consented to the following actions:

BE IT RESOLVED:

That any two managers constituting a special majority of this company be, and are, hereby authorized and directed by the managers of this company, in meeting assembled, to make an General Assignment of all assets of the company to ABC Services Group, Inc., a Delaware corporation ("Assignee"), for the pro rata benefit of all creditors of this company, and that any two managers shall be, and they are hereby authorized and directed to execute said General Assignment containing such provisions as may be agreed upon between them and said Assignee, and they are also authorized and directed to execute and deliver to said Assignee, such other deeds, General Assignments, and agreements as may be necessary to carry this resolution into effect.

BE IT FURTHER RESOLVED:

That said assignee for the benefit of creditors be, and it hereby is, authorized to execute and file and prosecute on behalf of this corporation all claims for refund or abatement of all excess taxes heretofore or hereafter assessed against or collected from this corporation and any one officer of this corporation be, and it is, hereby authorized and directed to make, execute and deliver in favor of such person as may be designated by the assignee for the benefit of creditors, a power of attorney on the regular printed form thereof used by the United States Treasury Department so as to authorize said attorney-in-fact to process any tax claims for it on behalf of this company.

The undersigned, being all the Members of this Company, hereby consent to the foregoing action as of the date set forth above.

Raymond G Yates                    99.0%        Series A Voting

By:_____

Raymond J Yates                    1.0%         Series A Voting

By:_____

16

Exhibit A, Page 000016

# Schedule C

## POWER OF ATTORNEY

17

Exhibit A, Page 000017

# POWER OF ATTORNEY

Morningside Recovery, LLC, (the "Company"), is the Assignor under that certain General Assignment for the Benefit of Creditors, dated as of September 21, 2018. (the "General Assignment"), by and between the Company and ABC Services Group, Inc., a Delaware corporation, as Assignee ("ABC SERVICES").

WHEREAS, pursuant to the General Assignment, the Company is assigning substantially all of its assets to ABC SERVICES to be administered, liquidated and distributed by ABC SERVICES as described therein;

NOW, THEREFORE, in order for ABC SERVICES to fully effectuate the General Assignment and each of the other transactions contemplated thereby, the Company hereby appoints ABC SERVICES its attorney-in-fact and hereby grants to such attorney-in-fact full power and authority to do and perform any and every act and thing whatsoever requisite, necessary, or proper to be done in the exercise of any of the rights and powers herein granted, hereby ratifying and confirming all that such attorney-in-fact shall lawfully do or cause to be done by virtue of this Power of Attorney and the rights and powers herein granted.  ABC SERVICES, acting through any one of its duly appointed officers, and with full power of attorney in the name of, and for on behalf of the Company, may execute, acknowledge, deliver, and record and document or process required to effectuate the General Assignment, including but not limited to:

(1)       such transfer powers, deeds, bills of sale, General Assignments of leases, General Assignments of liens, General Assignment of notes, General Assignments of any other assets whatsoever, memoranda of General Assignments, and such other instruments of transfer and General Assignment and releases as ABC SERVICES shall determine to be necessary or appropriate to consummate or to provide notice of the transfer of any or all of the Company's assets to ABC SERVICES pursuant to the General Assignment, in form and substance satisfactory to ABC SERVICES, with the execution, acknowledgment, delivery and/or recordation thereof by ABC SERVICES to constitute evidence of such determination and ABC SERVICES's satisfaction thereof;

(2)       such other documents, certificates, receipts, notices, instructions, statements and other writing as ABC SERVICES shall determine to be necessary or appropriate in connection with or to carry out the administration or transfer of the Company' assets as contemplated by the General Assignment, in form and substance satisfactory to ABC SERVICES, with the execution, acknowledgment, delivery and/or recordation thereof by ABC SERVICES to constitute evidence of such determination and ABC SERVICES's satisfaction thereof;

(3)       any amendments to the documents of transfer delivered in connection with the transfer or administration of the Company's assets as contemplated by the General Assignment, as ABC SERVICES shall determine to be necessary or appropriate to vest full right, title and interest of the Company in and to the Company's assets in ABC SERVICES pursuant to the terms of the General Assignment, in form and substance satisfactory to ABC SERVICES, with the execution, acknowledgment, delivery and/or recordation thereof by ABC SERVICES to constitute evidence of such determination and ABC SERVICES's satisfaction thereof; and

18

(4)     such other documents, certificates, receipts, notices, instructions, statements and other writing as ABC SERVICES shall determine to be necessary or appropriate in connection with or to obtain any refund or abatement of excess taxes heretofore or hereafter assessed against or collected from the Company by the U.S. Treasury Department, and any State or local taxing agency; and

(5)     such other documents, certificates, receipts, notices, instructions, statements and other writing as ABC SERVICES shall determine to be necessary or appropriate in connection with the administration of employee benefit and retirement programs.

ABC SERVICES is hereby empowered to determine in its sole discretion the time or times when, the purpose for and the manner in which any power herein conferred upon it shall be exercised, and the conditions, provisions or covenants of any instrument or document which may be executed by it pursuant hereto.  ABC SERVICES is further empowered take any other action of any type whatsoever in connection with the foregoing which, in the opinion of ABC SERVICES, may be of benefit to, in the best interest of, or legally required to be performed by, the Company.  ABC SERVICES may file and prosecute, compromise and/or settle, all claims before the Internal Revenue Service and any State or local taxing agency as contemplated by the General Assignment.

The foregoing is made for the benefit of, and may be relied upon by, ABC SERVICES, its successor, assigns, agents and representatives.

This Power of Attorney shall be governed by the laws of the State of California, without regard to choose of law principles.

IN WITNESS WHEREOF, the undersigned has executed this Power of Attorney this 21st day of September, 2018, to be effective as of such date.


Morningside Recovery, LLC

By: _____
        Raymond G Yates

Its: _____


By: _____
        [name]

Its: _____


19

Exhibit A, Page 000019

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT B**



**Morningside** RECOVERY

Client Name:

| 9. ASSIGNMENT OF BENEFITS |
|---|

Client and/or Guarantor, as applicable, hereby appoints as his or her authorized representative, and assigns to, Morningside, all of his or her right, title, and interest in and to, and relating in and to the recovery of, any and all health care benefits otherwise payable to Client or Guarantor or to which Client or Guarantor is entitled for treatment rendered to Client by Morningside

Client and/or Guarantor also specifically authorizes Morningside to:

- File and prosecute any required appeal or grievance with Client's insurer for payment of medical claims submitted by or on behalf of Morningside.
- File any required complaint, appeal or grievance with the Department of Managed Health Care, Department of Insurance, Department of Labor, or any other regulatory agency for payment of claims submitted by or on behalf of Morningside.
- File any required litigation or arbitration against any health plan and/or health insurer for payment of medical claims submitted by or on behalf of Morningside, and to exert or receive any other rights or benefits under any health plan with respect to the treatment rendered by Morningside. Client and/or Guarantor specifically authorize Morningside to name Client and/or Guarantor, as plaintiff or plaintiffs in such litigation or arbitration against any health plan and/or health insurer or otherwise pursue claims on behalf of Client and/or Guarantor. Client and/or Guarantor hereby also assign to Morningside any right to recover its full billed charges and any expenses and fees incurred for pursuing the claim, as well as all rights, statutory or contractual, to any additional recovery related to health benefits such as treble damages, punitive damages, and/or penalties.
- Discuss Client's personal health information with any applicable health plan or health insurer.
- Client and/or Guarantor specifically authorize any law firm appointed by Morningside to file litigation or arbitration on Client and/or Guarantor's behalf with respect to all of the items listed above.



**Morningside**™
RECOVERY

Client Name: ▇▇▇▇▇▇

**9. ASSIGNMENT OF BENEFITS (FOR PRIVATE PAY CLIENTS: PLEASE SKIP THIS SECTION AND GO TO SECTION 10)**

Client and/or Guarantor, as applicable, hereby appoints as his or her authorized representative, and assigns to, Morningside, all of his or her right, title, and interest in and to, and relating in and to the recovery of, any and all health care benefits otherwise payable to Client or Guarantor or to which Client or Guarantor is entitled for treatment rendered to Client by Morningside.

Client and/or Guarantor also specifically authorizes Morningside to:

- File and prosecute any required appeal or grievance with Client's insurer for payment of medical claims submitted by or on behalf of Morningside.
- File any required complaint, appeal or grievance with the Department of Managed Health Care, Department of Insurance, Department of Labor, or any other regulatory agency for payment of claims submitted by or on behalf of Morningside.
- File any required litigation or arbitration against any health plan and/or health insurer for payment of medical claims submitted by or on behalf of Morningside, and to exert or receive any other rights or benefits under any health plan with respect to the treatment rendered by Morningside. Client and/or Guarantor specifically authorize Morningside to name Client and/or Guarantor, as plaintiff or plaintiffs in such litigation or arbitration against any health plan and/or health insurer or otherwise pursue claims on behalf of Client and/or Guarantor. Client and/or Guarantor hereby also assign to Morningside any right to recover its full billed charges and any expenses and fees incurred for pursuing the claim, as well as all rights, statutory or contractual, to any additional recovery related to health benefits such as treble damages, punitive damages, and/or penalties.
- Discuss Client's personal health information with any applicable health plan or health insurer.
- Client and/or Guarantor specifically authorize any law firm appointed by Morningside to file litigation or arbitration on Client and/or Guarantor's behalf with respect to all of the items listed above.





**Morningside** RECOVERY

Client Name: ▮▮▮▮▮▮▮▮▮▮▮

## 9.  ASSIGNMENT OF BENEFITS (FOR PRIVATE PAY CLIENTS: PLEASE SKIP THIS SECTION AND GO TO SECTION 10)

Client and/or Guarantor, as applicable, hereby appoints as his or her authorized representative, and assigns to, Morningside, all of his or her right, title, and interest in and to, and relating in and to the recovery of, any and all health care benefits otherwise payable to Client or Guarantor or to which Client or Guarantor is entitled for treatment rendered to Client by Morningside.

Client and/or Guarantor also specifically authorizes Morningside to:

- File and prosecute any required appeal or grievance with Client's insurer for payment of medical claims submitted by or on behalf of Morningside.
- File any required complaint, appeal or grievance with the Department of Managed Health Care, Department of Insurance, Department of Labor, or any other regulatory agency for payment of claims submitted by or on behalf of Morningside.
- File any required litigation or arbitration against any health plan and/or health insurer for payment of medical claims submitted by or on behalf of Morningside, and to exert or receive any other rights or benefits under any health plan with respect to the treatment rendered by Morningside.  Client and/or Guarantor specifically authorize Morningside to name Client and/or Guarantor, as plaintiff or plaintiffs in such litigation or arbitration against any health plan and/or health insurer or otherwise pursue claims on behalf of Client and/or Guarantor.  Client and/or Guarantor hereby also assign to Morningside any right to recover its full billed charges and any expenses and fees incurred for pursuing the claim, as well as all rights, statutory or contractual, to any additional recovery related to health benefits such as treble damages, punitive damages, and/or penalties.
- Discuss Client's personal health information with any applicable health plan or health insurer.
- Client and/or Guarantor specifically authorize any law firm appointed by Morningside to file litigation or arbitration on Client and/or Guarantor's behalf with respect to all of the items listed above.





Morningside

Client Name ████████████

### 9.  ASSIGNMENT OF BENEFITS (FOR PRIVATE PAY CLIENTS: PLEASE SKIP THIS SECTION AND GO TO SECTION 10)

Client and/or Guarantor, as applicable, hereby appoints as his or her authorized representative, and assigns to, Morningside, all of his or her right, title, and interest in and to, and relating in and to the recovery of, any and all health care benefits otherwise payable to Client or Guarantor or to which Client or Guarantor is entitled for treatment rendered to Client by Morningside.

Client and/or Guarantor also specifically authorizes Morningside to:

- File and prosecute any required appeal or grievance with Client's insurer for payment of medical claims submitted by or on behalf of Morningside.
- File any required complaint, appeal or grievance with the Department of Managed Health Care, Department of Insurance, Department of Labor, or any other regulatory agency for payment of claims submitted by or on behalf of Morningside.
- File any required litigation or arbitration against any health plan and/or health insurer for payment of medical claims submitted by or on behalf of Morningside, and to exert or receive any other rights or benefits under any health plan with respect to the treatment rendered by Morningside.  Client and/or Guarantor specifically authorize Morningside to name Client and/or Guarantor, as plaintiff or plaintiffs in such litigation or arbitration against any health plan and/or health insurer or otherwise pursue claims on behalf of Client and/or Guarantor.  Client and/or Guarantor hereby also assign to Morningside any right to recover its full billed charges and any expenses and fees incurred for pursuing the claim, as well as all rights, statutory or contractual, to any additional recovery related to health benefits such as treble damages, punitive damages, and/or penalties.
- Discuss Client's personal health information with any applicable health plan or health insurer.
- Client and/or Guarantor specifically authorize any law firm appointed by Morningside to file litigation or arbitration on Client and/or Guarantor's behalf with respect to all of the items listed above.



**Morningside** RECOVERY™
Client Name: ▮▮▮▮▮▮

| **9.   ASSIGNMENT OF BENEFITS (FOR PRIVATE PAY CLIENTS: PLEASE SKIP THIS SECTION AND GO TO SECTION 10)** |
|---|

Client and/or Guarantor, as applicable, hereby appoints as his or her authorized representative, and assigns to, Morningside, all of his or her right, title, and interest in and to, and relating in and to the recovery of, any and all health care benefits otherwise payable to Client or Guarantor or to which Client or Guarantor is entitled for treatment rendered to Client by Morningside.

Client and/or Guarantor also specifically authorizes Morningside to:

- File and prosecute any required appeal or grievance with Client's insurer for payment of medical claims submitted by or on behalf of Morningside.
- File any required complaint, appeal or grievance with the Department of Managed Health Care, Department of Insurance, Department of Labor, or any other regulatory agency for payment of claims submitted by or on behalf of Morningside.
- File any required litigation or arbitration against any health plan and/or health insurer for payment of medical claims submitted by or on behalf of Morningside, and to exert or receive any other rights or benefits under any health plan with respect to the treatment rendered by Morningside.  Client and/or Guarantor specifically authorize Morningside to name Client and/or Guarantor, as plaintiff or plaintiffs in such litigation or arbitration against any health plan and/or health insurer or otherwise pursue claims on behalf of Client and/or Guarantor.  Client and/or Guarantor hereby also assign to Morningside any right to recover its full billed charges and any expenses and fees incurred for pursuing the claim, as well as all rights, statutory or contractual, to any additional recovery related to health benefits such as treble damages, punitive damages, and/or penalties.
- Discuss Client's personal health information with any applicable health plan or health insurer.
- Client and/or Guarantor specifically authorize any law firm appointed by Morningside to file litigation or arbitration on Client and/or Guarantor's behalf with respect to all of the items listed above.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## EXHIBIT C

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Case No. SA CV 19-0531-DOC (DFMx)                Date:  June 14, 2019

Title: ABC SERVICES GROUP, INC. v. UNITED HEALTHCARE SERVICES, INC.,
    et al.

PRESENT:

### THE HONORABLE DAVID O. CARTER, JUDGE

|  Deborah Lewman  |  Not Present  |
| :---: | :---: |
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
| :---: | :---: |
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):   ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION TO DISMISS [17]**

Before the Court is Defendants Optum Services, Inc. ("Optum"), United
Behavioral Health ("UBH"), and United HealthCare Services, Inc.'s ("UHS")
(collectively, "Defendants") Motion to Dismiss ("Motion") (Dkt. 17) Plaintiff ABC
Services Group, Inc.'s ("Plaintiff") Complaint. For the reasons below, the Court
GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss.

I.    **Background**

A.    **Facts**

The Court adopts the facts as set out in Plaintiff's Complaint ("Compl.") (Dkt. 1).
Plaintiff ABS Services Group, Inc. serves as assignee for the benefit of creditors of
Morningside Recovery, LLC ("Morningside"). Compl. at 1. Morningside, at all relevant
times, provided professional medical and mental health services and rehabilitation care
for patients suffering from mental health and substance use disorders ("SUDs") from its
location in Irvine, California. *Id.* ¶ 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Case No. SA CV 19-0531-DOC (DFMx)                                    Date: June 14, 2019

Page 2

Defendants are providers of health insurance that are licensed to transact the business of insurance in California. Compl. ¶¶ 3–5. Starting no later than 2014, Defendants offered health insurance plans that include coverage for mental health and SUDs. *Id.* ¶ 12. This coverage included reimbursing costs for mental health and SUD treatment from out-of-network providers, including Morningside. *Id.* ¶¶ 2, 12–13. At all relevant times, Morningside provided medical and mental health services and SUD treatment to subscribers of Defendants' health insurance plans (collectively, "Patients"), some or all of whom had express coverage for such treatment and were entitled to be reimbursed for the cost of Morningside's services. *Id.* ¶¶ 12, 16–18.

Prior to the rendition of professional services, treatments and the provision of care, Morningside sought authorization from Defendants to provide treatment to the Patients. *Id.* ¶¶ 20, 36. "Defendants authorized the Patients to undergo mental health and SUD treatment at Morningside and verified that each of the Patients had coverage which included coverage for the treatment Morningside provided." *Id.* ¶ 21. Further, "during the insurance verification process for the Patients, [Defendants] represented to [Morningside] that it would pay [Morningside's] fees." *Id.* ¶ 22. However, Defendants subsequently refused to pay for the treatment provided by Morningside. *Id.* ¶ 51.

Prior to providing any treatment, Morningside obtained the agreement of each patient, guaranteeing payment for the services rendered. *Id.* ¶ 34. The Patients also assigned to Morningside all their legal and equitable rights to the recovery of payment for the services under their health insurance plans, including the right to seek any available judicial remedies. *Id.* ¶ 26; Compl., Ex. B.

On September 21, 2018, Morningside executed a general assignment of assets for the benefit of creditors, "a statutory alternative to bankruptcy under [the] California Code of Civil Procedure," *Credit Managers Ass'n of S. California v. Fed. Co.*, 629 F. Supp. 175, 178 (C.D. Cal. 1985); Cal. Code Civ. Proc. § 493.101; Compl. Ex. A at 1. By this instrument, Morningside conveyed to Plaintiff ABC Services Group, Inc. "all of [its] property. . . of every kind and nature." Compl. Ex. A at 1. Pursuant to this general assignment, Plaintiff is to "liquidate the assets … and distribute the proceeds in accordance with applicable law." *Id.* The assignment of assets includes all "choses in action that are legally assignable, together with the proceeds of any existing non-assignable choses in action that may hereafter be recovered or received by the Assignor." *Id.* at 1–2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Case No. SA CV 19-0531-DOC (DFMx)                                Date: June 14, 2019

                                                                          Page 3

  Concurrent with the general assignment for the benefit of creditors, Morningside also executed a power-of-attorney form, under which Plaintiff ABC Services Group, "with full power of attorney in the name of, and for and on behalf of [Morningside], may execute, acknowledge, deliver, and record an[y] document or process required to effectuate the General Assignment." *Id.* at 18.

  **B.**   **Procedural History**

  Plaintiff filed the Complaint (Dkt. 1) on March 17, 2019. Defendants filed the instant Motion to Dismiss ("Motion") (Dkt. 17) on May 9, 2019. Plaintiff opposed ("Opposition") (Dkt. 23) on May 20, 2019, and Defendants replied ("Reply") (Dkt. 25) on May 24, 2019. With leave of the Court (Dkt. 29), Plaintiff filed a response to Defendants' Reply ("Response to Reply") (Dkt. 30) on June 8, 2019.

**II.**   **Legal Standard**

  Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts that, if true, would entitle the complainant to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that a claim must be facially plausible in order to survive a motion to dismiss). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). On a motion to dismiss, a court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). A court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

  In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with the complaint. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Under the incorporation by reference doctrine, courts may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by* 307 F.3d 1119, 1121 (9th Cir. 2002). Courts may treat such a document as "part of the complaint, and thus may assume that its contents are true

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Case No. SA CV 19-0531-DOC (DFMx)                                      Date: June 14, 2019

Page 4

for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Dismissal with leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). This policy is applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding that dismissal with leave to amend should be granted even if no request to amend was made). However, a court need not grant leave to amend when permitting a plaintiff to amend would be an exercise in futility. *See, e.g.*, *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

## III.   Discussion

In the instant Motion, Defendants ask the Court to dismiss all of Plaintiff's claims pursuant to Rule 12(b)(6). *See generally* Mot. The Court examines each of Plaintiff's claims in turn.

### A.   Breach of Employee Welfare Benefit Plan, 29 U.S.C. § 1132(a)(1)(B) ("ERISA")

#### 1.   Failure to Allege ERISA Standing

Defendants argue that the Complaint does not plausibly allege standing to pursue a claim under ERISA with adequate specificity. Mot. at 4. Even if Plaintiff has standing to bring a complaint generally, Defendant argues that Plaintiff lacks ERISA standing because it is merely an assignee of Morningside's claim. Mot. at 5–7; Reply at 2–8. Plaintiff argues that its relationship to Morningside's ERISA claim is more akin to that of the trustee of a bankruptcy estate than to that of an "assignee" in the usual sense. Opp'n at 6–13; Response to Reply at 2 – 4. Each issue is addressed in turn below.

##### a.   Morningside's Standing Under ERISA.

Section 502(a)(1)(B) of ERISA, codified as 11 U.S.C. § 1132(a)(1)(B), authorizes health benefit plan participants and beneficiaries to bring civil enforcement actions in federal court to recover plan benefits. *Simon v. Value Behavior Health, Inc.*, 208 F.3d 1073, 1081 (9th Cir. 2000). However, "health care providers are not 'beneficiaries' within the meaning of ERISA's enforcement provisions," as "[h]ealth care providers'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Case No. SA CV 19-0531-DOC (DFMx)                                    Date: June 14, 2019

Page 5

patients are the ones who receive ERISA health benefits, not the providers themselves."
*DB Healthcare v. Blue Cross Blue Shield*, 852 F.3d 868, 874–75 (9th Cir. 2017).
Accordingly, health care providers "do not have direct authority as beneficiaries to sue
under ERISA. . . to recover payments due them for services rendered, or otherwise to
enforce the statute's protections," *Id.* at 875.

    Although health care providers lack direct standing to sue under ERISA, the Ninth
Circuit has recognized that a healthcare provide may bring suit under ERISA
"derivatively, relying on its patient's assignments of their benefits claims." *Spinedex
Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282, 1289
(9th Cir. 2014). Thus, if a health care provide has derivative standing, "a health care
provider in appropriate circumstances can assert the claims of an ERISA participant or
beneficiary." *DB Healthcare*, 852 F.3d at 876. Whether an assignee has standing depends
on whether the claims are within the scope of assignment. *See Cty. of Monterey v. Blue
Cross of California*, 2019 WL 343419, at *6 (N.D. Cal. Jan. 28, 2019). "To determine the
scope of the assignment, a court must look to the language of an ERISA assignment
itself." *Creative Care, Inc. v. Connecticut General Life Insurance Co.*, 2017 WL
5635015, at *2 (C.D. Cal. July 5, 2017) (internal quotations omitted) (citing *In re
Wellpoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 896 (C.D. Cal.
2012); *Eden Surgical Ctr. v. B. Braun Med., Inc.*, 420 Fed. Appx. 696, 697 (9th Cir.
2011)). *See also DaVita, Inc. v. Amy's Kitchen, Inc.*, ---F. Supp. 3d---, 2019 WL
1509186, at *6–7 (N.D. Cal. 2019) ("In light of the broader context of the patient form. . .
the Court finds the scope of the assignment here to be limited to the right to claims for
payment of benefits"). To be considered beneficiaries under ERISA, plaintiffs "do bear
the burden of showing that their assignments are valid." *Dual Diagnosis Treatment
Center, Inc. v. Blue Cross of California*, SA-CV-15-0736-DOC (DFMx), 2016 WL
6892140, at *13 (C.D. Cal. November, 22, 2016).

    Here, the Complaint alleges that each of the Patients at issue in this action "have
assigned all of their legal and equitable rights to payment and to assert ERISA remedies
under the Plans to [Morningside] in writing." Compl. ¶ 26. The Complaint also includes a
sample assignment signed by the Patients ("Form B"). Compl. Ex. B. Looking to Form B,
the Court finds that Plaintiff has demonstrated a valid assignment from patients of
benefits claims. Form B specifically states that the client "hereby appoints as her or her
authorized representative, and assigns to, Morningside, all of his or her right, title, and
interest in and to, and relating in and to the recovery of, any and all health care benefits
otherwise payable to Client." *Id.* The form specifically assigns all benefits of Patients to
Morningside. Thus, at this stage of the litigation and construing all facts in the light most

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Case No. SA CV 19-0531-DOC (DFMx)                                      Date: June 14, 2019

Page 6

favorable to Plaintiff, the Court finds that Plaintiff has demonstrated that patients assigned all benefits to Morningside, and thus that Morningside would have derivative standing to bring suit under ERISA.

### b.       Plaintiff's Status as the Assignee of Morningside

Although the Complaint's allegations are sufficient to support Morningside's standing to sue under ERISA, Defendants argue that Plaintiff—as Morningside's assignee—lacks ERISA standing as a matter of law. While the Ninth Circuit has recognized derivative standing on the part of healthcare providers who have been assigned beneficiaries' claims, it has declined "to extend [the doctrine] to cover not only health care providers but also the assignee[s] of health care providers." *Simon*, 208 F.3d at 1081. Defendants argue that the present case is governed by *Simon* because Plaintiff is not itself a healthcare provider, but merely an assignee of a healthcare provider. Reply at 2–5. However, the Court finds that, although the language of the instant agreements use the term 'assignee,' Plaintiff is much more akin to an agent of Morningside, and thus Plaintiff may proceed on the ERISA claim. Although Defendants are correct that assignees of a healthcare provider lack derivative standing to pursue beneficiaries' claims under ERISA, Defendants' argument fails to recognize the distinctive characteristics of a general assignment for the benefit of creditors, under which Plaintiff is more akin to an agent of Morningside than an assignee of Morningside.

"An assignment for benefit of creditors is a business liquidation device available to an insolvent debtor as an alternative to formal bankruptcy proceedings." *Credit Managers Assn. v. Nat'l Indep. Bus. All.*, 162 Cal. App. 3d 1166, 1169 (1984). Although it does constitute "an assignment of all the [debtor's] assets," Cal. Code Civ. Proc. § 493.010, the assignee is not free to do with the assets as it pleases. Rather, as in the instant agreement with respect to ABC and Morningside, the transfer is made so the assignee can "liquidate the assets. . . and distribute the proceeds" to Plaintiff's creditors as required by law. Compl., Ex. A at 1.

Plaintiff has attached a copy of the Morningside Assignment form to the Complaint ("Form A"). *Id.*, Ex. A. Although this arrangement has the name 'assignment,' the terms of the assignment make clear that it is simply a formal mechanism to facilitate the execution of Morningside's intended disposition of its own assets. *See id.* (transfer "pursuant to which the Assignee will liquidate the debtor's assets and in  accordance with the requirements of applicable law distribute the proceeds"). Plaintiff is therefore more akin to an agent of Morningside, or to a bankruptcy trustee, than to a third-party

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Case No. SA CV 19-0531-DOC (DFMx)                          Date: June 14, 2019

acquiring Morningside's claims through an arms-length transaction. Consistent with this analysis, the assignment was accompanied by an executed power-of-attorney form, permitting Plaintiff to act on Morningside's behalf in liquidating and distributing its assets. Compl., Ex. A at 18-19; *accord id.* at 1 (stating that Morningside "desires to. . . *retain* [Plaintiff] ABC SERVICES for the purposes of. . . liquidat[ing] [its] assets") (emphasis added). Plaintiff's status is therefore quite different from that of the plaintiff in *Simon*, who was not acting on behalf of the healthcare providers from whom the ERISA claims were acquired. *See Simon*, 208 F.3d at 1081. For the same reasons, recognizing derivative standing in this case would not "be tantamount to transforming health benefit claims into a freely tradable commodity," as it would have in *Simon*. *Id.* Because Plaintiff is simply acting on behalf of Morningside in order to effectuate Morningside's intended disposition of its own assets, denying derivative standing in this case would not serve the purposes outlined in Simon. Defendant's argument for Plaintiff's lack of ERISA standing thus fails.

> **2.      Failure to Allege Benefits Due Under the Terms of the Plan**

Defendants also argue that Plaintiff has not sufficiently alleged a claim under ERISA because the Complaint does not identify the particular services provided by Morningside to each Patient or the plan terms that obligated Defendants to cover those services. Mot. at 7–9. Plaintiff contends that such specificity is not required in order to survive a motion to dismiss. Opp'n at 6–7, 13–14.

To proceed on its ERISA claim, Plaintiff must allege "benefits due to [it] under the terms of [a] plan." 29 U.S.C. § 1132(a)(1)(B). Here, Plaintiff alleges that Morningside provided mental health and SUD services to the Patients, Compl. ¶ 16, and that Defendants' health plans were required to include coverage for such services under the Affordable Care Act. *id.* ¶ 12. Plaintiff further alleges that, prior to rendering its services, Morningside contacted Defendants and "identified the type of treatment that would be provided to the Patient. . . and verified that each of the Patients had coverage for such professional services and treatment, using the names and identification numbers listed on the insurance cards of the Patients." *Id.* ¶ 36. These allegations give rise to a plausible inference that the Patients' plans contained terms covering the services for which Plaintiff seeks payment, thus making its claim for benefits due plausible. Accordingly, the Court finds Plaintiff's ERISA claim sufficiently pleaded. *Accord Creative Care, Inc. v. Connecticut General Life Ins. Co.*, 2018 WL 5860262 at *3 (C.D. Cal. Feb. 9, 2018) (finding similar allegations sufficient to state an ERISA claim).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Case No. SA CV 19-0531-DOC (DFMx)                                          Date: June 14, 2019

Page 8

For the aforementioned reasons, the Court thus DENIES Defendants' Motion to Dismiss as to Claim One of Plaintiff's Complaint under ERISA.

**B.      Breach of the Implied Covenant of Good Faith and Fair Dealing**

Defendants argue this claim should be dismissed as duplicative because the Complaint's "allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action." Mot. at 11 (quoting *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990)). Plaintiff's Opposition does not address the breach of the implied covenant of good faith and fair dealing claim. *See generally* Opp'n.

A claim for breach of the implied covenant of good faith and fair dealing "rests upon the existence of some specific contractual obligation." *Racine & Laramie Ltd. v. Dept. of Parks & Rec.*, 11 Cal. App. 4th 1026, 1031 (1992).

Here, Plaintiff's Complaint does not identify a contract or a specific contractual plan term or terms conferring the benefits at issues that were allegedly breached by Defendants. *See* Compl. ¶¶ 68–79. As a breach of the implied covenant of good faith and fair dealing must rest on a "specific contractual obligation," Plaintiff has not sufficiently alleged facts to plead its claim. Accordingly, the Court GRANTS WITHOUT PREJUDICE Defendants' Motion to Dismiss as to Claim Two of Plaintiff's Complaint for breach of the implied covenant of good faith and fair dealing.

**C.      Breach of an Implied Contract**

Defendants argue Plaintiff's breach of implied contract claim should be dismissed because Plaintiff has not sufficiently alleged an agreement as to the terms of any implied contract. Mot. at 12–13. Specifically, Defendants argue that the Complaint fails to identify when the implied contracts were made, the specific services Plaintiff agreed to provide under each implied contract, or the price Defendants agreed to pay for those services. Mot. at 13. Plaintiff argues that the Complaint sufficiently alleges an implied contract based on the pre-authorizations Morningside received from Defendants before rendering services to the Patients.[1] Opp'n at 15.

---

[1] Plaintiff's Opposition purports to support this argument by citing multiple cases permitting healthcare providers to pursue implied contract claims arising out of an insurance provider's preauthorization of services. *See* Opp'n at 15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Case No. SA CV 19-0531-DOC (DFMx)                                    Date: June 14, 2019

Page 9

An implied-in-fact contract is "an agreement, the existence and terms of which are manifested by conduct." *Pacific Bay Recovery, Inc. v. California Physicians' Services, Inc.*, 12 Cal. App. 5th 200, 215 (2017). A plaintiff health care provider cannot bring an implied contract claim if the allegations "lack the specific facts required for us to determine there was any meeting of the minds between the parties." *Id.* at 216. Similarly, a plaintiff must allege facts about the specific terms of its agreement or agreements with a defendant in order to make an implied contract claim. *Casa Bella Recovery Int'l, Inc. v. Humana Inc.*, 2017 WL 6030260, at *4 (C.D. Cal. 2017).

In contrast, a so-called 'contract implied in law,' in reality, is not a contract. Quasi-contracts, unlike true contracts, are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises. They are obligations created by law for reasons of justice." *Weitzenkorn v. Lesser*, 40 Cal. 2d 778, 794 (1953) (internal quotations, citations omitted); *accord Hercules Inc. v. United States*, 516 U.S. 417, 423-24 (1996) ("[A]n agreement implied in law is a fiction of law where a promise is imputed to perform a legal duty, as to repay money obtained by fraud or duress.") (internal quotations, citations omitted).

Although Defendants appear to treat this claim as one for breach of an implied-in-fact contract, it is not clear from the Complaint whether Plaintiff intends to insert an implied-in-fact or an implied-in-law contract. The Complaint itself labels its Third Claim for Relief as a claim for "Breach of Implied-In-Law Contract." Compl. at 26. Such a claim is quite different from a contract implied in fact. To the extent Plaintiff indeed intended to assert a claim for a contract implied in law, it is not at all clear what distinguishes this claim from Plaintiff's claims for quantum meruit and breach of the implied covenant of good faith and fair dealing, and the claim thus fails.

To the extent that Plaintiff attempts to assert an implied-in-fact contract claim, the claim also fails. Plaintiff broadly allegedly that it requested pre-authorizations from Defendants, and that Defendants represented that they would reimburse Plaintiff for its services; on this basis, Plaintiff attempts to allege that Defendants "impliedly request Plaintiff to perform services for the Non-ERISA Plan members." Compl. ¶ 90. Similar to the plaintiffs in *Pacific Bay* and *Casa Bella*, Plaintiff fails to state any facts that would support a meeting of the minds or an agreement with specific terms. Accordingly, Plaintiff has not sufficiently alleged facts to state a claim for implied contract. The Court

---

However, the cases cited by Plaintiff only hold that implied contract claims based on preauthorization are not preempted by ERISA; they do not purport to address the standard for pleading such claims.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Case No. SA CV 19-0531-DOC (DFMx)                                                     Date: June 14, 2019

Page 10

thus GRANTS WITHOUT PREJUDICE Defendants' Motion to Dismiss as to Claim Three of Plaintiff's Complaint for breach of implied-in-law contract.

### D.      Promissory Estoppel

Defendants do not contest that Plaintiff has adequately alleged the elements of a promissory estoppel claim, but instead argue that the doctrine of promissory estoppel is inapplicable where a defendant's alleged promise was made in exchange for a promise of performance by the plaintiff. Mot. at 17–18. Plaintiff does not respond to this argument in its Opposition. *See generally* Opp'n.

"The elements of a promissory estoppel claim are (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Flintco Pac., Inc. v. TEC Mgmt. Consultants, Inc.*, 1 Cal. App. 5th 727, 734 (2016) (quotations, alterations omitted). A promissory estoppel claim is not available "[i]f the promisee's performance was requested at the time the promisor made his promise and that performance was bargained for." *Youngman v. Nevada Irrigation Dist.*, 70 Cal. 2d 240, 249 (1969).

Plaintiff's Complaint alleges that Defendants expressed a clear promise to pay Plaintiff its rates, Plaintiff relied on the promise, which was reasonable, and Plaintiff was injured by the reliance, thus sufficiently alleging a promissory estoppel claim. Compl. ¶¶ 98–102. Defendants argue that this claim cannot stand because their promise was made in exchange for a promise of performance by Plaintiff, but Defendants do not identify how the promise may have been made in exchange for a promise of performance. Accordingly, the Court DENIES Defendants' Motion to Dismiss as to Claim Four of Plaintiff's Complaint for promissory estoppel.

### E.      Quantum Meruit

Defendants argue Plaintiff's quantum meruit claim should be dismissed because the Complaint fails to allege that services rendered by Morningside were intended to benefit Defendants, or that such services did benefit Defendants. Mot. at 13–14. Plaintiff's do not respond to this argument. *See generally* Opp'n.

To state a claim for quantum meruit, a plaintiff must allege "both that he or she was acting pursuant to either an express or implied request for services from the defendant and that the services rendered were intended to and did benefit the defendant."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Case No. SA CV 19-0531-DOC (DFMx)                          Date: June 14, 2019

Page 11

*Ochs v. PacifiCare of California*, 115 Cal. App. 4th 782, 794 (2004). Here, Plaintiff's Complaint alleges that Defendants "requested that Plaintiff provide medically necessary treatment to their insured," Plaintiff provided such treatment, and such services benefitted Defendants. Compl. 113–115. Accordingly, Plaintiff sufficiently pled facts to state a quantum meruit claim. The Court thus DENIES Defendants' Motion to Dismiss as to Claim Five of Plaintiff's Complaint for quantum meruit.

     **F.**     **Unfair Competition**

     Finally, Plaintiff claims that Defendants violated California's Unfair Competition Law ("UCL"). Cal. Bus. & Prof. Code § 17200 *et seq.* The UCL prohibits unfair competition, which includes any "unlawful, unfair, or fraudulent business act or practice" that causes the person asserting a claim to have "suffered injury in fact" and "lost money or property" Cal. Bus. & Prof. Code §§ 17200, 17204. "Unlawful," "unfair," and "fraudulent" are recognized as three separate and distinct theories of liability under the UCL. *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 885 (1999). Plaintiff here relies on the "unlawful" and "unfair" prongs of the UCL, alleging that Defendants engaged in an "unfair payment pattern" and failed to disclose to the Patients pertinent facts and policy provisions relating to coverage. Compl. ¶ 124. Defendants argues that the facts alleged in the Complaint are not sufficient to support a cause of action under either of these two theories of liability. Mot. at 15–17.

     "Unlawful" is defined as "an act or practice, committed pursuant to business activity, that is at the same time forbidden by law." *Bernardino v. Planned Parenthood Fed. Of Am.*, 115 Cal. App. 4th 322, 351 (2004). Although the Complaint cites numerous state and federal statutory provisions that Defendants allegedly violated, it largely fails to identify which of Defendants' alleged acts or omissions violated which particular statutory provisions. The Complaint's allegations relating to the statutory violations are also largely conclusory. For example, the Complaint alleges that the Explanation of Benefit disclosures made by Defendants "provided vague, ambiguous and uncertain explanations for the manner by which [Defendants]" made their claim determinations, and that the disclosures were "uninformative, false and misleading." Compl. ¶ 55. The Complaint similarly alleges in conclusory fashion that Defendants "discriminated against [Morningside] and other mental health and SUD treatment providers by applying financial requirements and treatment limitations different than those applied to medical health providers," without alleging any particular ways in which Defendants' financial requirements or treatment limitations differed with respect to mental health and medical health providers. Compl. ¶ 46. Such conclusory assertions are not sufficient to support a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Case No. SA CV 19-0531-DOC (DFMx)                                    Date: June 14, 2019

                                                                    Page 12

claim that Defendants engaged in practices forbidden by law. Accordingly, the Complaint
fails to plead a violation of the "unlawful" prong of the UCL.

        "Unfair" is not clearly defined under the UCL. Recognizing a split in authority,
the California Court of Appeal has articulated three possible tests for defining "unfair."
*See Dram v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257-58 (2010).
First, the "tethering test" requires that the public policy which is a predicate to a
consumer unfair competition action must be tethered to specific constitutional, statutory,
or regulatory provisions. *Id.* Second, the "balancing test" asks whether the alleged
practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to
consumers and requires the court to weigh the utility of the defendant's conduct against
the gravity of the harm to the alleged victim. *Id.* The third test incorporates the definition
of "unfair" from the Federal Trade Commission Act and requires that (1) the consumer's
injury be substantial; (2) the injury not be outweighed by any countervailing benefits to
consumers or competition; and (3) the injury is one that consumers could not have
reasonably avoided. *Id.* (citing 15 U.S.C. § 45(5)(n)).

        Here, instead of specifically outlining alleged unfair behavior, Plaintiff generally
alleges that Defendants engaged in an "unfair payment pattern" of "delaying payment of
claims, reducing the amount of payment and/or denying payment of claims, [and] failing
on a repeated basis to pay uncontested portions of claims in a timely manner." Compl.
¶ 124. To the extent that Plaintiff relied on an "unfair" theory of liability, Plaintiff's claim
is not sufficiently pleaded. The Complaint alleges no facts that would allow the Court to
perform any of the three tests enumerated above.

        Accordingly, the Court GRANTS WITHOUT PREJUDICE Defendants' Motion
to Dismiss as to Claim Six of Plaintiff's Complaint for unfair competition.

**IV.   Disposition**

        For the reasons explained above, the Court GRANTS IN PART and DENIES IN
PART Defendants' Motion to Dismiss the Complaint. The Court DENIES Defendants'
Motion to Dismiss as to Claim One of Plaintiff's Complaint under ERISA, GRANTS
WITHOUT PREJUDICE Defendants' Motion to Dismiss as to Claim Two of Plaintiff's
Complaint for breach of the implied covenant of good faith and fair dealing, GRANTS
WITHOUT PREJUDICE Defendants' Motion to Dismiss as to Claim Three of Plaintiff's
Complaint for breach of implied-in-law contract, DENIES Defendants' Motion to
Dismiss as to Claim Four of Plaintiff's Complaint for promissory estoppel, DENIES

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Case No. SA CV 19-0531-DOC (DFMx)                                      Date: June 14, 2019

Page 13

Defendants' Motion to Dismiss as to Claim Five of Plaintiff's Complaint for quantum meruit, and GRANTS WITHOUT PREJUDICE Defendants' Motion to Dismiss as to Claim Six of Plaintiff's Complaint for unfair competition.

Plaintiff may file an amended complaint, if desired, **on or before July 1, 2019.**

The Scheduling Conference set for June 17, 2019 at 8:30 a.m. **remains on calendar.**

The Clerk shall serve this minute order on the parties.

MINUTES FORM 11
CIVIL-GEN                                                        Initials of Deputy Clerk: djl

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT D**

1          **UNITED STATES DISTRICT COURT**

2          **CENTRAL DISTRICT OF CALIFORNIA**

3        **HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

4              - - - - - - -

5    *ABC SERVICES GROUP, INC., a*          )
     *Delaware corporation, in its*          )
6    *capacity as assignee of the*          )
     *benefit of creditors of*          )
7    *Morningside Recovery, LLC, a*          )
     *California limited liability*          )
8    *company,*          )
                              )          **CERTIFIED**
9          Plaintiff,          )
                              )
10        vs.          ) No. 8:19-CV-0531-DOC
                              )    Item Number 12
11   UNITED HEALTHCARE SERVICES,          )
     INC., *a Minnesota corporation,*          )
12                              )
          Defendant.          )
13   _____)

14

15

16          REPORTER'S TRANSCRIPT OF PROCEEDINGS

17       Motion to Dismiss/Scheduling Conference

18              Santa Ana, California

19              Monday, June 17, 2019

20

21

22   Debbie Gale, CSR 9472, RPR, CCRR
     Federal Official Court Reporter
23   United States District Court
     411 West 4th Street, Room 1-053
24   Santa Ana, California 92701
     (714) 558-8141

25

Certified for the U.S. District Court CM/ECF
Debbie Gale, CSR 9472, RPR, CCRR
Federal Official Court Reporter

8:19-CV-0531-DOC - 6/17/2019 - Item Number 12

2

1    **APPEARANCES OF COUNSEL:**

2    FOR PLAINTIFF ABC SERVICES GROUP, INC., a Delaware
     corporation, in its capacity as assignee of the benefit of
3    creditors of Morningside Recovery, LLC, a California limited
     liability company:

4
          Craig B. Garner
5         GARNER HEALTH LAW CORPORATION
          13274 Fiji Way
6         Suite 250
          Marina Del Rey, California 90292
7         310-458-1560
          craig@garnerhealth.com
8
          Rochelle J. Bioteau
9         SQUIRES SHERMAN & BIOTEAU LLP
          1901 First Avenue
10        Suite 415
          San Diego, California 92101
11        619-696-8854
          rochelle@ssbllp.com
12
     FOR DEFENDANT UNITED HEALTHCARE SERVICES, INC., *a Minnesota*
13   *corporation*:

14        Daniel M. Glassman
          CROWELL & MORING LLP
15        3 Park Plaza
          20th Floor
16        Irvine, California 92614-8505
          949-263-8400
17        dglassman@crowell.com

18        Dylan Scott Burstein
          CROWELL & MORING LLP
19        515 South Flower Street
          40th Floor
20        Los Angeles, California 90071
          213-622-4750
21        dburstein@crowell.com

22

23   ALSO PRESENT:

24        Charles Klaus, President, ABC Services Group
          Jeffrey Broker, Counsel, ABC Services Group
25

1                    **I N D E X**

2   **PROCEEDINGS**                                      **PAGE**

3   Motion to Dismiss [17] and Scheduling Conference

4   Appearances                                            4

5   Remarks by the Court                                   5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Certified for the U.S. District Court CM/ECF**
**Debbie Gale, CSR 9472, RPR, CCRR**
**Federal Official Court Reporter**

8:19-CV-0531-DOC - 6/17/2019 - Item Number 12

4

|  |  |  |
|---|---|---|
|  | 1 | **SANTA ANA, CALIFORNIA, MONDAY, JUNE 17, 2019** |
|  | 2 | **Item Number 12** |
|  | 3 | (9:23 a.m.) |
| 09:23 | 4 | THE COURT:  ABC Services Group v. United |
|  | 5 | Healthcare Services.  Let's see if we can get you on your |
|  | 6 | way today. |
| 09:23 | 7 | **APPEARANCES** |
| 09:23 | 8 | MR. GARNER:  Good morning, Your Honor.  Craig |
|  | 9 | Garner on behalf of plaintiff. |
| 09:23 | 10 | THE COURT:  Pleasure. |
| 09:23 | 11 | MS. BIOTEAU:  Good morning, Your Honor.  Rochelle |
|  | 12 | Bioteau on behalf of plaintiff.  And also -- |
| 09:23 | 13 | THE COURT:  Thank you. |
| 09:23 | 14 | MS. BIOTEAU:  -- in the courtroom, if we may add, |
|  | 15 | we have Charles Klaus here as the president of ABC, and his |
|  | 16 | outside counsel, Jeffrey Booker [sic]. |
| 09:23 | 17 | THE COURT:  Okay.  And where are they located? |
| 09:23 | 18 | MS. BIOTEAU:  In the gallery. |
| 09:23 | 19 | THE COURT:  Gentlemen, whyn't you come up and have |
|  | 20 | a seat in the first row.  You're more than welcome to. |
| 09:23 | 21 | Counsel? |
| 09:23 | 22 | MR. GLASSMAN:  Good morning, Your Honor.  Dan |
|  | 23 | Glassman on behalf of defendants. |
| 09:23 | 24 | MR. BURSTEIN:  And Dylan Burstein on behalf of |
|  | 25 | defendants. |

8:19-CV-0531-DOC - 6/17/2019 - Item Number 12

5

| | | |
|---|---|---|
| 09:23 | 1 | THE COURT:  Okay.  Thank you. |
| 09:23 | 2 | **REMARKS BY THE COURT** |
| 09:23 | 3 | THE COURT:  In the minute order, I ordered |
| | 4 | plaintiff to amend the Complaint in the ruling on the motion |
| | 5 | to dismiss.  And I'm concerned that there -- you may want |
| | 6 | discovery of documents for patients involved, obviously, in |
| | 7 | this lawsuit.  So you only had one plan document that you |
| | 8 | submitted to me. |
| 09:24 | 9 | How many other plan documents do we have? |
| 09:24 | 10 | MR. GARNER:  Your Honor, the one plan document was |
| | 11 | submitted by defendants. |
| 09:24 | 12 | THE COURT:  And that's all we have so far.  And |
| | 13 | you were complaining.  You were concerned about that.  You |
| | 14 | said, *Judge, we have one plan document.* |
| 09:24 | 15 | I'm gonna ask you again:  How many documents do we |
| | 16 | have? |
| 09:24 | 17 | MR. GLASSMAN:  My understanding's that they're |
| | 18 | bringing the case on behalf of approximately 150 patients. |
| 09:24 | 19 | THE COURT:  Yeah. |
| 09:24 | 20 | MR. GLASSMAN:  So we're talking 150 plan |
| | 21 | documents. |
| 09:24 | 22 | THE COURT:  That's what I thought. |
| 09:24 | 23 | And how do you calculate the damages of |
| | 24 | $6,217,653.89?  Is that on each plan document? |
| 09:24 | 25 | MR. GARNER:  That's based upon the charges versus |

8:19-CV-0531-DOC - 6/17/2019 - Item Number 12

6

| | | |
|---|---|---|
| | 1 | what was paid, so reasonable -- |
| 09:24 | 2 | THE COURT:  Okay.  So you need those plan |
| | 3 | documents? |
| 09:24 | 4 | MR. GARNER:  That's correct. |
| 09:24 | 5 | THE COURT:  And, of course, that's burdensome? |
| 09:24 | 6 | MR. GLASSMAN:  It is a little burdensome, yes, |
| | 7 | Your Honor. |
| 09:25 | 8 | THE COURT:  But we can get those? |
| 09:25 | 9 | MR. GLASSMAN:  But we can get those. |
| 09:25 | 10 | THE COURT:  Okay. |
| 09:25 | 11 | And we've just gone through this process with a |
| | 12 | number of other cases, frankly.  And what we found was, on |
| | 13 | some, the statute of limitations had run -- on about |
| | 14 | 50 percent.  Now, I don't know what your statute of |
| | 15 | limitations issues are going to be here.  Some had had |
| | 16 | partial payment that wasn't realized, or payment. |
| 09:25 | 17 | And, therefore, unfortunately I'm gonna need a |
| | 18 | special master to wade through this 'cause I'm not gonna tie |
| | 19 | up my magistrate judge with this. |
| 09:25 | 20 | So we need a special master.  And we need to find |
| | 21 | that person today because it's -- really becomes almost an |
| | 22 | accounting problem -- so that you know what you're actually |
| | 23 | dealing with.  And right now you're going to ask for the |
| | 24 | maximum, in good faith.  That's all you've got to work with. |
| | 25 | And you've gonna push back saying, *Judge, we've got statute* |

**Certified for the U.S. District Court CM/ECF
Debbie Gale, CSR 9472, RPR, CCRR
Federal Official Court Reporter**

8:19-CV-0531-DOC - 6/17/2019 - Item Number 12

7

|        |    |                                                                   |
|--------|----|-------------------------------------------------------------------|
|        | 1  | *of limitations issues, some payments, et cetera.* So there's     |
|        | 2  | no way to resolve it.                                             |
| 09:26  | 3  | Once you get a figure, the cases are pretty easily               |
|        | 4  | resolved.  So it's getting there and getting you the             |
|        | 5  | information.  And that's somewhat burdensome on you.  But we     |
|        | 6  | just dealt with 30 carriers, et cetera, in the same             |
|        | 7  | situation.  I think we had a massive amount of plans that       |
|        | 8  | had to be disclosed.  So I'm gonna do this:                     |
| 09:26  | 9  | There's nothing wrong with your dates.  Let's                   |
|        | 10 | start with that.  Okay?  It's a very well-written report, by    |
|        | 11 | the way.  I want to thank you very much.  You've put a lot      |
|        | 12 | of effort into it.                                              |
| 09:26  | 13 | So if it's acceptable, our Expert Disclosure               |
|        | 14 | Report will be April 27, 2020; our Rebuttal Expert             |
|        | 15 | Disclosure will be May 18, 2020; our Fact Discovery Cutoff     |
|        | 16 | will be June 1, 2020; our Expert Discovery Cutoff -- you had   |
|        | 17 | June 22nd, 2020.                                               |
| 09:26  | 18 | Your Motion Cutoff is the day I'm hearing motions         |
|        | 19 | on August 3rd, 2020.                                           |
| 09:26  | 20 | And it's a court trial:  October 6, 2020.  And you        |
|        | 21 | have four-to-eight days.  And in a court trial we can work     |
|        | 22 | with that.                                                     |
| 09:27  | 23 | MR. GARNER:  Your Honor, may I -- um, there are           |
|        | 24 | claims that are under ERISA, which are covered by --          |
| 09:27  | 25 | THE COURT:  Right.                                        |

**Certified for the U.S. District Court CM/ECF**
**Debbie Gale, CSR 9472, RPR, CCRR**
**Federal Official Court Reporter**

8:19-CV-0531-DOC - 6/17/2019 - Item Number 12

8

| | | |
|---|---|---|
| 09:27 | 1 | MR. GARNER: -- court trial. |
| 09:27 | 2 | THE COURT: Right. |
| 09:27 | 3 | MR. GARNER: There were also supplemental state |
| | 4 | claims, which would be potentially by a jury trial. |
| 09:27 | 5 | THE COURT: Okay. |
| 09:27 | 6 | MR. GARNER: And so, in terms of the plan |
| | 7 | documents, I don't think there would be as many plans as |
| | 8 | there are patients at issue. |
| 09:27 | 9 | THE COURT: Well, I don't know yet -- |
| 09:27 | 10 | MR. GARNER: Correct. |
| 09:27 | 11 | THE COURT: -- and neither do you. |
| 09:27 | 12 | MR. GARNER: Right. |
| 09:27 | 13 | THE COURT: That was your complaint when you filed |
| | 14 | your 12(b): *Judge, we don't know.* |
| 09:27 | 15 | So we've gotta get those, don't we? |
| 09:27 | 16 | MR. GARNER: Correct. |
| 09:27 | 17 | THE COURT: So you have no idea really, nor do I, |
| | 18 | nor -- nor probably does -- in fairness -- does defense |
| | 19 | counsel right now. |
| 09:27 | 20 | MR. GLASSMAN: Sure. |
| 09:27 | 21 | THE COURT: So let's do this: We're gonna need a |
| | 22 | special master. I'm going to adopt these dates. There's |
| | 23 | nothing wrong with the dates. |
| 09:27 | 24 | If you have supplemental claims that require a |
| | 25 | jury trial, we'll get a jury, but I'll hear that -- hear the |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | ERISA case at the same time, same dates that I set, so       |
|       | 2  | you're not back and forth.                                   |
| 09:27 | 3  | I want that Special Master's name known to me by             |
|       | 4  | Friday of this week, though.  That'll give you a chance to    |
|       | 5  | talk about who that person would be.                         |
| 09:27 | 6  | And beyond that need for a special master to wade            |
|       | 7  | through these, I think you're going to be into a discovery   |
|       | 8  | dispute.  And typically, not specifically, you're gonna hear |
|       | 9  | from the defense, *Oh, we're having trouble getting them.*   |
|       | 10 | From their perspective, you're gonna say, *It's burdensome*  |
|       | 11 | *and we're having trouble getting them.*                     |
| 09:28 | 12 | I need to have my special master back in court               |
|       | 13 | immediately telling me what those problems are.  So that's   |
|       | 14 | why you need a special master.  Okay?                         |
| 09:28 | 15 | So, gentlemen -- and Counsel -- anything further?           |
| 09:28 | 16 | I'd get out of here as quick as I could, then.              |
|       | 17 | You okay?                                                     |
| 09:28 | 18 | MR. GARNER:  Yes.                                            |
| 09:28 | 19 | MS. BIOTEAU:  Thank you.                                     |
| 09:28 | 20 | THE COURT:  You good?                                        |
| 09:28 | 21 | MR. GLASSMAN:  Good.                                         |
| 09:28 | 22 | THE COURT:  Okay.  Thank you very much for your             |
|       | 23 | appearance today.                                            |
| 09:28 | 24 | MR. BURSTEIN:  Thank you.                                    |
| 09:28 | 25 | *(Proceedings adjourned at 9:28 a.m.)*                       |

8:19-CV-0531-DOC - 6/17/2019 - Item Number 12

10

| | | |
|---|---|---|
| 09:28 | 1 | -oOo- |
| 09:28 | 2 | |
| 09:28 | 3 | CERTIFICATE |
| 09:28 | 4 | |
| 09:28 | 5 | I hereby certify that pursuant to Section 753, |
| | 6 | Title 28, United States Code, the foregoing is a true and |
| | 7 | correct transcript of the stenographically reported |
| | 8 | proceedings held in the above-entitled matter and that the |
| | 9 | transcript page format is in conformance with the |
| | 10 | regulations of the Judicial Conference of the United States. |
| 09:28 | 11 | |
| 09:28 | 12 | Date:  June 20, 2019 |
| 09:28 | 13 | |
| 09:28 | 14 | |
| 09:28 | | /s/ Debbie Gale |
| 09:28 | 15 | _____ |
| 09:28 | | DEBBIE GALE, U.S. COURT REPORTER |
| 09:28 | 16 | CSR NO. 9472, RPR, CCRR |
| 09:28 | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

**Certified for the U.S. District Court CM/ECF**
**Debbie Gale, CSR 9472, RPR, CCRR**
**Federal Official Court Reporter**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT E**

1

2

3

4    NOTE: CHANGES HAVE BEEN
     MADE TO THIS DOCUMENT

5

6

7

8

9

10             UNITED STATES DISTRICT COURT

11            CENTRAL DISTRICT OF CALIFORNIA

12                 SOUTHERN DIVISION

13

14   ABC SERVICES GROUP, INC., *et al.*,    Case No. 8:19-cv-00531-DOC-DFM
                                            Hon. David O. Carter
15            Plaintiff,

16               v.                         **ORDER APPOINTING ROBERT
                                            C. O'BRIEN SPECIAL MASTER
17                                          [46]**

     UNITED HEALTHCARE SERVICES,
18   INC., *et al.*,

19            Defendants.

20

21

22

23

24

25

26

27

28

This Court, having considered the Joint Stipulation Appointing Robert C. O'Brien Special Master filed by plaintiff ABC Services Group, Inc., in its capacity as assignee for the benefit of creditors of Morningside Recovery, LLC ("Plaintiff"), and defendants United Health Services, Inc., United Behavioral Health and Optum Healthcare Services, Inc. (collectively "Defendants"), and good cause appearing therefore, **the Court hereby appoints Robert C. O'Brien as Special Master:**

> **Robert C. O'Brien**
> **Larson O'Brien LLP**
> **555 South Flower Street**
> **Suite 4400**
> **Los Angeles, CA 90071**
> **(213) 436-4865**
> **robrien@larsonobrienlaw.com**

**The parties adopt the following stipulations as follows:**

**1.**     Rule 53 of the Federal Rules of Civil Procedure provides: "a court may appoint a master [to] address pre-trial and post-trial matters that cannot be addressed effectively and timely by an available district judge or magistrate judge of the district."  Fed. Rules Civ. Proc., R. 53(a)(1)(C).

**2.**     On June 24, 2019, this Court ordered that Robert C. O'Brien be appointed as Special master in this matter (the "Special Master"), subject to any conflicts or grounds for disqualification.  *See* ECF No. 40 (the "Special Master Order").

**3.**     The Special Master Order also required the parties to submit a stipulation with a proposed order outlining the duties of the Special Master and complying with all requirements of Federal Rule of Civil Procedure 53(b)(2), on or before July 8, 2019.

**4.**     The Court has not specifically described, and at this early stage the parties cannot yet fully anticipate, the scope of the Special Master's duties in this Action.  Among other things, the Parties believe the Special Master may help facilitate the exchange of information, including the identification and production

of benefit plan documents and administrative records related to the benefit claims at issue, and may assist the parties in facilitating disputes on discovery and other issues.

**5.**      The parties do not have any known conflict with the Special Master.

**6.**      The Special Master Order shall become effective after the Special Master files an affidavit disclosing whether there is any ground for disqualification under 28 U.S.C. § 455.  In the event the Special Master discloses any ground for disqualification, the parties shall have three court days to object to the Special Master or otherwise waive the disqualification.

**7.**      The Special Master, as an agent of the Court, shall function as the Court's representative and not on behalf of any party.

**8.**      Unless the Court orders otherwise, the term of the Special Master shall be for two years or until the Court terminates his appointment (whichever comes first).

**9.**      The Special Master shall proceed with all reasonable diligence and shall commence his duties no later than July 29, 2019.

**10.**      The Special Master shall perform the following duties:

a.      Facilitate the parties' efforts to exchange relevant information, including the Plan documents at issue in this lawsuit.  The Special Master shall have four weeks to determine whether the parties are able to reach agreement on the exchange of information. If the parties are unable to reach agreement, the Special Master shall have an additional two weeks either to produce such an agreement or make appropriate recommendations to the Court;

b.      Facilitate the parties' efforts to reach agreement on specific issues to be identified by the parties or the Court, or to narrow and clarify their differences;

c.      Facilitate the parties' efforts to reach settlement of, or narrow differences concerning, issues in this case; and

d.      Make recommendations to the Court on how to resolve any issues listed in subsections a. and b. to the extent the parties are unable to reach an agreement on those issues.  Any such recommendations shall include a description of the relevant facts and reasons that support the Special Master's recommendations.  The parties shall have the right to object to any recommendations by the Special Master as described below.

**11.**    The Special Master shall perform his duties in the following manner:

a.      The Special Master shall take into account the legitimate concerns and views of both sides, as previously articulated or further articulated in their respective pleadings and papers.

b.      The Special Master may meet or communicate separately or together with counsel of record for Plaintiff and Defendants, including *ex parte* communications, provided the parties preserve any attorney-client privilege and attorney work product privilege, as well as other privileges that may apply (if any) in the future.  If any party asserts a legal privilege to avoid providing information, the party shall do so in writing and if the other party or the Special Master chooses to contest that assertion, the parties will present their respective positions to the Court.

c.      The Special Master may take other actions reasonably related to the issues or matters referred to him by the Court or the parties.

d.      The Special Master shall have access to all information and documents that he requires to perform his job unless such information is protected by the attorney work product, attorney-client, or other privileges. The Special Master shall tailor his requests for information to the needs of the specific issues before him and shall not make unduly burdensome requests for information.

**12.** The Special Master may file periodic reports with the Court as he deems appropriate or as instructed by the Court. The Special Master's reports will be public documents and will be filed on the docket. Any protected health information contained in any report or attachment must be redacted or excluded. The reports should focus on the steps taken to achieve the objectives set forth in paragraph 10. The reports should not be excessively statistic-laden or technical. As part of his reports and at other times as the Special Master deems necessary, the Special Master may make recommendations to the Court regarding the need for and nature of additional measures to achieve the administration of justice in this matter.

**13.** Following the filing of any report by the Special Master, the parties shall have the opportunity to address the Special Master's findings and recommendations in writing by no later than one week before a hearing scheduled by the Court or Special Master, provided the report by the Special Master itself notices on the cover page the date of the hearing consistent with Local Rule 7-4. The Court may modify this schedule at any time.

**14.** The Court shall review any of the Special Master's findings or recommendations submitted in reports to the Court under a de novo standard.

**15.** The Special Master may engage in *ex parte* communications with counsel for Plaintiff and Defendants for purposes of conducting settlement discussions.  The Special Master shall treat as confidential all information specifically disclosed to him in confidence, much like as if he were functioning as a mediator.  As to joint sessions (i.e., meetings or sessions where representatives of Plaintiff and Defendants are present), the exchanges shall be subject to the provisions of Federal Rule of Evidence 408.

**16.** The Special Master also may engage in *ex parte* communications with the Court, provided that such communications are referenced and identified by the Special Master in the reports he files with the Court, as appropriate.

17.    The Special Master shall preserve all writings he, or those employed by him, generate in performing his duties under the terms of this order.  "Writings" include, but are not limited to, correspondence, memoranda, records, reports, notes, work papers, financial and accounting records, disks, emails or other computer electronic or magnetic storage media.  The Court may, but is not obligated to, grant a request by either party, based upon a showing of good cause, that the Special Master produce such writings for inspection.

18.    The Special Master's compensation shall be by his hourly rate. Payment shall be made directly to the Special Master.  Reasonable expenses shall also be reimbursed.  The parties shall equally share in the compensation and reimbursement of reasonable expenses to the Special Master, unless the Special Master recommends, and the Court orders, otherwise.  The Special Master may by order impose on a party any non-contempt sanction provided by Rule 37 or 45 of the Fed. R. Civ. Proc., and may recommend further sanctions against a party or nonparty.  A party subject to a non-contempt sanction by the Special Master may file objections to the sanction with the Court within one week of receiving notice of the sanction from the Special Master.  Enforcement of such a non-contempt sanction will be stayed pending the Court's order on the objections.

19.    The parties shall cooperate in good faith with the Special Master, pursuant to the foregoing provisions.

**IT IS HEREBY ORDERED.**

**DATED:** July 9, 2019

_David O. Carter_
DAVID O. CARTER
United States District Court Judge

ORDER APPOINTING SPECIAL MASTER
PAGE 6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **EXHIBIT F**

FILED UNDER SEAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>EXHIBIT G</u>**



FILED UNDER SEAL

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 28, 2022, I caused the

**EXHIBITS TO CONSOLIDATED AMENDED COMPLAINT FOR BREACH OF EMPLOYEE WELFARE BENEFIT PLAN (RECOVERY OF PLAN BENEFITS UNDER E.R.I.S.A.) 29 U.S.C. § 1132(a)(1)(b)**

to be served upon counsel in the manner described below:

Participants in the case who are registered CM/ECF users will be served by the Central District CM/ECF system.

***Special Master***

Stephen G Larson
Larson O'Brien LLP
555 South Flower Street Suite 4400
Los Angeles, CA 90071
213-436-4864
slarson@larsonobrienlaw.com

***Aetna Health and Life Insurance Company***

Benjamin H. McCoy
Fox Rothchild LLP
10 Sentry Parkway, Suite 200
Blue Bell, PA 19422
610-397-7972
bmccoy@foxrothschild.com

John Shaeffer
Fox Rothschild LLP
10250 Constellation Boulevard
Suite 900
Los Angeles, CA 90067
310-598-4150

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

***Anthem Blue Cross Life and Health Insurance Company***
***Anthem, Inc.***
***Blue Cross of California, Inc.***
***The Anthem Companies of California, Inc.***

Steven D Allison
Samrah R Mahmoud
Troutman Sanders LLP
5 Park Plaza Suite 1400
Irvine, CA 92614
949-622-2700
steve.allison@troutman.com
samrah.mahmoud@troutman.com

Virginia Bell Flynn
Troutman Sanders LLP
4320 Fairfax Drive
Dallas, TX 75205
804-697-1480
virginia.flynn@troutman.com

Chad R Fuller
Troutman Sanders LLP
11682 El Camino Real Suite 400
San Diego, CA 92130
858-509-6000
chad.fuller@troutman.com

***Blue Cross and Blue Shield of Alabama***

Neil J Barker
Neil J Barker APC
225 South Lake Avenue Suite 300
Pasadena, CA 91101
626-440-5980
neiljbarker@sbcglobal.net

1  ***Health Care Service Corporation***

2
3  Amir Shlesinger
   Reed Smith LLP
4  335 South Grand Avenue Suite 2900
   Los Angeles, CA 90071-1514
5  213-457-8000
6  jgershon@reedsmith.com
   ashlesinger@reedsmith.com
7  ftabibkhoei@reedsmith.com

8
9  Dan J Hofmeister, Jr
   Reed Smith LLP
10 10 South Wacker Drive Suite 4000
   Chicago, IL 60606
11 312-207-6545
12 dhofmeister@reedsmith.com

13
14 ***Blue Cross and Blue Shield of Kansas City***

15 Jonathan Daniel Gershon
16 Amir Shlesinger
   Farah Tabibkhoei
17 Reed Smith LLP
18 335 South Grand Avenue Suite 2900
   Los Angeles, CA 90071-1514
19 213-457-8000
20 jgershon@reedsmith.com
   ashlesinger@reedsmith.com
21 ftabibkhoei@reedsmith.com

22
23 Dan J Hofmeister, Jr
   Reed Smith LLP
24 10 South Wacker Drive Suite 4000
   Chicago, IL 60606
25 312-207-6545
26 dhofmeister@reedsmith.com

27
28

EXHIBITS TO CONSOLIDATED AMENDED COMPLAINT -- PAGE 11

***Blue Cross and Blue Shield of Kansas Inc***

Kimberly Ann Klinsport
Foley and Lardner LLP
555 South Flower Street Suite 3300
Los Angeles, CA 90071-2411
213-972-4500
kklinsport@foley.com

Michael A Naranjo
Jason Yon-Wai Wu
Foley and Lardner LLP
555 California Street Suite 1700
San Francisco, CA 94104
415-434-4484
mnaranjo@foley.com
jwu@foley.com

***USable Mutual Insurance Company***

Kimberly Ann Klinsport
Foley and Lardner LLP
555 South Flower Street Suite 3300
Los Angeles, CA 90071-2411
213-972-4500
kklinsport@foley.com

Michael A Naranjo
Jason Yon-Wai Wu
Foley and Lardner LLP
555 California Street Suite 1700
San Francisco, CA 94104
415-434-4484
mnaranjo@foley.com
jwu@foley.com

1    ***Bluecross Blueshield of Tennessee Inc.***

2

3    Jason Jonathan Kim
     Ann Marie Mortimer
4    Hunton Andrews Kurth LLP
     550 South Hope Street Suite 2000
5    Los Angeles, CA 90071
     213-532-2000
6    kimj@huntonak.com
7    amortimer@huntonAK.com

8
     John B Shely
9    Bridget B Vick
     Hunton Andrews Kurth LLP
10   600 Travis Street Suite 4200
11   Houston, TX 77002
     713-220-4200
12   jshely@huntonak.com
13   bvick@huntonak.com

14

15   ***Humana Behavioral Health, Inc.***
     ***Humana Health Plan of California Inc.***
16   ***Humana Inc.***
     ***Humana Insurance Company***
17

18
     Ronald K Alberts
19   Norvik Azarian
     Gordon Reese Scully Mansukhani LLP
20   633 West Fifth Street 52nd Floor Los Angeles, CA 90071
21   213-576-5000
22   ralberts@grsm.com
     nazarian@grsm.com
23

24

25

26

27

28

***United Behavioral Health***
***United Healthcare Services Inc.***
***Optum Services, Inc.***

Jennifer S. Romano
Crowell and Moring LLP
3 Park Plaza 20th Floor
Irvine, CA 92614-8505
949-263-8400
dglassman@crowell.com
sphan@crowell.com
jromano@crowell.com

***Cigna HealthCare of California, Inc.***
***Cigna Behavioral Health of California, Inc.***
***Cigna Health and Life Insurance Company***

Jeanne Louise Detch
Mazda K. Antia
Cooley LLP
4401 Eastgate Mall
San Diego, CA 92121
858-550-6000
jdetch@cooley.com
mantia@cooley.com

Matthew D. Caplan
Cooley LLP
1333 2nd St. Suite 400
Santa Monica, CA 90401
415-693-2000
mcaplan@cooley.com

1  **HMC Healthworks, Inc.**

2  Kathleen V. Fisher
3  Rodney James Jacob
   Calvo Fisher and Jacob LLP
4  535 Pacific Avenue
5  Suite 201
   San Francisco, CA 94133
6  415-374-8370
7  kfisher@calvofisher.com
8  rjacob@calvofisher.com

9  **Providence Health Plan**

10
   Jose Dino Vasquez
11 Karr Tuttle Campbell
   701 5th Avenue
12 Suite 3300
13 Seattle, WA 98104
   206-223-1313
14 dvasquez@karrtuttle.com
15
16 Arden J. Olson
   Harrang Long Gary Rudnick PC
17 Oakway Financial Center
18 497 Oakway Road
   Suite 380
19 Eugene, OR 97401
20 541-485-0220
   Arden.j.olson@harrang.com
21
22 **United Medical Resources, Inc.**
   Stephanie V Phan
23 Jennifer S. Romano
24 Crowell and Moring LLP
   3 Park Plaza 20th Floor
25 Irvine, CA 92614-8505
26 949-263-8400
   sphan@crowell.com
27 jromano@crowell.com
28

EXHIBITS TO CONSOLIDATED AMENDED COMPLAINT --  PAGE 15

1

***MHNet Specialty Services LLC***

2

Benjamin H. McCoy
3  Fox Rothchild LLP
4  10 Sentry Parkway, Suite 200
Blue Bell, PA 19422
5  610-397-7972
6  bmccoy@foxrothschild.com

7  John Shaeffer
8  Fox Rothschild LLP
10250 Constellation Boulevard
9  Suite 900
10  Los Angeles, CA 90067
310-598-4150
11  jshaeffer@foxrothschild.com

12

***Meritain Health, Inc.***
13

14  Benjamin H. McCoy
Fox Rothchild LLP
15  10 Sentry Parkway, Suite 200
16  Blue Bell, PA 19422
610-397-7972
17  bmccoy@foxrothschild.com

18

John Shaeffer
19  Fox Rothschild LLP
20  10250 Constellation Boulevard
Suite 900
21  Los Angeles, CA 90067
22  310-598-4150
jshaeffer@foxrothschild.com

23

24

25

26

27

28

1  ***First Health Group Corporation***

2

3  Benjamin H. McCoy
Fox Rothchild LLP

4  10 Sentry Parkway, Suite 200
Blue Bell, PA 19422

5  610-397-7972

6  bmccoy@foxrothschild.com

7  John Shaeffer
Fox Rothschild LLP

8  10250 Constellation Boulevard

9  Suite 900
Los Angeles, CA 90067

10  310-598-4150

11  jshaeffer@foxrothschild.com

12

13  Daniel M Glassman
Stephanie V Phan

14  Jennifer S. Romano
Crowell and Moring LLP

15  3 Park Plaza 20th Floor

16  Irvine, CA 92614-8505
949-263-8400

17  dglassman@crowell.com

18  sphan@crowell.com
jromano@crowell.com

19

20  ***Sierra Health and Life Company***
Stephanie V Phan

21  Jennifer S. Romano

22  Crowell and Moring LLP
3 Park Plaza 20th Floor

23  Irvine, CA 92614-8505

24  949-263-8400
dglassman@crowell.com

25  sphan@crowell.com

26  jromano@crowell.com

27

28

EXHIBITS TO CONSOLIDATED AMENDED COMPLAINT --  PAGE 17

1

***Coventry Health Care, Inc.***

2

Benjamin H. McCoy

3

Fox Rothchild LLP

4

10 Sentry Parkway, Suite 200
Blue Bell, PA 19422

5

610-397-7972

6

bmccoy@foxrothschild.com

7

***Medica Health Plans***

8

Elise D. Klein

9

Lewis Brisbois Bisgaard and Smith LLP

10

633 West 5th Street
Suite 4000

11

Los Angeles, CA 90071

12

213-250-1800
Elise.klein@lewisbrisbois.com

13

***Medical Mutual of Ohio***

14

S. Christopher Yoo

15

Alvaradosmith

16

1 MacArthur Pl., Suite 200
Santa Ana, CA 92707

17

714-852-6800

18

cyoo@alvaradosmith.com

19

20

***Beacon Health Options, Inc.***
***Beacon Health Strategies, LLC***

21

***ValueOptions Federal Services, Inc.,***

22

***ValueOptions of California, n/k/a Beacon Health Options of California, Inc.***

23

Henry I. Willett, III

24

Christian & Barton LLP

25

909 East Main Street, Suite 1200
Richmond, VA 23219

26

804-697-4130

27

hwillett@cblaw.com

28

1 | ***Common Ground Healthcare Cooperative***

2

3 | William D. Naeve
Murchison & Cumming

4 | 18201 Von Karman Ave.
Suite 1100

5 | Irvine, CA 92612

6 | 714-953-2233
wnaeve@murchisonlaw.com

7

8 | ***Providence Health Plan***

9 | Arden J. Olson

10 | Harrang Long Gary Rudnick PC
Oakway Financial Center

11 | 497 Oakway Road

12 | Suite 380
Eugene, OR 97401

13 | 541-485-0220

14 | Arden.j.olson@harrang.com

15

16 | */s/ Craig B. Garner*<br>Craig B. Garner<br>*Counsel for Plaintiff*

17

18

19

20

21

22

23

24

25

26

27

28